UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT


- - - - - - - - - - - - - - - - x
                             :
DAVERLYNN KINKEAD,         :  No. 3:15CV1637(JAM)
individually and on behalf of  :
all others similarly situated,  :
                             :
               Plaintiff  :
                             :
        vs.              :
                             :
HUMANA, INC.; HUMANA AT HOME,  :
INC.; and SENIORBRIDGE FAMILY  :
COMPANIES(CT), INC.,       :
                           :  New Haven, Connecticut
             Defendants  :  April 22, 2016
                           :
- - - - - - - - - - - - - - - - x


<u>MOTION HEARING</u>


B E F O R E:

      THE HONORABLE JEFFREY ALKER MEYER, U.S.D.J.


Diana Huntington, RDR, CRR
Official Court Reporter

```
1    A P P E A R A N C E S:

2

3         FOR THE PLAINTIFF:

4              EDWARD TUDDENHAM, ESQ.
                   228 West 137th Street
                   New York, New York 10030
5
              BOHRER BRADY LLC
6                  8712 Jefferson Highway, Ste. B
                   Baton Rouge, Louisiana 70809
7         BY:  PHILIP BOHRER, ESQ.

8
         FOR THE DEFENDANT:
9
              OGLETREE DEAKINS NASH SMOAK & STEWART PC
10                 Two Stamford Plaza
                   281 Tresser Boulevard, Suite 602
11                 Stamford, Connecticut 06901
          BY:  MARC L. ZAKEN, ESQ.
12                 WILLIAM C. RUGGIERO, ESQ.

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                          **4:02 P.M.**

2              THE COURT:  We're here today for purposes of

3    oral argument in the matter of Kinkead -- am I pronouncing

4    that correctly?

5              MR. TUDDENHAM:  Kinkead.

6              THE COURT:  -- v. Humana, Inc., and that's

7    15CV1637.

8              Appearance of counsel, please?

9              MR. TUDDENHAM:  Edward Tuddenham for the

10   plaintiff.

11             MR. BOHRER:  Philip Bohrer for plaintiff.

12             THE COURT:  Okay.

13             MR. ZAKEN:  Mark Zaken, Ogletree Deakins, for

14   the defendants, Your Honor.

15             MR. RUGGIERO:  William Ruggiero for defendants,

16   Your Honor.

17             THE COURT:  I guess, since it's defendants'

18   motion, if you'd like to proceed, Mr. Zaken.

19             MR. ZAKEN:  Thank you, Your Honor.  Good

20   afternoon.

21             THE COURT:  Can I ask you, just because the

22   lighting is a little funny, if you don't mind coming up to

23   the lectern.

24             MR. ZAKEN:  Happy to do so, Judge.

25             THE COURT:  I hope you enjoy the views in this

1    courtroom.

2            MR. ZAKEN:  I have to say, 25 years practicing

3    in Connecticut, I've never been in this room.  I didn't

4    even know it was here.

5            THE COURT:  One of the great secrets for sure.

6            MR. ZAKEN:  That and Skull and Bones, I guess.

7            THE COURT:  There you go.

8            MR. ZAKEN:  Your Honor, this is defendants'

9    motion to dismiss.  Of course, we accept, for purposes of

10   the motion, the facts as alleged by the plaintiff and

11   maintain that on the basis of the facts as alleged, as a

12   matter of law, she fails to state a cause of action under

13   either the federal FLSA or under the Connecticut state

14   statute.

15           With respect to the federal FLSA, the plaintiff

16   alleges that she was a home companion through a third

17   party, the defendants, for the period January 1, 2015,

18   through May of 2015, and she did not receive overtime.

19   Our contention is that for a long period of time under the

20   FLSA, as upheld by the United States Supreme Court, there

21   was a regulation which provided that home attendants who

22   were paid through third parties, like the defendants, were

23   exempt from the overtime regulations.

24           The Department of Labor issued proposed

25   regulations to change that rule in 2013 to be effective

```
 1   January 1, 2015.  And the United States District Court

 2   vacated -- first entered a stay in December of 2014 of the

 3   effective date of those regulations and then vacated those

 4   regulations in January of 2014, and those regulations

 5   remained vacated by order of the United States District

 6   Court in Home Care Ass'n of Amer. v. Weil.

 7            THE COURT:  So it wasn't vacated, the reg was

 8   not vacated until it had gone into effect in January?

 9            MR. ZAKEN:  No, it was stayed in December for

10   two weeks into early January and then vacated by ruling in

11   January.

12            THE COURT:  Okay.  All right.

13            Is there a distinction, in your view, between

14   staying and vacating?

15            MR. ZAKEN:  Well, there is a distinction between

16   an injunction, which I'd like to get to in a case that's

17   cited by the plaintiffs in a United States Supreme Court

18   case called Arkadelphia, I'd like to get to that.  But at

19   this moment, no, I don't think there is a distinction

20   between the stay and the vacation, the reason being that

21   once the District Court vacates the statute, the statute

22   is a nullity as of the District Court's ruling ab initio.

23            THE COURT:  Was it vacating a statute here, the

24   ruling?

