UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVERLYNN KINKEAD, Individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No.: 3:15-cv-01637(JAM) |
| HUMANA, INC., HUMANA AT HOME, INC., and SENIORBRIDGE FAMILY COMPANIES (CT), INC. | ) ) ) | |
| Defendants. | ) ) ) | |

<u>**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**</u>
<u>**MOTION FOR CLASS CERTIFICATION PURSUANT TO**</u>
<u>**RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE**</u>

Philip Bohrer (*pro hac* vice)
phil@bohrerbrady.com
Scott E. Brady (*pro hac vice*)
scott@bohrerbrady.com
BOHRER BRADY, LLC
8712 Jefferson Hwy., Suite B
Baton Rouge, LA  70809
Telephone: (225) 925-5297
Facsimile: (225) 231-7000

*Counsel for Plaintiffs*

Dan Getman (ct22515)
dgetman@getmansweeney.com
Michael J.D. Sweeney, Esq.
msweeney@getmansweeney.com
GETMAN, SWEENEY & DUNN, PLLC
260 Fair Street
Kingston, NY  12041
Telephone: (845) 255-9370
Facsimile: (845) 255-8649

*Counsel for Plaintiffs*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

  I. THE CLASS CLAIMS ................................................................................................. 1

    A.    The Effective Date Claims ................................................................................. 1

    B.    The Unpaid Hours Claim .................................................................................... 2

  II. DESCRIPTION OF THE PROPOSED RULE 23 CLASSES ...................................... 3

  III.  FACTS RELEVANT TO THIS MOTION ............................................................... 4

    A.    Description of Defendants .................................................................................. 4

    B.    Kinkead and the Putative Connecticut Minimum Wage Act Class
Members ............................................................................................................. 4

    C.    Mathieu and the Putative New York Labor Law Class Members ...................... 5

ARGUMENT ..................................................................................................................... 6

  I. CLASS CERTIFICATION REQUIREMENTS UNDER RULE 23 ............................. 6

  II. PLAINTIFFS HAVE SATISIFIED THE FED.R.CIV.P. 23 CLASS
CERTIFICATION REQUIREMENTS ........................................................... 8

    A.    Numerosity .......................................................................................................... 8

    B.    Questions of Law and Fact Are Common to the Classes .................................. 11

    C.    Plaintiffs' Claims Are Typical of the Class Claims .......................................... 13

    D.    Plaintiffs Will Adequately Represent the Proposed Classes ............................. 14

      i.    Class Counsel is adequate .......................................................................... 14

      ii.    There is no conflict or antagonistic interest between the Class
Representatives and the Class Members ................................................... 15

  III.  THE ELEMENTS OF FED.R.CIV.P. 23(b)(3) ARE MET ..................................... 16

    A.    Common Questions of Law or Fact Predominate ............................................. 16

    B.    A Class Action Is Superior ............................................................................... 17

      ii.    The extent and nature of any litigation concerning the controversy
already begun by or against class members; .......................................... 19

      iii.    The desirability or undesirability of concentrating litigation of the

claims in the particular forum;.............................................................................. 19

    iv.   The likely difficulties in managing a class action.................................................. 23

IV.  DEFENDANTS SHOULD BE ORDERED TO SUPPLY NAMES AND
      CONTACT INFORMATION TO THE PUTATIVE NYLL CLASS
      MEMBERS ................................................................................................................ 24

   A.    Contact Information ................................................................................................ 24

   B.    Plaintiffs' Proposed Notice Should be Mailed and Posted ...................................... 24

CONCLUSION............................................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Adames v. Mitsubishi Bank, Ltd.,* 133 F.R.D. 82 (E.D.N.Y. 1989) ................................. 7

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., NA,* 626 F.3d 699 (2d Cir. 2010) ......................................................................................................... 20

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................ 16

*Andryeyeva v. New York Health Care, Inc*., 153 A.D.3d 1216 (N.Y. App. Div. 2d Dept. 2017) ......................................................................................................... 3

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d. 52 (2nd Cir. 2000) ........................ 14

*Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 105 F.R.D. 506 (S.D. Ohio 1985) ........................................................................................................ 10

*Becker v. Schenley Indus., Inc.,* 557 F.2d 346 (2d Cir. 1977) ....................................... 21

*Boyland v. Wing,* No. 92 Civ 1002, 2001 WL 761180 (E.D.N.Y. Apr. 6, 2001) ........................ 10

*Brown v. Giuliani,* No. 98civ7743, 2000 WL 869491 (S.D.N.Y. June 29, 2000) ........................ 10

*Brown v. Kelly,* 609 F.3d  467 (2d Cir. 2010) ................................................................. 7

*Caridad v. Metro-North Commuter Railroad,* 191 F.3d 283 (2d Cir. 1999) ................................ 7

*Castillo v. Taco Bell of America, LLC,* 960 F.supp.2d 401 (E.D.N.Y. 2012) ............................ 21

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2nd Cir. 1995) ......................................... 8

*Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152 (S.D.N.Y. 2008) ................................................. 8

*Dziennik v. Sealift, Inc.,* 2007 WL 1580080 (E.D.N.Y. May 29, 2007) ......................................... 7

*Enea v. Bloomberg*, No. 12 CIV. 4656 GBD FM, (S.D. N.Y.) ...................................................... 25

*First City Nat'l Bank & Trust Co. v. Simmons,* 878 F.2d 76 (2d Cir. 1989) ................................. 20

*Green v. Humana At Home*, 16-cv-07586 (S.D.N.Y. filed Sept. 28, 2016) ........................ passim

*Guerra v. Pancho Villa's of Huntington Village, Inc.,* 281 F.R.D. 100 (E.D. N.Y. 2011) ........................................................................................................ 8

*Hamelin v. Faxton-St.Luke's Healthcare,* 274 F.R.D. 385 (N.D.N.Y. 2011) ................................ 7

*Hirschfeld v. Stone,* 193 F.R.D. 175 (S.D.N.Y. 2000) ................................................... 7

*In re Industrial Diamonds Antitrust Litigation,* 167 F.R.D. 374 (S.D.N.Y.1996) ......................... 7

*In re Initial Public Offering Sec. Litig.,* 471 F.3d 24 (2d Cir. 2006) .............................. 7

*In re U.S. Foodservice, Inc. Pricing Litig.,* 720 F.3d 108 (2d Cir. 2013) .................................. 18

*In Re: Visa Check/Master Money Anti-Trust Litig.*, 280 F.3d. 124 (2nd Cir. 2001) ............... 17, 24

*LaFlamme v. Carpenters Local No. 370 Pension Plan,* 212 F.R.D. 448 (N.D.N.Y. 2003) ...................................................................................................... 7

*Lassen v. Hoyt Livery, Inc.*, No. 3:13-cv-01529 (JAM), 2014 WL 4638860 (D. Conn., Sept. 27, 2014) ............................................................................ passim

*Lee v. ABC Carpet & Home,* 236 F.R.D. 193 (S.D.N.Y. 2006) ................................... 8

*Marisol A. v. Guiliani,* 126 F.3d 372 (2d Cir. 1997) .............................................. 7, 13

