UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

```
- - - - - - - - - - - - - - - - x
                                :
DAVERLYNN KINKEAD, Individually :  No. 3:15CV1637(JAM)
and on behalf of all others     :
similarly situated,             :
                                :
              Plaintiff         :
                                :
          v.                    :
                                :
HUMANA, INC., HUMANA AT HOME,   :
INC., and SENIORBRIDGE FAMILY   :
COMPANIES (CT), INC.,           :
                                :  New Haven, Connecticut
              Defendants        :  July 24, 2018
                                :
- - - - - - - - - - - - - - - - x
```

TELEPHONIC DISCOVERY CONFERENCE

B E F O R E:

     THE HONORABLE JEFFREY ALKER MEYER, U.S.D.J.


A P P E A R A N C E S:

    FOR THE PLAINTIFF:

          BOHRER BRADY, LLC
               8712 Jefferson Highway, Suite B
               Baton Rouge, Louisiana 70809
          BY:  PHILIP BOHRER, ESQ.

    FOR THE DEFENDANTS:

          JACKSON LEWIS PC
               90 State House Square, 8th Floor
               Hartford, Connecticut 06103-3708
          BY:  DAVID R. GOLDER, ESQ.


                         Diana Huntington, RDR, CRR
                         Official Court Reporter

1                              **4:04 P.M.**

2              THE COURT:  Good afternoon.  This is Judge

3    Jeffrey Meyer.  We're here for a discovery conference in

4    Kinkead v. Humana.

5              May I have appearance of counsel for plaintiffs,

6    please.

7              MR. BOHRER:  Philip Bohrer for plaintiff.

8              THE COURT:  And for defendants?

9              MR. GOLDER:  Good afternoon, Your Honor.  David

10   Golder for the defendants.

11             THE COURT:  All right.  So maybe we should start

12   with Mr. Golder, if you'd like to proceed with respect to

13   your argument as to the phone records.

14             I guess before I hear from you, I have one

15   initial question for Mr. Bohrer.  I want to make sure I

16   understand your position, Mr. Bohrer.  Basically your

17   position is you're seeking overtime compensation solely

18   for the hours that were actually paid for by defendant,

19   and in the cases of the 24-hour live-in shifts, you're

20   seeking the minimum that the law would require payment

21   for, whether that minimum is 13 hours or more; is that

22   correct?

23             MR. BOHRER:  That is correct, Your Honor.

24             THE COURT:  Okay.  All right.

25             So Mr. Golder, here's what I don't actually

1    understand about your argument.  It seems to me that

2    you're really saying you really want to kind of

3    re-litigate or dispute, I should say -- not re-litigate,

4    it wasn't litigated in the first instance -- but dispute

5    essentially the hours for which your clients already paid

6    the plaintiffs; is that right?

7              MR. GOLDER:  I don't necessarily agree with

8    that --

9              THE COURT:  Okay.

10             MR. GOLDER:  -- framing of our position,

11   Your Honor.

12             THE COURT:  Well, help me understand.  Let's

13   just say -- let's take the example of a 24-hour live-in

14   worker.  And let's assume that if the legal rule were --

15   and I know this is subject to dispute between the

16   parties -- but let's say the legal rule were that's only

17   13 hours that is entitled to be paid for for a 24-hour

18   shift.  Then are you basically saying, well, no, you don't

19   want to accept the 13 hours, you want to go in and get a

20   particular plaintiff's record, and essentially say, you

21   know, look, they only worked seven hours that day because

22   17 hours of the day they were so busy texting or calling

23   other people; is that what you essentially want to do?

24             MR. GOLDER:  Well, not necessarily, Your Honor.

25   Because under the federal law -- and we put out this

1    regulation in our July 16th letter, Reg. 29 CFR 785.23.

2    There is guidance from the Department of Labor for

3    live-ins that, you know, you can -- and it's difficult to

4    determine the exact number of hours worked and any

5    reasonable agreement of the parties which takes into

6    consideration all of the pertinent facts will be accepted.

7              And part of the facts that we have here are that

8    the live-ins were intended to work eight hours, that was

9    what the agreement was for, for eight hours.  And there's

10   testimony as to that as well.  And to the extent there is

11   extensive personal time and the like for these live-in

12   workers, that would help provide additional support for

13   the argument that this agreement that was entered into

14   between Kinkead and these individuals was reasonable.

