## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____
                                        :
DAVERLYNN KINKEAD and              :
CLAUDE MATHIEU, individually       :
and on behalf of all others similarly,   :        CIVIL CASE NO.: 3:15-cv-01637 (JAM)
situated,                               :
             Plaintiffs,               :
                                        :
v.                                      :
                                        :
HUMANA, INC., HUMANA AT HOME,      :
INC., AND SENIORBRIDGE FAMILY      :
COMPANIES (CT), INC.,               :
                                        :
             Defendants.               :
_____:


## DEFENDANTS' ADDITIONAL BRIEFING IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR RULE 23 CLASS CERTIFICATION



David R. Golder (ct 27941)
Noel Tripp (pro hac vice)
Kristi Rich Winters
Jackson Lewis P.C.
90 State House Square, 8th Floor
Hartford, CT 06103




Counsel for Defendant
Humana Inc., Humana at Home, Inc.,
and Seniorbridge Family Companies
(CT), Inc.

## **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................................... 1

II.    ARGUMENT.................................................................................................................. 1

    A.  Because The New York State Department of Labor Already Ruled That The
       Effective Date For The Final Rule Was October 13, 2015 As to Defendants, This
       Court Should Either (1) Find Collateral Estoppel As To The New York Claims, Or
       (2) Defer To The NYSDOL As To This New York Labor Law Issue ............................ 3

          1.  The New York State DOL's Assessment That The Final Rule Was Not
             Effective Until October 13, 2015 Operates As Colleteral Estoppel Of The
             New York State Law Claims Alleged In This Matter................................................4

          2.  This Court Should Defer Its Determination Of The Effective Date Of The
             Final Rule As To New York Law To The New York State Department
             Of Labor ................................................................................................................6

    B.  This Court Should Deny Plaintiffs' Untimely Effort To Add Ms. Caillo As A
       Named Plaintiff Because Plaintiffs Cannot Establish Good Cause And Humana
       Will Suffer Significant Prejudice......................................................................................... 7

    C.  This Court Should Not Substitute Ms. Mathieu With Ms. Caillo, Because The
       New York Class Action Claims Are Duplicative Of The *Green* Action That
       Was Filed Approximately Two Years Ago ...................................................................10

    D.  Plaintiff Caillo Not Only Fails To Cure The Fundamental Problems With Plaintiffs'
       Pending Rule 23 Motion, But Also Causes Additional Problems For The New
       York Class That Warrant Denial ...................................................................................11

          1.  Plaintiffs' Failure To Select An Adequate Class Representative A Year
             Ago Demonstrates That This Class Is Not Ascertainable And Putative
             Class Members Lack Standing ............................................................................... 12

          2.  Ms. Caillo Does Not Have A New York State Law Claim Because She
             Already Asserted Her FLSA Claim For The Same Issue And Cannot
             Recover Under New York Law............................................................................... 16

          3.  There Can Be No Unpaid Hours Class Claim Because Proposed Plaintiff
             Caillo Admitted That She Understood That Her Live-In Pay Was A Day
             Rate And That She Received Proper Overtime for Non-Live In Work ................. 17

          4.  Plaintiffs Fail To Establish That Caillo's Managers Had Actual Or
             Constructive Knowledge That She Worked More Than 8 Hours In A Day .......... 18

5.   The Differences Between Proposed Plaintiffs Mathieu and Caillo
Highlight The Unascertainability of the Proposed New York Class......................19

III.   CONCLUSION.................................................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahmed v. Subzi Mandi, Inc.*,
   2014 U.S. Dist. LEXIS 115228 (E.D.N.Y. May 27, 2014) ("Because Plaintiff's
   earliest allegation of unpaid wages is for August 1, 2012, her claim falls
   entirely within the FLSA statute of limitations and is entitled to damages under
   same.") ..................................................................................................................................16

*Am. Express Co. v. Italian Colors Rest.*,
   133 S. Ct. 2304 (2013) ............................................................................................................2

*Barenboim v. Starbucks Corp.*,
   2013 NY Slip Op 4754, 21 N.Y.3d 460, 972 N.Y.S.2d 191, 995 N.E.2d 153
   (2013) ........................................................................................................................................7

*Becker v. Schenley Indus., Inc.*,
   557 F.2d 346 (2d Cir. 1977) ..................................................................................................10

*Brecher v. Republic of Argentina*,
   802 F.3d 303 (2d Cir. 2015) ..................................................................................................12

*Butler-Jones v. Sterling Casino Lines, L.P.*,
   2008 WL 5274384 (M.D. Fla. Dec. 18, 2008) ......................................................................15

*Callalari v. Blackman Plumbing Supply, Inc.*,
   307 F.R.D. 67 (E.D.N.Y. 2015) .............................................................................................14

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) ............................................................................................................1

*Copello v. Boehringer Ingelheim Pharmaceuticals, Inc.*,
   812 F. Supp. 2d 886 (N.D. Ill. 2011) ....................................................................................10

*Cuevas v. Citizens Financial Group, Inc.*,
   526 Fed. Appx. 19 (2d Cir. 2013) ...........................................................................................2

*Curtis v. DiMaio*,
   46 F. Supp. 2d 206 (E.D.N.Y.1999), aff'd 205 F.3d 1322 (2d Cir. 2000).............................11

*De La Cruz v. Gill Corn Farms, Inc.*,
   2005 WL 5419056 (N.D.N.Y. Jan. 25, 2005) ........................................................................14

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006)....................................................................................................14

iii

*Durfee v. Rich*,
    2008 WL 324206 Case No. 02–10041 (E.D. Mich. Feb. 4, 2008) ...........................................9

