# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVERLYNN KINKEAD *et al.*, *individually and on behalf of all others similarly situated*, *Plaintiffs*, | |
| v. | No. 3:15-cv-01637 (JAM) |
| HUMANA AT HOME, INC. *et al.*, *Defendants*. | |

## ORDER GRANTING IN PART AND DENYING IN PART
## MOTION FOR CLASS CERTIFICATION
## AND MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Plaintiffs are home healthcare workers employed by defendant Humana, Inc. and its corporate affiliates. They have filed this collective and class action lawsuit alleging that Humana has unlawfully failed to pay them time-and-a-half overtime wages and unlawfully failed to pay them for the number of hours that they worked. They bring their claims under the federal Fair Labor Standards Act, as well as under the Connecticut Minimum Wage Act and New York Labor Law.

Plaintiffs now move for class certification and to file an amended complaint to add an additional class representative. I will grant in part and deny in their part the motion for class certification. I will also grant their motion to file an amended complaint.

### BACKGROUND

The plaintiffs in this case are home healthcare workers (HHWs) who go to the homes of elderly and disabled people to provide "companionship services." Plaintiffs all worked for Humana, Inc. and related company defendants. Doc. #181 at 3 (¶¶ 7–10).

Humana employs HHWs to serve clients in two types of arrangements: as *live-in* and *non-live-in* caregivers. A live-in caregiver spends a 24-hour shift in a client's home, part of which time the caregiver sleeps and has meals as needed. A non-live-in caregiver spends a distinct number of hours or "shift" at a client's home (*e.g.*, an 8-hour or 12-hour shift).

The Fair Labor Standards Act (FLSA) generally requires that employers pay time-and-a-half wage rates for hours that an employee works beyond the regular 40-hour work week. *See* 29 U.S.C. § 207(a). In 2013, the U.S. Department of Labor promulgated a new regulation, 29 C.F.R. § 552.109, which expanded the class of workers eligible for overtime pay under the FLSA. Prior to the issuance of this regulation, the FLSA's overtime pay requirements did not apply to companionship service workers whose services were provided by means of a third-party employer like Humana. *See Kinkead v. Humana, Inc.*, 206 F. Supp. 3d 751, 753 (D. Conn. 2016). The new regulation eliminated this exemption with an effective date of January 1, 2015. *Ibid.*

The validity of the new regulation was put into doubt for a time by court decisions in the District of Columbia. At first, a district court in the District of Columbia vacated the rule in late 2014, but then the D.C. Circuit reversed this decision in August 2015. *See ibid.* (citing *Home Care Ass'n of Am. v. Weil*, 76 F. Supp. 3d 138 (D.D.C. 2014), *rev'd and remanded*, 799 F.3d 1084 (D.C. Cir. 2015)). In the meantime, while the regulation remained in limbo before the courts in the District of Columbia, Humana did not generally pay overtime to its companionship workers as the regulation required.

In November 2015, plaintiff Daverlynn Kinkead sued defendants Humana and its corporate affiliates, alleging that she had worked as a HHW for Humana in Connecticut and that the new regulation entitled her to overtime pay for hours that she worked from January 2015

until May 2015. Doc. #1. Kinkead based her claim on the FLSA as well as on cognate provisions of the Connecticut Minimum Wage Act.

Humana moved to dismiss Kinkead's complaint, contending that the new regulation was not effective until the D.C. Circuit issued its mandate reinstating the regulation on October 13, 2015. Doc. #14-4 at 2. In July 2016, I denied Humana's motion, concluding that—notwithstanding the intervening court challenge to the validity of the regulation—the regulation went into effect as of its intended effective date of January 1, 2015. *See Kinkead*, 206 F. Supp. 3d at 753–55.[1] In May 2017, I granted the parties' joint motion for conditional certification of a national FLSA collective action pursuant to 29 U.S.C. § 216(b). Doc. #114.

The litigation then took another turn in November 2017 when I granted leave to file an amended complaint. Doc. #181. The amended complaint added another co-plaintiff, Claude Mathieu, who worked as a home healthcare worker for Humana in New York from approximately February 2015 to July 2016 and who would act as a class representative for Humana HHWs in New York State. Doc. #181.

Under the terms of the amended complaint, both Kinkead and Mathieu seek collective and class action relief to recover unpaid overtime wages under the FLSA as well as under parallel provisions of the Connecticut Minimum Wage Act and New York Labor Law. In addition to their claims for *overtime* hours, plaintiffs also seek relief for *unpaid* hours, alleging that Humana systematically undercounted the number of hours that it paid HHWs who worked for 24-hour live-in shifts. Doc. #181 at 17–18 (¶¶ 64–73); Doc. #204-1 at 7–9.

---

[1] Although I certified the issue of the regulation's effective date for interlocutory appeal, *see Kinkead v. Humana*, 2016 WL 9453808 (D. Conn. 2016), the Second Circuit declined Humana's petition for leave to file an interlocutory appeal. Doc. #78.

Plaintiffs have now moved pursuant to Federal Rule of Civil Procedure 23 for certification of four different classes. The first two classes—referred to as the "Effective Date" classes for both Connecticut and New York—seek to be paid for overtime hours that they worked from January 1 to October 12, 2015. Doc. #204-1 at 7-8. As discussed above, this "Effective Date" period corresponds to the time when there was legal uncertainty about the enforceability and effective date of the new regulation that required third-party employers to pay overtime to their companionship service employees.

The second two classes—referred to as the "Unpaid Hours" classes for both Connecticut and New York—seek additional relief on the ground that Humana did not properly calculate the hours to be credited for those HHWs who worked 24-hour live-in shifts. These unpaid hours claims turn on plaintiffs' argument that both Connecticut and New York law impose their own statutory minimum number of hours for which any HHW who served a 24-hour live-in shift must be paid and that Humana violated the statutory minimum law by paying HHWs for only 8 hours of work per 24-hour live-in shift.

There are additional differences between the claims of the Connecticut Unpaid Hours class and the New York Unpaid Hours class. For the Connecticut Unpaid Hours class, plaintiffs seek certification of a class limited to HHWs who worked live-in shifts between January 1, 2015, and January 25, 2016. According to plaintiffs, Connecticut law entitled Connecticut workers to be paid for 13 hours per live-in shift. Even assuming some plaintiffs actually worked more than 13 hours during a 24-hour live-in shift, plaintiffs seek payment only for 13 hours as required by the statutory minimum.

For the New York Unpaid Hours class, plaintiffs seek certification of a class of HHWs who worked between November 11, 2009, and the present. Plaintiffs allege that New York live-

in workers were entitled under New York law to be paid for the full 24 hours of a live-in shift. Doc. #204-1 at 8-9.

A complication for plaintiffs' claim is that courts are broadly split on the question of whether New York law requires that a HHW who works a 24-hour live-in shift be paid for a full 24 hours or for only 13 hours. *See Downie v. Carelink, Inc.*, 2018 WL 3585282, at *9–*10 (S.D.N.Y. 2018) (citing cases). The issue is presently before the New York Court of Appeals for definitive resolution. *See Andryeyeva v. N.Y. Health Care, Inc.*, APL-2018-00038 (N.Y. argued Feb. 12, 2019).

In light of this legal uncertainty, plaintiffs base their unpaid hours claim in the alternative on a 13-hour minimum. As with the Connecticut unpaid hours claim, the New York plaintiffs seek payment only for whatever is determined to be the statutory minimum number of hours (*i.e.*, either 24 hours or 13 hours) that is required to be paid for a 24-hour live-in shift, and they do not seek an individual-by-individual determination of the number of hours actually worked by any HHWs during the course of serving a 24-hour live-in shift.

