UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

DAVERLYNN KINKEAD,

    Plaintiff,

v.

HUMANA, INC., et al.

    Defendants.

_____/

Case No. 3:15-cv-01637

Jury Trial Demanded

PLAINTIFFS' LOCAL RULE 56(a)(1)
STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

1. Humana-at-Home owns approximately 15 SeniorBridge entities. Allen, 36:5-38:17.[2]

---

[1] The evidence submitted in support of this statement of facts is cited in the following manner:

    1. Depositions are cited by the deponent's last name, the page and line numbers. For example the page 36 line 9 to page 37 line 12 of the deposition of Michael Allen, Humana's 30(b)(6) witness, is cited as "Allen, 36:9-37:12."

    2. Documents that have previously been filed with the Court are cited with a description and the Docket No. and page. E.g., Plaintiff Kinkead's Caregiver Agreement is cited as "Kinkead Caregiver Agreement, Doc. 66-7 at 1"

    3. Documents produced by Defendants are cited by their Bates No. – e.g. D1234.

    4. Documents produced by Plaintiffs are cited by their Bates No. – e.g. P4567

    5. All other documents are given Plaintiff Exhibit Numbers and are attached hereto.

[2] An appendix of deposition excerpts cited in this statement of facts is attached as Ex. 13. Excerpts from the 30(b)6) deposition of Michael Allen are attached as Ex. 13-A; excerpts from the deposition of Opt-in Plaintiff Maxwell Antwi are attached as Ex. 13-B; excerpts from the deposition of Named Plaintiff Shirley Caillo are attached as Ex. 13-C; excerpts from the deposition of Molly Green are attached as Ex. 13-D; excerpts from the deposition of Opt-in Plaintiff Jeanne Keller are attached as Ex. 13-E; excerpts from the deposition of Named Plaintiff Daverlynn Kinkead are attached as Ex. 13-F;

2. Humana-at-Home, Inc. and its SeniorBridge subsidiaries are managed by employees of Humana Inc., and employees of Humana-at-Home, Inc. Allen, 36:9-37:12. (hereinafter Defendants Humana, Inc.; Humana-at-Home; and Senior Bridge are collectively referred to as "Humana").

3. Humana employs Caregivers to provide in-home companionship services to its clients. Associate Handbook (Allen Dep. Ex. 3), Bates No. DEFENDANT'S 006 attached as Ex.1; Job Description at Doc. 66-6; Allen, 69:19-22.

4. Humana considers Caregivers who work for SeniorBridge to be Humana-at-Home and Humana, Inc. employees. Allen, 44:11-45:9.

5. Plaintiffs worked for Humana as Caregivers. Plaintiff Kinkead worked in Connecticut from December 2010 to May 2015. Kinkead, 11:15-20. Plaintiff Mathieu worked in New York from March 2015 to June 2016. Mathieu, 12:14-25. Plaintiff Caillo worked in New York from February 2014 to June 2016. Caillo, 25:10-12, 92:3-9.

6. As of October 26, 2018, 204 Caregivers had opted into this case, including the named plaintiffs Daverlynn Kinkead, Claude Mathieu and Shirley Caillo. The opt-ins worked for Humana in 15 states, including New York (44), and Connecticut (16). List of Opt-ins, Ex. 2.

7. Humana assigns Caregivers to two kinds of shifts: "Hourly" shifts which may be of 2, 4, 8, or 12 hour duration, and "live-in" shifts which are 24 hours long. Allen, 173:16-25 (different shifts), 98:5-21 (referring to 24-hour shifts as "live-in" shifts).

---

excerpts from the deposition of Named Plaintiff Mathieu are attached as Ex. 13-G; and excerpts from the 30(b)(6) deposition of Robbi Matusz are attached as Ex. 13-H.

8. Humana sets forth the terms of work applicable to Caregivers in two written documents, an Associate Handbook, and a Caregiver Employment Agreement. Allen, 70:11-71:22, 71:23-72:14, 94:23-95:12; Ex. 1 Associate Handbook.

9. The Associate Handbook (hereinafter the "Handbook") sets forth rules and procedures applicable to Caregiver's employment and applies to all Caregivers nationally. Allen, 71:23-72:14, 94:23-95:12; Ex. 1 Associate Handbook.

10. Each Caregiver signs a Caregiver Employment Agreement upon hiring. Allen, 70:11-71:22.

11. Prior to 2012, Humana used the same Caregiver Agreement for all Caregivers regardless of the state where they worked. *See*, Examples of Pre-2012 Caregiver Agreements, Ex. 3; *see also,* Allen, 122:3-123:10 (although Agreements were changed from time to time, whatever version was in effect was the same for all Caregivers). These agreements offered a fixed hourly rate of pay for hourly shifts and a fixed hourly rate of pay "for 10 hours of work" for live-in shifts. *See, e.g.,* Kinkead Caregiver Agreement, Doc. 66-7; Examples of Pre-2012 Caregiver Agreements, Ex. 3.