25            MR. ZAKEN:  It was vacating the regulation.
```

1           THE COURT:  All right.

2           MR. ZAKEN:  So in January the District Court

3   vacated the regulation.

4           And then that was appealed to the District of

5   Columbia Circuit, the D.C. Circuit Court of Appeals, which

6   issued a ruling in August of 2014 reversing it, and then

7   staying its decision for about a week or so after which --

8           THE COURT:  Was that August 2015?

9           MR. ZAKEN:  August 2015, yes, Your Honor.

10          THE COURT:  All right.

11          MR. ZAKEN:  And then staying the decision for a

12  period of about a week or so, I don't recall exactly,

13  something like that.  And then ultimately issuing a

14  mandate reversing the prior ruling of the District Court.

15          The D.C. Circuit's decision is on petition for

16  certiorari to the United States Supreme Court where, as of

17  when I last looked at it earlier this week, no conference

18  had yet been set on it.

19          THE COURT:  Is it briefed, both sides?

20          MR. ZAKEN:  The petition, I believe, is briefed.

21  But whether the Court is going to --

22          THE COURT:  Was a response filed, do you know?

23          MR. ZAKEN:  All I know, it is not scheduled for

24  conference yet.  That's all I can tell you.

25          The Department of Labor has taken the position

1    with respect to the regulation after the Department of

2    Labor won the reversal in the Circuit Court of Appeals,

3    the Department of Labor announced that it would extend a

4    period of time before it would begin to enforce the

5    regulation.  And then the Department of Labor would

6    proceed to enforce the regulation prospectively, not

7    retroactively, to January 1, 2015.  And they've publicly

8    stated that on their web site and in materials we've

9    submitted to the Court.

10              THE COURT:  And I saw that, obviously reviewed

11   those.

12              Does the fact that the public agency that's

13   enforcing the regulation, that it announces that it won't

14   retroactively enforce the regulation, does that control

15   whether the regulation can be the basis for a civil

16   action, in the sense that plaintiffs didn't need to get

17   the DOL's permission to file the suit, right?

18              MR. ZAKEN:  If you were to get into a *Chevron*

19   retroactivity analysis, which I submit to you is not

20   really relevant here, that might be a factor in a *Chevron*

21   retroactivity analysis, but I don't think you get into a

22   *Chevron* retroactivity analysis.  The reason being that a

23   retroactivity analysis under the *Chevron* United States

24   Supreme Court line of cases, *Baum* and other cases, all of

25   those deal with the retroactive application of a court

1   decision, not the retroactive application of a regulation

2   or a statute, which I submit to you is different.  And

3   really we've looked high and low.  And the only case we

4   have found that specifically analyzes -- other than the

5   *Bangoy* case, which is the one other case like ours, but we

6   submitted to you a District of Oregon decision, *MCI v.*

7   *GTE*.  And I think the analysis in that case is the

8   analysis that applies.

9           And the analysis that I think the Court should

10  apply here is that, as to be distinct from an injunction,

11  which you asked me before, a stay, which I think is

12  different, a vacatur of a statute renders the statute void

13  ab initio with respect to all comers, everybody who is

14  seeking to enforce that statute.

15          So the fact that my client was not a party to

16  the case that was argued in the District Court that was

17  subsequently reversed by the Court of Appeals in the D.C.

18  Circuit and is now pending certiorari by the Supreme

19  Court, once a District Court judge vacates a rule or

20  regulation or statute, the statute is void ab initio as if

21  it had never existed.  And the courts do not favor -- in

22  fact it is expressly disfavored to have a retroactive

23  application of a statute.  So once that statute is

24  vacated, as the Court found in the *MCI v. GTE* case, the

25  statute is as if it never existed.  And as in the *MCI v.*

1    *GTE* case, the facts are virtually identical to ours.

2              THE COURT:  Suppose that Judge Leon -- it was

3    Judge Leon, right?

4              MR. ZAKEN:  Yes.

5              THE COURT:  Suppose he had vacated, entered the

6    order vacating, but entered a simultaneous stay of his

7    decision pending appeal, would you still be arguing, well,

8    the fact that he uttered the magic word "vacating"

9    means -- "poof" -- the regulation is gone?

10             MR. ZAKEN:  Well, I will say that -- again, this

11   now gets me to the *Arkadelphia* case.  What you're sort of

12   proposing is what the court did in *Arkadelphia* which is to

13   say we are going to enjoin the enforcement of these

14   regulations and require the petitioner in that case to

15   post a bond against damages that might be incurring, in

16   which event the court is basically saying I'm not throwing

17   out this statute now, I'm going to look at it, but in the

18   event that I decide that the statute is -- or it is later

19   determined that the statute was properly enacted, then

20   we're going to put everybody back whole, put them back to

21   where they were, which is in fact what a stay or

22   injunction would do.  And perhaps if Judge Leon did that

23   and did what the plaintiff was suggesting in their papers,

24   which is to issue a -- require the posting of a bond and

25   issue an injunction, in effect.  That would be different.

1   But that's not what Judge Leon did.  What he did was he

2   vacated the statute, which means that the statute is as if

3   it never were, just as in the *MCI* case where the FCC

4   issued regulations, the Eighth Circuit found that those

5   regulations were improperly issued and vacated them.  The

6   Supreme Court reversed the finding that the regulations

7   were invalid and reinstated them.  And the plaintiffs in

8   that *MCI* case then argued that the regulations were then,

9   in affect, retroactively for the period from the time that

10  the Eighth Circuit vacated the regulations to the time the

11  Supreme Court reinstated the regulations.

12          And what the District Court said in that case,

13  which I think is correct in this case, is that, first of

14  all, there are no cases supporting that.  The plaintiff

15  has failed to cite any cases that support that type of

16  theory.  And all of the case law suggests that once a

17  statute is vacated, it is void from the point that it is

18  vacated.  Parties have the right to rely on the vacatur of

19  the statute.  Everybody who was watching this regulation

20  as implemented, as announced by the Department of Labor,

21  in this industry was watching this case, they continued to

22  watch this case.  And once the statute, once the

23  regulations were vacated by the District Court, that was

24  it for purposes of everybody who was --

25          THE COURT:  So help me understand that a little

1   bit then.  So you're saying the parties can rely on it and

2   you say everybody who was watching it.  Is that going to

3   require some kind of proof that your client was watching?

4           MR. ZAKEN:  No, no.  It doesn't.  It doesn't

5   require that.

6           THE COURT:  So it wouldn't have mattered if your

7   client had never been aware of this and just decided, who

8   cares what the law says, we're just not paying overtime,

9   right?

10          MR. ZAKEN:  Well, no, because, for purposes of

11  the retroactivity of judicial decisions, parties take the

12  risk with respect to judicial decisions that if a court

13  subsequently overturns a decision upon which they are

14  relying, that the parties are subject to the retroactive

15  application of that, as numerous Supreme Court cases have

16  stated.  This is the rule of American law since time

17  immemorial.  If there is a reversal of a judicial ruling,

18  then the parties take the risk.  And *Arkadelphia* says that

19  as well.

20          But the vacatur of a statute or regulation is

21  different.  And the parties -- the public, my client,

22  everybody in the industry, if a statute is enacted and