*McBean v. The City of New York,* 228 F.R.D. 487 (S.D. N.Y. 2005) ................................... 17, 18

*Mendez v. Radec Corp.,* 260 F.R.D 38 (W.D.N.Y. 2009) .............................................. 8

*Morangelli v. Chemed Corp..,* 275 F.R.D. 99 (E.D.N.Y. 2011) ....................................... 7

*Moreno v. Future Care Health Servs., Inc.*, 153 A.D.3d 1254 (N.Y. App. Div. 2d Dept. 2017) .................................................................................................... 3

*Myers v. Hertz Corp.*, 624 F.3d 537 (2nd Cir. 2010) ................................................ 6, 16

*Pa. Pub. Scho Emps.' Ret. Sys. v. Morgan Stanley & Co.,* 772 F.3d 111 (2d Cir. 2014) .......................................................................................................... 10

*Ramos v. Simplex Grinnell,* 796 F.Supp.2d 346 (E.D.N.Y. 2011) ...................................... 17

*Russo v. CVS Pharmacy, Inc.,* 201 F.R.D. 291 (D. Ct. 2001) ........................................ 9

*Schucker v. Flower Foods, Inc.,* 2017 WL 3668847 (S.D.N.Y. Aug 24, 2017) ......................... 21

*Scott v. Aetna Servs. Inc.,* 210 F.R.D. 261 (D. Conn. 2002) ......................................... 19

*Shabazz v. Morgan Funding Corp.,* 269 F.R.D. 245 (S.D.N.Y. 2010) .................................. 7

*Thomas v. Apple-Metro, Inc.,* 2015 WL 505384 (S.D.N.Y. Feb. 5, 2015) ............................. 20, 21

*Tokhtaman v. Human Care, LLC,* 149 A.D.3d 476 (N.Y. App.Div. 1st Dept. 2017) .................... 3

*Velez v. Novartis Pharms. Corp.*, 244 F.R.D. 243 (S.D. N.Y. 2007) ................................. 15

*Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011) ................................................................. 11

*Woe by Woe v. Cuomo,* 729 F.2d 96 (2d Cir. 1984) ...................................................... 7

**Statutes**

29 U.S.C. § 201, *et. seq.*.............................................................................................. 1

29 USC §216(b) ................................................................................................................. 1

Conn.Gen.Stat. §31-58, *et. seq.* .................................................................................. 1, 2

Conn.Gen.Stat. §31-76(b)(2)(A) .................................................................................. 2

NYLL § 195-3.................................................................................................................. 19

NYLL Art. 19 §§650-65 ................................................................................................ 1

NYLL Art. 6 §§190-99 .................................................................................................. 1

**Rules**

12 NYCRR § 142 ........................................................................................................ 2, 3

12 NYCRR § 146 ........................................................................................................ 19

Fed.R.Civ.P. 23 ...................................................................................................... passim

**Treatises**

1 Newberg on Class Actions § 3:12 (5th ed.) ........................................................... 10

**Regulations**

29 C.F.R. §552.109 ............................................................................................... passim

## INTRODUCTION

This action arises from Defendants' failure to pay its home healthcare workers ("HHWs") in compliance with the Fair Labor Standards Act (FLSA), 29 U.S.C. §201, *et. seq*., the Connecticut Minimum Wage Act (CMWA), Conn.Gen.Stat. §31-58, *et. seq.*, and the New York Labor Law ("NYLL"), Art. 6 §§190-99, and Art. 19 §§650-65. Plaintiff Kinkead filed her original Complaint on November 10, 2015 (Dkt. 1) seeking conditional certification of a nationwide FLSA collective pursuant to 29 USC §216(b) and certification of a Rule 23 Connecticut class.  Pursuant to the parties' joint motion (Dkt. 113), the Court conditionally certified the FLSA collective. (Dkt. 114).  Notice was issued and the opt-in period has expired. Dkt 170-1 at 5. A total of 189 collective members have filed FLSA opt-in consent forms.  Of this number, 42 worked for Defendants in New York and 14 worked in Connecticut.  Declaration of Michael J.D. Sweeney in Support of Plaintiffs' Motion for Class Certification ("Sweeney Decl.") at ¶ 3.

On September 19, 2017, Plaintiff filed a Motion to Amend her original Complaint seeking to add a second plaintiff, Claude Mathieu, and two Rule 23 class claims under NYLL. (Dkt. 170). The Court granted Plaintiff's motion on November 8, 2017 (Dkt. 180) and Plaintiffs' Amended Complaint was filed on November 9, 2017 (Dkt. 181).

Plaintiffs Kinkead and Mathieu now move for class certification of their Connecticut and New York claims pursuant to Rule 23(b)(3).

## I.  THE CLASS CLAIMS

### A.  The Effective Date Claims

Plaintiff's original complaint asserted an FLSA claim for unpaid overtime pursuant to 29 C.F.R. §552.109, a regulation that reversed prior Department of Labor policy and brought home health care workers within FLSA overtime protections.  Plaintiff contends that that regulation

became effective January 1, 2015 and that Defendants did not begin paying overtime until October 12, 2015.  Because Connecticut and New York law incorporate FLSA coverage regulations, including 29 C.F.R. §552.109, *see* Conn. Gen. Stat. Ann. § 31-58; 12 NYCRR § 142-2.2, Plaintiffs' amended complaint asserts overtime claims under the CMWA and NYLL for the period January 1, 2015 to October 12, 2015 that parallel their FLSA claim.  Those claims are referred to herein as the "Effective Date" claims.

### B.  The Unpaid Hours Claim

 In order to determine the amount of overtime owed to the Plaintiffs under their CMWA and NYLL Effective Date claims, the Court will have to determine the number of hours that Plaintiffs worked each week during the Effective Date period.  That determination gives rise to an additional class claim under the CMWA and NYLL because Plaintiffs, both of whom worked 24-hour shifts ("live-in shifts"), contend that Defendants' pay policies during the Effective Date period (as well as before and after that period) unlawfully failed to credit HHWs with the minimum number of hours of work mandated by the CMWA and NYLL for live-in shifts. Specifically, Plaintiffs allege that the CMWA required that HHWs working live-in shifts be credited with a minimum of 13 hours of work per live-in shift, *see* Conn.Gen.Stat. §31-76(b)(2)(A) and (D) -- something that Defendants did not begin doing until January 25, 2016 at the earliest. Plaintiffs allege that NYLL required HHWs in New York working live-in shifts to be credited with a minimum of 24 hours work, *see* 12 NYCRR 142.2-1(b) (2016) -- something that Defendants have never done and are still not doing.[1] Thus, the need to determine the number of

---

[1]  Defendants began crediting NY HHWs with 13 hours of work for live-in shifts sometime after January 25, 2016 just as they did in Connecticut. 30(b)(6) Deposition of Robbi Matusz at 105:14 to 106:15, attached as Ex. 1. However, NY law has been interpreted by the NY Appellate Division to mandate payment for 24 hours for each 24-hour shift. *See Moreno v. Future Care Health Servs., Inc.*, 153 A.D.3d 1254, 1255 (N.Y. App. Div. 2d

hours worked by Plaintiffs during the "Effective Date" period gives rise to a second, "Unpaid

Hours" claim for both New York and Connecticut HHWs who worked live-in shifts.  Because

Defendants' policy of not crediting those workers with the legally required minimum number of

hours continued until January 25, 2016, the CMWA "Unpaid Hours" claim covers the period

January 1, 2015 to the time when Defendants began paying for 13 hours sometime after January

25, 2016. Because Defendants' pay policies have never complied with the 24-hour requirement

of 12 NYCRR 142.2-1(b), Plaintiffs' NYLL "Unpaid Hours" claim covers the period November

11, 2009 through the present (pursuant to the NYLL six-year statute of limitations).