15             THE COURT:  I see.

16             So what did you pay the live-ins?  How many

17   hours did you pay them for?

18             MR. GOLDER:  Well, it was daily, but the

19   understanding between the parties was that they were

20   supposed to be working eight hours in the day.  That's

21   part of our defense to the case.  And, you know,

22   plaintiffs might have a rebuttal to that, but that's part

23   of the arguments that we're making here and part of the

24   information that we need discovery to help make those

25   arguments.

1          THE COURT:  So hypothetically, then, you'd like

2    to take a given plaintiff's cellphone records and I

3    assume -- and I guess to be clear, our point of dispute is

4    only for essentially that ten-month or so time window,

5    right, in 2015; is that right?

6          MR. GOLDER:  Your Honor, we would only care

7    about phone records for whatever relevant time period

8    plaintiffs are looking to get.  For most of plaintiffs'

9    claims, and I don't want to speak as to what all

10   plaintiffs' claims are, but it does relate to that short

11   ten-month time period.

12          THE COURT:  Right, right.  Okay.

13          So you would want to get a person's cellphone

14   records, a plaintiff's cellphone records, and then

15   essentially try to figure out by looking at the various

16   numbers that are called or texted presumably and try to

17   say, well, you know, look at how many texts were occurring

18   during this hour.  There were 29 texts during this hour.

19   This plaintiff could not have possibly been working during

20   that particular hour.  Is that kind of what you want to

21   do?

22          MR. GOLDER:  Yes, that's part of it, Your Honor.

23   But again, it's hard for us to say everything that we're

24   going to do with the records, because we don't know what

25   the records say.

1        THE COURT:  Right.  Well, you don't know what

2   the records say, but you have a pretty good idea what kind

3   of information they give you.  Essentially they just give

4   you pretty much sterile phone numbers, right?  They don't

5   say who the person is that's being called, you'd have to

6   try to figure out maybe there's a business purpose for the

7   call, maybe there's not.  And essentially it leads you to

8   a very kind of time-intensive excavation on a

9   day-by-day-by-day basis over ten months of what this

10  person was doing and how they were using their time.

11  That's pretty much what you want to do, right?

12        MR. GOLDER:  For some, it might be that.  For

13  others, it might be a question of just, you know,

14  extensive cellphone calls during the workday.  Again, it's

15  hard to say exactly what we are going to be doing without

16  seeing, you know, what the records are going to show.

17        I do appreciate what Your Honor is saying in

18  terms of we know what cellphone records show, text

19  messages and times and phone calls.  But it's hard for me

20  to tell Your Honor what we're going to do and how we're

21  going to do it without seeing it.  You know, the kind of

22  cases and not just necessarily off-the-clock cases.  I've

23  had exemption cases where, you know, plaintiffs are

24  claiming to have worked a certain amount of time and

25  records show otherwise.  And similarly, we're dealing with

1      people who are outside the office, no supervisor with

2      them, no really kind of tabs on their whereabouts

3      specifically.  And some of these people, some of the

4      live-ins, they might be, you know, specifically living at

5      these plaintiffs' residences for extended periods of time

6      and kind of seeing these places as their homes and, you

7      know, all of that kind of goes into the analysis.  Our

8      arguments are that the agreement that was reached here was

9      reasonable.

10            THE COURT:  Maybe I'm missing something.  It

11     seems like back then in 2015 you decided to pay them.  And

12     you didn't at that point say, well, we're not paying you

13     for X day because we think you were goofing off on your

14     cellphone.  That's what I'm having a hard time with.  It

15     seems to me that you're essentially trying to reopen a

16     determination that, you know, you as the employer already

17     made.  You said, okay, for this given day this person says

18     they were working that day and here's your paycheck for

19     that day.  That's what I'm -- that's what I can't quite

20     figure out about your claim here.