*Flood v. Just Energy Mktg. Corp.*,
    No. 17-0546-cv, 2018 U.S. App. LEXIS 26629 (2d Cir. Sep. 19, 2018) ..................................4

*Green v. Humana At Home, Inc. et al.*
    (Civ. No.: 16-cv-07586-AJN) ...............................................................................2, 9, 10, 11

*Heredia v. Americare, Inc.*,
    2018 U.S. Dist. LEXIS 86918 (S.D.N.Y. May 23, 2018).................................................17, 19

*Hunter v. Sprint Corp.*,
    346 F. Supp. 2d 113 (D.D.C. 2004) ......................................................................................15

*Kalkstein v. Collectco, Inc.*,
    2015 U.S. Dist. LEXIS 2019 (E.D.N.Y. Jan. 2, 2015) ..........................................................18

*Kelen v. World Fin. Network Nat'l Bank*,
    302 F.R.D. 56 (S.D.N.Y. July 28, 2014)................................................................................18

*Kuebel v. Black & Decker, Inc.*,
    643 F.3d 352 (2d Cir. 2011)..................................................................................................18

*Landis v. North Am. Co.*,
    299 U.S. 248 (1936)..............................................................................................................11

*In re Milk Prods. Antitrust Litig.*
    195 F.3d 430 (8th Cir.1999) ...................................................................................................8

*Morabito v. New York*,
    2018 WL 3023380 (W.D.N.Y. June 18, 2018) ........................................................................5

*Ochei v. Marry Manning Walsh Nursing Home Co.*,
    2013 U.S. Dist. LEXIS 71498 (S.D.N.Y. May 17, 2013)...................................................6, 16

*Ortiz v. Panera Bread Co.*,
    No. 1:10-CV-1424, 2011 U.S. Dist. Lexis 85463 (E.D. Va. Aug. 2, 2011) ...........................10

*Rana v. Islam*,
    887 F.3d 118 (2d Cir. 2018)..................................................................................................16

*Ryan v. N.Y. Tel. Co.*,
    62 N.Y.2d 494, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984).....................................................5

*Severin v. Project OHR, Inc.*,
    2012 WL 2357410 (S.D.N.Y. June 20, 2012) .........................................................................7

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ...................................................................................14

*Troche v. Bimbo Foods Bakeries Distribution, Inc.*,
    No. 3:11CV234-RJC-DSC, 2011 U.S. Dist. Lexis 90738 (W.D. N.C. Aug. 12,
    2011) ...............................................................................................................10

*Tussing v. Quality Resources, Inc.*,
    2009 WL 4350253 (M.D. Fla. 2009) ...............................................................15

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S.Ct. 1036 (2016) .....................................................................................14

*Velasquez v. Digital Page, Inc.*,
    303 F.R.D. 435 (E.D.N.Y. 2014) ....................................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ......................................................................................1

*Westfall v. Kendle Int'l, CPU LLC*,
    2007 U.S. Dist. LEXIS 11304 (N.D.W.V. February 15, 2007) ...........................9

## Statutes

FLSA ............................................................................................................ *passim*

New York Labor Law ..................................................................................... *passim*

## Other Authorities

5-23 Moore's Federal Practice - Civil § 23.21 ...........................................................12

## I.       INTRODUCTION

Plaintiffs' untimely attempt to swap out their current New York class representative (Claude Mathieu) at the eleventh-hour, after both parties have litigated the New York class for the past year, should be rejected.  Without Plaintiff Caillo as the named plaintiff of the New York class, Plaintiffs' Rule 23 class clearly fails for the simple reason that Plaintiff Mathieu never worked overtime, even under Plaintiffs' theory of liability.  She has no standing.  Plaintiffs' actions in proposing to slip in a substitute Plaintiff confirm this legal inevitability:  Plaintiff Mathieu is not an adequate representative of any New York class.  Even though Defendants do not have to establish prejudice for this Court to deny Plaintiffs' belated motion to amend, the prejudice that Defendants would suffer is significant.

Regardless, discovery as to Plaintiff Caillo's claims establishes that Plaintiffs' Rule 23 class certification is fundamentally flawed regardless of whether Ms. Mathieu is the named plaintiff or Ms. Caillo is the named plaintiff.  There is no New York class, only a series of individual questions into how many hours a home health aide Plaintiff worked, and whether that aide is owed overtime or additional overtime under state law during a particular period in time.  Although, as noted in Defendants' Opposition to Rule 23 Certification, there is no viable Connecticut class, the putative New York class is far more flawed and clearly should not be certified for numerous reasons, all of which are legally sufficient for this Court to deny class certification.

## II.      ARGUMENT

Rule 23 class certification is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2550 (2011) (quotations omitted); *Comcast Corp. v. Behrend,* 133 S. Ct. 1426, 1432 (2013);

*see also Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013) (holding that Rule 23 "imposes stringent requirements for certification that in practice exclude most claims".)  The Court must conduct a "rigorous analysis" of whether Plaintiffs have satisfied their burden of establishing the propriety of a class action here.  *See Cuevas v. Citizens Financial Group, Inc.*, 526 Fed. Appx. 19, 21 (2d Cir. 2013).

Under a rigorous analysis, Plaintiffs fail to meet their substantial burden that this matter is an exception for the following legally sufficient reasons.  First, the New York State Department of Labor already investigated Defendants and concluded that the effective date of the Final Rule for purposes of the New York Labor Law was October 13, 2015.  Such a determination results in collateral estoppel on this issue as to the New York state law claim possessed by Plaintiff Caillo or any arguably similarly situated individual.  Moreover, even if this Court does not agree that this determination results in collateral estoppel, this Court should defer to NYSDOL on New York state law issues because the NYSDOL's interpretation of a statute it is charged with enforcing is entitled to deference.