This legal uncertainty about whether New York requires a full 24 hours of pay for a 24-hour live-in shift also has implications for the New York overtime claim that is pressed by the New York "Effective Date" class. Indeed, Humana has opposed plaintiffs' motion for class certification, arguing among other reasons that, because the New York class representative plaintiff (Claude Mathieu) worked only three 24-hour live-in shifts per week, she would not be an appropriate class representative for the New York Effective Date class in the event that it is decided that New York law requires payment for only 13 hours per 24-hour live-in shift. If New York law requires payment for only 13 hours for a 24-hour live-in shift, Mathieu's total hours

would amount to only 39 hours and fall below the 40-hour threshold for overtime pay. *See* Doc. #234 at 12–14.

In light of this challenge to Mathieu as an appropriate representative, plaintiffs have moved in the interim to file a second amended complaint to add Shirley Caillo as a representative plaintiff for the New York classes alongside Mathieu. Doc. #256.[2] Caillo is a member of the FLSA collective that I conditionally certified earlier in this litigation. Doc. #169-1 at 1. Caillo alleges that she worked over 40 hours per week for Humana under either interpretation of the New York law that governs the calculation of hours to be paid for a 24-hour live-in shift. Doc. #256-1 at 4 (¶ 6). Caillo also worked some non-live-in shifts, *ibid.*, and during discovery, testified that she had received overtime pay for at least some of that work. Doc. #279-2 at 54.

At oral argument, the parties agreed—at least for class certification purposes and in light of discovery—that defendants paid overtime during the Effective Date period to their New York workers whose work week was composed entirely of non-live-in shifts. Doc. #291 at 15–16, 44–45. The parties do not otherwise dispute that overtime was not paid to other workers during the Effective Date period from January 1 to October 12, 2015.

Mathieu and Caillo both signed Humana's "Caregiver Agreement" form when they started at Humana. Doc. #234-9; Doc. #279-2 at 59–60. The Caregiver Agreement stated that each HHW would be paid $10 per hour for each non-live-in shift, and $130 per day for each 24-hour live-in shift. Doc. #234-9 at 1; Doc. #279-2 at 59. The Caregiver Agreement also specified that HHWs were "paid for 8 hours of intermittent work per day at the Live-in pay rate." Doc. #234-9 at 1; Doc. #279-2 at 59.

---

[2] The proposed second amended complaint is otherwise substantively identical to the first amended complaint. *See* Doc. #256-2.

During the course of depositions, Humana executives suggested that Humana used its Caregiver Agreements nationwide, Doc. #234-5 at 17, and that in any event, Humana had a general policy of counting each 24-hour shift as only eight hours of work, Doc. #234-2 at 4–5. Humana also claims that it paid its HHWs $130 per day, and in doing so satisfied all applicable wage laws. Doc. #234 at 12–13.[3]

### DISCUSSION

Rule 23 of the Federal Rules of Civil Procedure permits a federal court to certify a class action by which named plaintiffs may litigate claims on behalf of a class of similarly situated aggrieved class members. "Class actions under Rule 23 of the Federal Rules of Civil Procedure are an exception to the general rule that one person cannot litigate injuries on behalf of another." *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 93 (2d Cir. 2018). On the other hand, no class may be certified under Rule 23 if it is apparent that any member of the proposed class lacks Article III standing. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 263–64 (2d Cir. 2006).

In order for the Court to grant plaintiffs' motion to certify a class under Rule 23(b)(3), plaintiffs must satisfy seven requirements. First, plaintiffs must satisfy the four threshold requirements of Rule 23(a)—numerosity, commonality, typicality, and adequate representation of the class. *See In re Petrobras Secs.*, 862 F.3d 250, 260 (2d Cir. 2017). Next, plaintiffs must satisfy two more requirements under Rule 23(b)(3)—predominance and superiority. In addition, plaintiffs must also satisfy "an implied requirement of ascertainability" to ensure that the class is

---

[3] This lawsuit is not the only litigation over Humana's pay policies. A group of plaintiffs in the Southern District of New York have also sued Humana, alleging unlawful failure to pay overtime and payment of less than the legal minimum wage. *See Green v. Humana at Home, Inc.*, 2017 WL 9916832 (S.D.N.Y. 2017) (rejecting Humana's "Effective Date" argument). The plaintiffs in that case have moved for class certification, and that motion is pending.

sufficiently definite so that the Court can determine whether a particular individual is a member. *See Petrobras*, 862 F.3d at 260. I will review each of these requirements in turn to determine whether to grant plaintiffs' motion for class certification.

### Standing

It is axiomatic that federal courts lack jurisdiction over a lawsuit unless a plaintiff alleges a concrete and particularized injury-in-fact that is fairly traceable to a defendant's wrongful conduct and redressable by a court order. *See, e.g.*, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Crupar-Weinmann v. Paris Baguette Am., Inc.*, 861 F.3d 76, 79 (2d Cir. 2017). "The filing of suit as a class action does not relax this jurisdictional requirement." *Denney*, 443 F.3d at 263. Accordingly, as the Second Circuit has made clear, not only must the named plaintiff in a class action have individual standing to sue, but "no class may be certified that contains members lacking Article III standing." *Id.* at 264. While each member of a class is not required to submit evidence of personal standing, *id.* at 263, the class nonetheless "must . . . be defined in such a way that anyone within it would have standing." *Id.* at 264. Of course, if the rule were otherwise, then class actions would become a means for courts to award money and relief to multitudes of class members who were never injured at all.

Humana argues that Mathieu lacks standing to assert any overtime claims because, if New York law is interpreted to require payment for only 13 hours of a 24-hour live-in shift, then Mathieu's claim to have worked three live-in shifts per week would result in only 39 hours per week, which is below the overtime threshold. Although Humana might eventually be proved correct on this legal issue, Mathieu is entitled for purposes of a standing inquiry to the benefit of her interpretation of the law under which she has alleged an injury. "Where a plaintiff alleges a concrete, economic injury resulting from a defendant's violation of a statutory provision, the

plaintiff has alleged a sufficient injury to establish Article III standing, regardless of the merits of the plaintiff's statutory interpretation." *Dubuisson v. Stonebridge Life Ins. Co.*, 887 F.3d 567, 574 & n.10 (2d Cir. 2018). The right interpretation of New York law is a question for the merits of Mathieu's claim, but no matter how that question is resolved, she has standing for now to pursue it.

Humana also challenges Mathieu's standing to assert a claim for unpaid time on behalf of the New York Unpaid Hours class, again on the theory that Mathieu's $130 daily rate satisfied the minimum wage provisions of the NYLL if she only needed to be credited with 13 hours of work per 24-hour shift. Doc. #234 at 13. This argument is misplaced for the same reason: that the correct statutory interpretation is a question for the merits, not for standing. *See Dubuisson*, 887 F.3d at 574.

Even though Mathieu has standing to assert a claim for overtime, it is clear that plaintiffs have overbroadly defined the Effective Date classes to include HHWs who would have no standing to assert an overtime claim. Plaintiffs' proposed Effective Date classes include all of Humana's HHWs who were employed in Connecticut and New York from January 1, 2015, to October 12, 2015, but without any further requirement that each class member have worked more than 40 hours per week. Doc. #204 at 1. If an employee has not worked more than 40 hours per week, then the employee plainly lacks standing to pursue a claim against the employer for failure to pay overtime. Plaintiffs acknowledged this shortcoming at oral argument. *See* Doc. #291 at 6–8.