12. On or about January 2012, Humana changed the Caregiver Agreement's description of the pay for live-in shifts from "$xx/hour for 10 hours of work" to "$xx/day" for "8 hours of intermittent work." *See, e.g.* Mathieu Agreement, Doc. 234-9 ($130/day for 8 hours of intermittent work); Allen, 69:23-71:22 (testifying that Humana used the same Agreement in all states). Examples of Caregiver Agreements from Multiple States 2012-2015, Ex. 4; s*ee also,* Mathieu, 49:17-50:16.

13. In addition to the change in the description of the pay for live-in caregivers, set forth above, in 2012 Humana added the following language to paragraph 3 of the Caregiver

Agreements used in states like New York where Caregivers were covered by the state overtime laws:

> As a Live-in Caregiver you will be paid a standard rate of pay per day. The standard rate of pay is based on 8 hours of intermittent work. You will receive 5.7 hours of straight time and 2.3 hours of overtime to make up your total daily rate. For example: a daily rate of $100.00 per day is paid $10.93 for 5.7 hours = $62.30 and $16.40 for 2.3 hours = $37.70 which is a total of $100.00 for the day.

Mathieu Agreement, Doc. 234-9 at ¶3; Ana Martinez Agreement, Ex. 5, at ¶3; Examples of New York Caregiver Agreements 2012-2015, Ex. 6.

14. At all times prior to January 2016, the pay receipts given to Caregivers working live-in shifts reflected the hours worked, not the days worked. *See e.g.* Kinkead pay receipt for period ending 8/3/14, Ex. 7. In states like New York that required payment of state overtime, the pay receipts for live-in shifts reflected payment at two different hourly rates, a straight time hourly rate for 8 hours per shift and an hourly overtime premium of .5 times the straight time rate for 2.3 hours of those 8 hours. For example, Mathieu's pay stub for week ending July 5, 2015 shows a "Live-in Wage Rate" of $14.89/hr. and a "Live-in OT Rate" of $7.11/hr. Doc. 170-5 (Mathieu's pay receipts). *See also,* Maxwell Antwi's Pay Receipts, Ex. 8.

15. Humana did not provide regularly scheduled sleep and meal times for Caregivers assigned live-in shifts. Allen, 181: 3-20, 183:3-23, 192:14-19, 196:22 -200:21. Humana's policy was that Caregivers must "work it out with the client when they can get eight hours" of sleep and that that may mean the sleep periods can occur any time during the 24-hour shift and may change from day to day. Allen, 183:7-20, 196:22-198:2.; *see also,* Mathieu Agreement, Doc. 234-9 at ¶3 ("As the actual work hours are irregular and intermittent it may not be feasible to account for all hours actually on duty. However, it is your responsibility to inform the Company if you are

providing more than 8 hours of intermittent work per day during a live-in assignment."); Ana Martinez Agreement, Ex. 5 at ¶3 (same); Job Description, Doc. 66-6.

16. Humana does not inform clients that Caregivers should have a regularly scheduled 8 hours of sleep time or regularly scheduled meal times.  Welcome Book –2008 at D035959, Ex. 9; Welcome Book – April 2011 at D035971, Ex 10; Welcome Book – April 2015 at D035981-82, Ex. 11;  Allen, 184:7-15 (Humana does not communicate with the client regarding when sleep time would take place except "[i]f there were extenuating circumstances.").

17. Elderly clients often have sleep problems at night, and experience changes in sleep patterns. *See,* Allen, 183:25-184:22 (30(b)(6) (witness admitted that his elderly mother does not sleep at night); Ex. 1, Associate Handbook at 22 ("Many elderly clients experience changes in their sleep patterns"), 58-59 (second stage alzheimer's disease symptoms include "severe sleep disturbances"), 60 (common problems with dementia include "increased agitation at night."); Keller, 27:8-12 (client needs depend on their medical conditions); Kinkead 85:7-11 (a client's ability to sleep through the night varied).

18. Some of Humana's live-in shift clients had difficulties sleeping, incontinence, dementia, and other problems that required caregivers to be on call throughout their shift. Mathieu, 26:12-24, 27:19-28:8, 33:17-35:5, 45:15-46:18, 50:17-61:6, 63:15-25, 64:21-65:24, 90:14-95:15, 97:4-108:9, 138:6-158:7, 172:9-173:5; Antwi, 32:10-33:13, 33:23-34:20, 42:16-46:6, 49:8-50:6, 56:25-60:9, 75:9-78:2, 99:12-16, 101:12-17, 108:23-119:11; Keller, 31:11- 33:1; Kinkead 32:2-33:1, 35:3-19, 42:16-19, 43:16-21, 45:11-23, 78:5-81:3, 85:7-11; Green, 34:1-17, 36: 19-21, 45:13-19, 50:15-54:20, 57:16-59:25, 80:11-83:2, 122:2-14, 129:16-25, 146:21-147:24; Caillo, 83:12-84:19.