23  then vacated, the vacatur --

24          THE COURT:  Since we're sticking with a

25  regulation here -- there's nothing suggests a statute --

1          MR. ZAKEN:  No, it was a regulation.

2          THE COURT:  So stick with a regulation.

3          MR. ZAKEN:  When a regulation --

4          THE COURT:  -- is promulgated.

5          MR. ZAKEN:  -- is promulgated and then vacated,

6  it's as if it never existed.  It has no effective date.

7          THE COURT:  All right.  So tell me why --

8  because you can suppose -- I understand you're conceding

9  that generally judicial decisions are retroactive.

10          MR. ZAKEN:  Yes.

11          THE COURT:  So a criminal defendant who is

12  acquitted -- or not acquitted, but receives some sort of a

13  favorable ruling on appeal that ends up going a different

14  way against him, even though there's strong reliance

15  interest, the defendant was kind of hoping that that

16  evidence would be suppressed, for example, you'd say,

17  well, no, it doesn't matter, the appeal overturned the

18  District Court's order suppressing the evidence, so no

19  matter the fact that the defendant actually relied, you'd

20  still say essentially there can't be that kind of reliance

21  in that because judicial decisions, the general rule,

22  retroactive.  But here --

23          MR. ZAKEN:  With all due respect, Judge, with

24  respect to what you just said, I've never practiced

25  criminal law and never been party to a criminal law appeal

1    or argument, so I'd prefer not to address that particular

2    hypothetical because I really don't know what the rule is

3    here.  If we stay in the civil context, I'd be fine.

4            THE COURT:  Tell me what is special about the

5    vacating of a regulation as opposed to a court judgment

6    generally.  Are you going to say, well, it's because the

7    reliance interest is different, or do you have another

8    reason why a different rule should apply?

9            MR. ZAKEN:  I'm not the one who has set the

10   rules and can't tell you necessarily the reasoning behind

11   them.  I can just tell you that on the cases that we have

12   submitted, that the American rule is that statutes are --

13   and I know you want to distinguish between statutes and

14   regulations, but I don't see a difference here.

15           THE COURT:  I don't have to decide whether the

16   same rule would apply to statutes.

17           MR. ZAKEN:  Right.  But a regulation operates

18   prospectively largely because it is an announcement of --

19   it is a new -- it is a new law, not the divination of what

20   the law was.  That's the difference between courts that --

21   when a court issues a ruling, a court is looking and

22   divining what the law has been.  That's what you do,

23   Your Honor, every day when you reach decisions, you are

24   telling the parties what the rule of law is and always has

25   been with respect to a case.

1          THE COURT:  That's the fiction that essentially

2   operates, right?  It depends on whether you're a legal

3   realist, right?

4          MR. ZAKEN:  We all live in one fiction or

5   another, Judge.  But, yes, that's the fiction that you

6   live in.  That's the rule that we have grown up with in

7   the American rule of jurisprudence.

8          With respect to regulations or with respect to

9   statutes, this is a pronouncement by a body that has the

10  authority to state from henceforward this is what the rule

11  of law is going to be, these are the statutes, the

12  regulations or whatever that we all must comply with.  And

13  that is different because that is essentially writing new

14  law into the book saying this is what the law is, as

15  opposed to divining what the law always has been.  And

16  that's the difference between -- and why we have a

17  prospective application of statutes and regulations and we

18  have a retroactive regulation of case law.

19         THE COURT:  So to take a civil example, suppose

20  you had an IRS regulation -- are you comfortable with

21  that?

22         MR. ZAKEN:  I'm not comfortable anything in the

23  tax arena, but go right ahead.

24         THE COURT:  Civil taxing regulation and that

25  that regulation is challenged on grounds perhaps that it

1    violates the Commerce Clause in some way.  And the

2    District Court sustains the challenge, vacates the IRS

3    regulation, the Court of Appeals affirms the District

4    Court and then it goes all the way to the Supreme Court.

5    And the Supreme Court overturns the District Court's

6    decision some two years later.  Would you say in that

7    instance, then, that the taxing regulation could not be

8    applied until the point in time whenever the mandate might

9    issue from the U.S. Supreme Court?

10            MR. ZAKEN:  The taxing regulation, if it is a

11   new regulation with a new effective date sometime in the

12   future just like in our case, then, yes, I would say that,

13   as in our case, once the District Court vacates the taxing

14   regulation, assuming the District Court does so ab initio,

15   then the rule, the regulation by the IRS, is vacated and

16   void as if it never happened.

17            THE COURT:  So essentially no power under the

18   regulation to tax until the point in time in which the

19   Supreme Court rules; is that right?

20            MR. ZAKEN:  Well, if in our case the District

21   Court vacatur of the statute is reversed by the Court of

22   Appeals -- and I don't know whether that was the case in

23   your argument over not --

24            THE COURT:  It was ultimately reversed by the

25   U.S. Supreme Court two years later.

1          MR. ZAKEN:  Once it is reversed, then it becomes

2    the rule of law from the time the mandate issues.

3          THE COURT:  Does the court that issues the

4    reversal such as in the facts of our case -- I know the

5    D.C. Circuit doesn't address this in its ruling -- does it

6    have authority to say, well, we are going to apply this

7    decision retroactively?

8          MR. ZAKEN:  I don't think it does.

9          THE COURT:  Does anybody have authority --

10          MR. ZAKEN:  I would say no.

11          THE COURT:  -- to do that?

12          And why is that?

13          MR. ZAKEN:  Unless the District Court had no

14    authority to vacate the rule at the time that it did so,

15    that would be the only circumstance where I think that

16    that would be -- that that --

17          THE COURT:  See what I'm getting at is, in the

18    statutory context, if you take *Landraf* and the like,

19    right, the ordinary statutory retroactivity looks at

20    essentially congressional intent.  And Congress can

21    decide -- there's a presumption that a civil statute does

22    not apply retroactively, but Congress can decide that the

23    statute may apply retroactively.  So Congress, in the

24    taxing context, can go back and retroactively tax events

25    that have already occurred.  You probably know that.

1          MR. ZAKEN:  I told you I wasn't comfortable in

2    the tax arena.  I can barely do my taxes.

3          THE COURT:  This is what troubles me about the

4    case, in part, is essentially Congress gets a

5    decision-making authority there.  In some instances, in

6    some contexts, courts do that and they make a decision

7    about whether their own decisions apply retroactively.

8    The *Teague v. Lane* habeas corpus context, the Supreme

9    Court does that all the time, makes decisions about

10   whether a decision is a new rule or not.

11         And here it seems to me you're saying that the

12   courts have no authority to -- once they overturn a lower

13   court vacatur to deem its decision retroactive, you're

14   saying it's just an automatic thing.

15         MR. ZAKEN:  Well, for starters, given that we've

16   searched high and low for cases dealing with this subject

17   and we're only able to come up with the *MCI v. GTE* case, I

18   can't say to you that it's a hard and fast rule because I

19   cannot cite to you cases, a myriad of cases.  In fact, I'm

20   quite surprised this hasn't come up.  But I will say to

21   you, with respect to the retroactivity issue, that in the

22   circumstances you just described, it wasn't the court, if