## II. DESCRIPTION OF THE PROPOSED RULE 23 CLASSES

Plaintiffs' "Effective Date" claims apply to <u>all</u> HHWs employed during the Effective

Date period, while their "Unpaid Hours" claims apply only to HHWs who worked live-in shifts.

Thus, it is appropriate to define two different classes for each State, one for the "Effective Date"

claim and one for the "Unpaid Hours" claim. Accordingly, Plaintiffs seek certification of the

following two "Effective Date" classes:

> All current or former home healthcare workers employed in Connecticut by
> Humana, Humana at Home, Inc., SeniorBridge Family Companies (CT) and/or any
> of its or their predecessors or affiliated entities between January 1, 2015 and
> October 12, 2015 (CT Effective Date Class)

> All current or former home healthcare workers employed in New York by
> Humana, Humana at Home, Inc., SeniorBridge Family Companies, and/or any of

---

Dept. 2017) (finding that NY Law requires non-residential HHWs must be paid for all
24-hours of a 24-hour shift); *Andryeyeva v. New York Health Care, Inc.*, 153 A.D.3d 1216,
1219 (N.Y. App. Div. 2d Dept. 2017) (same); *Tokhtaman v. Human Care, LLC,* 149
A.D.3d 476, 477 (N.Y. App.Div. 1st Dept. 2017) (same). Some federal courts have
interpreted NY law to require payment of only 13 hours rather than 24 but the conflict
will soon be resolved as the NY Court of Appeals has agreed to review the *Moreno* and
*Andryeyeva* decisions. Even if the N.Y. Court of Appeals were to hold that NYLL only
requires credit for a minimum of 13 hours of work per 24-hour shift, Plaintiff Mathieu and other
New York HHWs working live in shifts would have a claim for unpaid hours identical to the CT
class.

its or their predecessors or affiliated entities between January 1, 2015 and October
12, 2015 (NY Effective Date Class)

Plaintiffs also seek certification of two "Unpaid Hours" classes:

All current or former home healthcare workers employed in Connecticut by
Humana, Humana at Home, Inc., SeniorBridge Family Companies (CT) and/or any
of its or their predecessors or affiliated entities who worked live-in shifts at any
time between January 1, 2015 and January 25, 2016 (CT Unpaid Hours Class)

All current or former home healthcare workers employed in New York by
Humana, Humana at Home, Inc., SeniorBridge Family Companies and/or any of
its or their predecessors or affiliated entities who worked live-in shifts at any time
between November 11, 2009 and the present. (NY Unpaid Hours Class)

As set forth below, these classes satisfy all of the requirements of Rule 23(a) and (b)(3).

## III. FACTS RELEVANT TO THIS MOTION

### A. Description of Defendants

The Defendants employ HHWs to provide in-home companionship services to clients in
New York and Connecticut. Ex. 2, Caregiver Handbook at D000006.[2] Humana-at-Home, Inc. is
a wholly owned subsidiary of Humana, Inc., a publicly traded company. Humana-at-Home owns
approximately 15 SeniorBridge entities. Humana-at-Home, Inc. and its SeniorBridge subsidiaries
are managed by employees of Humana Inc., and employees of Humana-at-Home, Inc. 30(b)(6)
Deposition of Michael Allen Dep. at 36:9-37:12, attached as Ex. 3. For example, the human
resources and information technology functions of the SeniorBridge entities and Humana-at-
Home, Inc. are conducted by employees of both Humana, Inc. and Humana-at-Home. Allen Dep.
at 40:21-43:18. Defendants consider HHWs who work for SeniorBridge to be Humana-at-Home
and Humana Inc. employees. Allen Dep. at 44:11-45:9, Ex. 3.

### B. Kinkead and the Putative Connecticut Minimum Wage Act Class Members

Plaintiff Daverlynn Kinkead is the proposed representative of the two Connecticut

---

[2] Defendants refer to these HHWs as Caregivers.

classes.  Kinkead was employed by Defendants from December 28, 2010 to approximately May 27, 2015 as a HHW who provided companionship services in Connecticut.  Dkt. 66-4, Kinkead Declaration, at ¶¶ 2-4. Kinkead regularly worked live-in shifts and more than 40 hours per week during the Effective Date period. *Id*. at ¶ 17; Ex. 4.

Defendants admit that they had a policy of not paying overtime to Connecticut HHWs, like Kinkead, who worked more than 40 hours in a workweek and that that policy remained in effect throughout the Effective Date period. Allen Dep. at 53:12-64:7, Ex. 3.

Defendants paid HHWs who worked live-in shifts in Connecticut, including Kinkead, for fewer than all 24-hours of the shift. During the period from January 1, 2015 to on or about January 25, 2016, Defendants paid all HHWs, including HHWs working in Connecticut, for 8 hours of intermittent work for a live-in shift. 30(b)(6) Deposition of Robbi Matusz Dep. at 108:9-109:5, Ex. 1. The policy changed on or about January 25, 2016 when Defendants began paying HHWs for 13 hours of a live-in shift. Matusz Dep. at 105:11-108:5, Ex. 1. This policy applied to HHWs working nationwide, including to all HHWs working in New York and in Connecticut. *Id*.

### C.  Mathieu and the Putative New York Labor Law Class Members

Plaintiff Claude Mathieu is the representative of the two proposed New York classes. Mathieu was employed by Defendants from approximately March 2015 to June 2016 as an HHW who provided companionship services. Sweeney Decl. at ¶ 4. During this period, Mathieu regularly worked three 24-hour live-in shifts in a week. Matusz Dep. at 162:4-164:6, Ex. 1; Sweeney Decl. at ¶ 5. As in Connecticut, Defendants had a policy of not paying HHWs who worked in New York time-and-a-half their regular rate. Allen 30(b)(6) depo at 53:12-64:7, Ex. 3. That policy remained in effect throughout the Effective Date period. *Id*. at 53:12-64:7, Ex. 3.