21            MR. GOLDER:  Yes, Your Honor.  And I appreciate

22     that.  And we were, you know, okay to proceed along those

23     lines.  But to the extent that a plaintiff comes back and

24     says, okay, this is how you paid me but now I want more,

25     you know, because of the claims that we're making, our

1    argument is that we should be afforded the ability to go

2    and see if they were working for that time.  For example,

3    for a non-live-in, if they had an eight-hour shift and

4    they say that they worked eight hours, we thought that

5    they worked eight hours based on, you know, their

6    reporting of that to us, and we paid them for eight hours,

7    that doesn't mean if they make a claim against us for

8    potential overtime we can't go back and say, okay, we said

9    it was eight hours, but what were you really doing in

10   those eight hours?  Were you actually working during those

11   eight hours or during one of those hours were you on the

12   phone with one of your buddies or a family member and the

13   like?

14           Related to this, Your Honor, I just wanted to

15   point out that we cited the *Reich* case from the Second

16   Circuit, a federal case regarding what is considered

17   working time and non-working time for purposes of the meal

18   breaks.  It wasn't a discovery case, but I just want to

19   note that the court did not take the view that, you know,

20   plaintiffs are taking here, which is, hey, if you're

21   required to be on site, that means you get paid, period,

22   you're working.  You know, it's hard to parse all of the

23   facts of the *Reich* case, but if you look towards the end

24   of the opinion, the court is saying that, you know, for

25   one group they're saying 80 percent of their lunch period

1  should get paid and for another group, 60 percent of their

2  lunch period should get paid.  It wasn't as simple as

3  saying the company required them to eat lunch on site so

4  that means it was compensable time.  It was not that

5  simple.

6        Again, Your Honor, we're just looking to get

7  additional records and information in discovery to help us

8  potentially prove some of these defenses.

9        THE COURT:  I understand that.  But basically

10  the fact is back in 2015 you did pay the plaintiffs for

11  these, and you didn't say, well, we're not going to pay

12  you for the extra half an hour because you were on lunch

13  back then, right?

14        MR. GOLDER:  That's correct, Your Honor.

15        THE COURT:  Okay.  All right.

16        MR. GOLDER:  But that doesn't necessarily

17  mean -- an employer is allowed to pay an employee, you

18  know, a lot of different ways.  They can pay them

19  additional time for non-working time.  They could pay them

20  like, for example, you know, people are sitting around and

21  they're on call, an employer can pay them for that, but

22  that doesn't necessarily mean that the employee was owed

23  that.

24        THE COURT:  It's pretty good evidence, isn't it,

25  if the employer -- unless the employer is very liberal

1  with their budget.  It strikes me the fact that they would

2  have paid it contemporaneously would be a significant

3  statement that the employer had faith that the person was

4  actually working during those hours and entitled to those

5  payments.  I understand it's a theoretical possibility

6  that they weren't and that they were goofing off and, as

7  you say, they're not monitored and there's not a security

8  camera watching them the whole time.  My overall concern

9  is, well, those doubts didn't seem to exist back then when

10  the important decision was made to pay them.  And then

11  additional concerns about how dense these records will be

12  and can be and how ultimately somewhat inconclusive they

13  can be in terms of establishing without a whole other

14  round or multiple rounds of investigation into what

15  numbers were being called and for what purpose just what

16  was occurring and all for what?  It's not clear to me

17  there's going to be a lot of gain there.  And I have to be

18  concerned about the proportionality rule of discovery.

19            So anyways, Mr. Bohrer --

20            MR. GOLDER:  If I --

21            THE COURT:  If you have anything else to add,

22  Mr. Golder, and then I want to hear from Mr. Bohrer.

23            MR. GOLDER:  I apologize, I didn't mean to cut

24  you off at the end.

25            THE COURT:  No, go ahead.

1              MR. GOLDER:  I just wanted a couple of points.

2              I'm not going to take the first point in terms

3    of the understanding that they were working that because

4    we paid them that.  Again, that was at a time when they

5    weren't claiming we need to pay them more so we weren't

6    looking more into it.  But that doesn't mean that we don't

7    get to look into what an employee was doing to determine

8    whether they were working or not.  These kind of claims

9    and defenses come up all the time in these kind of cases.

10             Second point, in terms of the density of the

11   record, that's really on our end, meaning the defendants'

12   end.  We're the ones who are going to have to deal with

13   parsing through the records, looking at the records,

14   figuring out what they mean and what they don't mean.  The

15   proportionality issue, in terms of what the plaintiffs are

16   going to have to do, is minimal.  We're talking about ten

17   months of time and a few clicks to get this information

18   from the opt-in plaintiffs.  We're not asking for ATM

19   receipts, we're not asking for credit card receipts, we're

20   not asking for Facebook profiles.  We tried to be

21   extremely limited with our request based on information

22   that we got through depositions.