Second, as noted at length in Defendants' Opposition to Plaintiffs' Second Motion to Amend, this Court should deny Plaintiffs' untimely effort to add Ms. Caillo as a named Plaintiff because Plaintiffs cannot establish good cause.  Moreover, even though prejudice is not required, Defendants will suffer significant prejudice if Plaintiffs are allowed to amend the Complaint a second time so late in this litigation.

Third, the New York class action claims are duplicative of the claims in the *Green* action that was filed approximately two years ago.

Even if this Court does not find collateral estoppel, and even if this Court does not follow the New York State Department of Labor on the New York state-law issues, and even if this Court

allows Plaintiffs to amend the complaint so Ms. Caillo can assert a New York claim that is duplicative of her already pending FLSA claim, Plaintiffs' Rule 23 New York class still fails. Most notably, Plaintiffs' failure to select an adequate class representative a year ago demonstrates that this class is not ascertainable.  Moreover, Plaintiffs' failure demonstrates that putative class members lack standing, or, equally compelling for purposes of Plaintiffs' class certification motion, the only way to determine if a putative class member does have standing (i.e., any claim) is to conduct an individualized inquiry into the HHR's personal circumstances.  Moreover, Ms. Caillo does not have a New York state law claim, because she already asserted her FLSA claim when she opted into this case a year ago.  Ms. Caillo's claims at issue in this case fall entirely within the FLSA statute of limitations, and Ms. Caillo cannot double dip and recover for her New York state law claim when it is the same claim as her already pled FLSA claim:  either Ms. Caillo's claim is an FLSA claim (which it is, as she asserted it by Consent to Join on September 18, 2017), or it is solely a state law claim, properly brought in a New York state court.

Additionally, if Ms. Caillo becomes the named representative for the New York class, she makes clear that there can be no unpaid hours claim because Ms. Caillo admitted that she understood—and was specifically told by Defendants—that her Live-In pay was a day rate. Plaintiffs cannot establish that Defendants had actual or constructive knowledge that Ms. Caillo worked more than 8 hours in a day.  She is not common to, or an adequate or typical representative of, any individual who claims to be able to so establish.

**A. Because The New York State Department of Labor Already Ruled That The Effective Date For The Final Rule Was October 13, 2015 As to Defendants, This Court Should Either (1) Find Collateral Estoppel As To The New York Claims, Or (2) Defer To The NYSDOL As To This New York Labor Law Issue**

The NYSDOL already investigated Humana At Home for the same alleged misclassification overtime violations regarding HHWs at issue in this case.  Specifically, the

NYSDOL conducted an investigation of Senior Bridge Family Companies (NY) Inc. for the period of June 20, 2013 through June 20, 2016.  (*See* Ex. A, NYSDOL Assessment Dated November 7, 2016.)[1]  In issuing its findings, the NYSDOL ruled, in relevant part, "**Effective October 13, 2015, Federal Regulations no longer exempt home health aides from overtime and mandates that these aides be paid overtime at time and a half of their regular or agreed rates; New York State Department of Labor conforms to Federal Regulations in this area, as a result, home health aides must be paid overtime at 1.5 times of their regular rate of pay for overtime hours worked.**" *Id*. (emphasis in original).

As noted below, such a determination results in collateral estoppel of the New York state law claims.  Even if this Court does not agree that this determination results in collateral estoppel (which it should because the issue is identical), this Court should defer to NYSDOL on New York state law issues because the DOL's interpretation of a statute it is charged with enforcing is entitled to deference.

1. **The New York State DOL's Assessment That The Final Rule Was Not Effective Until October 13, 2015 Operates As Collateral Estoppel Of The New York State Law Claims Alleged In This Matter**

As this Court just had cause to state, for issue preclusion or collateral estoppel to apply "(1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits." *Flood v. Just Energy Mktg. Corp.*, No. 17-0546-cv, 2018 U.S. App. LEXIS 26629, at *34-35 (2d Cir. Sep. 19, 2018) (internal

---

[1] Citations to "Ex. __" refer to the Exhibits to the Declaration of David R. Golder In Support of Defendants' Additional Briefing In Opposition to Plaintiffs' Motion for Class Certification submitted herewith.

citations and quotation marks omitted).[2]

"In the application of collateral estoppel with respect to administrative determinations, the burden rests upon the proponent of collateral estoppel to demonstrate the identicality and decisiveness of the issue, while the burden rests upon the opponent to establish the absence of a full and fair opportunity to litigate the issue in prior action or proceeding."  *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494, 501, 478 N.Y.S.2d 823, 827, 467 N.E.2d 487, 491 (1984) (internal citations omitted).  Under New York law, "the doctrine of collateral estoppel, a narrower species of res judicata, precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same." *Morabito v. New York*, 2018 WL 3023380 (W.D.N.Y. June 18, 2018) (quoting *Ryan*, 62 N.Y.2d at 500).

Here, the doctrines of issue preclusion and collateral estoppel foreclose Plaintiffs from bringing the New York claims against Defendants, because the same claims were already decided with respect to Defendants and the New York State Department of Labor ("NYSDOL") determined that the effective date of the Final Rule was October 13, 2015 for purposes of New York state law.  All the requirements for collateral estoppel are met.

First, there can be no dispute that the issue before the NYSDOL and the issues in this case are identical – alleged violations of the applicable overtime laws under the Federal Regulations and New York state law based on the proceedings surrounding the Final Rule.