Still, "[a] court is not bound by the class definition proposed in the complaint," *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993), and Humana's objection to the overbroad proposed definition of the Effective Date classes "is readily met by redefining the classes to include only

those persons who worked more than 40 hours per week." *Strauch v. Comput. Scis. Corp.*, 322 F.R.D. 157, 180–81 (D. Conn. 2017). I will therefore narrow plaintiffs' proposed Effective Date classes to include only those Humana HHWs in Connecticut and New York who worked over 40 hours in a week.

In short, I conclude that the Effective Date classes (as more narrowly defined) and the Unpaid Hours classes as defined are sufficient for standing purposes because they are defined to include only members who have standing to pursue a claim on the basis of plaintiffs' interpretation of the underlying law.

### *Numerosity*

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." The Second Circuit has ruled that "[n]umerosity is presumed at a level of 40 members," *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995), and Humana has not contested the numerosity of any of the proposed classes.

The parties stipulated to a conditionally certified FLSA collective that included all of Humana's HHWs who worked more than 40 hours in a workweek during the Effective Date period, *see* Doc. #113-1 at 3 (¶ 4(a)), and Humana gave plaintiffs a list identifying 48 Connecticut HHWs and 189 New York HHWs who fit those criteria. *See* Doc. #206-8. This straightforwardly shows that the Connecticut Effective Date class is large enough.

But, as I note below, I will limit the New York Effective Date class just to HHWs who worked at least one live-in shift (excluding those who worked entirely non-live-in shifts). Nonetheless, I am satisfied that the New York Effective Date Class is sufficiently numerous. When plaintiffs filed their motion for class certification, 190 members of the FLSA collective had filed FLSA opt-in consent forms, and of those who worked for Humana in New York, 93%

had worked live-in shifts. Doc. #205 at 1–2 (¶¶ 3, 6). It is well-established that "a court may make common-sense assumptions" when determining numerosity, *Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 119 (E.D.N.Y. 2015); *Russo v. CVS Pharm., Inc.*, 201 F.R.D. 291, 295 (D. Conn. 2001), and as such, I find it reasonable to conclude that of the 189 New York HHWs who worked more than 40 hours in a workweek during the Effective Date period, at least 40 of them must have worked live-in shifts. There are likely even more New York Effective Date class members if, as plaintiffs contend, Humana calculated its list by crediting HHWs with only eight hours of work per 24-hour shift. *See* Doc. #204-1 at 15.

I am also persuaded that the Unpaid Hours classes are sufficiently numerous. The New York Unpaid Hours class, like the New York Effective Date class, consists of Humana HHWs who worked live-in shifts. Doc. #204-1 at 9–10. But the Unpaid Hours classes are more expansive, including all Humana HHWs who worked live-in shifts for which they were allegedly undercredited and underpaid, and the New York Unpaid Hours class includes HHWs who worked for Humana outside the Effective Date period. Doc. #204-1 at 17. Thus, insofar as I find the New York Effective Date class to be sufficiently numerous, so too do I find the New York Unpaid Hours class to satisfy the numerosity requirement.

The Connecticut Unpaid Hours class presents a slightly more complicated case. While the Connecticut Effective Date class includes all HHWs who worked more than 40 hours, the Connecticut Unpaid Hours class extends only to HHWs who worked live-in shifts. Doc. #204-1 at 10. Plaintiffs found that of the Connecticut HHWs who opted into the FLSA collective, 70% had worked live-in shifts. Doc. #205 at 2 (¶ 7). Applying that percentage figure to the 48 Connecticut HHWs who are part of the Connecticut Effective Date class would indicate that about 33 Connecticut HHWs had worked live-in shifts. Doc. #204-1 at 15 n.3. And as with the

New York classes, the Connecticut Unpaid Hours class is more temporally expansive than the Connecticut Effective Date class. Consequently, the Connecticut Unpaid Hours class probably has more than 40 members.

Still, I do not need to speculate as to how big the Connecticut Unpaid Hours class ultimately is, because it would be sufficiently numerous even below the presumptive numerosity threshold of 40 members. "[T]he numerosity inquiry is not strictly mathematical," and also includes factors such as "(i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members." *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 120 (2d Cir. 2014). Those factors weigh in favor of class certification here. A number of class members have already joined the FLSA collective in this case, *see* Doc. #204-1 at 14–15 (discussing using FLSA collective information to estimate class size), the class members live all across Connecticut, and their lawsuit is for pay from low-wage work. *See Robidoux*, 987 F.2d at 936 (statewide distribution favors class certification); Doc. #206-8 (describing HHWs located in, *e.g.*, New London, Windsor, and Bridgeport, Connecticut). In short, I find that the Connecticut Unpaid Hours class is large enough to certify, as are the other three proposed classes.

### *Commonality*

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Each class must therefore involve a common question of law or fact capable of resolving a central issue in the validity of each class member's claim at once. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011).

At least one common question binds together each of the proposed classes. For both the Connecticut and New York Effective Date class members to succeed on their claim, they must make common showings including (1) that 29 C.F.R. § 552.109 applies to Humana's HHWs, (2) that the rule took effect on January 1, 2015, and (3) that Connecticut and New York's state labor laws each incorporated the FLSA's—and by extension, the rule's—coverage provisions. *See* Doc. #181 at 8–9 (¶¶ 32–39) (describing effective date claims as turning on effective date of Department of Labor's rule and state incorporation thereof). Beyond these common questions of law, the Connecticut and New York Effective Date classes also depend on common questions of fact, like whether Humana had a policy of paying its HHWs overtime during the Effective Date period. *See* Doc. #206-7 at 7–8.

The Unpaid Hours classes also share common questions of law and fact. To succeed on its claims, the Connecticut Unpaid Hours class must show (1) that Connecticut law required Humana to credit and pay HHWs like plaintiffs for 13 hours of work per live-in shift, and (2) that Humana only credited and paid plaintiffs for eight hours. *See* Doc. #181 at 17 (¶¶ 68–70); Doc. #204-1 at 8–9, 18; Doc. #206-5 at 5–6. Similarly, the New York Unpaid Hours class's claims require determining (1) whether New York law requires an employer to credit HHWs with more than eight hours of work per live-in shift, and (2) that Humana only credited the New York plaintiffs with eight hours of work per live-in shift. *See* Doc. #181 at 18 (¶¶ 71–73); Doc. #204-1 at 8–9, 18; Doc. #206-5 at 3–6. In short, I am satisfied that common legal and factual questions bind together all four proposed classes.

### *Typicality & Adequacy*

To meet Rule 23(a)(3)'s typicality requirement, a plaintiff generally must show that "each class member's claim arises from the same course of events and each class member makes

similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). As happens here, the typicality requirement can merge somewhat with the adequacy-of-class-representative requirement, *see Wal-Mart*, 564 U.S. at 349 n.5, but at its core asks whether "the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999) (citations and internal quotation marks omitted), *overruled on other grounds*, *In re Initial Pub. Offerings Secs. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006). Where "a plaintiff provides proof of a common policy or practice on the part of the defendant to underpay its workers, courts frequently find typicality to be satisfied." *Rivera v. Harvest Bakery Inc.*, 312 F.R.D. 254, 272 (E.D.N.Y. 2016); *see also Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (upholding grant of class certification where declarations, depositions, and tip sheets showed that class members were subject to same tipping policies).