19. Caregivers working live-in shifts were permitted to eat with their clients, carrying on conversation and interacting with the client during the meal.  Caillo, 59:20-60:9, 63:15-65:9; Mathieu 62:2-63:14; Green, 81:25-82:11.

20. Humana charges clients a flat day rate for a live-in Caregiver rather than by the hour. Allen, 143:13-18

21. Whichever kind of shift they are assigned, Caregivers are required to remain on the premises throughout the shift, including for the entire 24-hour period in the case of live-in shifts. Doc. 66-2 at 12 (Handbook dated 4/2008)  ("Leaving a work assignment during scheduled hours of work or overtime hours without the approval of the supervisor" "may result in immediate discharge." ); Ex. 1 at p. 14 (same); Allen, 103:19-105:9; 164: 18-23 ("A. Yes; and that's what's spelled out upfront, why this is a live-in case before the associate accepts the assignment or not.").

22. A Caregiver is expected to stay at the place of work until the worker assigned to the next shift arrives. Allen, 308:1-309:19. If, as a result, a Caregiver who had completed a 12-hour shift had to work an additional shift or several additional shifts, Humana pays those shifts as "live-in" shifts (8 hours pay) rather than as consecutive 12-hour shifts.  Keller, 13:18-14:7, 28:23-31:20, 37:12-23.

23. Humana requires Caregivers to document beginning and end times of their shift and certain tasks completed during the shift using a phone system called "Santrax." Ex. 1 Handbook at p. 15; Allen, 187: 20-189:17. When Caregivers cannot access the Santrax system by phone, they call the Humana branch office and the work hours information is entered manually into Santrax. Allen, 188:21-25; Ex. 1 Handbook at p. 15 (describing Santrax timekeeping). The hours recorded by Caregivers in Santrax are then fed into Humana's proprietary IT system to calculate

Caregiver payroll. Allen, 277:8-19; *see also,* Allen, 135:20-136:5 (describing Humana's proprietary IT system).

24. Prior to January 26, 2016, Humana did not direct Caregivers to record their hours of sleep or meals. Allen, 183:21-23; Keller, 42:7-19 (caregiver did not use Santrax system in the middle of a shift; did not use it to record breaks or meals and she was unaware of any method for recording those).

25. Humana reviewed and authorized the practice of paying 24-hour shifts at a fixed sum for 8 hours of work without taking any steps to ensure that the practice was in compliance with the Fair Labor Standards Act. Allen, 279:9-280:3.

26. Between January 1 and October 15, 2015, Humana did <u>not</u> pay overtime to workers performing <u>hourly</u> shifts, with the exception of states like New York with state overtime laws applicable to caregivers.  Allen, 53:4-54:21, 89:23-93:3; Matusz, 118:7-10.  Humana began paying overtime to all hourly shift workers after October 15, 2015.  Allen, 83:20-84:12.

27. Humana did <u>not</u> pay overtime to workers performing live-in shifts prior to January 25, 2016. Matusz, 107:5-111:9.

28. Humana paid Caregivers in New York 10 hours of straight-time wages for each 24-hour live-in shift until sometime between September 5, 2011 or January 2012. Matusz, 105:9-111:9, 129:8-131:8.

29. From 2012 through January 25, 2016, Humana paid workers assigned to live-in shifts 8 hours of straight time wages per shift.  Matusz, 107:5-114:6, 119:14-120:5, 130:17-131:8.

30. After January 25, 2016 Humana began paying workers assigned to live-in shifts for 13 of each live-in shift and paid overtime for all such hours in excess of 40 per week.  Matusz, 107:20- 108:23, 109:20-110:13; Examples of 2016 Caregiver Agreements, Ex. 12.

May 17, 2019

        Respectfully submitted:

        By: */s/ Michael J.D. Sweeney*

        Michael J.D. Sweeney, Esq.
        msweeney@getmansweeney.com
        GETMAN, SWEENEY & DUNN, PLLC
        260 Fair Street Kinston, NY  12041
        Telephone: (845) 255-9370
        Facsimile: (845) 255-8649

        -and-

        Philip Bohrer
        phil@bohrerbrady.com
        BOHRER BRADY, LLC
        8712 Jefferson Highway, Suite B
        Baton Rouge, Louisiana  70809
        Telephone: (225) 925-5297
        Facsimile: (225) 231-7000

        ***Counsel for Plaintiffs***

**CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2019, I caused the foregoing to be electronically filed the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to all counsel registered in this case. Any counsel not registered for electronic notice of filing with the Clerk of Court will be mailed a copy of the above and foregoing, First Class U.S. Mail, postage prepaid and properly addressed.

/s/ Michael J.D. Sweeney