23   I understand you correctly --

24         THE COURT:  It was Congress.

25         MR. ZAKEN:  -- it was the enacting authority,

1    Congress.

2           And you asked me earlier does the fact that the

3    Department of Labor announced that it was not going to

4    enforce the regulations retroactively, is that a factor?

5    And I said to you, well, in a *Chevron* retroactivity

6    analysis, it would be a factor.  There are a number of

7    factors, as you know, in the three-part *Chevron* analysis,

8    and I would submit to you that if that analysis or

9    something analogous to it were applied in the manner that

10   you're describing for congressional statutes, that the

11   factors would include the fact that the court in the case

12   that we're dealing with, the *Home Care* case, did not apply

13   the regulations retroactively and in fact issued a mandate

14   to stay its ruling for some period of -- or stayed the

15   issuance of its mandate for some period of time.  The

16   parties, in particular the Department of Labor, announced

17   that it was not going to enforce the regulations

18   retrospectively and the community of third-party employers

19   who --

20           THE COURT:  Could reasonably rely on it.

21           MR. ZAKEN:  Exactly.  Could reasonably rely on

22   it.

23           So if the rule is not hard and fast, I submit to

24   you, based on the only cases that I've seen on it, that

25   that does appear to me to be the rule and perhaps is a

1   hard and fast rule.  But if it's not, then even applying

2   an analysis of whether the vacatur of the regulation

3   should be applied retroactively or not, the factors that

4   would go into that analysis would militate in favor of not

5   retroactively applying the regulations, for the reasons I

6   just stated.

7          THE COURT:  In your view, could the agency -- if

8   the DOL had come out and said, well, finally the courts

9   have seen the truth here, D.C. Circuit has ruled, we

10  understand the regulation to apply as of January 1.  Would

11  you be out of luck then if the DOL had taken --

12         MR. ZAKEN:  Not if you accepted my argument that

13  it's a hard and fast rule or should be.  If you don't

14  accept that argument --

15         THE COURT:  If I go to your default argument.

16         MR. ZAKEN:  If you go to my default argument,

17  then that would be a factor.

18         THE COURT:  Okay.  Anything else?

19         MR. ZAKEN:  Well, I would just point out -- I

20  think I already have -- that *Arkadelphia*, aside from being

21  distinguishable because it was an injunction to enjoin the

22  enforcement as opposed to a vacatur of the regulations, is

23  not on point here.

24         The other case that they cite, the *Beltran* case,

25  obviously had no analysis whatsoever, so that case really

1     doesn't tell us anything.

2              The *Banoy* case that we cited to you I think does

3     adopt the argument that I'm advancing here, as does the

4     *MCI v. GTE* case.

5              I'm not sure what else there is for guidance for

6     the Court.  I think we've submitted to you what there is.

7              If you have any further questions --

8              THE COURT:  I don't think so at this time.

9              MR. ZAKEN:  Thank you, Your Honor.

10             MR. TUDDENHAM:  Good afternoon, Your Honor.

11             THE COURT:  Good afternoon.

12             MR. TUDDENHAM:  I think defendant concedes that

13    since the time of Blackstone, the effect of a reversal of

14    judgment -- and my opposing counsel focuses on what the

15    District Court did, but the issue is what is the effect of

16    the D.C. Circuit's reversal.  And since way back in the

17    common law, the rule has been --

18             THE COURT:  Is that the only issue, just to be

19    clear?

20             MR. TUDDENHAM:  I believe so, yes.

21             THE COURT:  Okay.

22             MR. TUDDENHAM:  There's no question the District

23    Court vacated the ruling.  There's no question the D.C.

24    Circuit reversed.

25             THE COURT:  Had the D.C. Circuit not reversed,

1    you'd be out of luck?

2            MR. TUDDENHAM:  Well, we'd be praying that the

3    Supreme Court could grant cert. at that point.

4            THE COURT:  I understand.

5            MR. TUDDENHAM:  In any event, the issue is what

6    is the effect of the D.C. Circuit's reversal on the

7    effective date of the regulation.  And it's our position

8    that it has always been the law that when a Court of

9    Appeals reverses a District Court judgment, whatever the

10   kind of judgment it is in the civil context, the effect is

11   to nullify the judgment completely and leave the case

12   standing as if the judgment had never been entered.  It

13   renders the District Court opinion "without any validity,

14   force, or effect."  That's the Supreme Court in *Butler v.*

15   *Eaton*.  If it has no effect, then the regulation went into

16   effect on January 1 and my client is entitled to her

17   overtime wages.

18            The defendant concedes the rule of law, but then

19   wants to say, but vacatur is different from any other kind

20   of judgment.  But why?  What is the difference?  They cite

21   no cases.  They offer no --

22            THE COURT:  Well, I asked for a reason.  I'm not

23   clear what the reason is.  And it's enough to cite cases,

24   but I am interested in trying to figure out what the

25   reason would be to create a special exception to the usual

1    rule of judicial --

2              MR. TUDDENHAM:  Precisely.  It would render

3    regulatory government inoperable.  If every time a

4    District Court judge erroneously vacated a regulation,

5    upon reversal the agency would then have to promulgate a

6    new effective date?  We know that to promulgate a new

7    effective date, they have to do notice-and-comment

8    rulemaking, which could be subject to an APA challenge.

9    You could delay this effective date forever.

10             THE COURT:  I don't know that Mr. Zaken's

11   argument is that the agency had to promulgate a new

12   effective date.  I think he's -- he'll tell me if I'm

13   wrong about this -- I think he's conceding that if your

14   plaintiff were claiming for after the mandate came down

15   from the D.C. Circuit, or perhaps that could be subject to

16   change depending on the Supreme Court, but I don't think

17   the argument here -- unless I'm misunderstanding -- is

18   that the agency has to go back and do notice-and-comment

19   and a whole new rulemaking to decide just what the

20   effective date is.

21             MR. TUDDENHAM:  No, he doesn't want to argue

22   that because that would be absurd.  But the Administrative

23   Procedures Act is quite clear that the agency has to set

24   effective dates through notice-and-comment rulemaking.

25             If the reversal of this judgment --

1          THE COURT:  But they did that, right?

2          MR. TUDDENHAM:  Yes, they did that in 2013.

3     They had notice-and-comment.  They weighed -- and they say

4     this explicitly in the Federal Register -- they weighed

5     the employers' interest in delaying the effective date

6     against the workers' interest in getting their wages, and

7     concluded that the fair date for the effective date was

8     January 1, 2015.  That complied with the APA.  There's no

9     challenge that it didn't.

10          The District Court enjoined it, but upon

11     reversal, that date is then reinstated.  There's no

12     requirement for the department to go through it again.

13     And there is no other effective date.

14          If you look at the DOL web site, the web site

15     says over and over and over again in various pages that

16     the effective date is January 1, 2015.  There is no other

17     effective date.  And the D.C. Circuit certainly didn't say

18     anything about there being another effective date.  Their

19     opinion is effectively silent.

20          THE COURT:  What do you make, then, of the fact

21     that the agency and its own regulation in affect here

22     acknowledges, yes, we have a regulation with an effective

23     date here but it also acknowledges the reality of

24     intervening events and decided that it was not going to