As in Connecticut, Defendants paid HHWs who worked live-in shifts in New York,

including Mathieu, for fewer than all 24-hours of the shift. Beginning sometime in 2012 through approximately January 25, 2016, Defendants paid all HHWs, including HHWs working in New York, for 8 hours of intermittent work for a live-in shift. Matusz 30(b)(6) Depo at 108:9-109:5, Ex. 1. The policy changed on or about January 25, 2016 when Defendants began paying HHWs for 13 hours of a live-in shift.  Matusz Dep. 105:11-108:5, Ex. 1.  Defendants currently pay HHWs working live-in shifts in New York for only 13 hours of a 24-hour live-in shift. *Id.*

**ARGUMENT**

**I.  CLASS CERTIFICATION REQUIREMENTS UNDER RULE 23**

A plaintiff seeking to certify a class must satisfy the requirements of Rule 23(a) and Rule 23(b)(3). Rule 23(a) provides that:

> (a)    One or more members of a class may sue or be sued as representative parties on behalf of all class members only if:
>
> (1)    the Class is so numerous that joinder of all members is impracticable;
> (2)    there are questions of law or fact that are common to the class;
> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)    the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action be superior to other available means for fairly and efficiently adjudicating a controversy." Fed.R.Civ.P. 23(b)(3). "A plaintiff must satisfy these six Rule 23 requirements – numerosity, commonality, typicality, adequacy, predominance and superiority – by a preponderance of the evidence." *Myers v. Hertz Corp.*, 624 F.3d 537 at 547 (2nd Cir. 2010); *Lassen v. Hoyt Livery, Inc.*, No. 3:13-cv-01529 (JAM), 2014 WL 4638860 at *8 (D. Conn., Sept. 27, 2014).

Although Plaintiffs have the burden of demonstrating that the requirements of Rule 23

are satisfied, a plaintiff "is not required to make an extensive evidentiary showing," *LaFlamme v. Carpenters Local No. 370 Pension Plan,* 212 F.R.D. 448, 452 (N.D.N.Y. 2003), and the court must accept the allegations in the complaint as true. *Dziennik v. Sealift, Inc.,* 2007 WL 1580080 *3 (E.D.N.Y. May 29, 2007); *Hirschfeld v. Stone,* 193 F.R.D. 175, 182 (S.D.N.Y. 2000). That said, the district court must conduct a "rigorous analysis" to determine whether or not Rule 23's requirements have been met, *Caridad v. Metro-North Commuter Railroad,* 191 F.3d 283, 291 (2d Cir. 1999),   and "must resolve material factual disputes relevant to each Rule 23 requirement." *Brown v. Kelly,* 609 F.3d  467, 476 (2d Cir. 2010).  At the same time, certification should not become a preliminary inquiry into the merits of the case. *In re Initial Public Offering Sec. Litig.,* 471 F.3d 24, 40-41 (2d Cir. 2006). The issue is whether the requirements of Rule 23 have been met, not whether the plaintiff's claim will ultimately succeed.

The Second Circuit requires a "liberal, rather than a restrictive interpretation" of Rule 23. *Marisol A. v. Guiliani,* 126 F.3d 372, 377 (2d Cir. 1997); *Adames v. Mitsubishi Bank, Ltd.,* 133 F.R.D. 82, 88 (E.D.N.Y. 1989). Courts should resolve doubts about whether Rule 23 has been satisfied in favor of certification. *Morangelli v. Chemed Corp..,* 275 F.R.D. 99, 104 (E.D.N.Y. 2011); *Hamelin v. Faxton-St.Luke's Healthcare,* 274 F.R.D. 385, 392 (N.D.N.Y. 2011); *Shabazz v. Morgan Funding Corp.,* 269 F.R.D. 245, 249 (S.D.N.Y. 2010); *In re Industrial Diamonds Antitrust Litigation,* 167 F.R.D. 374, 378 (S.D.N.Y.1996). "It is often proper to view the class action liberally at the early stages of the litigation since the class can always be modified or divided as issues are later refined for trials." *Adames*, 133 F.R.D. at 88 (citing *Woe by Woe v. Cuomo,* 729 F.2d 96, 107 (2d Cir. 1984).

Finally, as this Court recognized in *Lassen,* 2014 WL 4638860 at *8, where, as here, an FLSA collective action based on the same facts has already been approved, "there is an

inclination to grant class certification of the state labor law claims." *Id. quoting Lee v. ABC Carpet & Home,* 236 F.R.D. 193, 202-203 (S.D.N.Y. 2006). *See also Guerra v. Pancho Villa's of Huntington Village, Inc.,* 281 F.R.D. 100, 104-105 (E.D. N.Y. 2011) (certifying FLSA and NYLL classes); *Mendez v. Radec Corp.,* 260 F.R.D 38, 54 (W.D.N.Y. 2009) (same); *Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 163 (S.D.N.Y. 2008) ("courts in the Second Circuit routinely certify class action[s] in FLSA matters so that New York State and federal wage hour claims are considered together.")

As set forth below, both the Connecticut and New York classes satisfy the six requirements for class certification under Rule 23(b)(3).

## II. PLAINTIFFS HAVE SATISIFIED THE FED.R.CIV.P. 23 CLASS CERTIFICATION REQUIREMENTS

### A. Numerosity

Rule 23(a)(1) requires Plaintiffs to show that "the class is so numerous that joinder of all members is impracticable." In *Lassen* this Court noted that, ". . . it is clear that [numerosity] does not require 'that joinder of all parties be impossible – only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate.'" 2014 WL 4638860 at *9. "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2nd Cir. 1995); *Lassen* at *9.

The Class List produced by Defendants in response to the certification of the FLSA collective identifies 48 Connecticut HHWs and 189 New York HHWs who "1) were classified as FLSA exempt; 2) were not paid time and a half for all hours worked over 40 in a workweek between January 1, 2015 and October 13, 2015 and 3) worked more than 40 hours in at least one workweek between January 1, 2015 and October 13, 2015." Ex. 4, FLSA Class List; Dkt 113-1, Consent Stipulation on Conditional Certification and Notice at ¶ 4(a-b). That alone is sufficient

to satisfy numerosity for the Connecticut Effective Date class, although the actual number of class members is assuredly higher than 48 because Defendants' practice of crediting HHWs with only 8 hours per 24-hour shift, rather than 13, resulted in some workers being excluded from the Class List, who would not have been if their hours had been correctly calculated. Matusz Dep. at 53:25-55:3, Ex. 1 (HHWs working no more than 5 live-in shifts in a week would not have been included on the list). Similarly, the 189 New York HHWs identified on the List satisfies numerosity for the New York Effective Date class.

The Unpaid Hours classes also satisfy numerosity. Based on the FLSA Class List provided by Defendants, Plaintiffs estimate that there are more than 33 Connecticut class members who worked 24-hour or live-in shifts between January 1, 2015 and January 25, 2016.[3] *See Russo v. CVS Pharmacy, Inc.,* 201 F.R.D. 291, 295 (D. Ct. 2001) (Court may make common sense assumptions regarding numerosity based on reasonable estimates and "without the need for precise quantification of the class.") The exact number of class members is likely higher than the 33 included in the Class List because the List only includes HHWs who worked during the Effective Date period, while the "Unpaid Hours" class includes HHWs who were employed between January 1, 2015 and January 25, 2016. In addition, the Class list was under-inclusive in that it only listed HHWs who worked overtime based on 8 hours of work per 24-hour shift rather than 13. HHWs who worked 4 or 5 live-in shifts a week worked overtime but were left off the Notice list. Matusz Dep. at 53:25-55:3, Ex. 1 (testifying HHWs working no more than 4 or 5 live-in shifts in a week would not have been included on the Class List). An accurate count of the "Unpaid Hours" class members may well show that the class exceeds the 40 person threshold

---

[3] The Class List identified 48 Connecticut class members who worked during the Effective Date period. Of those 48, 13 opted in, 9 of whom (70%) worked 24-hour or live-in shifts. Sweeney Decl. at ¶ 7. Applying that percentage to the 48 Effective Date class members would indicate that there 33 of the 48 worked 24-hour or live in shifts.

where numerosity is presumed.