23             THE COURT:  I see.  Okay.

24             Mr. Bohrer.

25             MR. BOHRER:  Thank you, Your Honor.  I kind of

1    don't know where to start.

2            So our prospective I think the Court articulated

3    right off the bat and that is this is not a disputed case

4    where we're arguing that someone had to work during their

5    lunch break and didn't get paid for it or had to work at

6    home and is not an off-the-clock case.

7            With respect to those individuals who are within

8    that effective date group for the time period of 1/1/15 to

9    12/10/15 who were not 24-hour live-in workers but instead

10   were hourly, you know, by the day, this company, you know,

11   had a procedure in place.  These people submitted their

12   time.  I'm sure this company had some type of audit system

13   to make sure the time was valid, and they paid them.  The

14   only issue that is before the Court now or ever with

15   respect to those individuals will simply be how many hours

16   over 40 and those hours over 40 using the employees'

17   regular rate of pay will have to be paid at overtime, so

18   the unpaid overtime premium.  That is something that can

19   be done summarily using Humana's existing records.

20           Going back and allowing the defendants a grand

21   fishing expedition to now dispute hours worked and paid

22   three years ago seems to be allowing defendants to open

23   Pandora's Box without even a most minimal showing that any

24   such evidence exists.  And the reason the cases that we

25   cited describe phone records in off-the-clock cases, which

1    we don't have here, as at best marginally relevant is for

2    exactly the reasons Your Honor articulated.  Looking at

3    those records doesn't prove anything.  The evidence, the

4    deposition transcripts of Ms. Matthew and Ms. Kinkead

5    don't prove anything.  It proves that someone may have

6    gotten a phone call or made a phone call, but for those

7    individuals who worked 24-hour shifts, there's no way to

8    tell whether that was in part of the time that they were

9    not getting paid for or part of the time in which they

10   might have been on the clock.  Who's to say?  There's no

11   way to tell because there's no shift.  That was not a

12   nine-to-five job.  There's no way to look at a cold phone

13   record three or four years old and say that it has any

14   relevance with respect to calculating hours worked.

15           With respect to the 24-hour folks, again, we are

16   calculating here a legal issue.  And that issue is, under

17   New York law and under the Fair Labor Standards Act, what

18   is the default minimum that those workers need to get

19   paid.  We claim New York is 24 and Connecticut FLSA is 13;

20   they paid for eight.  If the Court decides that eight is

21   the number, well, okay, they win.  If the Court decides 13

22   is the number, then their records will establish the

23   number of 24-hour shifts per work week and the math is

24   routine.  There's no individual at issue and there's no

25   reason to look beyond the default minimum number of hours.

1       The reason that these records are not relevant

2  was really articulated well in defendants' case that they

3  cited, the *Reich* case, because they looked in that case at

4  the nature of the contested time period and they decided

5  that when a company requires a worker to stay on premises,

6  then that's for the benefit of the employer and not the

7  employee and the time that you're required to be on

8  premises means that you have to get paid for it.  That's

9  very consistent with New York law that says the same thing

10 that is in issue in this case at 12 NY-CRR 142-2.1(b).  It

11 says if you're required to be on the premises, it's time

12 worked.  So all of these non-24-hour workers, they can't

13 leave.  We submitted evidence in this matter and in our

14 class cert. filings where the defendant admits, you know,

15 when you go there, you have to stay.  And that counteracts

16 all of the defendants' arguments.

17      Mr. Golder cited to the Court 29 CFR 785.23 as

18 the basis for which their request could be relevant.  But

19 what that statute really says, Your Honor, is that -- it

20 says that when you look at hours, what's important is

21 whether or not the employee can have complete freedom of

22 all duties when he may leave the premises for purposes of

23 his own.  So the issue in this case is there really isn't

24 going to be an agreement for eight hours because -- and

25 aside even a disputed issue in this case, these workers

1    were required to stay at their clients' premises, they

2    could never leave.  And it's uncontested, it's in the

3    record, it's in the submission we made in this particular

4    issue.