Second, the issue in the NYSDOL audit was litigated and decided.  The NYSDOL decided that effective October 13, 2015, Federal Regulations no longer exempt home health aides from overtime for purposes of New York state law.  "Under the NYLL, an order by the Commissioner

---

[2] Unreported cases are attached to the Declaration of David R. Golder at Exhibit K.

of Labor that an employer has violated Article 6 (on payment of wages) or Article 19 (on the minimum wage act), made pursuant to an employee's complaint . . ., 'shall be final and not subject to review by any court or agency' unless a party in interest petitions the industrial board of appeals for review within sixty days after the issuance of the order." *Ochei v. Marry Manning Walsh Nursing Home Co.*, 2013 U.S. Dist. LEXIS 71498, at *19-20 (S.D.N.Y. May 17, 2013) (*citing* NYLL §§ 218(1)-(2), 101(1)).

In *Ochei*, the Court went on to find that while the NYSDOL's review of the complaint at issue was an "investigation" without a hearing or discovery beyond an examination of relevant wage records, the available appeal procedures "would provide the full and fair opportunity to litigate any claim for additional relief, if [the claimant] believed she was owed more than what the NY DOL had already determined that she was owed in back wages." *Id*. (internal citations omitted).

Third, there was a full and fair opportunity for both parties to litigate the issue.  Both Defendants and the New York putative class members had the opportunity to appeal the NYSDOL's determination.

Fourth, there can be no dispute that the issue previously litigated at the NYSDOL—whether the HHWs were exempt under New York law and when—was necessary to support a valid and final judgment by the NYSDOL on the merits of that administrative finding.

Consequently, Plaintiffs' New York class fails because the doctrines of issue preclusion and collateral estoppel foreclose Plaintiffs from bringing the same claims already decided with respect to Defendants.

### 2. This Court Should Defer Its Determination Of The Effective Date Of The Final Rule As To New York Law To The New York State Department Of Labor

Even if this Court determines that the NYSDOL's determination does not operate as issue

preclusion or collateral estoppel, this Court should still deny the New York class and defer to the NYSDOL's determination.  It is well-settled law in New York that "[t]he [DOL's] interpretation of a statute it is charged with enforcing is entitled to deference. The construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld." *Severin v. Project OHR, Inc.,* 2012 WL 2357410, at *8 (S.D.N.Y. June 20, 2012) (citing *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 79, 854 N.Y.S.2d 83, 883 N.E.2d 990 (N.Y.2008) (citation omitted)); *Barenboim v. Starbucks Corp.*, 2013 NY Slip Op 4754, 21 N.Y.3d 460, 972 N.Y.S.2d 191, 995 N.E.2d 153 (2013).  "Where the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices . . . courts regularly defer to the governmental agency charged with the responsibility for administration of the statute." *Severin,* 2012 WL 2357410, at *9 (citing *Kurcsics v. Merchants Mutual Insur. Co.*, 49 N.Y.2d 451, 459, 426 N.Y.S.2d 454, 403 N.E.2d 159 (N.Y. 1980)).  Making a determination of the effective date of the Final Rule and, as a consequence, the effective date of the exemption as it applied to New York state law is precisely such an interpretive task.

Consequently, Plaintiffs' New York class fails because if this Court defers to the NYSDOL as to the effective date of the Final Rule as to New York law, Plaintiffs' New York class fails on the merits.[3]

**B. This Court Should Deny Plaintiffs' Untimely Effort To Add Ms. Caillo As A Named Plaintiff Because Plaintiffs Cannot Establish Good Cause And Humana Will Suffer Significant Prejudice**

As noted in detail in Humana's opposition to Plaintiffs' Second Motion to Amend the Complaint (Dkt. 267), Plaintiffs' Second Motion to Amend the Complaint ("Plaintiffs' Motion")

---

[3] Indeed, the only claim under New York law which would potentially survive such finding would be the claim every federal court has rejected, i.e., that a home health aide working a live-in shift must receive 24 hours at minimum wage. Should the court be inclined to entertain certification on this basis (which it should not), it should stay this action pending decision from the New York Court of Appeals on this issue.

should be denied because it was filed approximately **_nine_** months after the November 17, 2017 deadline for such motions, and Plaintiffs cannot establish "good cause," as required by Rule 16(b), or establish any "extraordinary and unforeseeable circumstances," as required by this Court's Scheduling Order.  (Dkt. No. 175.)   Humana demonstrated that Plaintiffs lack the necessary diligence to establish good cause, because Plaintiffs were on notice for the past year that New York federal courts—based on guidance from the New York State Department of Labor—unanimously held that New York law did not require a minimum of 24 hours of payment for a live-in shift and instead instructed that 13 hours was the appropriate daily work hours.  During that time, Plaintiffs should have known that Named Plaintiff Mathieu had fundamental issues with her claims because she worked only three live-in shifts and—assuming this counts for 13 hours each day—worked 39 hours in a week.

In addition, even though it is not required for Humana to articulate any prejudice suffered, Humana will suffer significant prejudice if this Court grants Plaintiffs' Second Motion to Amend. Most notably, Defendants litigated this case and developed their entire class opposition strategy, including their class discovery strategy, based on the inadequate claims of Plaintiff Mathieu.  Now, after Defendants have participated in extensive litigation and executed that strategy, Plaintiffs attempt to perpetrate a bait-and-switch at the last minute and essentially hit a reset button on their entire New York class.  *See, e.g., In re Milk Prods. Antitrust Litig.* 195 F.3d 430, 438 (8th Cir.1999) (affirming denial of motion to add new class plaintiffs and noting that granting Plaintiffs' motion "would have required reopening class discovery and further delay, precisely the sort of prejudice that justifies denial of a motion to amend under Rule 15(a)").