The Connecticut classes satisfy the typicality requirement. In her allegations as the named class representative for the Connecticut Unpaid Hours class, Kinkead claims Humana credited her and its other live-in HHWs with fewer hours than was legally required for each shift. Doc. #181 at 17–18 (¶¶ 68–70); Doc. #204-1 at 8–9. Kinkead claims Humana applied this policy to all its HHWs in Connecticut, and Humana officials claimed in deposition testimony that the company maintained firmwide policies and systems for recording a fixed number of hours that each HHW worked on each shift. *See* Doc. #206-5; Doc. #234-2 at 4–5; Doc. #234-5 at 17; *see also* Doc. #234 at 21 n.10 (discussing common policy changes that "applied to all live-ins in New York and Connecticut").

14

I am also satisfied that Kinkead is typical of the Connecticut Effective Date class. Kinkead alleges that Humana did not pay her and all its other HHWs in Connecticut overtime wages for the hours they worked beyond 40 hours per week during the Effective Date period. Doc. #181 at 17 (¶ 69).

In its initial brief opposing class certification, Humana disputed Kinkead's typicality as a class representative of non-live-in HHWs in Connecticut, arguing that its policy was to pay non-live-in HHWs for overtime during the Effective Date period. Doc. #234 at 14–16. That would imply Humana did not have the same compensation policy for both Kinkead and the non-live-in HHWs in Connecticut.[4] But, as the parties agreed at oral argument, further discovery has revealed that Humana had a policy of paying none of its Connecticut HHWs overtime wages— whether or not they worked live-in shifts. Doc. #291 at 15–16, 44–45. Accordingly, I am satisfied that both live-in and non-live-in HHWs' overtime claims in Connecticut arise from the same Humana policy, and thus that Kinkead's Effective Date claims are typical of those brought by the whole Effective Date class.

The basic outline of the typicality analysis for the New York classes is the same. Mathieu claims that she worked overtime during the Effective Date period for which she went unpaid, and that Humana did not credit her with and pay her for the legal minimum number of hours for the live-in shifts she worked. Doc. #181 at 18 (¶¶ 71–73). But because of several key distinctions, I am not persuaded that Mathieu is typical of the New York Effective Date class.

---

[4] The parties' filings left an unclear record as to whether Humana had paid its non-live-in HHWs overtime. Humana pointed to deposition testimony from executive Robbi Matusz to claim that Humana had a policy of doing so, *see* Doc. #234 at 15, but the portion of Matusz's testimony it cited was not submitted to the Court. Plaintiffs pointed to a later portion of the same testimony to rebut Humana's argument, *see* Doc. #241 at 10, but did not submit a record of that testimony. Because the parties have resolved this factual ambiguity at argument, it is not necessary to do so here.

First, while the parties have agreed for purposes of this motion that Humana did not pay any of its Connecticut HHWs for overtime, the parties also agree that Humana paid its New York HHWs for overtime only in weeks where they solely worked non-live-in shifts. Doc. #291 at 15–16, 44–45. As such, only New York HHWs who worked *at least one or more live-in shifts* would be subject to what Mathieu alleges to be the wrongful policy of denying overtime pay for live-in work in excess of 40 hours per week. Because Mathieu and New York HHWs who worked only non-live-in shifts were subject to different policies, Mathieu is atypical of those HHWs. Accordingly, I will limit the New York Effective Date class only to HHWs who—like Mathieu—worked at least one 24-hour live-in shift during the Effective Date period.

Second, although I rejected Humana's challenge to Mathieu's standing based on how many hours she alleges she worked, Humana's argument does have merit as a matter of typicality and adequacy. *See* Doc. #234 at 14 (characterizing standing issues around Mathieu as questions as also constituting adequacy and typicality problems). "Class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000). Humana can assert a unique defense against Mathieu: if Humana is right about the New York Labor Law (that it does not require payment for a full 24 hours for a 24-hour live-in shift), Mathieu cannot allege on the basis of her three 24-hour live-in shifts in a week that she worked any overtime at all—let alone that Humana wrongfully failed to pay her overtime. Mathieu's Effective Date claim would sink as a matter of law without any need to look to the facts of how Humana paid her—even as other members of the Effective Date class might easily allege that they worked over 40 hours per week, even assuming that they are credited for only 13 hours per 24-hour live-in shift.

16

Because of these complications, plaintiffs have moved to amend their complaint a second time to add Shirley Caillo as another representative of the New York classes. This proposed amendment comes well after the amended pleading deadline, so plaintiffs must show good cause to modify the deadline to do so. *See* Fed. R. Civ. P. 16(b)(4); *BPP Ill., LLC v. Royal Bank of Scotland Grp. PLC*, 859 F.3d 188, 195 (2d Cir. 2017). The primary consideration in determining good cause is "whether the moving party can demonstrate diligence," as well as "other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

Humana argues that plaintiffs have not been diligent because the federal court decisions interpreting New York law unfavorably to Mathieu put them on notice about Mathieu's risks as a class representative long ago. Doc. #267 at 10–11. I do not agree. In the class action context, plaintiffs can show sufficient diligence if they move to amend once they become aware of the "need to fill a class representative gap." *In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 5504531, at *1–*2 (S.D.N.Y. 2017); *see also, e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, 2005 WL 3304605, at *3 (S.D.N.Y. 2005) ("The putative class members' rights in this litigation were protected as of the filing date of the complaint . . . should the class representative become inadequate, substitution of an adequate representative is appropriate to protect the interests of the class.").[5]

---

[5] Humana relies on *In re Milk Products Antitrust Litigation*, 195 F.3d 430 (8th Cir. 1999), to argue that carelessness in class representative selection defeats a showing of diligence in moving to amend. Although the district court in *Milk Products* denied the plaintiffs' motion to amend after claims in their second amended complaint had been dismissed, the plaintiffs were already on notice about class representatives' inadequacies from the dismissal of their first amended complaint. 195 F.3d at 438. Moreover, the Eighth Circuit also affirmed the district court's denial of the plaintiffs' motion to amend because of factors other than diligence—namely, that granting the motion "would have required reopening class discovery and further delay." *Ibid.*

Here, decisions from the New York Appellate Division support plaintiffs, and plaintiffs have not yet received a decision about the scope of New York law that would defeat Mathieu's claims. Indeed, if the New York Court of Appeals rules in favor of plaintiffs' interpretation of New York law, that interpretation would bind this Court in plaintiffs' favor. But because of the possibility that the New York Court of Appeals will not rule in plaintiffs' favor, they proactively and diligently seek to amend the complaint so Caillo can proceed as a class representative if Mathieu cannot. *See* Doc. #291 at 28–29.

Doing so will not unduly prejudice Humana. Although Humana conducted discovery on the assumption that Mathieu would be the lead New York plaintiff, and had to re-brief the class certification motion and re-prepare for oral argument, *see* Doc. #267 at 16–17, delay and litigation expense alone do not constitute sufficient prejudice. *See Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017). Significant new discovery may constitute prejudice, *ibid.*, but Humana has not argued that such discovery would be necessary. *See* Doc. #267 at 16–17. Indeed, Humana deposed Caillo prior to the extended discovery deadline in this case. *See* Doc. #264 (extending discovery deadline to September 30, 2018); Doc. #279-2 at 47 (indicating Caillo deposition took place on September 12, 2018).