25     enforce the regulation until a future date?

1          MR. TUDDENHAM:   The Department's discretionary

2    enforcement power is completely separate from the private

3    right of action under the FLSA.  The Department has a

4    limited pot of money to go do enforcement actions.  And it

5    seems perfectly reasonable to me that rather than file a

6    bunch of actions for failure to pay minimum wage in

7    March 2015 and have to deal with motions to dismiss like

8    this, their enforcement money could be better spent going

9    after current violations.  Not that there wasn't a

10   violation in March, just it's better spent now.

11          And there's another reason too.  The Department

12   uses the distinction between effective dates and

13   discretionary enforcement dates as a way of balancing

14   interest, if you will.  The Department, it's part of

15   government.  It's political.  It's trying to keep a lot of

16   very disparate constituencies happy.  So in November of

17   2014 before the District Court ruled, the Department

18   published a notice in the Federal Register saying the

19   effective date, we're sticking with January 1, but we are

20   now announcing to the regulated public that the Department

21   is going to delay its discretionary enforcement until

22   June 2015, a six-month sort of free range from DOL

23   enforcement.  But that same Federal Register notice made

24   perfectly clear that while the Department was delaying its

25   discretionary enforcement, it was not changing the

1   effective date and that private parties could still bring

2   actions under Section 216 of the FLSA effective January 1.

3   And why did they do that?  Because by delaying their

4   enforcement, they throw a bone, as it were, to the

5   employers, but by maintaining January 1 date for employees

6   to file actions if they want, they throw a bone to the

7   other side.

8           THE COURT:  So tell me what defendant in this

9   case should have done in the interim while the issue was

10  being litigated?  What should Humana have been doing?

11          MR. TUDDENHAM:  Humana should have done what

12  every other litigant in the federal system does, which is

13  upon getting a judgment in their favor, great, you can act

14  in accordance with that judgment.

15          THE COURT:  Humana wasn't a party, right?

16          MR. TUDDENHAM:  They weren't even a party.

17          THE COURT:  I'll take Mr. Zaken at his word,

18  that Humana is part of the community, is watching what's

19  going on, says, wow, Judge Leon has just vacated this

20  regulation.  So they decide we're actually going to rely

21  on what a federal court has done here and we're not going

22  to start paying our employees 50 percent more.

23          MR. TUDDENHAM:  And if I were their lawyer, I

24  would say you can do that, but you do it at your own risk.

25  Two risks.  One, you're in Connecticut, you're not in D.C.

1    You could be sued January 2nd, 2015, for not paying

2    overtime.  And the D.C. judgment vacating the regulation

3    might be -- might be authority here -- it would be

4    persuasive here, but it would not be binding on a

5    Connecticut court.  And a Connecticut court could say I

6    think the regulation is perfectly valid and I think

7    there's an FLSA violation here and Humana would be subject

8    to a judgment.  Now --

9             THE COURT:  A Connecticut state court or federal

10   court?

11            MR. TUDDENHAM:  Federal court.  The federal

12   court in Connecticut is not bound by what Judge Leon did.

13   It's not even bound by what the D.C. Circuit did.

14            But imagine that happened.  Imagine Kinkead had

15   filed in January 2015.  They couldn't move to dismiss on

16   the basis of Judge Leon's decision.  Humana could bring in

17   DOL and file a cross-action against DOL saying the reg is

18   invalid and we shouldn't have to pay, but then that would

19   be litigated in Connecticut.

20            THE COURT:  So that's what Humana should have

21   done?

22            MR. TUDDENHAM:  Or they could just take the risk

23   and see what happens, but they should have saved the money

24   the way any other litigant does.

25            THE COURT:  When they take the risk, would you

1    be -- are you going to be seeking penalties against them

2    for failure to have made the payment?

3            MR. TUDDENHAM:  That's an interesting question.

4            THE COURT:  Are they subject to penalties under

5    FLSA?

6            MR. TUDDENHAM:  Well, you get your unpaid wages,

7    no question, if we're successful.  You can get double

8    damages if the failure to pay -- they have to show the

9    failure to pay was in good faith.  And is it good faith

10   for a company in Connecticut to not pay based on a

11   District Court decision in the District of Columbia?  I

12   don't think so.  That's a harder question, I think, than

13   the question that's before the Court right now.  But it's

14   a question for down the road.

15           THE COURT:  So they could be subject to

16   additional damages, then?

17           MR. TUDDENHAM:  If the Court were to find that

18   the reliance on Judge Leon's opinion by a nonparty in

19   Connecticut was not in good faith or not reasonable, then,

20   yes, they could be.

21           THE COURT:  All right.

22           MR. TUDDENHAM:  But you see what happens is, say

23   these two cases had proceeded, and say the D.C. Circuit

24   had affirmed Judge Leon, and the court in Connecticut just

25   held the whole thing in abeyance to see what happened and

1    we're all waiting for the Supreme Court.  If the Supreme

2    Court says that the regulation was valid, that opinion

3    applies retroactively and the case in Connecticut would be

4    compelled to follow it.

5           THE COURT:  Or a different scenario would be

6    suppose the D.C. Circuit had affirmed and the Supremes had

7    not taken cert., right, had not adjudicated the issue,

8    then I suppose you could have brought your lawsuit and

9    then defendants could have essentially raised as a

10   challenge, could they --

11          MR. TUDDENHAM:  Absolutely.

12          THE COURT:  Could they have raised as a

13   challenge a challenge to the regulation in the context of

14   FLSA lawsuit saying the regulation itself is invalid?

15          MR. TUDDENHAM:  I'm involved in the Eastern

16   District of Pennsylvania right now.

17          THE COURT:  So a lawsuit between private

18   parties, you can challenge the validity of the regulation?

19          MR. TUDDENHAM:  We sued a defendant for

20   violation of a wage for foreign workers.  The defendant

21   said the regulation isn't valid, we don't have to pay.  So

22   at that point, we dragged DOL into the same case, suing

23   DOL to get a declaratory judgment that the regulation is

24   valid.  And, yeah, you can do that.

25                And there's another case identical to it going

1    on in Maryland, but that's a different circuit, and they

2    aren't going to be bound in Pennsylvania by what happens

3    in Maryland.

4            THE COURT:  Are there other cases going on right

5    now, as far as the parties know, that are litigating --

6            MR. TUDDENHAM:  The only ones I'm aware of are

7    the ones where the opinions have been supplied to the

8    Court.

9            THE COURT:  Any other cases litigating the

10   validity of the regulation?

11           MR. TUDDENHAM:  No, not that I'm aware of at

12   all.

13           THE COURT:  But your position here is it could

14   be challenged in any other court?

15           MR. TUDDENHAM:  Absolutely.  Until the Supreme

16   Court says this is the law of the land, sure.

17           Now, I think most litigants look to the D.C.

18   Circuit in administrative procedures in most cases and say

19   I really don't want to spend my time, if the D.C. Circuit

20   said the regulation is valid, so be it.  But that's a

21   judgment call.

22           THE COURT:  That's a practical.

23           MR. TUDDENHAM:  Yes, absolutely.

24           Humana could sue DOL today, they could drag them

25   into this action arguing they shouldn't be liable to us

1    because the reg is invalid, and the Second Circuit would

2    have to rule.

3              THE COURT:  Could Humana do that without suing