Even if all HHWs who worked more than 40 hours a week from January 1, 2015 to January 25, 2016 is fewer than 40, "the numerosity inquiry is not strictly mathematical but must take into account the context of the particular case, in particular whether a class is superior to joinder based on other relevant factors including: (i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members." *Pa. Pub. Scho Emps.' Ret. Sys. v. Morgan Stanley & Co.,* 772 F.3d 111, 120 (2d Cir. 2014).  Those factors weigh in favor of a finding of sufficient numerosity even if the number of members is between 33 and 40. Inasmuch as the Court will have to decide the "Unpaid Hours" issue to determine the damages of the CT Effective Date class members, judicial efficiency would be served by deciding that issue for those HHWs who worked live-in shifts between October 12, 2015 and January 25, 2015. *See, e.g., Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 105 F.R.D. 506 (S.D. Ohio 1985) (finding sub-class of 23 sufficiently numerous where general class numbered 275).  The class members are, presumably, dispersed throughout Connecticut (and possibly other states if they have left Defendants' employment). *See Brown v. Giuliani,* No. 98civ7743, 2000 WL 869491 at *6 (S.D.N.Y. June 29, 2000) (geographic dispersion throughout New York supports finding of numerosity); *Boyland v. Wing,* No. 92 Civ 1002, 2001 WL 761180 at *7 (E.D.N.Y. Apr. 6, 2001) (geographic dispersion throughout New York's five boroughs supports numerosity). The numerosity requirement is often relaxed where, as here, class members remain employed by Defendants and would reasonably fear retaliation for bringing their claims individually. 1 Newberg on Class Actions § 3:12 (5th ed.) Finally, Plaintiffs are low wage workers without the sophistication or resources to sue individually. For all of these reasons, the

Connecticut "Unpaid Hours" class satisfies the numerosity requirement.

Defendants' payroll records show that 39 of the 42 New York HHWs who opted into the FLSA claim worked live in shifts (93%). Sweeney Decl. at ¶ 6. Applying that percentage to the 189 NY HHWs on the FLSA Class List indicates that there were likely 175 New York class members who worked 24-hour or live-in shifts during the Effective Date period. Obviously, many times that number worked live in shifts during the entire New York Unpaid Hours class period which runs from November 11, 2009 through the present. Thus the New York Unpaid Hours class clearly satisfies the numerosity requirement.

### B. Questions of Law and Fact Are Common to the Classes

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." This requires "a showing that the claims for which certification is sought 'depend on a common contention . . . [that is] of such a nature that it is capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Lassen*, 2014 WL 4638860 at *9 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "But commonality does not mandate that all factual and legal questions be identical; to the contrary, just 'a single [common] question' will suffice to satisfy the requirement." *Id.*

Plaintiffs easily satisfy the common questions requirement. The class claims challenge two uniform compensation policies of Defendants: (1) the policy of not paying HHWs overtime at time-and-a-half the regular rate during the "Effective Date" period, January 1, 2015-October 12, 2015, and (2) the policy of not crediting HHWs who worked 24-hour or live-in shifts with the minimum number of work hours required by law, 13 hours in the case of the CMWA and 24 hours in the case of NYLL. Whether these two policies were unlawful depends on the proper interpretation of Connecticut and New York labor laws -- questions that, once resolved for the

named Plaintiffs, will necessarily have been resolved for the class members.  For example, the "Effective Date" claim, depends on three common contentions:

(1) the effective date of 29 C.F.R. §552.109 was January 1, 2015;

(2) the CMWA and NYLL incorporate the FLSA exemptions and coverage standards, including 29 C.F.R. §552.109; and,

(3) by virtue of that incorporation, the CMWA and NYLL entitled HHWs to overtime at time-and-a-half their regular rate as of the effective date of 29 C.F.R. § 552.109.

These three contentions present legal questions of statutory interpretation that, however they are resolved for the named Plaintiffs, that resolution will, necessarily, apply to the class members as well.

Similarly, the "Unpaid Hours" claim also presents common questions of statutory and regulatory interpretation that will be resolved on a class-wide basis.  In Connecticut, the claim turns on Plaintiff Kinkead's contention that Connecticut law required HHWs to be credited with a minimum of 13 hours of work for each live-in shift. In New York the claim turns on Plaintiff Mathieu's contention that New York Law required HHWs working live-in shifts to be credited with a minimum of 24 hours (or alternatively a minimum of 13 hours) of work. Again, determining these common legal questions on behalf of the named Plaintiffs will, necessarily, determine the questions for the class.

Once the common legal questions are decided, liability and damages for all the Class claims will involve the purely ministerial act of applying the answers to those legal questions to Defendants' payroll records. Even if damages presented individual questions, which they do not, "that does not . . . transform plaintiff's . . . theory of liability . . . into a series of individualized claims.  It merely means that various class members may be entitled to differing damages (or no

damages at all) if Plaintiffs prevail." *Lassen,* 2014 WL 4638860 at *9.

### C. Plaintiffs' Claims Are Typical of the Class Claims

The typicality requirement of Rule 23(a)(3) is satisfied when ". . . the claims of the class representatives [are] typical of those of the class and . . . each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove Defendants' liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2nd Cir. 1997); *Lassen*, *supra* at *27. As this Court in *Lassen* further observed "In the denial-of-overtime-pay context, typicality is usually satisfied where the particular claims alleged by the named plaintiff and the claims that could be asserted by members of the putative class are "similar" and "arise from the same allegedly unlawful practices and policies." *Lassen,* 2014 WL 4638860 at *9 (internal citations omitted).

Here, the named Plaintiffs' claims arise from the very same unlawful policies as the claims of the class members—namely Defendants' uniform policies of not paying overtime during the Effective Date period and not crediting HHWs working live in shifts (which both Plaintiffs did) with the minimum number of hours mandated by law. Moreover the disputed issues of law that will resolve these claims "occupy essentially the same degree of centrality" to the named Plaintiffs' claims as to the claims of the other members of the proposed classes. *Id.* Thus the legal issues presented by Plaintiff Kinkead's and Plaintiff Mathieu's "Effective Date" claims --(1) whether the effective date of 29 C.F.R. §552.109 was January 1, 2015, and (2) whether the CMWA and NYLL incorporate FLSA coverage; and (3) whether, as a result of that incorporation, Plaintiffs became entitled to overtime under the CMWA and NYLL on the effective date of 29 C.F.R. §552.109 -- are precisely the same issues that the CT and NY Effective Date class members present. Similarly, the legal issues presented by the named Plaintiffs' "Unpaid Hours" claim -- whether, as a matter of law, the CMWA required Defendants

to pay an HHW for a minimum of 13 hours of work for each live-in shift and whether NYLL required Defendants to credit HHWs with 24 (or alternatively 13) hours of work per live-in shift—a re the same legal issues that will establish liability for the members of the Unpaid Hours classes.