5            So there's no way that the one thing that

6    Mr. Golder thinks this is relevant for is at play, and

7    that is we want to see how many phone calls they made to

8    see if our eight-hour deal can be an agreement between an

9    employer and employee to only get paid eight.  We're going

10   to ask the Court to say no to that because they have no

11   freedom at all.  And it's going to put us right to where

12   we started this whole argument.  And that is we're

13   deciding legal issues.  What is the default minimum number

14   of hours for a live-in worker, and that's what they should

15   get.  When you're deciding default minimum legal issues,

16   it doesn't matter how many hours they may have spent on

17   the phone eating or sleeping, it doesn't matter because

18   they have to get paid the default minimum, especially when

19   they're restricted in their freedom.

20           So at the end of the day, Your Honor, Pandora's

21   Box about phone records shouldn't be opened because it is

22   quite burdensome.  Mr. Golder's argument that this is

23   burdensome on them not and not on us really misses the

24   boat.  If they get the records and they're going to do an

25   analysis, I'm duty bound to do the same.  Here we are

1  discussing forcing these opt-in plaintiffs, many of whom

2  have virtually no internet access, many of whom work an

3  extraordinary number of hours per week, they live in other

4  people's premises for a period of time, many of them

5  have -- they don't have AT&T or Verizon.  If they have a

6  cellphone, it's going to be a prepaid plan with, to my

7  knowledge, no or limited internet access.  You're talking

8  about records that are several years old.  And if they get

9  them and do an analysis, we're going to have to do the

10  same.  So you're spending an awful lot of resources to

11  develop evidence that I frankly would suggest will never

12  be admitted in any proceeding because it doesn't meet even

13  the level of marginal relevance that other courts describe

14  it as.

15          For those reasons, Judge, and the reasons we

16  outlined in our filings, I think we would urge the Court

17  not to open Pandora's Box and let the defendants conduct

18  what amounts to a fishing expedition that is

19  disproportionate to the legal issues presented in this

20  case.  This is a unique case.  It doesn't fit the bill of

21  any of the other cases that the defendants cite.  Those

22  are all off-the-clock cases when you have a nine-to-five

23  worker that says I worked through lunch or I worked at

24  home.  And, you know, I understand the court's willingness

25  to let those defendants in those cases get what the court

1   describes as small samples to check for relevance, but we

2   don't even have that in this case.  This is going to be,

3   in all likelihood, a case that turns solely on legal

4   issues.

5           THE COURT:  Okay.

6           Mr. Golder, do you have anything else you want

7   to say in response?

8           MR. GOLDER:  Yes, just briefly, Your Honor.

9           The Court has noted and plaintiffs' counsel

10  mentioned that they're required to stay on site and

11  required to be working during that time.  And that is what

12  the understanding was.  But defendants should be permitted

13  to test that.  They should be permitted to determine

14  whether or not they were working.  They should be

15  permitted to determine whether or not these people were

16  engaging in long personal breaks on or off the premises

17  and the like.  And, you know, plaintiffs sought discovery

18  for the 190 opt-in plaintiffs as to all of them,

19  individualized discovery, including personnel files and

20  the like.  And we should be -- defendants should be

21  allowed to get very limited discovery here on this issue

22  as well.

23          And one other point to make, Your Honor, is

24  there is a difference between the live-ins and the

25  non-live-ins on this issue.  The non-live-ins, they have a

1    specific amount of time that they claim to be working, and

2    we get to test after the fact in a case whether or not

3    they actually were working during that time, and that

4    should go into the analysis in terms of the merits and

5    damages.

6              MR. BOHRER:  Your Honor, can I make one closing

7    statement here?

8              THE COURT:  Okay.

9              MR. BOHRER:  Thank you, Your Honor.

10             So with respect to that last issue that

11   Mr. Golder raises and that is the

12   less-than-24-hour-per-day workers, the non-live-ins for

13   whom their time sheets have been processed and they've

14   been paid years ago, Mr. Golder makes the argument that we

15   have to test whether or not they were working.  Well, the

16   definition of "work," it will encompass everything that

17   they do while they're on that premises.