Being afforded the opportunity to take Ms. Caillo's deposition and submit the instant, additional class certification opposition brief does not cure the prejudice Defendants will suffer.

As a preliminary matter, that Defendants will have suffered some prejudice caused by Plaintiffs at the time of the oral argument does not negate that prejudice.  In addition, because of Plaintiffs' tactics, this Court set the additional class briefing as a simultaneous filing of briefs by Defendants and Plaintiffs (Dkt. 265), and this schedule does not afford Defendants the ability to adequately respond to Plaintiffs' new arguments or evidence that Plaintiffs will submit in their additional class certification briefing.  Moreover, Defendants suffer the extreme prejudice of litigating a substantial New York class action case against a party for a year only to have that party substituted out with a new party with very different facts and claims at issue.  *See, e.g., Westfall v. Kendle Int'l, CPU LLC*, 2007 U.S. Dist. LEXIS 11304, *10, 14 (N.D.W.V. February 15, 2007) (denying motion to amend to their complaint on the day Defendant's opposition was due in part because the delay "is unduly prejudicial to the defendants"); *Durfee v. Rich*, 2008 WL 324206 Case No. 02–10041, at *3 (E.D. Mich. Feb. 4, 2008) ("An amendment to a complaint prejudices a party where the amendment will require the party to prepare an additional defense strategy and expend additional resources to defend against new claims.").  In short, Plaintiffs are trying to change their entire New York class case after the parties have already litigated it.  For the past year, the Parties have litigated the New York class case of Ms. Mathieu.  After the Parties have essentially concluded that class discovery and litigation, and because Plaintiffs belatedly realized that Plaintiff Mathieu has no viable claim other than under an extreme theory roundly rejected by every federal judge within the Circuit to have considered the issue, Plaintiffs want this Court to convert Ms. Mathieu's class case into Ms. Caillo's class case.  If Ms. Caillo is not interested in being just an opt-in plaintiff here and does want to litigate her New York claims, she can do so in the *Green* matter.  If Plaintiff Caillo does not want to conserve this Court's resources by being a class member in *Green* and instead wants to be a named plaintiff, Ms. Caillo is welcome to file another case.

Because the choice for named plaintiffs for the New York class here is either (1) a plaintiff with fundamental adequacy problems (Mathieu), or (2) an improper plaintiff who is trying to become the named plaintiff in an untimely and prejudicial manner, this Court should deny Plaintiffs' New York class and, as discussed in Section C *infra*, defer such ruling to the *Green* matter where neither fundamental infirmity exists.

### C. This Court Should Not Substitute Ms. Mathieu With Ms. Caillo, Because The New York Class Action Claims Are Duplicative Of The *Green* Action That Was Filed Approximately Two Years Ago

While the Court granted Plaintiffs' first motion to amend to add Ms. Mathieu as the New York named plaintiff based on a perceived absence of prejudice and satisfaction of the "futility" standard (Dkt. 180), that standard no longer attaches, and the Court should deny Rule 23 certification here, deferring such ruling to *Green v. Humana At Home, Inc. et al.* (Civ. No.:  16-cv-07586-AJN) (referred to as "the *Green* matter").  Indeed, the Second Circuit instructs that a district court's discretion "has continually been upheld where . . . it has been exercised so as to avoid duplicative class actions . . . ."  *Becker v. Schenley Indus., Inc.*, 557 F.2d 346, 348 (2d Cir. 1977) (affirming district court's denial of Rule 23 class certification).  In *Becker*, the Second Circuit held "that the district court was correct in refusing to permit duplicative class actions . . . ."  *Id.* at 349; *see also Troche v. Bimbo Foods Bakeries Distribution, Inc.*, No. 3:11CV234-RJC-DSC, 2011 U.S. Dist. Lexis 90738 (W.D. N.C. Aug. 12, 2011) (holding that it would be the "epitome of judicial waste" to allow a second, nearly identical FLSA collective action to proceed); *Ortiz v. Panera Bread Co.,* No. 1:10-CV-1424, 2011 U.S. Dist. Lexis 85463 (E.D. Va. Aug. 2, 2011) (dismissing second-filed putative FLSA collective action where both actions "assert claims based on the same legal theories against the same Defendant, on behalf of the same group of employees and seek the same remedies"); *Copello v. Boehringer Ingelheim Pharmaceuticals,*

*Inc.*, 812 F. Supp. 2d 886, 890 (N.D. Ill. 2011) ("[P]reventing [the plaintiff] from pursuing duplicative FLSA claims here would advance, not detract from, wise judicial administration.").

Here, the *Green* matter has been pending approximately two years with a named Plaintiff who does not suffer from the same fundamental problems of Plaintiff Mathieu or Plaintiff Caillo. Consequently, under a much different standard, the Rule 23 rigorous analysis standard, this Court should determine that the New York class is far better served by having Plaintiff Green in the *Green* matter litigate the claims in New York federal court than having Plaintiff Mathieu or Plaintiff Caillo litigate those duplicative New York claims here in Connecticut federal court.  (As noted in the Section above, Ms. Caillo should not be allowed to litigate her individual New York claims because they are duplicative of the FLSA claims.)

Alternatively, this Court could stay its decision on Rule 23 class certification of the New York class until a decision is issued in the *Green* matter and a decision is issued in New York state court regarding the 24-hour rule.  *See Curtis v. DiMaio*, 46 F. Supp. 2d 206, 214 (E.D.N.Y.1999), aff'd 205 F.3d 1322 (2d Cir. 2000) ("It is well established the federal district courts possess the power to administer their dockets in a manner that conserves scarce judicial resources and promotes the efficient and comprehensive disposition of cases."). Generally, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936).