"Scheduling orders are not the Code of Hammurabi." *Coale v. Metro-North R.R. Co.*, 2009 WL 4881077, at *3 (D. Conn. 2009). Because plaintiffs seek to amend their complaint to protect the interests of the class, because they demonstrated diligence in requesting amendment before any decision from the New York Court of Appeals that may be adverse to their claims, and because amendment of the complaint will not prejudice Humana, I will grant the motion to amend and allow plaintiffs to add Shirley Caillo as an additional representative of the New York classes.

Even so, Humana raises several objections to Caillo's suitability as a class representative. Humana first argues that it compensated Caillo differently for her live-in work than it did for the HHWs who worked non-live-in shifts. *See* Doc. #279 at 21–22. But, as I discussed above, because Humana had a policy of paying overtime to HHWs who worked only non-live-in shifts in New York, I have excluded those HHWs from the New York Effective Date class, which removes the sticking point for this concern.

Next, Humana argues that Caillo cannot recover on any of her New York law claims because she already joined the FLSA collective in this case. Doc. #279 at 22–23. Humana contends that this would constitute impermissible double recovery. *Ibid.* This argument is misplaced. It is true that "double recovery is generally disfavored," and that a plaintiff cannot recover twice for a violation of the FLSA and NYLL. *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018). But the rule against double recovery is about calculating damages, not proving liability. It is well established that plaintiffs can pursue alternative legal theories of their claim—including asserting parallel FLSA collective claims and state law class actions. *See* Fed. R. Civ. P. 8(d)(2); *Shahriar*, 659 F.3d at 244 ("[b]ecause FLSA and NYLL claims usually revolve around the same set of facts, plaintiffs frequently bring both types of claims together in a single action").

Humana further argues that Caillo is an atypical representative of the New York Unpaid Hours class because, Humana claims, she accepted a $130 day rate for her 24-hour live-in shift work. Doc. #279 at 23–24 (citing Doc. #279-2 at 53–54, 59–60). Humana's argument turns on the theory that Caillo knew about Humana's pay policies and she accepted them because she kept working for Humana. Doc. #283 at 12 (citing *Kronick v. L.P. Thebault Co., Inc.*, 892 N.Y.S.2d 895, 895–96 (App. Div. 2010)). Humana claims it therefore has a unique defense against Caillo's claims. Even if I assume for the sake of argument that this contract doctrine is a

meritorious tort defense, Humana points to its caregiver agreement as putting Caillo on notice about its pay policies. *See* Doc. #279-2 at 59–60. Mathieu signed the same type of standardized form, Doc. #234-9 at 1–2, and; therefore, because the caregiver agreement is boilerplate and it was standard for New York HHWs to sign it, Humana's notice defense is at best a classwide merits issue that there is no warrant to resolve at the class certification stage.

Humana also argues Caillo is an inadequate and atypical representative for the New York classes because she did not put Humana on notice about her underpaid work. Doc. #279 at 24–25 (citing Doc. #279-2 at 55–56; *Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 361 (2d Cir. 2011) (requiring plaintiff on claim for unpaid overtime to show that employer had actual or constructive notice of overtime)). But the trouble with this argument is that the New York plaintiffs—Caillo included—are not seeking to recover on an individualized theory of how many hours of work they performed for each 24-hour live-in shift beyond the statutory minimum. Nor do they argue that Humana's pay policies were deficient because they did not account for *actual* work performed beyond some fixed number of hours during a 24-hour live-in shift. Doc. #241 at 12–13 n.4.

Rather, the New York Unpaid Hours plaintiffs argue that they were paid for only 8 hours for each 24-hour shift they worked and seek to recover based solely on the *statutory* minimum number of hours worked for shift (whether that be 13 hours or 24 hours). Likewise, the New York Effective Date plaintiffs seek to recover overtime solely if the statutory minimum number of hours for each 24-hour shift—combined with their recorded hours for any non-live-in shift— exceeded 40 hours in a week. *Ibid.*

The evidence supports that Humana had common policies and recordkeeping with regards to those aspects of its HHWs' work. *See* Doc. #206-5 at 5; Doc. #234-2 at 4–5; Doc.

#234-5 at 17, 34–40. Accordingly, if Humana wants to argue that it did not know about the hours for which plaintiffs seek to recover, it can do so against Caillo and other New York class members on a classwide basis. Thus, Humana's notice defense against Caillo is not a unique one, and so I am satisfied that whether Mathieu or Caillo proceeds as a New York class representative, the classes will have a representative who is typical of each class and who can adequately represent the class members.[6]

### Predominance

Even having satisfied all the elements of Rule 23(a), any class for an opt-out damages action like this one must also meet the predominance requirement of Rule 23(b)(3). Rule 23(b)(3)'s predominance requirement "is satisfied if resolution of some of the legal or factual questions that qualify each member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 538 (2d Cir. 2016); *see Langan*, 897 F.3d at 96 (same).

As to the Effective Date classes, Humana argues that numerous individually-driven questions of fact are necessary to determine liability for the Effective Date class members' claims. Doc. #234 at 18. Humana points to HHWs' clients' sleeping habits, whether each HHW lived in their client's home, how much break time each HHW had, whether each HHW had to stay on-site throughout each shift, and each HHW's and client's idiosyncratic preferences and habits. *Id.* at 22–27. Humana argues that these factors are important because they each go to the

---

[6] As I discussed above, most adequacy issues in this motion merge with the question of typicality. Still, I will note that in addition to ensuring that a class representative's interests track those of other class members, Rule 23 also requires that a class representative's "attorneys are qualified, experienced and able to conduct the litigation." *Baffa*, 222 F.3d at 60. Humana does not challenge the qualifications of plaintiffs' counsel here, and counsel's extensive background in similar wage and hour cases satisfies me that they are qualified, experienced, and able to conduct the litigation on behalf of the putative classes. *See* Doc. #205 at 2–4 (¶¶ 8–19).

question of how many hours each HHW *actually* worked—and consequently whether they were working any hours for which they were undercompensated. *Id.* at 26–27. By the same token, Humana argues, whether each HHW met her burden to inform Humana about any extra hours she worked is also an individualized question. *Id.* at 27–30.

These arguments misunderstand plaintiffs' case. The principal liability question for the Effective Date classes is whether the law required Humana to pay class members overtime wages for the overtime hours they worked, and whether Humana did so. That is a question about the scope of the new regulation, 29 C.F.R. § 552.109, and its incorporation into Connecticut and New York law, as well as about Humana's pay policies—all issues that can be resolved on a classwide basis.

True enough, the determination of how many overtime hours that any one class member worked—and therefore how much any class member can themselves recover—is an individualized inquiry. But, as the Second Circuit has made clear, the fact that damages may have to be ascertained on an individual basis is relevant to the predominance inquiry but is not alone a sufficient basis to defeat class certification. *See Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405–08 (2d Cir. 2015). And if the individualized calculation of damages may be based simply on mechanical calculations from the employer's own payroll records (as distinct from conducting an evidentiary reconstruction from primary witness testimony about how many hours each class member worked), this cuts more strongly against a conclusion that individualized issues of damages will predominate. *See, e.g.*, *Ramirez v. Riverbay Corp.*, 39 F. Supp. 3d 354, 369 (S.D.N.Y. 2014). Here again, plaintiffs only seek recovery for the statutory minimum number of hours they worked based on each shift as recorded in Humana's own pay records.

Accordingly, I am satisfied that any individual damages determinations will not defeat predominance of classwide issues.