4    DOL?  Could Humana just simply say, as a defense, you're

5    seeking to -- plaintiffs are trying to take money from us

6    or require an obligation upon us under an invalid

7    regulation?

8              MR. TUDDENHAM:  It seems strange to me that you

9    could litigate the validity of a -- essentially an APA

10   judgment about a regulation without the relevant agency

11   being there.  The parties may not want the agency there,

12   but I think the agency would have to be there.

13             I do want to address one thing -- or two things.

14             There was a lot of discussion about the *Chevron*

15   standard and the three factors and all that.  *Chevron* was

16   overruled in 1991 in the *James Beam Distilling Co.* case

17   where it was a plurality opinion, but all of the justices

18   agreed that in civil actions a ruling, a final ruling by a

19   court is binding on not only -- it is binding on all

20   litigation that is then still not final.  Not just the

21   parties, but all litigation.

22             The one case defendants cite that at first gave

23   me some trouble is the *MCI v. GTE* case.  But it turns out

24   that if you actually read the opinion closely, it's

25   addressing a completely different issue.  What happened in

1    that case was MCI and GTE were negotiating a contract for

2    links, local service links or something.  And at the time

3    they were negotiating, these particular telecommunication

4    regulations had been stayed by the Eighth Circuit.  So

5    they enter into this contract knowing the regulations are

6    stayed.  And the contract doesn't take into account the

7    regulations.

8              Subsequently, after the Eighth Circuit is

9    reversed by the Supreme Court and some of the regulations

10   are reinstated, MCI then tried to get out of its contract

11   by saying, well, the contract has to now be renegotiated

12   because those regulations, the reversal means they were in

13   effect ab initio and we get to renegotiate our contract.

14   And the District Court, although I don't necessarily agree

15   with all of the way it phrased its reasoning, got to the

16   right result.  And the right result is, wait, you enter

17   into a contract voluntarily under the law as it exists at

18   the time you enter into the contract, and subsequent

19   changes in the law do not void your contract.  There's

20   nothing -- and the court says this, there's nothing

21   illegal about this contract under those newly reinstated

22   regs, you're just trying to use the reinstatement to get a

23   better deal.  You can't do that.  The reversal of a

24   judgment reinstates the regulations, but private actions

25   that are taken independent of the reversal are not

1   affected by that.

2          THE COURT:  So that's how you distinguish that?

3          MR. TUDDENHAM:  Yes.  It's also

4   distinguishable -- the court goes on to say, just on the

5   equities, it's absurd to undo this contract because it

6   only had -- I think it's either two or seven months to

7   run.  It was a very short-term contract.  And at that

8   point they were required by law to negotiate a new

9   contract that would take into account the new regulations.

10   And since it had taken them far more than seven months to

11   negotiate the first contract, it made no sense to kind of

12   undo the situation since they were going to have to do it

13   again and they couldn't fix it before they had to do it

14   again anyway.  So on the equities.

15          But actually, I think the integrity of the

16   contract, that you cannot -- what's the phrase?  You can't

17   undo a contract by law.  Congress can't change a statute

18   to get you out of --

19          THE COURT:  May a court decide -- I know you

20   say, well, the rule is always the judgment of the court is

21   retroactive, it goes back, nullifies the prior act of

22   nullification of the District Court, right?

23          MR. TUDDENHAM:  Right.

24          THE COURT:  Could a court have the power to say,

25   well, I want to look at reliance interest here and decide

1  that even though we're overturning the District Court in

2  this case, that we don't want our judgment to be effective

3  to impose obligations that a lower court could

4  reasonably -- or the litigants or watchers of the

5  litigation or others in the regulated community could

6  reasonably have thought?

7        MR. TUDDENHAM:  I think at the time of the

8  *Arkadelphia* case, there's much discussion of equity there.

9  Although the railroads had no equitable argument other

10  than -- and that was misstated.  The bond was released

11  upon the judgment.  So there was no bond when it was

12  reversed.  And I guess I could argue this is going to be a

13  real hardship in the same way that Humana is arguing.

14        THE COURT:  Regardless of the reliance argument,

15  my real question is:  Are you just saying it's absolutely

16  binary, the court has no choice over that?  Because it

17  seems to me courts do have choices about whether their

18  decisions are retroactive and should be applied

19  retroactively.

20        MR. TUDDENHAM:  I think given the *Jim Beam* case,

21  the law has changed on that.  I won't say categorically no

22  case could ever arise, but the default rule after *Jim Beam*

23  is there are no equitable considerations.  This is the

24  law.  It's as if -- and this is the fiction going all the

25  way back to Blackstone.  When you file a lawsuit, time

1   stops.  And nothing happens.  Of course, it does happen

2   because time doesn't stop, but you have the fiction that

3   time stops.  You investigate, you litigate, you come to a

4   judgment, you appeal, you go through that.  And when

5   everything is final, then time starts again.  But of

6   course, because it takes time to do all that, that's a

7   fiction.  But the effect of the reversal of the judgment

8   is to give effect to that fiction, because that's the only

9   way -- it's the only way the government and the world can

10  work.  I'm hard-pressed to think of a situation where

11  there would be equitable considerations that would make

12  the reversal of a judgment not -- retroactive for the

13  parties and certainly retroactive for nonparties like

14  Humana.

15           THE COURT:  What if you have a company relying

16  on it, the District Court decision, and doing something

17  like building a power plant and actually building it over

18  the months, and then only to find out that six months

19  later the D.C. Circuit comes in with its new pollution reg

20  and vacates or changes it in such a way that the power

21  plant can no longer be built because there's no permit.

22           MR. TUDDENHAM:  I don't think that that is

23  reasonable reliance if the judgment that they relied on

24  wasn't final.  I would say it is per se unreasonable to

25  rely on a nonfinal judgment.  This comes -- I'm from

1    New York City.  My neighbor, there's a builder who is

2    adding an ironwork balcony in the back of the house.

3    Didn't get a building permit for it.  Must have spent

4    hundreds of thousands of dollars on it.  And the Building

5    Department found out, shut it down, and has issued an

6    order that he cannot do any more work until he tears it

7    down.  Why?  Is it fair?  Could he have gotten the permit?

8    Probably.  But if you're going to have a rule --

9            THE COURT:  But that's the difference between

10   not applying for a permit in the first place and relying

11   on a federal court decision.

12           MR. TUDDENHAM:  If you can't wait for finality,

13   then there are processes through the court by which you

14   can get some kind of immediate relief.  If the Supreme

15   Court issues an order saying you can start building, then

16   I think you have reasonable reliance.  But if you didn't

17   try to get that, if you just said, "We won at this stage,

18   let's start building as fast as we can," I don't think any

19   court in this country would listen to that as equitable

20   grounds for relief.

21           It's sort of like a case cited in the *MCI* case,

22   *Walker v. City of Birmingham*, the protesters.  Clearly

23   unconstitutional injunction.  So they just go out and do