Thus, the Class Representatives' claims are typical of the Class Members. Further, Defendants have not asserted any factual or legal defenses that are applicable to the Class Representatives, but not applicable to the Putative Classes. Any argument that variations in the number of hours each HHW worked create individualized issues is without merit as ". . . differences in damages will not destroy typicality." *Lassen*, 2014 WL 4638860 at *29.

### D. Plaintiffs Will Adequately Represent the Proposed Classes

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the Class." "This requirement is met when (1) class counsel is 'qualified, experienced, and able to conduct the litigation' and (2) plaintiff has no 'interest . . . antagonistic to the interests of other members of the class.'" *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d. 52, 60 (2nd Cir. 2000); *Lassen*, 2014 WL 4638860 at *29.

i.   Class Counsel is adequate

Present counsel from Getman, Sweeney & Dunn has handled this matter from the outset, performing all the investigation and identification of claims. Counsel handles wage and hour cases and has in excess of 30 years of law practice. The firm is currently handling wage and hour litigation around the U.S., including California, Washington, Pennsylvania, along with other SDNY cases. Much of the FLSA litigation is handled by the firm on a collective action basis and several cases are hybrid Rule 23 class and FLSA collective actions. Class counsel will commit, and has already committed, the necessary resources to representing the class, as he has in previous class representations. See Sweeney Decl. at 19.

Philip Bohrer is the founder of Bohrer Brady, LLC, located in Baton Rouge, Louisiana. The firm focuses on complex civil, class and collective actions, including medical devices, products liability, consumer class actions and wage and hour claims. Mr. Bohrer's curriculum vitae is attached hereto as Exhibit 5.  Mr. Bohrer has extensive experience in collective actions, as indicated on the attached CV and has been counsel of record in this matter from original filing. Mr. Bohrer has been appointed class counsel, lead or co-lead counsel in the collective actions identified on his cv. Mr. Bohrer has been practicing law for 37 years, will vigorously litigate this matter and has the resources and experience to serve as class counsel.

In addition to proposed Class Counsels' qualifications, the Court may look at the present record to support Counsels' adequacy. *Velez v. Novartis Pharms. Corp.*, 244 F.R.D. 243, 268 (S.D. N.Y. 2007); *Lassen*, 2014 WL 4638860 at fn.12.  The record in this matter demonstrates Counsels' skill and expertise in litigating complex legal issues and supports a determination of adequacy.

ii.    There is no conflict or antagonistic interest between the Class Representatives and the
        Class Members

As set forth above, the proposed Class Representatives' claims are identical to those of the Class Members.  There are no unique claims or defenses attributable to the Class Representatives.  The NY Class Representative raises New York state wage and hour claims that are applicable to her and all other members of the NY Class in a uniform manner. The CT Class Representative likewise raises Connecticut state wage and hour claims that are applicable to her and all members of the CT Class in a uniform manner.   No conflict of interest exists between the class representatives and the classes.  The interests of the representatives – to collect unpaid wages and overtime based upon Defendants' allegedly illegal payroll practices -- do not differ

from those of the classes they seek to represent.

Further, both Mathieu and Kinkead have actively participated in this litigation. Both have responded to Defendants' Interrogatories and Request for Production of Documents. Defendants have deposed Kinkead and have scheduled Mathieu's deposition for May 8, 2018.

Accordingly, the adequacy requirements of Rule 23(a)(4) are met.

## III.  THE ELEMENTS OF FED.R.CIV.P. 23(b)(3) ARE MET

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "Establishing the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2nd Cir. 1986). For the reasons that follow, the Rule 23(b)(3) criteria are met.

### A.  Common Questions of Law or Fact Predominate

The "predominance" requirement is met "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issue subject only to individualized proof." *Myers, supra*, 624 F.3d. at 547; *Lassen*, 2014 WL 4638860 at *11.

In determining predominance, the essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In Re: Visa Check/Master Money Anti-Trust Litig.*, 280 F.3d. 124, 136 (2nd Cir. 2001) at 139. Where Plaintiffs are "unified by a common legal theory" and common facts, the predominance requirement is satisfied. *McBean v. The City of New York*, 228 F.R.D. 487, 502 (S.D. N.Y.

2005). "Predominance is often satisfied in wage and hour cases because liability is usually a common issue, and the only individualized questions involve damage calculations. Because wage claims often turn on uniform policies and practices, 'numerous courts have found that [such] claims are especially suited to class litigation – perhaps the most perfect questions for class treatment – despite differences in hours worked, wages paid and wages due.'" *Ramos v. Simplex Grinnell,* 796 F.Supp.2d 346, 359 (E.D.N.Y. 2011); *Lassen*, 2014 WL 4638860 at *32.

As in *Ramos* and *Lassen* the wage claims here satisfy the predominance requirement because Plaintiffs and the class members had the same job duties and challenge the same uniform pay policies of Defendants, the legality of which turns on questions of law common to the classes. As in *Lassen, supra*, the legality or illegality of these compensation policies "is the central liability issue in the case and the evidence necessary to demonstrate liability will be common to all class members." *Id.* at *34

Not only do the essential questions of liability -- whether the challenged compensation policies violate state law -- turn on common legal questions, but, if the Court certifies this matter, the resulting damages can be calculated utilizing Defendants' payroll records. No individualized factual or legal analysis will be required. "Once it is determined which types of activities are compensable and how to calculate the hours which a driver should have been compensated, damages for each driver will be a mere question of 'arithmetical calculations based on . . . records and other documentary evidence.'" *Id.* at *12. The same is true here.

### B.  A Class Action Is Superior

The second part of the Rule 23(b)(3) analysis examines whether "the class action device is superior to other methods available for a fair and efficient adjudication of the controversy." Rule 23(b)(3) lists four non-exclusive factors bearing on the superiority determination, each of which supports class certification.

i.   <u>The class members' interest in individually controlling the prosecution or defense of separate actions.</u>

The individual class members have no interest in controlling the prosecution of this claim as the class claims are "so closely related to the claims of others that litigation by others will achieve their ends without the need for their involvement." 2 Newberg on Class Actions § 4:69 (5th ed) In this case, the class claims depend on the resolution of issues law, i.e., the effective date of 29 C.F.R. § 552.109 and how many hours of a 24-hour shift must be compensated under state and federal law. Once those legal issues are resolved damages can be determined from Defendants' undisputed wage-and-hour records. Moreover, the class members are low wage workers without the resources to litigate their claims individually. Although the class claims are not *de minimus*, as a practical matter, wage claims of this magnitude must be pursued on a class basis. *See In re U.S. Foodservice, Inc. Pricing Litig.,* 720 F.3d 108, 130 (2d Cir. 2013) ("[T]he Supreme Court has [recognized that] Rule 23(b)(3) class actions can be superior precisely because they facilitate the redress of clams where the cost of bringing individual actions outweigh the eventual recovery."); *McBean v. City of New York,* 228 F.R.D. 487, 503 (S.D.N.Y. 2005) ("the assumed socioeconomic status of the proposed class members ... argues in favor of class action treatment to protect the rights of class members unable to litigate their individual claim.")