18             So 29 CFR 785.21 says that the workers like

19   those who are on duty for less than 24 hours, it's

20   considered work even if they're not performing actual

21   work.  So, for example, you have a home health-care worker

22   who is sitting bedside next to someone who is asleep.  Can

23   they call on the phone or talk to someone?  And is that

24   all of a sudden not considered work time?  I would suggest

25   the answer is if they're there, they're working, just like

1  the court in *Reich* found.  The nature of this business is

2  someone needs to be there.  And they need to be there in

3  case something happens.  So with respect to those people

4  who are not 24-hour workers, if they sit there and think

5  deep thoughts to themselves next to that bed while their

6  patient is sleeping, is that any more or less work time

7  than if they happen to make a phone call during that same

8  period of time?  The phone records will never prove an

9  issue in this case with respect to either groups here.

10           MR. GOLDER:  One quick -- and I appreciate

11  Your Honor probably has enough to make its ruling.  Very

12  quickly, if the Court just looks at the *Reich* opinion,

13  that decision that was made by the district court and then

14  affirmed by the Second Circuit, that was after there was a

15  lot of discovery that was done to determine what these

16  workers were doing, what they weren't doing.  And you

17  know, what plaintiffs are trying to do here is cut us off

18  before we can even figure that out.  So even if this

19  information is not going to go in front of trial, the

20  discovery is broad and we should be afforded the right to

21  look at this stuff.

22           THE COURT:  All right.  Well, I appreciate the

23  views of all counsel.  It's an interesting issue you

24  presented here.  I'm going to rule as follows.

25           I'm going to sustain plaintiffs' objection to

1    these discovery requests for the personal cellphone call

2    records of the plaintiffs in this case substantially for

3    the reasons that I find persuasive that have been set

4    forth in plaintiffs' submissions and on the record today

5    and also in light of the concerns of Rule 26 of the

6    Federal Rules.

7              The first concern, I think I've made clear about

8    this in view of plaintiffs' concession that they will not

9    seek a compensation for more time than the defense

10   actually paid them for in the case of the live-in workers

11   more than the default minimum time as might be required by

12   law.  I do conclude that plaintiffs' phone records are not

13   relevant here in light of that factual context.  I think

14   that the defendants chose to pay all the plaintiffs here

15   for these work hours and that defendants should not be

16   free at this time years later now to contend in effect

17   that the plaintiffs were not working during all or some of

18   those work hours for which the defendants decided back in

19   time contemporaneously to make payments to plaintiffs.

20             Even assuming, though, that there were some

21   marginal or possible relevance of plaintiffs' cellphone

22   records, I do conclude that they would be of quite limited

23   probative value to determine whether in fact plaintiffs

24   were working at the time or entitled to be paid at the

25   time than any kind of cellphone calls or texts were

1   placed.  And I also am concerned that to establish the

2   probative value, if there is probative value, would

3   require yet further inquiry and investigation by both

4   sides, frankly, into what numbers were called and for what

5   purpose, all of which would be, in my view, quite costly

6   and disproportionate to the legitimate needs for discovery

7   in the case.

8           So respectfully, I'm going to sustain

9   plaintiffs' objection to this discovery request.

10          MR. BOHRER:  Thank you, Your Honor.

11          THE COURT:  Thank you all for taking the time to

12  educate me about this.  We'll enter a short docket order

13  to that effect of what my decision was.  And if need be,

14  the parties are free to contact the court reporter for a

15  transcript of this teleconference.  Okay?

16          MR. BOHRER:  Thank you, Judge.

17          THE COURT:  Thank you all.  Take care.

18              (Proceedings adjourned at 4:35 p.m.)

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T E

3

4   RE: DAVERLYNN KINKEAD, Individually and on behalf of all
         others similarly situations v. HUMANA, INC., ET AL.
5                    No. 3:15CV1637(JAM)

6

7             I, Diana Huntington, RDR, CRR, Official Court

8   Reporter for the United States District Court for the

9   District of Connecticut, do hereby certify that the

10  foregoing pages 1 through 21 are a true and accurate

11  transcription of my shorthand notes taken in the

12  aforementioned matter to the best of my skill and ability.

13

14

15

16

17                    _____/s/_____

18                    DIANA HUNTINGTON, RDR, CRR
                      Official Court Reporter
19                    United States District Court
                      141 Church Street, Room 147
20                    New Haven, Connecticut 06510
                      (860) 463-3180
21

22

23

24

25