### D.   Plaintiff Caillo Not Only Fails To Cure The Fundamental Problems With Plaintiffs' Pending Rule 23 Motion, But Also Causes Additional Problems For The New York Class That Warrant Denial

Even if this Court grants Plaintiffs' Second Motion to Amend over Defendants' objection, and even if this Court does not stay Plaintiffs' New York class claims, Plaintiffs' New York class

still fails. Defendants will not repeat all the arguments made in opposition to Plaintiffs' Rule 23

Class Certification Motion but instead refer this Court to arguments previously made and

incorporate those arguments by reference.   (Defs' Opp. Class Cert, Dkt. 234.)   Additionally,

Plaintiffs' Motion for class certification of the New York class fails for the following additional

reasons.

1. **Plaintiffs' Failure To Select An Adequate Class Representative A Year Ago Demonstrates That This Class Is Not Ascertainable And Putative Class Members Lack Standing**

Putting aside that Plaintiffs should not be allowed to amend their complaint so late in the

litigation to add a new class representative, Plaintiffs' efforts clearly demonstrate two fundamental

problems that warrant denying Plaintiffs' class motion:  the proposed class is not ascertainable and

the proposed class contains putative class members without any viable claims.

(a) **The Proposed Classes Are Not Ascertainable.**

Ascertainability requires that "the class is sufficiently definite so that it is administratively

feasible for the court to determine whether a particular individual is a member." *Brecher v.*

*Republic of Argentina*, 802 F.3d 303, 304 (2d Cir. 2015) (quotations omitted).  Class membership

cannot "require a mini-hearing on the merits of each case."  *Id.* at 305.[4]  Here, Plaintiffs' last-

minute-named-plaintiff-swap exercise establishes without question that this class is not ascertainable.

If Plaintiffs' counsel cannot figure out whether a single person in the vast Rule 23 putative classes

have viable claims, it is unrealistic for Plaintiffs to contend that this Court can make that

determination on a class basis.  As noted in sub-section (b) below, Plaintiffs have failed to provide

this Court with a manner to determine on a class basis who is in the class and who is not.  Plaintiffs'

class is overbroad and claims all HHWs in New York and Connecticut, but all such HHWs do not

---

[4] *See also* 5-23 Moore's Federal Practice - Civil § 23.21 (noting that "[t]here can be no class action if the proposed class is 'amorphous' or 'imprecise'") (citation omitted).

have viable wage claims.  *See also* Defs' Opp. Class Cert, Dkt. 234 at 7-12.

Plaintiffs may claim at oral argument, as they have before, that this is a "records case" and class membership and damages can be determined based on the records.  Plaintiffs cleverly frame the case in this manner because a "records case" sounds like something that can be certified.  This Court should not be swayed by Plaintiffs' efforts for two reasons.  First, if this exercise were truly a straight-forward analysis of records, Plaintiffs would not have proposed in the first instance a New York class representative who, upon examination, lacked a viable claim.  Second, without endorsing Plaintiffs' characterizations of this case as a straight-forward "records case," the law is clear that Rule 23 class certification should be denied in so-called records cases where, like here, analysis of each class members' payroll records is necessary to determine whether a class member has liability.  *See, e.g., Velasquez v. Digital Page, Inc.*, 303 F.R.D. 435, 442-43 (E.D.N.Y. 2014) (holding that 7(i) cases are not amenable to Rule 23 class certification even when classwide decision not to pay overtime because the exemption requires a "highly individualized analysis" focused on week-by-week calculations of employees' pay and working time).

Finally, as argued in Defendants' prior opposition to class certification, Plaintiffs' case is not a records case because no records exist of the hours each putative class member worked above the hours they claim to have been paid for.  *See* Ex. B, Michael Allen Dep. at 183:21-23, 189:25-190:6, 195:11-12 (testifying that Humana does not keep records of when Live-In HHWs sleep or how long they slept); Ex. C, Daverlynn Kinkead Dep. at 62:11-14, 86:10-23 (admitting has no records of the amount of time she spent working for Humana, what tasks she performed each day or how long any such tasks took); Ex. D Joan Morant Dep. at 41:2-6 (admitting no records of how much time worked during each Live-In shift); Ex. E Claude Mathieu Dep. at 50:1-7 (conceding that amount of work actually performed would vary, though insisting that "They paid eight

13

hours").   The determination of the number of hours each Live-In HHW actually worked can therefore only be determined anecdotally and individually, by asking each Live-In HHW (or their clients) about the hours that they actually worked.   The answer to this central question will vary based on incredibly individualized facts such as: the sleeping habits of each Live-In HHW's clients, the amount of time each Live-In HHW took for breaks, each client's living arrangements, the extent each Live-In HHW was asked to perform work outside of their job description, whether each Live-In HHW lived in Defendant's client's homes, and each Live-In HHW and each client's other idiosyncrasies, preferences and habits.   *See also* Defs' Opp. Class Cert, Dkt. 234 at 12-25.

### (b) The Proposed Classes Should Not Be Certified Because They Contain Putative Class Members Without Standing

The Second Circuit is clear that "no class may be certified that contains members lacking Article III standing."   *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006).   "Article III standing requires a concrete injury even in the context of a statutory violation."   *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1543-44 (2016) (citations omitted).   If an employee, like named plaintiff Claude Mathieu here, "worked less than 40 hours, that employee would not be entitled to overtime pay and would not have proved an FLSA violation."   *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1042 (2016).   Because some putative class members never worked overtime, Plaintiffs' class definition improperly "begs the very legal question at issue in this case."   *See De La Cruz v. Gill Corn Farms, Inc.*, 2005 WL 5419056, *6 (N.D.N.Y. Jan. 25, 2005); *see also Callalari v. Blackman Plumbing Supply, Inc.*, 307 F.R.D. 67, 76-77, 82 (E.D.N.Y. 2015) ("question of whether the class members [in misclassification case] worked in excess of forty hours per week would require the Court to make individual determinations with respect to each class member, and thus does not satisfy the commonality requirement").