Humana misplaces its reliance on decisions denying class certification where plaintiff employees did not—as they do here—disclaim reliance on evidence of actual hours worked beyond those reflected in the employer's own payroll records and as leveled-down to the statutory minimum hours-to-be credited requirement. *See, e.g.*, *Heredia v. Americare, Inc.*, 2018 WL 2332068, at *3–*4 (S.D.N.Y. 2018) (no predominance for HHW class plaintiffs asserting overtime and 24-hour minimum wage claims jointly where their theory of recovery "requires a tailored review of each Plaintiff's meal breaks and hours slept, varying down to the particular shift"); *Shillingford v. Astra Home Care, Inc.*, 293 F. Supp. 3d 401, 417–18 (S.D.N.Y. 2018) (no predominance for HHW class where individualized determination necessary concerning employer deductions for sleep and meal breaks). And while the court in *Severin v. Project OHR, Inc.*, 2012 WL 2357410 (S.D.N.Y. 2012), declined to certify an overtime class based on New York law, it did so before the DOL even promulgated 29 C.F.R. § 552.109, when New York law mandated an individualized look into whether the FLSA's companionship services exemption applied to the plaintiffs. *Id.* at *6–*7.

Here, however, plaintiffs' case for the Effective Date overtime classes proceeds on the theory that 29 C.F.R. § 552.109 ensures that all plaintiffs fall outside the companionship services exemption. Indeed, two New York federal courts that have denied certification for minimum wage classes because they disagreed with the plaintiffs' 24-hour payment interpretation of the New York Labor Law nonetheless certified overtime classes because they found that common questions about the effective date of 29 C.F.R. § 552.109 predominated over individual ones.

23

*See, e.g.*, *Downie v. Carelink, Inc.*, 2018 WL 3585282, at \*8–\*10 (S.D.N.Y. 2018); *Rodriguez de Carrasco v. Life Care Servs., Inc.*, 2017 WL 6403521, at \*9 (S.D.N.Y. 2017).

At best, Humana may mean to argue that, because 12 N.Y.C.R.R. § 142-2.2 sets a 40-hour overtime threshold for non-residential employees and a 44-hour overtime threshold for residential ones, the Court will need to undertake an individualized inquiry into whether plaintiffs are residential employees in order to determine how many hours each class member had to work to qualify for overtime. Doc. #234 at 21; *Shillingford*, 293 F. Supp. 3d at 418–19 (declining to certify class for, *inter alia*, this reason); *see also Heredia*, 2018 WL 2332068, at \*4 (citing *Shillingford* for same).

Humana suggests that the question of whether its HHWs are residential employees "complicat[es] the issue" and is difficult to determine on a class-wide basis. Doc. #234 at 7, 13, 24 n.12. I do not agree. The New York regulation, 12 N.Y.C.R.R. § 142-2.1(b), defines a residential employee as "one who lives on the premises of the *employer*" (emphasis added). New York courts have held that a sleep-in home attendant's clients "possess few of the attributes commonly associated with employers" when the client is not responsible for setting the duties of, paying, hiring, or firing the worker. *Settlement Home Care v. Indus. Bd. of App.*, 542 N.Y.S.2d 346, 348 (App. Div. 1989); *see also Severin v. Project OHR, Inc.*, 2011 WL 3902994, \*5 (S.D.N.Y. 2011) ("when a home attendant is not employed by the person whom they assist, but by a third party vendor . . . she does not 'live in the home [of her] employer'" (quoting *Settlement Home Care*, 542 N.Y.S.2d at 348)).

Humana has not claimed that its healthcare clients had any of these employer responsibilities, and only argues that the residential status determination is relevant because of how long some HHWs spent in their clients' homes. *See* Doc. #234 at 12–13, 21, 24 & n.4, n.6,

n.12; Doc. #279 at 25; Doc. #283 at 13–14. Moreover, Humana's own filings make clear that it was Humana that assigned its HHWs' cases, Doc. #234-5 at 6–7, set their working conditions, Doc. #234-1 at 43–45, controlled their pay, Doc. #234-2 at 13; Doc. #234-5 at 6–7, and made termination decisions, Doc. #234-5 at 24–25. Accordingly, although the *Shillingford* court lacked the documents before it to determine the plaintiffs' residential status, *see* 293 F. Supp. 3d at 418, it is clear from the filings before me that Humana's HHWs here were non-residential employees, such that there is no individualized question to be resolved about residential or non-residential status.

Humana's remaining predominance arguments are also unpersuasive. Humana argues that HHWs did not all perform the same duties with each client, and that the question of whether HHWs reported any excess hours they worked to Humana also requires an individualized examination. Doc. #234 at 26–30. The concern about reporting is irrelevant here for the same reasons as discussed in the typicality analysis—plaintiffs' claims are only for "on-the-clock" recorded time that totaled in excess of 40 hours per week, with 24-hour shifts counting only for the minimum number of hours mandated by statute (*i.e.*, either 13 hours or 24 hours).

Having previously paid each of the employees on the basis of what shifts and hours they reported, there is no basis now for Humana to contend that it has reason to believe that particular employees misreported their shifts or hours and for which an individualized inquiry will be necessary. Humana's conclusory assertion that different HHWs performed different duties similarly misses the mark. *See* Doc. #234 at 26. This is a lawsuit about Humana's common pay policies for what Humana's submissions attest were a common class of workers. *See* Doc. #234-5 at 4–7. Accordingly, I am persuaded that common issues predominate over individual ones as to the Effective Date classes.

The predominance analysis for the Unpaid Hours classes is largely similar. It is of course true that many federal courts in New York have declined to certify classes asserting unpaid hours-style claims under the NYLL because of the individualized inquiries they would require. *See Downie*, 2018 WL 3585282, at \*8–\*9; *Heredia*, 2018 WL 2332068, at \*4; *Shillingford*, 293 F. Supp. 3d at 418–19; *Rodriguez de Carrasco*, 2017 WL 6403521, at \*9; *Severin*, 2012 WL 2357410, at \*11.

The *Severin* court adopted the NYSDOL's interpretation of the NYLL requiring that HHWs be paid for at least 13 hours of work per 24-hour shift. *See* 2012 WL 2357410, at \*8–\*9. Following the NYSDOL, it concluded that an individual plaintiff could show she was entitled to more than 13 hours of pay if she had in fact worked more hours. *Id.* at \*10. But because that determination was highly individualized, individual issues dominated collective ones as to the *Severin* plaintiffs' claim that they should have been paid for 24 hours of work per live-in shift. *Ibid.* And while New York's Appellate Division has interpreted the NYLL to require a 24-hour minimum per 24-hour shift, federal courts in New York have favored the *Severin* court's interpretation. *See Downie*, 2018 WL 3585282, at \*9–\*10 (collecting cases and following *Severin*). But a key distinction divides those federal cases and the one here.

The courts following *Severin* have consistently declined to certify classes with claims brought by plaintiffs (generally represented by the same counsel post-*Severin*) who, like the plaintiffs in *Severin*, generally staked their theory of recovery to a claim that New York law required payment for a full 24-hours for a 24-hour shift. *See Downie*, 2018 WL 3585282, at \*10; *Heredia*, 2018 WL 2332068, at \*1; *Shillingford*, 293 F. Supp. 3d at 405; *Rodriguez de Carrasco*, 2017 WL 6403521, at \*9. Here, plaintiffs seek to recover based on the theory that Humana paid them for eight hours of work per live-in shift when they were entitled to either 13 or 24, and they

26

only seek to recover up to whichever of those levels constitutes the statutory minimum for all HHWs, regardless of how many hours an HHW actually worked. They are not pursuing the sort of work-in-fact theory that would have been necessary for the plaintiffs to recover for 24 hours of work in *Severin* and its progeny.