24   their march.  Well, the Supreme Court says that's fine,

25   but you don't get to raise the unconstitutionality as a

1    defense.  It may have been important, but that's contempt

2    of court.  And I think relying on a nonfinal judgment is a

3    very, very dicey thing without exhausting all provisions

4    to protect the other side.

5            I do want to mention one case that shows you how

6    this can be done properly.  It's cited, but not very

7    clearly, in our brief, the *VAGA v. Donovan* case, which was

8    a bunch of tobacco farmers who sued the Department of

9    Labor over a wage regulation.  The Department said you

10   have to pay whatever to tobacco pickers.  And the District

11   Court agreed with them and vacated the regulation, but

12   said it's going up on appeal, you have to escrow the

13   disputed wages until the Fourth Circuit decides whether

14   I'm right or not.  The Fourth Circuit reversed.  And the

15   workers, who were my clients, got their money back.

16           That's the proper way to do this.  Vacatur does

17   not wipe out a regulation, at least until the vacatur

18   judgment is final.  A nonfinal vacatur is like a nonfinal

19   anything else.  You're halfway there, but you're not home

20   free.  And you need to be careful.

21           THE COURT:  Could Congress change the rule?  So

22   you have authority now that the courts have to vacate a

23   regulation, let's assume that's consistent with the APA.

24   Could presumably Congress come along and say, well, in

25   instances in which, like this one, where a regulation has

1  been vacated and that's subsequently overturned, the

2  decision of the Appellate Court will essentially mean it

3  will be prospective only, in essence moving the effective

4  date of the regulation?

5          MR. TUDDENHAM:  If the APA said that upon

6  vacatur of a regulation and reversal by a District

7  Court --

8          THE COURT:  So your point is really more about

9  the power of a court not to apply its ruling, as the D.C.

10 Circuit, prospectively only.  You're saying the default

11 rule --

12         MR. TUDDENHAM:  -- is retrospective.

13         THE COURT:  At least in terms of a court not

14 having the authority under *Jim Beam* is it can't do that.

15 That leaves aside a different issue whether Congress could

16 decide.

17         MR. TUDDENHAM:  Right.  If Congress amends the

18 APA to say upon reversal, the effective date will be the

19 mandate of the Court of Appeals, then courts have to defer

20 to Congress as long as the statute is upheld.

21         THE COURT:  Okay.

22         And could the DOL do that if Congress didn't --

23 would DOL have that authority in this instance?  I know

24 you're saying they didn't.  It's all over their web site,

25 you made the point.  But my question is:  Does DOL have

1    that authority?

2            MR. TUDDENHAM:  That's an interesting question.

3    They do, but they have to go through notice-and-comment

4    rulemaking.  In other words, it happens frequently --

5            THE COURT:  Just to kick the --

6            MR. TUDDENHAM:  The Bush Administration passes a

7    regulation in the foreign worker realm, I'm familiar with

8    that realm.  The Obama Administration comes in and the

9    first thing they want to do is suspend that regulation and

10   write their own.  Well, they can't do that without

11   notice-and-comment rulemaking.  And they have to give a

12   reason.  I mean, it can be done.  They did do it.  But

13   there's a process.  And the process is to protect the

14   integrity of the public input.  If the public puts in --

15   in 2013 files all their comments saying this is what we

16   think the effective date should be, and DOL weighs the

17   comments and make a decision, it shouldn't be able to

18   willy-nilly change that without more public input.

19           THE COURT:  Okay.  Great.  Anything else?

20           MR. TUDDENHAM:  Thank you.

21           THE COURT:  Thank you.

22           Mr. Zaken.

23           MR. ZAKEN:  First of all, Your Honor, with

24   respect to the argument that there can be further

25   litigation on whether the agency's regulation is valid or

1    not and there can be private plaintiffs and everybody

2    suing all over the country, including my client, let me

3    cite to you the following.  *National Mining Association v.*

4    *US Army Corps of Engineers*, 145 F.3d. 1399, 1408 to 1410

5    (D.C. Cir. 1998) where the court said when a court

6    invalidates a regulation under the APA, such a ruling has,

7    quote, nationwide, close quote, effect for, quote,

8    plaintiffs and nonparties alike.

9         Another court in accord with that, *Harmon v.*

10   *Thornburgh*, 878 F.2d 484, 495, Footnote 21 (D.C. Cir.

11   1989).  "When a reviewing court determines that agency

12   regulations are unlawful, the ordinary result is that the

13   rules are vacated--not that the application to the

14   individual petitioners is proscribed."

15        So the effect, based on these cases, of the

16   District Court's vacatur of the regulation was a

17   nationwide vacatur of the regulation, not just for the

18   parties to that case.

19        THE COURT:  Your point is you could not come in

20   and raise as a defense the invalidity of the regulation.

21        MR. ZAKEN:  Well, the point is I didn't need to

22   do that.  I'm already covered by another case that says

23   that the regulation is invalid.

24        THE COURT:  But supposing the D.C. Circuit had

25   affirmed the District Court in this case, could you have

1   raised as a defense --

2            MR. ZAKEN:  You mean could I have the converse

3   of what I just -- could somebody else challenge the

4   regulation after a court has already upheld the

5   regulation?

6            THE COURT:  Sure.

7            MR. ZAKEN:  I don't have the answer to that and

8   I don't think that's germane to what we're talking about.

9   I really don't know the answer.  I don't see why I

10  couldn't, why you couldn't take another shot claiming the

11  regulations were invalid.

12           THE COURT:  I guess I do see it as germane

13  because it goes to the issue of reliance and the

14  reasonableness of reliance if you had an option to --

15           MR. ZAKEN:  Like I said, I have the answer to

16  the question you asked before that Counsel argued, which I

17  believe is incorrect.  I have the answer to the question

18  does that ruling cover nonparties.  The answer is yes, and

19  I've given you two cites.  I don't have the answer to the

20  question if they had lost, could my client have gone in

21  and made the same challenge.  I can look for that, but I

22  don't have the answer to that.

23           THE COURT:  Okay.  All right.  I see the point.

24           So maybe that's why you are saying that this is

25  why vacating a regulation is different than an ordinary

1    court judgment.

2          MR. ZAKEN:  That's one reason.

3          The next reason I'm going to give you, and what

4    you were asking for, is why is the rule different for

5    statutes and regulations as opposed to the time-honored

6    rule with respect to court decisions.

7          For that I would refer you to the Supreme

8    Court's decision in *Fernandez-Vargas v. Gonzales*, which

9    you can find at 548 U.S. 30 (2006).  This is a case that

10   was relied on by the *Bangoy* court when the *Bangoy* court

11   found, in a case like ours, that you couldn't

12   retroactively apply or enforce the regulations once the

13   case was vacated by -- once the ruling by the District

14   Court was overturned by the D.C. Circuit.  And in this

15   case, *Fernandez-Vargas*, the Supreme Court said: "Statutes

16   are disfavored as retroactive when their application

17   'would impair rights a party possessed when he acted,

18   increase a party's liability for past conduct, or impose

19   new duties with respect to transactions already

20   completed.'"  This cites *Landraf*, which you mentioned

21   earlier.  It says:  "The modern law thus follows Justice

22   Story's definition of a retroactive statute, as tak[ing]

23   away or impair[ing] vested rights acquired under existing

24   laws, or creat[ing] a new obligation, impos[ing] a new

25   duty, or attach[ing] a new disability, in respect to

1    transactions or considerations already past.  Accordingly,