In addition, class treatment is superior to individual actions because "class members who still work for Defendants may be reluctant to bring claims on their own in fear of retaliation by their employer." *Lassen,* 2014 WL 4638860 at *12 (citing *Scott v. Aetna Servs. Inc.,* 210 F.R.D. 261, 268 (D. Conn. 2002) (superiority requirement satisfied in wage claim because "class members may fear reprisal and would not be inclined to pursue individual claims").

ii.    The extent and nature of any litigation concerning the controversy already begun by or
       against class members;

iii.   The desirability or undesirability of concentrating litigation of the claims in the particular
       forum;

These two factors, which are closely related, weigh in favor of certifying Plaintiffs'

classes. Daverlynn Kinkead is the only Connecticut worker who has brought a claim for the

relief requested in this litigation and, thus, this factor weighs in favor of certifying the CT Class

claims in this forum.

With respect to the NY claims, Plaintiffs previously pointed out when they moved to

amend to add their NYLL claims, a second case, *Green v. Humana At Home*, 16-cv-07586

(S.D.N.Y. filed Sept. 28, 2016), partially overlaps with this action because it alleges the same

FLSA and NYLL "Effective Date" claims at issue here; it does **not,** however allege the NYLL

"Unpaid Hours" claim raised by Plaintiffs in this Court.[4]  *See* Dkt. 170-1 at 5-6 (Brief in support

of motion to amend); *Green v. Humana At Home,* 16-cv-07586 (S.D.N.Y. filed Sept. 28, 2016) at

Doc 1 (Complaint). Green, who is the only plaintiff in her action, did not seek collective action

status for her FLSA "Effective Date" claim. However, she recently moved for Rule 23 class

certification of her parallel NYLL Effective Date claims. *Green,* Memorandum of Law in

Support of Class Certification, Dkt.48 at p. 10 ("Specifically, Plaintiff brings this action to

redress Defendant's failure to pay statutorily mandated overtime rates for home health aides

during the period of January 2015 to November 2015 (the 'Class Period'), and for failure to

---

[4]  The actions are not identical, of course. Green names only Humana at Home as a defendant
while this action also names Humana, Inc., the parent company of Humana at Home, and
SeniorBridge Family Companies (CT), a subsidiary of Humana at Home, as defendants. Green
also alleges that Defendants failed to provide her with proper wage statements in violation of
NYLL § 195-3 and 12 NYCRR § 146-2.3, a claim not raised in this action.

provide proper wage notices during this same time frame.") Because Green has not yet

completed class discovery, Defendants' opposition to her class motion is not due until July 17,

2018. *See, Green,* Letter Motion to Adjourn Conference, Dkt.51 at p. 2. The fact that *Green*

seeks a class certification order that, if granted, would overlap with one of the two New York

classes for which Plaintiffs seek certification in this motion does not undercut the superiority of

certifying both of Plaintiffs' NYLL claims in this forum. That is so for a number of reasons.

First, as Plaintiffs established when they moved to amend, as between this case and

*Green,* this case must be considered the first-filed case. *See* Dkt. 170-1 at pp. 8-18 (Brief in

support of motion to amend); Dkt.179 (Reply Brief in support of motion to amend). As a result,

the *Green* court is likely to apply the "first filed rule" to deny Green's motion for certification of

the NY Effective Date class in favor of allowing it to proceed before this Court. "The first-filed

rule is a well-established Second Circuit doctrine, based on the principle that 'where there are

two competing lawsuits, the first suit should have priority, absent the showing of balance of

convenience or special circumstances giving priority to the second.'" *Thomas v. Apple-Metro,

Inc.,* 2015 WL 505384 at *3 (S.D.N.Y. Feb. 5, 2015) (quoting *First City Nat'l Bank & Trust Co.

v. Simmons,* 878 F.2d 76, 79 (2d Cir. 1989). *See also AEP Energy Servs. Gas Holding Co. v.

Bank of Am., NA,* 626 F.3d 699, 722 (2d Cir. 2010) ("Deference to the first filing embodies

considerations of judicial administration and conservation of resources and recognizes that a

party who first brings an issue into a court of competent jurisdiction should be free from the

vexation of concurrent litigation over the same subject matter."). Pursuant to the first filed rule, a

district court has the discretion to dismiss a lawsuit that is duplicative of a prior action, transfer

the second suit to the first-filed district, or stay the second case pending resolution of the first

filed case. *Thomas*, 2015 WL 505384 at *2-3 (citing cases). Alternatively, a court may allow a

second-filed case to proceed individually while dismissing or staying the class or collective action aspects of the case that overlap with the first-filed suit. *Schucker v. Flower Foods, Inc.,* 2017 WL 3668847 (S.D.N.Y. Aug 24, 2017) (denying collective action motion based on first-filed rule); *Thomas,* 2015 WL 505384 at *5 (dismissing collective action allegations); *Castillo v. Taco Bell of America, LLC,* 960 F.supp.2d 401 (E.D.N.Y. 2012) (dismissing FLSA collective action claims and parallel NYLL class claims pursuant to the first filed rule while allowing plaintiff's individual claim to proceed). *See also Becker v. Schenley Indus., Inc.,* 557 F.2d 346, 348 (2d Cir. 1977) (a trial court's discretion to deny certification "has continually been upheld where . . . it has been exercised so as to avoid duplicative class actions.").

While the first filed rule may be rebutted in special circumstances, no such circumstances exist in *Green.* Those factors generally relate to the convenience of the parties, but given that the NY Effective Date claim is, for all intents and purposes, a legal claim and that damages under the claim can be determined from Defendants' payroll records, factors relating to the convenience of the parties do not come into play. The Second Circuit has also recognized "manipulative or deceptive behavior" as a special factor to be considered in evaluating the application of the first filed rule, but that factor also weighs in favor of invoking the rule and certifying the NY Effective Date claim in this Court rather than in *Green.*  In most cases the first-filed rule is invoked by the defendant to avoid wasteful and duplicative litigation. But Defendants here conspicuously failed to raise the first filed rule with the *Green* court in order to obtain a second chance at litigating the effective date of 29 C.F.R. §552.109 after this Court had already ruled against them on that issue. Ex. 6, Nov. 3, 2107 Hearing Transcript at 21-23. No doubt, Defendants would also prefer to have the NY Effective Date class claims litigated in *Green* in the belief that it will be less expensive to litigate or settle the NY Effective Date claim

with Green than litigate the issue in this Court because Plaintiff Green has not alleged the NY

Unpaid Hours claim alleged by Mathieu—a claim that, if successful, will greatly increase the

damages due under the Effective Date claim for HHWs who worked live-in shifts. Defendants

ought not to be able to encourage the certification of a competing, second-filed class claim in

order to forum shop in this way. That is precisely what the first filed rule is designed to prevent.

Green obviously chose not to seek FLSA collective action status because of the first-filed rule

and it seems highly unlikely that the *Green* court would permit Green (and the Humana

Defendants) to do an end run around the first-filed rule by permitting her to obtain class

certification of NY claims that simply parallel the FLSA claims already certified for collective

action treatment in this Court.[5]

There are other reasons, apart from the first filed rule, why certifying the NY Effective

Date claim in this Court is the superior method for adjudicating the claim.