Here, whether plaintiff Mathieu is a named plaintiff or whether plaintiff Mathieu is only a

New York class member, the fact remains:  plaintiff Mathieu's inclusion in the New York class

(and the inclusion of other similar HHWs) dooms the New York class.  Because class members

lack Article III standing, this Court should deny class certification.

Moreover, federal courts routinely deny certification, even under the lenient first-stage

standard of the FLSA, where the prospective class contains both exempt and non-exempt

employees.  *See, e.g., Tussing v. Quality Resources, Inc.*, 2009 WL 4350253, at *3 (M.D. Fla.

2009) ("because both exempt and non-exempt employees may be members of the proposed

conditional class as defined, the Court must deny certification of the class."); *Butler-Jones v.

Sterling Casino Lines, L.P.*, 2008 WL 5274384, at *7 (M.D. Fla. Dec. 18, 2008) (proposed class

is overbroad because exempt and non-exempt employees are not "substantially similar"); *Hunter

v. Sprint Corp.,* 346 F. Supp. 2d 113, 119 (D.D.C. 2004) ("it cannot be said that the employees

classified by Sprint as exempt are advancing 'similar claims' or seeking 'substantially the same

form of relief as the named [non-exempt] plaintiffs").

Here, Plaintiff Caillo worked both Live-In shifts and non Live-In shifts.  But there are

putative class members who only worked one type of shift and not the other.  *See also* Defs' Opp.

Class Cert, Dkt. 234 at 9-12.  Consequently, these two groups are not common and Plaintiff

Caillo's claims are not typical of those class members who only worked one type of shift.  Indeed,

the putative class contains individuals who never worked any live-in shifts and were always paid

overtime.  Consequently, these HHWs also lack standing for the claims at issue.  The

reclassification and "Effective Date" dispute at the core of this case never applied to them.  Ex. F,

Robbi Matusz Dep. at 15:16-20.  Also, the Live-Ins claim that the number of hours Humana

assumed each Live-In worked during each shift did not accurately reflect the hours they worked.

The Non-Live-In HHWs do not make this "off the clock" claim either.   The Non-Live-In HHWs

that have been deposed both admit they entered all of their working hours on Defendants' Santrax system and admit they entered and have been paid or all the hours they worked.  Ex. G, Jeanne Keller Dep. at 57:1-7; Ex. H, Ruth Ann Shaw at 40:8-41:17, 49:20-23, 50:7-13.  When the Non-Live-In HHWs worked past their shift times, they reported all of that time and were paid.  Ex. G, Keller Dep. at 81:14-22; Ex. H, Shaw Dep. at 40:13-41:17; *See also* Defs' Opp. Class Cert, Dkt. 234 at 9-12.

###### 2.  Ms. Caillo Does Not Have A New York State Law Claim Because She Already Asserted Her FLSA Claim For The Same Issue And Cannot Recover Under New York Law

"Double recovery is generally disfavored" in the law.  *Rana v. Islam*, 887 F.3d 118, 122 (2d Cir. 2018) (citing *Reilly v. Natwest Mkts. Grp., Inc.*, 181 F.3d 253, 265 (2d Cir. 1999)).  For wage claims brought under the FLSA and New York law, "[i]t is well-settled that plaintiff's may not recover under both the NYLL and the FLSA for the same injury. . . ."  *Ochei*, 2013 U.S. Dist. LEXIS 71498, at *17 (citing cases); *see also Ahmed v. Subzi Mandi, Inc.*, 2014 U.S. Dist. LEXIS 115228, *11 (E.D.N.Y. May 27, 2014) ("Because Plaintiff's earliest allegation of unpaid wages is for August 1, 2012, her claim falls entirely within the FLSA statute of limitations and is entitled to damages under same.").  The Second Circuit also recently made clear that it interprets "the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct." *Rana*, 887 F.3d 118, 122.

Here, Ms. Caillo spent most of her tenure with Defendants as a non Live-In HHW where she was paid for all time worked, including overtime. *See* Ex. I, Shirley Caillo Dep. at 111:14-17 (confirming Caillo received overtime for non-live-in cases). Ms. Caillo filed her FLSA consent on September 18, 2017.  (Dkt. 169-1.)  Ms. Caillo started live-in work on her only live-in case in August 2015, which is the start of the time period for which she has claims for overtime in this

case.  (Ex. I, Caillo Depo at 119.)  As a result of the FLSA tolling in this matter, Ms. Caillo's claims at issue in this case fall entirely within the non-willful two-year FLSA statute of limitations. Moreover, Ms. Caillo asserted her claims under the FLSA first when she filed her FLSA consent. Consequently, Ms. Caillo's claims are completely covered by the FLSA, and she should not be allowed to double dip for her New York state law claims that are duplicative.  Without a New York claim, Ms. Caillo cannot represent the New York class.  If she intends to abandon her FLSA claim, this Court lacks federal question jurisdiction over her claim and her state law claim belongs in a state court.