*Rodriguez de Carrasco* is the only case in the *Severin* line where a plaintiff pursued a claim that the defendants had paid her for under 13 hours of work, but the court there declined to certify the class because the plaintiff failed to produce sufficient evidence that defendants had a policy of paying the plaintiff for less than 13 hours per 24-hour shift. *See* 2017 WL 6403521, at *9–*10. In this case, the parties agree about how much Humana paid plaintiffs for each live-in shift, and instead dispute that rate's significance in light of whatever constitutes the proper interpretation of the NYLL, and in light of Humana's policy of crediting HHWs with only eight hours of work per live-in shift. Some individualized work might be required to determine how many live-in shifts each HHW worked, but this can be mechanically determined from pay records, and I am satisfied that those issues do not predominate over collective ones for the same reasons as for the Effective Date classes.

Humana also claims that the New York Unpaid Hours class is temporally overbroad: that because the New York Unpaid Hours class includes the time prior to when 29 C.F.R. § 552.109 came into effect, the $130 each day that it paid at that time to its HHWs met Humana's whole obligation to plaintiffs unless they were subject to an individualized exception under New York law—thereby requiring an individualized liability inquiry into any claim before January 1, 2015. *See* Doc. #234 at 35. But plaintiffs also only seek to recover for the classwide statutory minimum number of hours during that period. Thus, insofar as they claim (1) that Humana should have paid them for 24 hours of work for each live-in shift under the NYLL even before 2015, and (2)

$130 of pay per 24 hours of work falls below the minimum wage, they present issues that can be resolved on a classwide basis. Although those claims rely on an interpretation of the NYLL that is inconsistent to date with the one reached by federal courts and the New York Department of Labor, it still is one favored by New York's Appellate Division at this time, and its ultimate resolution is a merits question capable of classwide determination.

And even if the New York Court of Appeals ends up holding that HHWs need only be credited with 13 hours of work per 24-hour shift, to the extent that plaintiffs can argue that Humana illegally underpaid them as to promised straight-time wages by crediting them with only eight hours rather than 13 hours per live-in shift, *see* Doc. #241 at 9, they also present another common practice that does not require an individualized analysis of each plaintiff's legal eligibility to recover.[7]

In short, as to both the Effective Date and Unpaid Hours classes, I conclude in light of the particular manner in which plaintiffs have limited and framed their claims for relief here, that the predominance requirement is satisfied because collective issues predominate over individual ones.

### *Superiority*

Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." "[T]he Supreme Court has [recognized that] Rule 23(b)(3) class actions can be superior precisely because they facilitate the redress of claims

---

[7] Humana does not appear to contest the New York Unpaid Hours class's definition inasmuch as it includes the HHWs that Humana employs to the present day. I will note that I am also satisfied that collective issues predominate over individual ones here. If the NYLL only requires Humana to pay its HHWs for 13 hours per 24-hour shift and a subsequent policy change means that Humana now complies with this requirement, that will operate as a classwide merits issue potentially limiting some class members' recovery, but it is no barrier to certification at this time. *See* Doc. #204-1 at 8–9 n.1. Similarly, to the extent that Humana suggests that it might have credited its HHWs with 10 hours per live-in shift prior to 2011, *see* Doc. #234 at 21 n.10, this also appears to be a collective policy toward all HHWs that should not require any individual assessment as to how it affects Humana's liability.

where the costs of bringing individual actions outweigh the expected recovery." *In re U.S. Foodservice Inc. Pricing Litig*, 729 F.3d 108, 130 (2d Cir. 2013). That is straightforwardly the case here. Plaintiffs are suing over minimum wage work, and this case has required years of discovery and motion practice.

Humana argues that a class action is an inferior means of resolving the Effective Date claims for the same reasons it disputes predominance: that plaintiffs' Effective Date claims require an individualized look at how many hours each HHW actually worked on each day of the Effective Date period, and this cannot be determined simply by reference to how many live-in shifts each HHW worked. Doc. #234 at 30–32. But this argument fails—as it did before with respect to the predominance issue—because plaintiffs do not try to assert a claim based on actual hours worked, rather than based on their minimum statutory entitlement (whether that entitlement is 13 hours or 24 hours).

Humana also argues that a parallel federal action in New York (*Green v. Humana at Home*, 16cv7586 (S.D.N.Y. filed Sept. 28, 2016)) is the superior suit for the New York classes' action to proceed. *See* Doc. #234 at 32. The parties previously discussed whether I should defer to *Green* under the first-filed doctrine when plaintiffs first moved to amend their complaint in 2017. *See* Doc. #170-1 at 8–18; Doc. #176 at 5–9; Doc. #179. When I granted plaintiffs' motion to amend, I was unconvinced that the claims in this case were identical to those in *Green* and that the doctrine applied. Doc. #182 at 29–30. I remain unconvinced.

Under the first-filed rule, when "there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second." *Horowitz v. 148 S. Emerson Assocs. LLC*, 888 F.3d 13, 22 (2d Cir. 2018). Although courts may, in their discretion, deny certification to avoid duplicative class actions,

*Becker v. Schenley Industries, Inc.*, 557 F.2d 346, 348–49 (2d Cir. 1977), it is not clear to me that the actions here are duplicative. The *Green* plaintiffs aim only to certify a class of HHWs who worked more than 40 hours a week without receiving overtime pay, and who were not issued accurate pay stubs or wage statements about their overtime pay. *See* Doc. #48 at 17 to *Green v. Humana at Home*, 16cv7586 (S.D.N.Y. 2018). They do not assert any claims like those of the Unpaid Hours classes or include in their proposed class the HHWs who worked live-in shifts outside the Effective Date period. *Ibid.*

Even limiting the analysis to the New York Effective Date class, the first-filed doctrine would—if applicable—give this suit priority over *Green*. Plaintiffs filed the initial complaint in this suit before the complaint in *Green*, and I granted the first motion to amend on the understanding that plaintiffs intended their New York claims to relate back to the filing of the initial complaint. Doc. #182 at 13, 29–30. Relation back is proper when an amended pleading asserts a claim or defense arising from the same conduct, transaction, or occurrence as set out in the original pleading. Fed. R. Civ. P. 15(c)(1)(B). "[T]he central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party . . . by the general fact situation alleged in the original pleading." *ASARCO LLC v. Goodwin*, 756 F.3d 191, 202 (2d Cir. 2014).

The original complaint here asserted FLSA claims arising from the same alleged Humana policy—not paying HHWs for overtime—as the claims that underlie the NYLL Effective Date claims. Humana thus had notice of the matters underlying both the original and amended complaints, and so because the NYLL claims relate back to the original complaint, the original complaint makes this the first-filed action. *See Speedfit LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 572–74 (E.D.N.Y. 2014) (citing *Mattel v. Louis Marx & Co.*, 353 F.2d 421, 424 (2d Cir.

1965)). Even in separate lawsuits, courts in this Circuit have interpreted the first-filed doctrine to counsel that a subsequently-filed NYLL claim turning on underlying FLSA issues should be heard in the same case as the FLSA collective. *See, e.g.*, *Michel v. Petco Animal Supplies Stores, Inc.*, 2017 WL 2198962, at *3–*4 (E.D.N.Y. 2017) (citing cases).