2    it has become 'a rule of general application' that 'a

3    statute shall not be given retroactive effect unless such

4    construction is required by explicit language or by

5    necessary implication.'"

6             With respect to reliance here, Your Honor,

7    understand that the United States Supreme Court had

8    already in the *Coke* decision in 2007 I think had already

9    said that the regulation that predated this new

10   regulation, which was directly opposite to the regulation

11   that the DOL now implemented, the *Coke* decision upheld the

12   rule that said that third-party employers like my client

13   were exempt from the overtime rule.  So my client is

14   relying on not only a regulation that was in effect for 40

15   years or more, but had been upheld by the Supreme Court in

16   2007.  And now in 2013 the DOL seeks to, by agency action,

17   overturn a regulation that the Supreme Court has already

18   upheld.  And the District Court vacates ab initio that

19   agency ruling, that agency regulation which, according to

20   the cases that I've cited to you, vacates the regulation

21   not just for the parties to that case but for all parties.

22   So now what you're saying, or what the plaintiff is saying

23   here, is that despite the fact that the previous

24   regulation on the books for 40 years, the United States

25   Supreme Court had upheld the regulation in 2007, the

1    District Court has vacated it saying that ab initio the

2    agency had no authority to rely on it -- that the agency

3    had no authority to issue it, that when the D.C. Circuit

4    reverses that, my client now has retroactively to follow a

5    statute which, under *Fernandez-Vargas* and time honored

6    law, a statute is not given retroactive effect.  The

7    regulation is not given retroactive effect, especially

8    where parties are relying on it prospectively and

9    especially where there is harm to the parties as a result

10   of it.

11         If there were some intent reflected by Congress,

12   as you've mentioned, that this regulation be effective

13   retroactively in the event that the Court vacatur of the

14   regulation is overturned, that would be one thing.  But we

15   don't have any of that.  And in fact the agency itself has

16   said in the case that was litigated for the parties that

17   it litigated it against -- not my client, but the Home

18   Care Association, that they weren't seeking retroactive

19   application of the regulation against the parties in that

20   case.  And yet the plaintiffs want retroactive application

21   of the regulation against us.  I don't think that's

22   warranted.

23         With respect to the issuance of a new date and

24   we have to go back for new rulemaking, I would submit to

25   you that under the Administrative Procedure Act,

1    Section 705, I'll read that to you:  "When an agency finds

2    that justice so requires, it may postpone the effective

3    date of action taken by it, pending judicial review.  On

4    such conditions as may required and to the extent

5    necessary to prevent irreparable injury, the reviewing

6    court, including the court to which a case may be taken on

7    appeal from or an application for certiorari or other writ

8    to a reviewing court, may issue all necessary and

9    appropriate process to postpone the effective date of an

10   agency action or to preserve status or rights pending the

11   conclusion of the review proceedings."

12          So under this section, the Court has the

13   authority to delay the enforcement of a regulation, which

14   the D.C. Circuit did in this case, and there is no

15   requirement that there be additional rulemaking.  So I

16   don't believe that the plaintiffs are correct in this

17   respect either that just because there has been a vacatur

18   and a reversal of the vacatur, that the agency has to go

19   back and engage in additional rulemaking or comment.

20   Under the Administrative Procedure Act, 5 U.S.C. 705,

21   that's not required.

22          THE COURT:  Okay.

23          MR. ZAKEN:  And if you'll give me one moment, I

24   would like to check with my colleague to see if there are

25   any points that I've overlooked.

1              (Pause.)

2              MR. ZAKEN:  I don't have anything else,

3    Your Honor, thank you.

4              THE COURT:  Is there anything else that you have

5    to add, just responding to that?  And I'll let Mr. Zaken

6    respond to anything you say.

7              MR. TUDDENHAM:  Just very briefly.

8              On the question of challenging regs in different

9    places, I remind the Court of the cases before the Supreme

10   Court now challenging the Department of Labors.  It's the

11   *Little Sisters of the Poor*, it's some regulation about how

12   to deal with religious organizations complying with the

13   Health Care Act.  I think there are six circuits all

14   before the court, one going one way, four the other way,

15   or something like that.  Clearly regulations can be

16   challenged in multiple jurisdictions.  I've done it in

17   multiple jurisdictions simultaneously.  There are specific

18   regulatory schemes that have to be challenged in the

19   D.C. Circuit.  And those it may well be when the D.C.

20   Circuit speaks, that's it.  But there's nothing about DOL

21   FLSA regs that requires that they be challenged in the

22   D.C. Circuit.

23             THE COURT:  Anything else?

24             MR. TUDDENHAM:  This retroactivity thing, we're

25   not -- this is not a retroactive statute.  The fiction is

1   time stops while you figure it out and then time goes on.

2   This obligation was prospective when the regulation was

3   written.  Time was suspended while the courts did their

4   thing.  The decision has been made, at least one cert. is

5   denied.  And then it goes into affect prospectively as it

6   was originally intended to do.  It is no more a

7   retroactive statute for this party than any party who is

8   caught by a reverse judgment and has to make good.

9           THE COURT:  All right.  What I'm going to do,

10  thank you to all counsel for your very able presentation

11  of arguments today, I'm going to hold the motion under

12  advisement.

13          What I'd like you to do, especially in light of

14  the issues that have come up in my questioning and new

15  cases that you've been citing, I'm going to ask counsel if

16  you have additional authority that you wish to call to the

17  Court's attention, including any authority that has not

18  been previously cited in your briefing, I will permit you

19  to submit that authority by one week from today, both

20  sides.  And if you have any response or reply that you'd

21  like to make to the other side's submission of authority,

22  you may do that by the following Wednesday after one week

23  from today.  I just want to make sure that if there are

24  any additional cases that I should be aware of that

25  counsel have disinterred anything that might be there

1    that's important, especially in light if I've brought up

2    anything during today's argument.  Okay?

3              MR. ZAKEN:  Your Honor, with respect to the

4    timing, I'm perfectly fine with that, as long as your

5    reporter can get us a transcript in time for us to do

6    that, then I'm fine.

7              THE COURT:  Great.  Thank you all for coming in

8    today.  Stand in recess.

9                   (Proceedings adjourned at 5:09 p.m.)

1

2

3                       C E R T I F I C A T E

4

5        RE:  DAVERLYNN KINKEAD v. HUMANA, INC., ET AL.

6                     No. 3:15CV1637(JAM)

7

8             I, Diana Huntington, RDR, CRR, Official Court

9    Reporter for the United States District Court for the

10   District of Connecticut, do hereby certify that the

11   foregoing pages 1 through 47 are a true and accurate

12   transcription of my shorthand notes taken in the

13   aforementioned matter to the best of my skill and ability.

14

15

16

17

18   _____
                    /s/

19            DIANA HUNTINGTON, RDR, CRR
               Official Court Reporter
20            United States District Court
              141 Church Street, Room 147
21            New Haven, Connecticut 06510
                 (860) 463-3180
22

23

24

25