First, the NY Effective Date claim parallels the FLSA claim that is already before this

Court. The essential legal issue presented by the claims are the same—i.e., what is the effective

date of 29 C.F.R. §552.109. The NY claim simply presents the additional question of whether

that regulation was incorporated into NY law on its effective date—a simple and likely

undisputed issue. Damages under the FLSA and the NY claims are the same—time-and-a-half

the regular rate—so that any issues involved in calculating the regular rate for purpose of the NY

claim are already before this Court. It would be profoundly inefficient and wasteful of judicial

resources for these claims to proceed in this Court on behalf of an FLSA collective while

allowing Green to litigate the essentially identical issues in another case.

---

[5] Given Defendants' evident reluctance to invoke the first-filed rule, Plaintiffs intend to seek leave to file an *amicus* brief in the *Green* case opposing Green's motion for certification based on the first-filed rule arguments outlined above.

Second, as a result of this Court's certification of an FLSA collective action, 42 New York HHWs are already before this Court—41 more than are before the *Green* court. By opting-in, these individuals have demonstrated their strong desire to proceed in the *Kinkead* litigation and they ought not to have that decision undercut by class litigation or settlement discussions in *Green* that would potentially undermine the claims they have brought before this Court.

Third, this Court was the first court in the nation to seriously analyze the Effective Date issue in its ruling denying Defendants' Motion to Dismiss. Dkt. 57. Many other courts, including *Green*, have followed this Court's opinion. The Second Circuit Court of Appeals has denied Defendants' interlocutory review of the Court's dismissal order. Accordingly, the Effective Date issue, along with the related issue of unpaid hours worked by live-in shift HHWs, which must be resolved to determine damages for the FLSA collective, are best concentrated in this district since this Court is familiar with the Effective Date issue and the parties have engaged in substantial discovery.

Fourth, because *Green* does not raise the NY Unpaid Hours claim raised by Plaintiffs here, a claim that is inextricably bound up with the determination of damages under the Effective Date claim, it makes no sense whatsoever to allow Green to proceed with a NY Effective Date class while Plaintiffs here proceed with a NY Unpaid Hours class. Because the two claims are inextricably related and this action is the only one in which both are pled, it only makes sense to concentrate the litigation in this forum.

iv.   The likely difficulties in managing a class action.

Denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In Re: Visa Check/Master Money Anti-trust Litig.*, 280 F.3d. at 140.  The proposed classes do not present any manageability challenges.  Both claims present

legal issues, the adjudication of which will have class-wide effect.  Both will be litigated using representative testimony and Defendants' own payroll documents to calculate damages.

For the foregoing reasons, the superiority requirement is satisfied because class certification is the best method for adjudicating this controversy.

## IV. DEFENDANTS SHOULD BE ORDERED TO SUPPLY NAMES AND CONTACT INFORMATION TO THE PUTATIVE NYLL CLASS MEMBERS

### A. Contact Information

Defendants should be directed to provide the names, addresses, and any employee number or other unique identifier of the Class Members to facilitate mailing of notice.  *Federal Rule of Civil Procedure 23(c)(2)(B)* provides that "The Court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  The FLSA Class List is not sufficient for the CT or NY Classes because it did not include individuals who worked overtime during the Effective Date period if they properly received credit hours of work for live-in shifts required by Connecticut (13) and New York (24) law. Nor do the lists cover workers employed after October 12, 2015 or in the case of New York, workers employed prior to January 1, 2015 but after November 11, 2009.

### B. Plaintiffs' Proposed Notice Should be Mailed and Posted

Plaintiffs move the Court to authorize Plaintiffs to disseminate the Notice by first-class mail to Class Members' last known addresses. Mailing of Notice is the best notice practicable and that is the routine method for delivering Notice.

A copy of the Notice Plaintiffs propose to mail and post to New York class members is attached to this motion as Exhibit 7.  A copy of the Notice Plaintiffs propose to mail and post to Connecticut class members is attached to this motion as Exhibit 8.  The notice informs class

members in neutral language of the nature of the action, of their right to assert state wage and

hour claims by remaining in the class, and the consequences of their remaining in or opting out

of the action.  The form of this Notice is consistent with other notices issued by this Court.    *See*,

*Enea v. Bloomberg*, No. 12 CIV. 4656 GBD FM, (S.D. N.Y.), Class Notice at Doc. No. 152-2.

## CONCLUSION

For all of the foregoing reasons, this Court should enter an order:

1.  Certifying the following classes pursuant to Rule 23(b)(3):

    a.  All current or former home healthcare workers employed in Connecticut by Humana, Humana at Home, Inc., SeniorBridge Family Companies (CT) and/or any of its or their predecessors or affiliated entities between January 1, 2015 and October 12, 2015 (Connecticut Effective Date Class)

    b.  All current or former home healthcare workers employed in New York by Humana, Humana at Home, Inc., SeniorBridge Family Companies, and/or any of its or their predecessors or affiliated entities between January 1, 2015 and October 12, 2015 (New York Effective Date Class)

    c.  All current or former home healthcare workers employed in Connecticut by Humana, Humana at Home, Inc., SeniorBridge Family Companies (CT) and/or any of its or their predecessors or affiliated entities who worked 24-hour or live-in shifts at any time between January 1, 2015 and January 25, 2016 (Connecticut Unpaid Hours Class)

    d.  All current or former home healthcare workers employed in New York by Humana, Humana at Home, Inc., SeniorBridge Family Companies (CT) and/or any of its or their predecessors or affiliated entities who worked 24-hour or live-in shifts at any time between November 11, 2009 and the present. (New York Unpaid Hours Class)

2. Appointing the undersigned as Class Counsel pursuant to Fed.R.Civ.P. 23(g)

3.  Authorizing Plaintiffs to issue the notice forms attached as Exhibits 7 and 8 by mail;

4.  Giving putative class members a period of 30 days from the date that notice is issued

to opt-out of this action;

5.  Requiring Defendants to provide Plaintiffs, in electronically readable form, the names,

address, email address, and any employer number or unique identifier of all class

members.

Respectfully submitted:

By: */s/ Michael J.D. Sweeney*

Michael J.D. Sweeney, Esq.
msweeney@getmansweeney.com
GETMAN, SWEENEY & DUNN, PLLC
260 Fair Street Kinston, NY  12041
Telephone: (845) 255-9370
Facsimile: (845) 255-8649

-and-

Philip Bohrer
phil@bohrerbrady.com
BOHRER BRADY, LLC
8712 Jefferson Highway, Suite B
Baton Rouge, Louisiana  70809
Telephone: (225) 925-5297
Facsimile: (225) 231-7000

***Counsel for Plaintiffs***

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 4, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to all counsel registered in this case.  Any counsel not registered for electronic notice of filing with the Clerk of Court will be mailed a copy of the above and foregoing, First Class U.S. Mail, postage prepaid and properly addressed.

<u>/s/ Michael J.D. Sweeney</u>