### 3. There Can Be No Unpaid Hours Class Claim Because Proposed Plaintiff Caillo Admitted That She Understood That Her Live-In Pay Was A Day Rate And That She Received Proper Overtime for Non-Live In Work

As demonstrated in the previously filed opposition to class certification, New York federal courts consistently deny class claims like Plaintiffs' proposed "Unpaid Hours" class (i.e., alleging that Humana should have paid 24 hours for HHW's), because those claims depend upon an individualized analysis.  *See, e.g, Heredia v. Americare, Inc.*, 2018 U.S. Dist. LEXIS 86918, at *7-8 (S.D.N.Y. May 23, 2018).  Indeed, even though many New York federal courts have analyzed similar New York class allegations, every such court has denied Rule 23 class certification of such a class.  *See also* Defs' Opp. Class Cert, Dkt. 234.

Here, class certification of the proposed "Unpaid Hours" class would be especially inappropriate with Ms. Caillo as the named Plaintiff.  First, the live-in agreement for Ms. Caillo reflects that her daily rate for live-in work would be $130.  *See* Exhibit J (Caillo Live-In Agreement).  Second, and significantly, Ms. Caillo admitted in deposition that when she raised an issue about her pay with Humana, that Humana informed her that Live-Ins are paid a day rate for Live-In Work. *See* Ex. I, Caillo Dep. at 48:10-50:3 (conceding that when she questioned the

company about her pay for live-in work she was told that she was paid a day rate of $130).

In short, Plaintiff Caillo concedes she was paid for all hours worked and is not typical of the New York class as to this issue. "Typicality . . . is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Kalkstein v. Collectco, Inc.*, 2015 U.S. Dist. LEXIS 2019, *12 (E.D.N.Y. Jan. 2, 2015) (citing *Kelen v. World Fin. Network Nat'l Bank*, 302 F.R.D. 56, 65 (S.D.N.Y. July 28, 2014)). The typicality requirement demands that a Named Plaintiff's claim "is not subject to a unique defense" and is "so interrelated" with the class claims that absent class members' interests are fairly and adequately protected. *Kelen*, 302 F.R.D. at 65 (citations omitted). She also testified (consistent with Defendants' records), that she received time-and-one-half overtime for non-live-in work.[5] *See* Ex. I, Caillo Dep. at 111:14-17. Consequently, the "Unpaid Hours" New York class fails for this reason.

### 4. Plaintiffs Fail To Establish That Caillo's Managers Had Actual Or Constructive Knowledge That She Worked More Than 8 Hours In A Day

As noted in the prior opposition, for this Court to determine whether a given Live-In HHW worked hours in excess of hours paid, the Court would also have to determine whether Defendants had actual or constructive knowledge of such work in order to determine liability. *See Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 361 (2d Cir. 2011) ("To establish liability . . . on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work.") (citing cases). If each Live-In HHW failed to make Humana aware of work they performed when there were sufficient means for reporting such time, the work they performed outside of the expected

---

[5] To reiterate, Defendants have always paid hourly premium overtime to non-live-in aides in New York, even during the period for which the companionship exemption applied.

hours the Live-Ins claim they were paid for, such time is not compensable and Defendants cannot

be liable for such hours.  *See also,* Defs' Opp. Class Cert, Dkt. 234 at 22-15.  Here, Ms. Caillo did

not notify the Company that she worked beyond the eight hours of work that she was expected to

perform when she was on a Live-In shift.  *See* Ex. I, Caillo Dep. at 120-121.

### 5. The Differences Between Proposed Plaintiffs Mathieu and Caillo Highlight The Unascertainability of the Proposed New York Class

Plaintiff Mathieu worked exclusively as a live-in aid for Humana, 3 days per week, while

working 4 days per week on another live-in case through another home care agency.  Dkt. 170-2

at ¶4.  She received day rate compensation **and testified she was paid for 13 hours**. *See* Ex. E,

Mathieu Dep. At 19:19-24.  Conversely, Plaintiff Caillo worked predominantly as an hourly aid

on non-live-in cases, being paid by the hour, with premium overtime, and residing at home with

her children. *See* Ex. I, Caillo Dep. at 33:25- 34:10; 111:14-17.  In August of 2015, she accepted

a single live-in assignment, two nights per week, and for a time worked on that case at a day rate

in addition to hourly shifts for which she continued to be paid hourly with overtime.  As discussed

above, these are just two of the myriad factual circumstances that apply to HHWs in the proposed

class, who then worked differing time periods within the limitations period or the Final Rule

period.  They each have different claims regarding hours worked, hours compensated, their

understanding of their compensation agreement, and whether they resided in the home for the

extended period as contemplated in regulations.  All of these factors go into determining liability

as to any particular aid.  As Judge Pauley determined in *Heredia v. Americare, Inc.*, these

determinations cannot be reduced to a class action proceeding where liability as to the class will

be determined based solely on trial of Plaintiff Caillo's claim.  *See* 2018 U.S. Dist. LEXIS 86918,

at *10 (S.D.N.Y. May 23, 2018)

## III.    CONCLUSION

For all of these reasons as well as those articulated in Defendant's Opposition to Class Certification (dkt. 234) and Defendant's Opposition to Plaintiffs' Second Motion to Amend (dkt. 267), Defendants urge the Court to deny Plaintiffs' Motion.

Respectfully submitted,

DEFENDANTS,
HUMANA INC., HUMANA AT HOME, INC.,
AND SENIORBRIDGE FAMILY COMPANIES
(CT), INC.

By:    */s/ David R. Golder*
David R. Golder (ct 27941)
golderd@jacksonlewis.com
Noel Tripp (pro hac vice)
trippn@jacksonlewis.com
Kristi Rich Winters
kristi.winters@jacksonlewis.com
Jackson Lewis P.C.
90 State House Square, 8th Floor
Hartford, CT 06103
P: (860) 522-0404

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that, on this 1st day of October 2018, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties of record by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

*/s/ David R. Golder*
David R. Golder