Similarly, the "balance of convenience" exception disfavors litigation in the Southern District of New York. *See Emps. Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) (balance of convenience factors follow those of motion to transfer under 28 U.S.C. § 1404 and include "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties"). The parties have not extensively briefed the issue here. Even assuming that the Southern District of New York is more convenient to some participants, trial efficacy, judicial economy, and avoiding duplicative litigation remain important factors in the transfer analysis. *See Michel*, 2017 WL 2198962, at *4–*5. Here, the NYLL overtime claims are premised on the underlying FLSA claim that the parties agree should proceed in this Connecticut suit, and the New York Effective Date class members are a subset of the New York Unpaid Hours class members who will remain in this lawsuit. Many New York Effective Date class members have also chosen to join the FLSA collective in Connecticut. There is little economy in requiring a subset of the New York plaintiffs to seek relief in a separate forum on one set of claims, particularly when the same parties, witnesses, and evidence will all remain relevant to proceedings here. I am therefore satisfied that, if the first-filed doctrine applies between this case and *Green*, this case takes priority. I am otherwise convinced that all other superiority requirements of Rule 23 are met.

Accordingly, I conclude that Rule 23(b)(3)'s superiority requirement is satisfied and that class certification in this case is a superior way to resolve the controversy.

### *Ascertainability*

While not explicitly listed in Rule 23, plaintiffs must also satisfy "an implied requirement of ascertainability" to ensure the class is sufficiently definite to determine whether a particular individual is a member. *See Petrobras*, 862 F.3d at 260. But the ascertainability requirement is not an administrative feasibility requirement, and simply requires that a class not be "indeterminate in some fundamental way" with "no focused target for litigation" or "clear sense of who is suing about what." *Id.* at 269.

The Effective Date classes are Humana's Connecticut and New York HHWs who worked over 40 hours per week from January 1 to October 12 of 2015. The Unpaid Hours classes are Humana's Connecticut and New York HHWs who worked 24-hour shifts during time periods in 2015 and 2016 (Connecticut), and from 2009 to the present (New York). These are plainly objective criteria, and they clearly create a definite group. *See Petrobras*, 862 F.3d at 269–70 (objective criteria for securities purchasers included "subject matter, timing, and location," and securities holders who purchased those securities in "domestic transactions" during bounded class period were definite group).

Humana challenges the Effective Date classes' ascertainability principally on the basis that an individualized determination will need to be made as to whether any HHW who worked for Humana in fact worked more than 40 hours per week. *See* Doc. #234 at 31; Doc. #279 at 19– 20, 25; Doc. #283 at 13–14. Humana's ascertainability argument is perhaps better characterized as a predominance and superiority challenge under Rule 23(b), and in any event fails for the same reasons I have already discussed—plaintiffs are not seeking to calculate hours based on

unreported time "off-the-clock," but rather on time actually recorded for their work and with

account of the statutory minimum they should have been credited with for any 24-hour live-in

shift.

In reliance on *Velasquez v. Digital Page, Inc.*, 303 F.R.D. 435 (E.D.N.Y. 2014), Humana

argues that even if this is a "records case," class certification should be denied where an

individualized liability determination is necessary. This is a fair Rule 23(a) commonality

argument if *liability* turns on an individualized inquiry—and that was indeed the case in

*Velasquez*, where the question of whether the plaintiffs fell within the FLSA's retail worker

overtime exemption turned on an inquiry that looked both into weekly hours worked and other

factors. *See* 303 F.R.D. at 442–43. But the main liability questions in this case are about whether

29 C.F.R. § 552.109 covers Humana's HHWs and whether by extension, Connecticut and New

York's overtime provisions do the same. If Humana were correct that requiring an individualized

look to a company's payroll records to determine which employees had and had not worked

more than 40 hours made a class unascertainable, the ascertainability requirement (itself not even

a requirement that appears in the text of Rule 23) would keep courts from certifying virtually any

overtime class action—an outcome plainly inconsistent with courts' certification decisions in

practice. *See, e.g.*, *Gucciardo v. Titanium Constr. Servs., Inc.*, 2017 WL 3738777, at *6

(S.D.N.Y. 2017) (certifying overtime class where class could "clearly be ascertained by objective

documentation, such as Defendants' employee payroll records and wage statements.").

Accordingly, the implied requirement of ascertainability is satisfied here.

### *Preclusion & Deference*

Lastly, I turn to an argument Humana raises in its supplemental briefing and a notice of

additional authority: that plaintiffs are estopped from asserting Effective Date claims in New

York against Humana by an NYSDOL "Notice of Labor Law Violation" and an NYSDOL internal memorandum stating that New York's overtime regulations take effect on October 13, 2015. *See* Doc. #279 at 10–13; Doc. #289. Both arguments are misplaced.

Collateral estoppel from agency action is only available if the administrative agency is acting in a judicial capacity. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107–08 (1991). Under New York's standards for collateral estoppel, only quasi-judicial administrative agencies employing procedures "substantially similar to those used in a court of law" have preclusive effect. *Ryan v. N.Y. Tel. Co.*, 467 N.E.2d 487, 489–90 (N.Y. 1984). The investigation Humana provides has no evidence of a judicial proceeding or hearing. *See* Doc. #279-2 at 2–9.

Moreover, neither document cited by Humana appears to have undergone the same formalities as NYSDOL opinion letters that other federal courts have accorded deference. *Cf. Severin*, 2012 WL 2357410, at *7–*8 (deferring to formal opinion letter); *Counsel Opinion Letters*, N.Y. Dep't Lab. (last visited Mar. 18, 2019), https://labor.ny.gov/legal/counsel-opinion-letters.shtm (Counsel opinion letters "represent views of the Department at time they were rendered"); *Adjudication Decisions*, N.Y. Dep't Lab. (last visited Mar. 18, 2019), https://labor.ny.gov/legal/adjudication-decisions.shtm (distinguishing formal administrative hearings). But even assuming for the sake of argument that that "the [NYSDOL]'s interpretation of a statute it is charged with enforcing is entitled to deference," *Barenboim v. Starbucks Corp.*, 995 N.E.2d 153, 158 (N.Y. 2013) (internal quotation marks and citation omitted), Humana gains little from its argument. The only analysis of New York law in either document is to note that the NYLL mirrors federal regulations—law that the NYSDOL certainly is not charged to enforce. So, neither document precludes or binds the action here.

34

CONCLUSION

I have considered the parties' remaining arguments and do not find them to be persuasive. For the reasons set forth above, plaintiffs' second motion to amend complaint (Doc. #256) is GRANTED. Plaintiffs' motion for class certification (Doc. #204) is GRANTED IN PART and DENIED IN PART. The Court certifies:

(1) The Connecticut Effective Date class, consisting of all home healthcare workers employed by defendants in Connecticut who worked in excess of 40 hours in a week between January 1, 2015, and October 12, 2015.

(2) The New York Effective Date class, consisting of all home healthcare workers employed by defendants in New York who worked in excess of 40 hours in a week including at least one 24-hour live-in shift between January 1, 2015, and October 12, 2015.

(3) The Connecticut Unpaid Hours class, consisting of all home healthcare workers employed by defendants in Connecticut who worked 24-hour live-in shifts between January 1, 2015, and January 25, 2016.

(4) The New York Unpaid Hours class, consisting of all home healthcare workers employed by defendants in New York who worked 24-hour live-in shifts between November 11, 2009 and the present.

In light of the Court's modifications to plaintiffs' proposed classes and to ensure prompt notice to class members pursuant to Fed. R. Civ. P. 23(c)(2)(B), plaintiffs shall file any modified proposed class notice within **seven days of the date of this order**, with defendants to file any

objections within seven days thereafter.

It is so ordered.

Dated at New Haven this 18th day of March 2019.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge