## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVERLYNN KINKEAD, SHIRLEY, SHIRLEY CAILLO, and CLAUDE MATHIEU, individually and on behalf of all others similarly situated, : : : : | |
| : | CIVIL CASE NO.: 3:15-CV-01637 (JAM) |
| Plaintiffs, : | |
| v. : | |
| : | |
| HUMANA, INC., HUMANA AT HOME, INC., AND SENIORBRIDGE FAMILY COMPANIES (CT), INC., : : : | |
| Defendants. : | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

David R. Golder (ct 27941)
Noel Tripp (pro hac vice)
Jackson Lewis P.C.
90 State House Square, 8th Floor
Hartford, CT 06103
P: (860) 522-0404
F: (860) 247-1330

DEFENDANTS,
HUMANA, INC., HUMANA AT HOME,
INC., AND SENIORBRIDGE FAMILY
COMPANIES (CT), INC.

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ........................................................................ 1

II.     RELEVANT FACTUAL BACKGROUND ..................................................... 2

    A.     Relevant Procedural History ................................................................ 2

    B.     The Caregiver Agreement .................................................................... 3

    C.     Humana's Good Faith .......................................................................... 5

        i.     DOL's 2013 Proposed Amended Regulation And Humana's Good Faith Efforts To Comply With The Anticipated Regulation Scheduled To Take Effect On January 1, 2015 ......... 5

        ii.    Humana's Good-Faith Response To The District Court's Vacatur Of The Home Care Regulation ........................................ 6

        iii.   Humana's Good-Faith Response To The Circuit Court's Reversal Of The Lower Court .......................................................... 8

III.    Humana is Entitled to Judment as a Matter of Law on its Good Faith Affirmative Defenses ....................................................................................... 8

IV.     Plaintiffs Were Exempt Companions Prior to the Final Rule, and Some of Plaintiffs' Claims Are Time-Barred ............................................................. 16

    A.     Plaintiffs Were Companions and Their FLSA Claims Are Subject to a Two-Year Statute of Limitations ......................................................... 16

    B.     Plaintiffs' NYLL Claims Cannot and Do Not Relate Back to the Original Complaint, which Did Not Allege Any NYLL Claims ......................... 18

V.      This Court Should Defer to NYSDOL's Interpretation of Its Own Regulation with Respect to the Effective Date ................................................................. 20

VI.     Humana is Entitled to Judgment as a Matter of Law that The Caregiver Agreement Was Reasonable ........................................................................... 22

    A.     The Caregiver Agreement is Reasonable as Applied to Live-In HHAs Under 29 C.F.R. § 785.23, And There Can Be No Claims ................................. 22

    B.     Alternatively, Plaintiffs Have Conceded That 13 Is The Maximum Number of Hours Worked for  Live-Ins ............................................................ 26

VII.    Humana is Entitled to Judgment As a Matter of Law on the Claims on Any Live-In HHA Who Worked No More Than Three Live-In Shifts Per Week ......................... 27

VIII.   Plaintiffs' Day Rate Compensation for Live-In Shifts Compensated Them For All Hours Worked, Eliminating Non-Overtime Claims and Limiting Overtime Claims to Half Time ....................................................................................................... 28

IX.   Humana is Entitled to Certain Offsets That Reduce Plaintiffs' Potential Recovery ........ 35

X.   CONCLUSION ................................................................................................................ 35

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Pipe & Constrs. Co. v. Utah*,
    414 U.S. 538, 554-55 (1974) .................................................................18

*Andryeyeva v. New York Health Care, Inc.*,
    2019 N.Y. LEXIS 617 ...............................................................20, 27

*Bangoy v. Total Homecare Solutions*,
    LLC, 2015 U.S. Dist. LEXIS 177859 (S.D. Ohio Dec. 21, 2015)...........................15

*Barenboim v. Starbucks Corp.*,
    21 N.Y.3d 460 (2013) .................................................................20

*Blum v. Yaretsky*,
    457 U.S. 991 (1982)...............................................................27, 28

*Bouchard v. Reg'l Governing Bd. of Region V Mental Retardation Servs.*,
    939 F.2d 1323 (8th Cir. 1991) .................................................................10

*Braziel v. Tobosa Developmental Servs.*,
    166 F.3d 1061 (10th Cir. 1999) .................................................................23

*Charlot v. Ecolab, Inc.*,
    97 F. Supp. 3d 40, 70 (E.D.N.Y December 12, 2015)................................17, 18, 19

*Cliff v. Payco General American Credits, Inc.*,
    363 F.3d 1113 (11th Cir. 2004) .................................................................19

*Darr v. Mut. Life Ins. Co.*
    169 F.2d 262 (2nd Cir. 1948)...............................................................10, 11

*Dunn v. Careco Shoreline, Inc.*,
    2017 Conn. Super. LEXIS 5136 (Super. Ct. Dec. 27, 2017 .................................17

*East Tex. Motor Freight Sys. v. Rodriguez*,
    431 U.S. 395 (1977)...............................................................27

*EEOC v. Home Ins. Co.*,
    672 F.2d 252 (2nd Cir. 1982)...............................................................11

*Encino Motors, LLC v. Navarro*,
    136 S.Ct. 2117, 195 L.Ed.2d 382 (2016) .................................................................10

*Encino Motors, LLC v. Navarro*,
   138 S.Ct. 1134, 200 L.Ed.2d 433 (2018) ...............................................................9

*Feuerstack v. Weiner*,
   2013 U.S. Dist. LEXIS 106321 (D. N.J. July 30, 2013).........................................19

*Garofalo v. Donald B. Heslep Assocs., Inc.*,
   405 F.3d 194 (4th Cir. 2005) ...................................................................22, 23, 24

*Gordon v. Kaleida Health*,
   299 F.R.D. 380 (W.D.N.Y. Mar. 24, 2014) ...........................................................25

*Green v. Humana at Home, Inc.*,
   2017 U.S. Dist. LEXIS 162961 (S.D.N.Y. Sept. 29, 2017) ....................................13

*Green v. Humana at Home, Inc.*,
   2019 U.S. Dist. LEXIS 55728 (S.D.N.Y. Mar. 30, 2019) .........................................8

*Grettler, et al., v. Directv, LLC, et al.*,
   Case Nos. 3:14-cv-1052 (RNC), 3:14-cv-1804 (RNC), 2016 WL 1305105 (D.
   Conn. Mar. 31, 2016)..............................................................................................31

*Guerrero v. Moral Home Servs.*,
   247 F. Supp. 3d 1288, (S.D. Fla. 2017) ..................................................................15

*Herman v. RSR Security Services Ltd., et al.*,
   172 F.3d 132 (2d Cir. 1999).....................................................................................16

*Home Care Ass'n of Am. v. Weil*,
   76 F. Supp. 3d 138 (D.D.C. 2014) .............................................................................6

*Home Care Ass'n of Am. v. Weil*,
   78 F. Supp. 3d 123, 124 (D.D.C. 2015) .....................................................................6

*Home Care Ass'n of Am. v. Weil (Weil II)*,
   799 F.3d 1084 (D.C. Cir. 2015) ...................................................................... *passim*

*Inclan v. N.Y. Hosp. Grp., Inc.*,
   95 F. Supp. 3d 490, 504 (S.D.N.Y. 2015) ...............................................................14

*Jara v. Strong Steel Door, Inc.*,
   872 N.Y.S.2d 691 (Sup. Ct. Kings Cnty. Aug. 15, 2008)........................................32

*Joza v. WW JLF, LLC*,
   2010 U.S. Dist. LEXIS 94419 (E.D.N.Y. Sept. 9, 2010)..........................................25

*Kinkead v. Humana at Home, Inc.*,
   2019 U.S. Dist. LEXIS 44054 (D. Conn. Mar. 18, 2019)...........................................3

*Kinkead v. Humana, Inc.*,
   206 F. Supp. 3d 751, 754 (D. Conn. July 19, 2016) ........................................................15

*Kone v. Joy Constr. Corp.*,
   2016 U.S. Dist. LEXIS 26981 (S.D.N.Y. Mar. 3, 2016) ..............................................32

*Kornexl v. Bailey*,
   2006 U.S. Dist. LEXIS 32754 (M.D. Fla. May 24, 2006) ............................................33

*Kuebel v. Black & Decker, Inc.*,
   643 F.3d 352 (2d Cir. 2011)............................................................................................25

*Li v. Chinatown Take-Out, Inc.*,
   2018 U.S. Dist. LEXIS 219941 (S.D.N.Y. Dec. 4, 2018) ............................................30

*Long Island Care at Home, Ltd. v. Coke*,
   551 U.S. 158 (2007)..........................................................................................................21

*Lundy v. Catholic Health System of Long Island Inc.*,
   711 F.3d 106 (2d Cir. N.Y. 2013) ..................................................................................31

*Marshall v. Atl. Container Line, G. I. E.*,
   470 F. Supp. 71 (S.D.N.Y. 1979) ..............................................................................8, 12

*Marshall v. Baptist Hosp., Inc.*,
   668 F.2d 234 (6th Cir. 1981) .............................................................................................9

*Mazzei v. The Money Store*,
   829 F.3d 260 (2d Cir. 2016)..............................................................................................28

*McLaughlin v. Richland Shoe Co.*,
   486 U.S. 128, 100 L. Ed. 2d. 115, 108 S. Ct. 1677 (1988)..........................................16

*Morales v. Gourmet Heaven, Inc.*,
   3:14 CV 1333, 2016 WL 6996976 (D. Conn. Nov. 29, 2016)..................................14

*Moras v. Marco Polo Network, Inc.*,
   2012 U.S. Dist. LEXIS 181110 (S.D.N.Y. Dec. 20, 2012) ......................................32

*Moreno v. Future Care Health Servs., Inc.*,
   No. 12, 2019 N.Y. App. LEXIS 617 (N.Y. Mar. 26, 2019)..............................20, 26

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010)..............................................................................................32

*Nakahata v. New York-Presbyterian Healthcare Sys.*,
   723 F.3d 192 (2d Cir. N.Y. 2013) ..................................................................................30

*Oram v. SoulCycle LLC*,
   979 F.Supp.2d 498 (S.D.N.Y. Oct. 28, 2013).................................................................29, 33

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985)..........................................................28

*Quinn v. NY State Elec & Gas Corp.*,
   621 F.Supp. 1086 (N.D.N.Y. 1985)........................................................................8, 12, 13

*Ramos v. City of New York Fire Dep't*,
   2014 U.S. Dist. LEXIS 66449 (S.D.N.Y. May 9, 2014).........................................................29

*Ravetto v. Triton Thalassic Techs.*,
   285 Conn. 716, 941 A.2d 309 (2008) ..................................................................................14

*Rogers Cartage Co. v. Reynolds*,
   166 F.2d 317 (6th Cir. 1948) ...............................................................................................10

*Rudolph v. Metropolitan Airports Comm'n*,
   103 F.3d 677 (8th Cir. 1996) ................................................................................................24

*Samiento v. World Yacht, Inc.*,
   10 N.Y.3d 70............................................................................................................................21

*Sanchez v. Caregivers Staffing Servs., Inc.*,
   2017 U.S. Dist. LEXIS 11259 (E.D. Va. Jan. 26, 2017) ..................................................13, 14

*Schneider v. City of Springfield*,
   102 F. Supp. 2d 827 (S.D. Ohio W.D. 1999)........................................................................17

*Severin v. Project OHR, Inc.*,
   2012 U.S. Dist. LEXIS 85705 (S.D.N.Y. Jun. 20, 2012) ..................................................20, 32

*Siji Yu v. Knighted LLC*,
   No. 15-CV-9340 (KMK), 2019 U.S. Dist. LEXIS 80419 (S.D.N.Y. May 13,
   2019) ......................................................................................................................................29

*Simon v. Eastern Kentucky Welfare Rights Org.*,
   426 U.S. 26 (1976)..................................................................................................................28

*Singh v. City of New York*,
   418 F. Supp. 2d 390 (S.D.N.Y. Nov. 28, 2005)....................................................................25

*Torres v. Ridgewood Bushwick Senior Citizens Homecare Council, Inc.*,
   No. 08-CV-3678 (CBA), 2009 U.S. Dist. LEXIS 33622 (E.D.N.Y. Apr. 22,
   2009) ......................................................................................................................................17

*Triple "AAA" Co. v. Wirtz,*
   378 F.2d 884 (10th Cir. 1967) ................................................................29

*Tyson Foods, Inc. v. Bouaphakeo,*
   136 S.Ct. 1036 (Mar. 22, 2016) ..............................................................26

*United States v. Klinghoffer Bros. Realty Corp.,*
   285 F.2d 487 (2d Cir. 1960).............................................................30, 31

*White v. Baptist Mem'l Health Care Corp.,*
   699 F.3d 869 (6th Cir. 2012) ..................................................................25

*Williams v. Gen. Nutrition Ctrs., Inc.,*
   326 Conn. 651 (2017) .............................................................................31

*Zoltek v. Safelite Glass Corp.,*
   884 F. Supp. 283 (N.D. Ill. 1995) ...........................................................29

**Statutes**

29 U.S.C. § 207(a)(1) ...................................................................................30

29 U.S.C. § 207(e)(6), (h) .............................................................................34

29 U.S.C. § 213(b)(10) ...................................................................................9

29 U.S.C. § 251 ...............................................................................................9

29 U.S.C. § 255(a) .........................................................................................16

29 U.S.C. § 259.......................................................................................*passim*

29 U.S.C. § 260.............................................................................................13

Connecticut General Statutes § 31-72...................................................13, 14

Connecticut Minimum Wage Act ...........................................................*passim*

N.Y. Labor Law § 191 ..................................................................................31

N.Y. Labor Law § 193 ..................................................................................31

N.Y. Labor Law § 663 ...........................................................................13, 14

**Other Authorities**

12 NYCRR § 142-2.2 ...................................................................................21

12 NYCRR § 142-2.16 .................................................................................33

29 C.F.R. § 552.6 (1975) .................................................................................................5

29 C.F.R. § 785.22 ...............................................................................................25, 26, 34

29 C.F.R. § 785.23 ............................................................................................... *passim*

29 C.F.R. § 790.15(a)........................................................................................................11

78 Fed. Reg. 60454 (Oct. 13, 2013).................................................................................5

80 Fed. Reg. 55029 (Sept. 14, 2015) ...............................................................................7

80 Fed. Reg. 65646 (Oct. 27, 2015)..............................................................................7, 8

DOL Opinion Letter, FLSA-953 (June 22, 1967)........................................................33

Federal Rules of Civil Procedure Rule 15(c) ...........................................................17, 19

Federal Rules of Civil Procedure Rule 23 ...................................................................2, 18

NYSDOL Opinion Letters June 13, 2000 and May 26, 2004......................................21

NYSDOL Opinion Letters June 13, 2000 and May 26, 2004......................................21

NYSDOL Opinion Letters June 13, 2000 and May 26, 2004......................................21

Defendants Humana, Inc., Humana At Home, Inc., and Seniorbridge Family Companies (CT), Inc. (collectively for purposes of this Memorandum only "Humana"), through their counsel, respectfully submit this memorandum of law in support of their motion for partial summary judgment.

## I.      **PRELIMINARY STATEMENT**

The Fair Labor Standards Act ("FLSA") and analogous state laws including the New York Labor Law ("NYLL") and Connecticut Minimum Wage Act ("CMWA", collectively the "Wage Laws") were enacted to ensure that employees are paid fairly, not to provide windfalls.  Rather than make-whole relief for overtime and any corresponding statutory damages deemed appropriate, Plaintiffs' claims seek such windfalls.  Humana now moves for partial summary judgment to explain why such is legally unsupportable, and prevent an award unsupported by the Wage Laws and wildly disproportionate to the practices alleged to violate same.  Humana also moves in the alternative on certain issues relating to the purported remedies here.  Specifically, Humana seeks summary judgment:

- Dismissing all of Plaintiffs' FLSA claims because Humana is entitled to a complete defense under 29 U.S.C. § 259;

- Dismissing Plaintiffs' claim for liquidated damages under the Wage Laws;

- Ruling that a two-year statute of limitations applies to all remaining FLSA claims and dismissing those claims to the extent that they seek recovery for workweeks two years prior to such FLSA Plaintiff's filing of a consent to join, plus applicable tolling;

- Declaring that the New York Labor Law ("NYLL") claims asserted in the First Amended Complaint do not relate back to the filing of the Original Complaint and dismissing any NYLL claims covering any workweeks prior to November 9, 2011;

- Deferring to the New York State Department of Labor's application of the Final Rule, and dismissing the NYLL claims asserted based on a contrary application thereof;

- Declaring that the Caregiver Agreement between Humana and Live-In HHA's was reasonable under 29 C.F.R. § 785.23, and dismissing the "unpaid overtime" claims of any Live-In HHA's in full;

- Dismissing the Wage Law claims of any opt-ins who worked no more than three Live-In shifts in a given workweek;

- Dismissing Plaintiffs' Wage Law claims to the extent that they seek to recover purportedly unpaid non-overtime wages; and

- Declaring that Humana is entitled, as a matter of law, to certain offsets against any overtime due.

## II.    <u>RELEVANT FACTUAL BACKGROUND</u>

This Court is familiar with the facts underlying this case, which will not be fully reiterated here. The relevant procedural history and facts essential to the instant motion are summarized below.

### A. Relevant Procedural History

Plaintiff Kinkead (a former HHA who worked for Defendants only within the State of Connecticut) filed this action on November 10, 2015. Dkt. 1. The original complaint asserted claims on behalf of putative nationwide collective, as well as a Rule 23 class consisting of HHAs

employed by Defendants within Connecticut.  Dkt. 1, ¶ 2.  The complaint, at that time, did not assert any claims under New York state law.

Two years later, on September 19, 2017, Plaintiffs moved to amend the complaint to add one of the opt-ins (Claude Mathieu) as a named plaintiff and, through her, to assert a variety of violations pursuant to New York state law.  *See* Dkt. 170.  That motion was granted, and Plaintiffs filed their First Amended Complaint on November 9, 2017.  Dkt. 181.

### B.  The Caregiver Agreement

Humana generally employs two types of Home Health Aides ("HHAs"), Live-Ins and Non-Live-Ins.  *See Kinkead v. Humana at Home, Inc.,* 2019 U.S. Dist. LEXIS 44054, at **2-3 (D. Conn. Mar. 18, 2019).  Live-Ins reside with the patients they assist for at least 24-hours at a time. *See id.*  During the period in question, HHA were explicitly instructed through a written Caregiver Agreement ("Agreement") to perform only 8 hours of work, intermittently, during each given 24-hour period.  (Agreement ¶ 3.)[1]  The Agreement explains that HHAs are paid a day rate for "Live-In" work and that they "will be paid for [their] hours worked at the above pay rate" on a "per hour" basis for "Hourly" cases and "per day" basis for Live-In cases.  *Id.* ¶ 2; Matusz Dep. at 127:20-128:9 (Plaintiff Mathieu a "live-in who earns a daily rate of pay"); Allen Dep. at 107-8.  This is intended to cover all hours and activity, absent reporting from the HHA that the nature of the case does not so permit and that additional work is required, at which point the case reassessed from a care perspective in terms of continued live-in care versus two HHAs working 12-hour shifts. Agreement ¶ 3 ("it is your responsibility to inform the Company if you are providing more than 8

---

[1] The Exhibits to the brief cited here can be found attached to the Declaration of David R. Golder ("Golder Dec.") submitted herewith.

hours of intermittent work"); Allen Dep. 92:13-93:3; 94:6-21.[2]  Each HHA signs an agreement clearly explaining this arrangement prior to working any Live-In or Non-Live-In shifts.  With respect to Live-In work, the agreement explains that an HHA should provide:  "8 hours of intermittent work per day at the Live-in pay rate…As you are also provided with room and board, the remainder of your daily schedule will be allocated into the following hours:  3 hours for meals (on site), 8 hours of sleep time (on site) and 5 hours of free time (on site)."   Agreement ¶ 3.  Additionally, when named Plaintiff Caillo first worked a live-in shift, she spoke to Humana who specifically told her that she was paid a day rate for her live-in shifts, as juxtaposed with her work on non-live-in cases.  *See* Caillo Dep., 39:22-40:15 (acknowledging that Humana informed her that she would be paid a day rate as a Live-In).

Again, the Agreement emphasizes that "it is your responsibility to inform the Company if you are providing more than 8 hours of intermittent work per day during a live-in assignment."  Agreement ¶ 3.[3]  In other words, if a Live-In HHA performs more than 8 hours of work during a 24-hour period, they are expected to report it.  (Allen Dep. 109:2-12.)  This is both to ensure proper compensation, and proper staffing with respect to care.  As Humana's Rule 30(b)(6) designee, Michael Allen, explained:  "We rely on the employees to follow directions, and their directions they have been given in writing, as we have seen, is to raise their hand to their manager if there's an issue.  There's no on-site supervision [for Live-Ins]," so they are the only people who would know if they were working more than 8 hours until and unless it was reported.  (Allen Dep. 185:5-25.)

---

[2] Humana's witness, Mr. Allen, further explained that the additional language in Paragraph 3 is simply an arithmetical representation of the day rate.  Allen Dep. 87:20-88:10 (distinguishing between hourly rate and day rate workers).  Indeed, Paragraph 3 itself explains that this rate is a "standard rate of pay per day."  Agreement ¶ 3.

[3] Indeed, Humana communicated the same expectation regarding HHA hours for a Live-in shift to its clients.  *See* Ex. O, Golder Dec. ("Welcome Packet").

Plaintiff Mathieu and Plaintiff Caillo, the sole representatives of the New York Classes, both signed this agreement.  *See* Dkt. 234-9, 279-2.  Moreover, both acknowledge that Humana pays Live-Ins a day rate that is intended to compensate them for all hours worked.  (Caillo, 40:14-15, 49:7-19; Mathieu Dep. at 167:16-168:7.).  Indeed, as noted above, when named Plaintiff Caillo first worked a live-in shift, she spoke to Humana who specifically told her that she was paid a day rate for her live-in shifts.  *See* Caillo Dep., 39:22-40:15.

Non-Live-Ins, by contrast, work defined shifts of two, four, or 12 hours.  (Allen Dep. at 173:16-21, 177:2-5.)  Unlike Live-Ins who are expected to spend significant time attending their own pursuits, non-Live in HHAs are not even permitted to do any personal business during their shifts.  (Allen Dep. at 163:9-18, 171:6-16.)  Non-Live-Ins are paid an hourly rate, and New York non-Live-Ins at all times received premium overtime.   *See* Caillo Dep., 111:14-112:9; Matusz Dep., 15:16-16:4.

### C.  Humana's Good Faith

        i.      *DOL's 2013 Proposed Amended Regulation And Humana's Good Faith Efforts To Comply With The Anticipated Regulation Scheduled To Take Effect On January 1, 2015*

In 2013, DOL issued a "Final Rule" amending the companionship exemption regulations.  *See* 78 Fed. Reg. 60454 (Oct. 13, 2013) (the "Home Care Regulation" or "New Rule").  This new Home Care Regulation provided that third-party employers could no longer "avail themselves" of the FLSA's companionship services exemption.  *See Home Care Ass'n of Am. v. Weil (Weil II)*, 799 F.3d 1084, 1089 (D.C. Cir. 2015).  This marked a radical change from the 1975 Companionship Services Regulation.  *See* 29 C.F.R. § 552.6 (1975).  The Final Rule indicated that

the Home Care Regulation would go into effect on January 1, 2015.  *See* 78 Fed. Reg. 60454, 60494; *see also Weil II*, 799 F.3d 1084, 1089.[4]

Humana was well aware of the Final Rule.  Humana is a member of multiple trade organizations in the home care industry, which provided legal bulletins prepared by attorneys regarding compliance with the law.  *See* Allen Dep. 56, 64. Humana became aware of the Final Rule well before January 1, 2015.  Allen Dep. at 56:17-57:5.  Humana understood that when the Final Rule went into place, Humana's Home Health Workers would no longer be exempt from the FLSA.  *Id.*  As a result, Humana discussed this change internally and prepared to reclassify its Home Health Workers as non-exempt so that it would be following the new law.  *Id.* at 56:23-25 ("Our system was fully capable well in advance.")[5]

### ii. *Humana's Good-Faith Response To The District Court's Vacatur Of The Home Care Regulation*

Before the Home Care Regulation was scheduled to take effect, the U.S. District Court for the District of Columbia ruled that the regulation was invalid under the *Chevron* framework.  *Home Care Ass'n of Am. v. Weil*, 76 F. Supp. 3d 138 (D.D.C. 2014).  The district court vacated the Home Care Regulation, thereby preventing it from going into effect.  *See id.*  Thereafter, the DOL lacked the authority to enforce the Home Care Regulation.  *Home Care Ass'n of Am. v. Weil*, 78 F. Supp. 3d 123, 124 (D.D.C. 2015) (second opinion of lower court rejecting regulation and noting that Home Care Association filed the lawsuit "to keep [the new regulation] from coming into effect on January 1, 2015").  But the district court's vacatur of the Home Care Regulations did not create a

---

[4] Defendants acknowledge this Court's familiarity with this background, and endeavor to repeat only that relevant to its arguments here.

[5] A record of these efforts to comply also was made in *Green, et al. v. Humana at Home*, S.D.N.Y. Case Number 16-cv-7586 (hereafter "*Green*") at Dkt. 67 (Declaration of Kathy Driscoll in support of motion for summary judgment in *Green* ("Driscoll Dec.")).

regulatory vacuum.  The 1975 regulation continued in effect.  The DOL acknowledged the impact of the district court's decision and made no attempts to enforce the Home Care Regulations in contravention of the district court's decision.

Once again, Humana was well aware of the district court decisions blocking implementation of the Final Rule.  Allen Dep. 56:10-57:5; Driscoll Dec., ¶ 7.  Humana understood that the 1975 regulation remained in effect and that DOL could not and would not enforce the new regulation unless the district court opinion was overturned by a higher court.  Driscoll Dec., ¶ 10.  Humana also understood that even though DOL was likely to appeal the *Weil I* decision, as an administrative practice and enforcement policy DOL would not attempt to enforce the Home Care Regulation against employers while the appeal was pending.  *See id*. at ¶ 10.

Based on its understanding of the state of the Home Care Regulation and DOL's position, Humana reconsidered the decision to reclassify its Home Health Care workers.  *See id*. at ¶ 14-15; Allen Dep. 62:3-64:7.  Ultimately, Humana relied on industry updates, the then-effective 1975 regulation, and DOL's administrative practice and non-enforcement policy in deciding that Humana would continue to treat its Home Health Workers as exempt while the DOL's appeal was pending.  *See id*.  Based on the then-effective 1975 regulation, as well as DOL's administrative practices and enforcement policies at that time, Humana believed that doing so would not violate the FLSA or any other laws.  *See id*. at ¶ 16.  Humana's goal, as always, was to comply with the law.  Allen Dep. 268:10-22; Driscoll Dec. at ¶ 16; Dkt. 100-2 at 2 (discussing individualized state-by-state compliance as to HHAs).

iii.   *Humana's Good-Faith Response To The Circuit Court's Reversal Of The Lower Court*

The DOL appealed the district court ruling, and on August 21, 2015, the D.C. Circuit reversed the lower court.  *See Weil II,* 799 F.3d at 1087.  The D.C. Circuit issued its mandate on October 13, 2015.  *See* 80 Fed. Reg. 65646 (Oct. 27, 2015).

The invalidation, vacatur and (many months later) subsequent reaffirmation of the new regulation created uncertainty and confusion amongst employers in the home care industry.  The DOL was quick to step in and provide employers with clear and consistent direction on their obligations with regard to the Home Care Regulation.  Namely, DOL made clear that it would not enforce the Home Care Regulation until 30 days after the mandate in *Weil II* issued.  *See* "Application of the Fair Labor Standards Act to Domestic Service; Announcement of 30-Day Period of Non-Enforcement," 80 Fed. Reg. 55029 (Sept. 14, 2015).  Once the mandate issued, the DOL clarified that the agency would not bring enforcement actions for violations of the new regulation prior to November 12, 2015.  *See* "Application of the Fair Labor Standards Act to Domestic Service: Dates of Previously Announced 30-Day Period of Non-Enforcement," 80 Fed. Reg. 65646 (Oct. 27, 2015).  Thus, the administrative practices and enforcement policies of the DOL clearly advised employers that DOL did not believe the new Home Care Regulation to be enforceable until (and unless) it prevailed in *Weil II*, and it did not commence enforcement of the Home Care Regulation until November 12, 2015.

III.   **Humana is Entitled to Judgement as a Matter of Law on its Good Faith Affirmative Defenses**

A.   **Complete Defense, 29 U.S.C. § 259**

Humana acknowledges that this position was recently rejected in the *Green* case.  *See Green v. Humana at Home, Inc.*, 2019 U.S. Dist. LEXIS 55728 (S.D.N.Y. Mar. 30, 2019).

Humana seeks immediate appeal of that decision – s*ee Green* Docket at 123-125 (motion for immediate appeal) – and respectfully submits that, for the reasons set forth in its moving papers there and here (and in the motion for certificate of appealability in *Green*), Judge Nathan erred in concluding that "Humana Relied on a Judicial Ruling" – as opposed to investigating the law in response to a judicial ruling – in determining how to proceed based on the district court *Weil* decisions.   The distinction may, at first glance, appear subtle, but it has significant legal consequences.

The Portal-to-Portal Act provides Humana a complete defense to FLSA liability.  Summary judgment is appropriate on defenses under the Portal-to-Portal Act, including a defendant's claim for a complete defense under 29 U.S.C. § 259(a).  *Quinn v. NY State Elec & Gas Corp.*, 621 F.Supp. 1086, 1089 (N.D.N.Y. 1985) (granting summary judgment, finding that defendant had established § 259 defense); *Marshall v. Atl. Container Line, G. I. E.*, 470 F. Supp. 71, 74 (S.D.N.Y. 1979) (same).

"The Congressional purposes behind the Portal to Portal Act are stated in its first section." *Marshall v. Baptist Hosp., Inc.,* 668 F.2d 234, 237-38 (6th Cir. 1981).  In Section 1, Congress found that the FLSA had "been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers…"  29 U.S.C. § 251. Congress found that imposing retroactive liability on employers could lead to "financial ruin" of employers, thereby curtailing employment opportunities for workers; creating uncertainty; awarding "windfall payments" to employees who had no "expectation of reward" beyond their agreed-upon rates; and burdening the judicial system.  *Id*.

The Portal-to-Portal Act defense is intended to insulate an employer from liability when their actions – even if later found to be wrong – were performed in good faith reliance on DOL. Specifically, Section 259(a) of the Portal-to-Portal Act provides a complete defense to liability if the employer "proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of [Department of Labor] or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged."  29 U.S.C. § 259(a).

Justice Ginsberg, as noted above, recently described § 259 as providing an "affirmative defense that explicitly protects regulated parties from retroactive liability for actions taken in good-faith reliance on *superseded agency guidance*."  *Encino Motors, LLC v. Navarro*, 138 S.Ct. 1134, 1147, 200 L.Ed.2d 433, 447 (2018) (*in dissent*, emphasis added); *see also Encino Motors, LLC v. Navarro*, 136 S.Ct. 2117, 2128, 195 L.Ed.2d 382, 398 n. 2 (2016) (*concurring*).  In *Encino Motors*, the Supreme Court ultimately construed the exemption for certain employees of automobile dealerships (29 U.S.C. § 213(b)(10)) in the employer's favor, resolving longstanding confusion regarding whether "service advisors" were sales employees.  In arguing that they were not exempt, Justice Ginsburg noted that such a ruling would create no retroactive liability for industry employers in light of 29 U.S.C. § 259, provided the employers were following along with DOL's guidance.

Defenses under § 259(a) should not be brushed aside lightly.  When a valid defense is established, the cause of action must be dismissed.  *See, e.g., Bouchard v. Reg'l Governing Bd. of Region V Mental Retardation Servs.,* 939 F.2d 1323, 1334 (8th Cir. 1991) (describing § 259(a) as "jurisdictional in nature"); *Rogers Cartage Co. v. Reynolds*, 166 F.2d 317, 320 (6th Cir. 1948) (defense is "mandatory").  Moreover, the Second Circuit has long recognized that an employer

who relies on a DOL non-enforcement policy must be shielded from complete liability, even though that DOL policy did not prevent private plaintiffs from filing suit on the underlying issue. *See Darr v. Mut. Life Ins. Co.* 169 F.2d 262 (2nd Cir. 1948).  In other words, the exact situation we have here.

Humana has a complete defense to Plaintiff's FLSA claims prior to November 12, 2015, because Humana relied in good faith on the then-effective 1975 regulations, as well as DOL's administrative practices and enforcement policies stating that the Home Care Regulation would not be enforced until November 12, 2015.[6]  As set out below, Humana establishes the three elements of the § 259(a) defense:  (1) that its action was taken in reliance on a DOL ruling, interpretation, administrative practice or enforcement policy (2) that it was in conformity with that ruling, interpretation, administrative practice or enforcement policy, and (3) that its actions were in good faith.  *See EEOC v. Home Ins. Co.,* 672 F.2d 252, 263 (2nd Cir. 1982); 29 U.S.C. § 259(a).

The first element is established because, at all times, Humana acted in accordance with existing law—continuing to monitor it closely and adapt its practices as the law progressed through a state of flux.  *See* Allen Dep., 50:18-51:14.  When USDOL made changes to the companionship exemptions, Humana prepared to—and, prior to *Weil* was fact prepared to—comply.  *See id.*, at 56:17-57:5.  When a District Court annulled those changes, Humana understandably opted to continue operations under existing law.  *Id.* at 55:3-56:16.  When an appellate court later overturned the District Court, effectively putting the amended regulations back on the books, Humana *did* comply (*id.*, at 64:21-22)—although the issue of whether it did so in a timely manner

---

[6] Employers utilizing FLSA exemptions are not "escaping liability" for additional wages or "saving" overtime wages.  Even DOL recognizes that employers reclassifying employees to non-exempt "have a range of options . . . [including to] reduce or eliminate overtime hours [or] reduce the amount of pay" so that the employer can "hold total weekly pay constant."  (*See* https://www.dol.gov/whd/overtime/final2016/webinarfaq.htm, attached as Exhibit R to Golder Dec.)  An employer's approach to pay structure and other terms of employment can shift drastically in response to a significant change, such as the one posed here.

is contested.  These undisputed facts establish, as a matter of law, that Humana acted reliance on DOL regulations.  *See Darr v. Mut. Life Ins. Co.*, 169 F.2d 262 (2nd Cir. 1948).

The second element is established for the same reasons.  As discussed above, Humana complied with existing law at all times.  Though hindsight reveals that Humana should have changed its practice sooner, this does not change the fact that Humana acted in good faith at the time.

Finally, the third element is satisfied because Humana's actions demonstrate both subjective and objective good faith.  The subjective element of good faith examines the employer's "actual state of mind."  29 C.F.R. § 790.15(a).  Subjective good faith requires an "honesty of intention and no knowledge of circumstances which ought to put [the employer] upon inquiry." *Id*.  Humana's diligence in preparing to comply with the amended regulations while following along with the industry's challenge demonstrates subjective good faith.

It also reveals objective good faith.  The objective portion of this test is met if the employer "acted as a reasonably prudent [person] would have acted under the circumstances."  *Quinn v. NY State Elec & Gas Corp.*  621 F. Supp. 1086, 1091 (N.D.N.Y. 1985) (*citing* 29 C.F.R. § 790.15(a)). Humana's actions here were similar to those taken by the employer in *Quinn v. N.Y. State Elec. & Gas Corp.*—a case in which the employer was granted summary judgment on its good faith defense.  *See id*.  In that case, the employer relied on regulations that "set forth very clear requirements for bona fide apprenticeship programs."  *Id*. at 1091.  Similar to this case, the agency had proposed to rescind the regulation at issue in *Quinn*.  *Id*. at 1090-91.  During the time that the employer relied on the regulation, however, "it was not *in fact* rescinded."  *Id*. at 1091 (emphasis in original).  Accordingly, "[i]t was perfectly reasonable conduct on the part of the defendant to assume the validity of the regulation until it was actually rescinded…"  *Id*.

12

Similarly, here, it was objectively reasonable for Humana to continue to rely on the companionship exemption following the district court's decision in *Weil*. The Home Care Regulation had not (at the time) rescinded the previous regulation; consequently, the 1975 regulation remained in force. There was no contrary authority and the D.C. Circuit had not yet overturned the decision. The 1975 regulation was the law until the D.C. Circuit issued its mandate in October. Even after the mandate issued, DOL published two enforcement policies stating that it would not attempt to enforce the Home Care Regulation until thirty days after the mandate (November 12, 2015). *See Marshall v. Atl. Container Line, G. I. E.,* 470 F. Supp. 71, 74 (S.D.N.Y. 1979) (employer "was entitled to rely" on "published" guidance from DOL; granting summary judgment on employer's defense).

When neither the agency that created the Home Care Regulation nor any court had concluded that the new regulation could be lawfully enforced (let alone enforced retroactively), Humana could hardly have been expected to reach such a conclusion on its own. *See Quinn*, 621 F. Supp. at 1091. Even with the benefit of hindsight, federal courts *still* disagree on whether the Regulation is retroactive. *Compare Sanchez v. Caregivers Staffing Servs., Inc.,* 2017 U.S. Dist. LEXIS 11259 (E.D. Va. Jan. 26, 2017) (holding that *Weil* "created a legal nullity, which prevented the DOL rule from becoming effective until…October 13, 2015") *with Green v. Humana at Home, Inc.*, 2017 U.S. Dist. LEXIS 162961 (S.D.N.Y. Sept. 29, 2017) (holding that the regulations applied retroactively, beginning January 1, 2015). The disagreement in the case law is further evidence that it was objectively reasonable for Humana to believe its actions were lawful at the time. Thus, from January 1, 2015, to October 13, 2015, Humana acted with objective good faith in relying on the then-effective 1975 regulation, as well as DOL's administrative practices and enforcement policies that the new Home Care Regulation was not enforceable.

Again, Judge Nathan's view – that Humana's decision was necessarily reliance on *Weil*, despite the evidence to the contrary – is unsupported by the record of Humana's efforts to investigate the law and comply with it.   *Weil* necessitated the investigation, but it was the beginning, not the end, of the inquiry.

Considering the foregoing, Humana's actions in relying on existing law during the pendency of an appeal was taken in good faith.   Accordingly, Humana is entitled to judgment as a matter of law on its Section 259(a) affirmative defense.

### B.  Defense To Liquidated Damages, 29 U.S.C. § 260, N.Y. Labor Law § 663 and Conn. General Statutes § 31-72

The Portal-to-Portal Act also provides employers with a defense against plaintiff's claims for liquidated damages under the FLSA if the employer "shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the Act.   29 U.S.C. § 260; N.Y. Labor Law § 663(1).   If the employer acted in good faith, the district court may, in the exercise of its discretion, choose not to award liquidated damages.   *Id*.   This requires "plain and substantial evidence of at least an honest intention to ascertain what the [FLSA] requires and to comply with it."   *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d. 490, 504 (S.D.N.Y. 2015) (applying same standard to FLSA and NYLL good faith analysis).[7]   Humana has clearly demonstrated this intention here.

---

[7] On October 1, 2015, the Connecticut General Assembly amended the CMWA damages provision to create, like the FLSA, a presumption of double damages and a burden on the employer to demonstrate a "good faith belief that the underpayment of such wages was in compliance with the law." Conn. Gen. Stat. § 31-72.   Prior to that, Connecticut law called for double damages "only when the trial court has found that the defendant acted with bad faith, arbitrariness or unreasonableness." *Ravetto v. Triton Thalassic Techs.*, 285 Conn. 716, 941 A.2d 309 (2008).   Regardless of the standard and whether the law is retroactive, Humana clearly meets good faith under the law. *See Morales v. Gourmet Heaven, Inc.*, 3:14 CV 1333 (VLB), 2016 WL 6996976, at *13 (D. Conn. Nov. 29, 2016) (noting that change in law was retroactive).

Based on the 1975 regulations, DOL's administrative practice and enforcement policies (as described above), along with the district court's opinion invaliding and vacating the Home Care Regulation, Humana had a good faith basis to believe that it was not required to pay Plaintiff overtime wages between January 1, 2015 and November 12, 2015.  As this Court knows, there are multiple federal district courts that disagree with this Court's ruling and instead find that the New Rule did not apply retroactively.  *See Sanchez v. Caregivers Staffing Servs., Inc.,* 2017 U.S. Dist. LEXIS 11259 (E.D. Va. Jan. 26, 2017) (holding that Weil "created a legal nullity, which prevented the DOL rule from becoming effective until…October 13, 2015"); *Bangoy v. Total Homecare Solutions,* LLC, 2015 U.S. Dist. LEXIS 177859 (S.D. Ohio Dec. 21, 2015).  Even though this Court ruled as it did, the district court split makes clear that this is a complicated legal issue and, based on the evidence at issue, Humana had a good faith belief to compensate HHAs as it did.

Significantly, in a similar context, one court noted that "the district court split on the issue, and the Department of Labor's decision to delay enforcement until November 12, 2015" provided an "objectively reasonable basis to believe that . . . [overtime] was not required  . . . until at least October 13, 2015," and on that basis found good faith.  *Guerrero v. Moral Home Servs.*, 247 F. Supp. 3d 1288, 1293-94 (S.D. Fla. 2017) (finding that "[employer's] decision not to pay [Plaintiff] overtime wages before October 13, 2015 was made in good faith as a matter of law").  Indeed, this Court in its original opinion in this matter recognized that "[i]n light of the fact that the district court vacated the new rule, it is not surprising that defendants refrained from paying overtime to plaintiff while the district court's decision remained valid."  *Kinkead v. Humana, Inc.*, 206 F. Supp. 3d 751, 754 (D. Conn. July 19, 2016); *see also* Dkt. 51 at 27-28 (oral argument where this Court questioned whether liquidated damages could be appropriate under such circumstances).  Thus, Humana's failure to pay overtime compensation was in good faith and liquidated damages should

not be assessed on Plaintiffs' Wage Law claims.  For all of these reasons, Humana is entitled to

judgment as a matter of law dismissing Plaintiffs' claim for liquidated damages of any sort.

**IV.     Plaintiffs Were Exempt Companions Prior to the Final Rule, and Some of Plaintiffs' Claims Are Time-Barred.**

Humana is entitled to judgment as a matter of law dismissing Plaintiffs' claims, in part, as

time-barred for two reasons.  First, as concerns all three statutes, Humana is entitled to judgment

as a matter of law that: 1) prior to the Final Rule, Plaintiffs all were exempt companions under the

Wage Laws and 2) the statute of limitations applicable to the claims asserted by the FLSA

Collective is two years because Plaintiffs have failed to establish that Humana's alleged

noncompliance was willful.

Second, Humana is entitled to judgment as a matter of law dismissing the claims asserted

by the New York Effective Date and New York Unpaid Hours Class to the extent that they accrued

more than six year prior to the filing of the Amended Complaint in which they were asserted.  The

NYLL claims asserted for the first time therein do not relate back to the filing of the original

complaint because that pleading did not allege any New York claims and, consequently, failed to

put Humana on notice of those New York claims.

**A.     Plaintiffs Were Companions and Their FLSA Claims Are Subject to a Two-Year Statute of Limitations**

The record is unrebutted that, prior to the Final Rule effective date, all Plaintiffs were

companions to whom the companionship exemption applied.  Mathieu 33:2-16; Caillo 101:3-11;

103:10-18 (confirming accuracy of job description submitted as Exhibit S).  Plaintiffs confirmed

they did not violate the 20% limitation on general household work then applicable.  Caillo 37:14-

20; Mathieu 32:11-19.  *See Torres v. Ridgewood Bushwick Senior Citizens Homecare Council,*

*Inc.*, No. 08-CV-3678 (CBA), 2009 U.S. Dist. LEXIS 33622 (E.D.N.Y. Apr. 22, 2009).  Nor do

Plaintiffs make any such allegations in this case.  New York and Connecticut law both adopted the exemption during that period: Connecticut adopted it wholesale,[8] while New York discussed it in modified form as discussed below.

An employer's exposure to liability under the FLSA ordinarily is limited to two years.  *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135, 100 L. Ed. 2d. 115, 108 S. Ct. 1677 (1988); *Herman v. RSR Security Services Ltd., et al.*, 172 F.3d 132, 141 (2d Cir. 1999); 29 U.S.C. §255(a). Recovery for a period of three years is permissible only where a violation of the FLSA is deemed willful.  *Id.*   The absence of willfulness is an appropriate question for this Court to determine as a matter of law upon motion for summary judgment.  *See Schneider v. City of Springfield*, 102 F. Supp. 2d 827, 827 n. 5 (S.D. Ohio W.D. 1999) (citing *Dole v. Elliot Travel & Tours, Inc.*, 942 F. 2d 962, 967 (6th Cir. 1991)) ("From our review of the record in this case, we hold that there is no genuine issue of material fact as to whether defendants' violation of the FLSA was willful.").  An FLSA plaintiff seeking to invoke the three-year limitations period cannot survive a motion for summary judgment unless he "make[s] a competent demonstration that there [is a] trial worthy issue as to whether [the employer] either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  *Clarke*, 2010 U.S. Dist. LEXIS 33264 at *29 (internal citations and quotations omitted).

As described *supra*, Humana acted in good faith—making every effort to comply with rapidly evolving changes to the law in real time.  Considering this good faith, Humana's inadvertent failure to comply cannot be characterized as willful.  Accordingly, the ordinary two-year statute of limitations applies to Plaintiff's FLSA claims and, to the extent those claims extend

---

[8] *Dunn v. Careco Shoreline, Inc.*, No. CV165015115S, 2017 Conn. Super. LEXIS 5136 (Super. Ct. Dec. 27, 2017)(discussing effective date of change to CT law to narrow exemption and holding exemption applied until November 12, 2015).

back prior to January 1, 2015, they must be dismissed in their entirety based on the companionship exemption.

**B.**     **Plaintiffs' NYLL Claims Cannot and Do Not Relate Back to the Original Complaint, which Did Not Allege Any NYLL Claims**

Rule 15(c) of the Federal Rules of Civil Procedure identifies three circumstances under which relation back is permitted.  They are:  (1) if the law that provides that applicable statute of limitations allows relations back; (2) if the proposed amendment asserts a claim that arose out of the same conduct, transaction, or occurrence set forth in the original pleading; or (3) the amendment changes the party against whom a claim is asserted, in which that new party must have received notice or the action such that it will not be prejudiced in defending the action and knew or should have known that the action would have been brought against it but for a mistake concerning the proper party's identity.  Fed. R. Civ. P. 15(c).  Only the second of these instances is at issue here, as neither (1) nor (3) could possibly apply.

Where, as here, "the question is the relation back of newly added claims," under Rule 15(c)(1)(B), those claims will not relate back unless "the original complaint gave the defendant fair notice of the newly alleged claims." *Charlot v. Ecolab, Inc.*, 97 F. Supp. 3d 40, 70 (E.D.N.Y December 12, 2015) (quoting *O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 68 (2d Cir. 2002)).

Providing defendants with fair notice is especially critical in class cases, where evaluation of the potential scope of a lawsuit is critical.  *See Am. Pipe & Constrs. Co. v. Utah*¸ 414 U.S. 538, 554-55 (1974).  In such cases, the requirement of fair notice "recognizes that plaintiffs wishing to rely on relation back bear some responsibility to define the scope of the action they are bringing, so that defendants may properly evaluate and respond to such claims." *Charlot v. Ecolab, Inc.*, 97 F.Supp.3d 40, 72 (E.D.N.Y. Dec. 12, 2014).

In *Charlot v. Ecolab, Inc.*, the Eastern District of New York applied these rules to facts similar to those at bar. Specifically, Plaintiffs—who had originally filed a nationwide collective action that also asserted Rule 23 claims under New York and New Jersey law—sought to add additional Rule 23 claims under the law of four other states. *See id.* The court noted that the proposed amendment "would increase the number and identities of the potential plaintiffs, as a result of the more generous statutes of limitations of states such as Illinois in comparison to what is available under the FLSA" and "would also involve state law classes not contemplated by the original complaint." *Id.* Plaintiffs argued that because the claims arose from the same general set of facts, relation back was appropriate. *See id.*

The court disagreed. Noting that "[u]nder the Named Plaintiffs' theory, plaintiffs would be permitted to stop the clock on all state law wage-and-hour claims possibly brought against an employer in multiple states by filing a single FLSA collective action, as long as they were later able to identify plaintiffs in other states," the court rejected this argument. *Id.* at 73. "Although the basic facts of the alleged wage-and-hour violation purportedly committed by [Defendant] is the same under federal law, the state standards vary such that a defendant facing multi-state claims must analyze its records and scope of liability under each state law separately. It would be unfair to expect a defendant to engage in this review before at least one employee from a state has stepped forward as a plaintiff to show that there is a plaintiff with standing to raise the challenge and force the defendant to consider its liability." *Id.* Accordingly, the court found that "the Named Plaintiffs' pleading of a nationwide FLSA collective action was not fair notice of individual and class action claims under state law, notwithstanding the similarity of the relevant facts," and therefore held that "the Named Plaintiffs have not demonstrated fair notice and relation back is not proper under [Rule 15]." *Id.*, at 74 (adopted by 2015 U.S. Dist. LEXIS 39520 (E.D.N.Y. Mar. 27,

2015) ("Indeed, under the Named Plaintiffs' theory, a national defendant should be on notice of potential class claims in any state it operated as soon as an FLSA collective action was filed, and before any representative plaintiffs were identified and joined the action. This reasoning would defeat the purpose of Rule 15(c)'s notice requirement, if the filing of a single FLSA collective action automatically put a national defendant on notice of any and all potentially related state class claims that may arise.").

The same outcome is appropriate here, under directly analogous facts.  The original complaint in this case only asserted claims under the FLSA and the CMWA.  There were no claims under the NYLL, nor was any New York resident a party-plaintiff.  Under these circumstances, Humana was not on notice that it would be sued by an additional plaintiff purporting to represent an additional class(es) under the laws of a different state.  *See Charlot*, 97 F. Supp. 3d at 72; *see also Cliff v. Payco General American Credits, Inc.*, 363 F.3d 1113, 1131-33 (11th Cir. 2004) (defendant did not have the notice required for relation back where the plaintiff originally pled state and federal debt collection class claims limited to Florida residents and later sought to expand the federal claims to a nationwide class); *Feuerstack v. Weiner*, 2013 U.S. Dist. LEXIS 106321, at *10 (D.N.J. July 30, 2013) ("[T]he Court finds that Plaintiff's amendments expanding the putative class from New Jersey consumers to consumers nationwide do not relate back to the initial complaint because Plaintiff failed to satisfy the notice and prejudice requirements.").

## V.    This Court Should Defer to NYSDOL's Interpretation of Its Own Regulation with Respect to the Effective Date

It is well settled law in New York that "[t]he construction given statutes and regulations by the agency responsible for their administration, if not irrational unreasonable, should be upheld." *Severin v. Project OHR, Inc.*, 2012 U.S. Dist. LEXIS 85705, at **23-24 (S.D.N.Y. Jun. 20, 2012) (citing *Samiento v. World Yacht, Inc.*, 10 N.Y.3d 70. 79 (2008)).

New York's highest court has repeatedly made clear that such interpretations are entitled to deference in the context of Labor Law issues. *See Samiento*, 10 N.Y.3d at 70; *Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460 (2013). Just recently – in adjudicating and rejecting the "24-hour" theory previously espoused by the New York Plaintiffs here – the Court reiterated that judicial review of such interpretation is "quite circumscribed" and requires only determination of a "rational interpretation of its own regulations in its area of expertise." *Andryeyeva v. New York Health Care, Inc.*, No. 11, and *Moreno v. Future Care Health Servs., Inc.*, No. 12, 2019 N.Y. App. LEXIS 617 (N.Y. Mar. 26, 2019) ("*Andryeyeva*").

NYSDOL, the agency responsible for applying the federal regulation at issue to New York's unique statutory scheme – determined the effective date to be October 13, 2015. Dkt. 289 (memorandum from Acting Director Maura McCann to All Staff applying October 13, 2015 effective date as matter of NYDOL policy).[9] Unlike the FLSA, where companionship-exempt workers historically had zero minimum wage or overtime protection,[10] FLSA-exempt companions under New York law were, at all relevant times and for many years before, afforded the protections of minimum wage and minimum wage overtime. 12 NYCRR § 142-2.2; Exhibit P (New York Opinion Letters dated July 14, 1995; June 13, 2000; and, May 26, 2004 ("NYSDOL Letters")). Meaning, in assessing the impact of the Final Rule on NYLL-covered employers, the NYSDOL was beginning from a baseline position where workers already had substantial wage floor protection, and they were free to determine, as they did, that prospective application of the

---

[9] Indeed, NYSDOL applied this policy to Humana itself in an NYSDOL investigation. Dkt. 279 at 9-10.

[10] *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 161 (2007) (prior to Final Rule, companionship exemption "exempts [companions] from the statute's minimum wage and maximum hours").

overtime rule was appropriate following *Weil II*, considering these existing protections and the burdens of increased labor costs on the home care industry in New York.[11]

While this Court referred to such argument as "misplaced" in the context of class certification, the Court should give this important issue of New York law a fulsome review here, or dismiss such claims without prejudice to filing and adjudication by an appropriate New York state court. Accordingly, this Court should defer to NYSDOL's interpretation of the regulations it is tasked with administering—and declare that the effective date of modification of those regulations was October 13, 2015. As a result, Humana should be awarded judgment as a matter of law dismissing the NYLL claims of the "Effective Date Class" to the extent that they seek to recover allegedly unpaid overtime for workweeks between January 1, 2015 and October 13, 2015.

## VI.   Humana is Entitled to Judgment as a Matter of Law that The Caregiver Agreement Was Reasonable

### A.  The Caregiver Agreement is Reasonable as Applied to Live-In HHAs Under 29 C.F.R. § 785.23, And There Can Be No Claims

The law has long recognized that jobs involving live-in work are simply not suitable to using a timecard system or recording the exact number of hours worked. *See* 29 C.F.R. § 785.23. Accordingly, the law allows for flexibility by permitting the parties to such relationships to enter into an agreement regarding compensation. Specifically, 29 C.F.R. § 785.23 provides that "any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted." *Id.*

The Caregiver Agreement is reasonable as a matter of law. In addition to expressly stating that each Live-In HHA was free to engage in private pursuits, the Caregiver Agreement explains both (a) how many hours of work each HHA is expected to perform per 24-hour period, and (b)

---

[11] *See* Exhibit G (letter from NYS Association of Health Care Providers to Governor Cuomo regarding cost crisis in home care brought about by final rule and other regulatory changes).

how Humana expected that Live-In HHAs would divide their days.  (Agreement, ¶ 3.)  Further still, the Caregiver Agreement expressly states that a Live-In HHA who works more than the anticipated 8 hours has a responsibility to report it.  *See id.*

Similar agreements have been deemed reasonable as a matter of law.  For example, the Fourth Circuit affirmed a District Court's award of summary judgment to an employer in a case involving an agreement analogous to the one at issue here.  *See Garofalo v. Donald B. Heslep Assocs., Inc.*, 405 F.3d 194, 198 (4th Cir. 2005).  The agreement in that case, like the Caregiver Agreement, provided for set compensation based upon an anticipated number of hours worked.  *See id.*, at 196.  It also provided specific instructions regarding how the employees should divide their time and directed the employees to report if they worked more than the anticipated amount of time in any given workweek.  *See id.*  Accordingly, the agreement at issue in that case was deemed reasonable.  *See id.*, at 198.

In an effort the rebut that showing, the *Garofalo* plaintiffs submitted their own estimates of how many hours they worked in a given week—based upon the number of hours that the business was open.  The Court rejected this effort, noting that the estimates "were not based on contemporaneous records of actual work time" but on plaintiffs' "assumption that they were entitled to receive compensation for every hour that the facility was open."  *Id*, at 200.  That assumption, however, failed to acknowledge or rebut the "presumption that [residential] employees are not working the entire time they are on the premises."  *Id.*

So too here.  Plaintiffs assume that they are entitled to compensation for the entire time that they were on a patient's premises.  But that assumption, supported only by their own conclusory assertions, "do[es] not acknowledge, let alone rebut, this presumption."  *Id*.  This is especially so considering the level of specificity provided by the Caregiver Agreement, which

Plaintiffs indisputably signed and understood at their time of hire. *See Braziel v. Tobosa Developmental Servs.*, 166 F.3d 1061, 1063 (10th Cir. 1999) ("Although it is clear from the record and appellants' pleadings that they became unhappy with the policy sometime after beginning their employment with [Defendant], it is equally clear that appellants understood and acquiesced to the policy when they were hired.") (citing *Ariens v. Olin Mathieson Chem. Corp.*, 383 F.2d 192, 197 (6th Cir. 1967)).

Even if Plaintiffs' conclusory, self-serving assertions that they occasionally worked more than the time anticipated by the Caregiver Agreement are credited, their overtime claims still fail. When seeking to rebut an employer's showing that an agreement is reasonable under Section 785.23, "it is not enough for the plaintiffs to show that they worked more than agreed. They must show that the agreement provided an unreasonably short amount of time to perform the assigned tasks." *Garofalo*, 405 F.3d at 200-01 (quoting *Rudolph v. Metropolitan Airports Comm'n*, 103 F.3d 677, 684 (8th Cir. 1996). This Plaintiffs have not done so, and their testimony provided no specifics regarding the alleged undue interruptions. In fact, one of the Named Plaintiffs, Kinkead, estimated that she was able to get 8 hours of sleep during 70% of her Live-In shifts. Kinkead Dep., 32:14-19. Moreover, several plaintiffs admitted that they had personal (i.e. non-working) time during their Live-In shifts. *See e.g.*, Kinkead Dep., 82:8-18 (spent time during her shift doing word puzzles); Antwi Dep., 78:3-79:3 (spent time during shift reading on cell phone); Shaw Dep., 32:3-34:24 (took naps, watched television, talked on cell phone, and did homework during shifts).

Humana anticipates that Plaintiffs will argue that the agreement was unreasonable because the work they were expected to complete under its terms could not be completed within 8 hours, and that Humana knew it. This argument should be rejected, and has been by the Eighth Circuit. *See Rudolph v. Metopolitan Airports Comm'n*, 103 F.3d 677, 684 (8th Cir. 1996). In *Rudolph*,

canine caretakers argued that they worked longer hours than provided for in the agreement they had with their employer. *See id.*, at 683. The Eighth Circuit emphasized that the agreement not only provided the amount of time plaintiffs were expected to spend working, but also that plaintiffs were to inform the employer and seek approval if they spent additional time. *See id.* Moreover, the Eighth Circuit noted that the employer (and not the court) was in the best position to make the determination about how much time was appropriate for certain tasks, and to direct its employees accordingly. *See id.*

Most notably, however, the Eighth Circuit held that, just like the Fourth Circuit did in *Garofalo*, that "[i]t is not enough for plaintiffs to show that they worked more than agreed. They must show that the agreement provided an unreasonably short amount of time to perform the assigned tasks." *Id.*, at 684. Because Plaintiffs failed to do so in that case, summary judgment was granted to the employer. *See id.* The same result is appropriate here.

Moreover, related to the instructions of 29 C.F.R. § 785.23 and the facts at issue in this case, the Second Circuit makes clear that an employee cannot have a claim for time worked unless the employee can "prove that [the employer] had actual or constructive knowledge that [they] were performing uncompensated work." *Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 365 (2d Cir. 2011); *see also Singh v. City of New* York, 418 F. Supp. 2d 390, 397 (S.D.N.Y. Nov. 28, 2005) ("[A]n employee in the Second Circuit is only entitled to compensation for those hours of work performed of which the employer had actual or constructive knowledge.")  "The relevant knowledge is not 'I know the employee was working,' but 'I know the employee was working and not reporting his time.'" *Gordon v. Kaleida Health*, 299 F.R.D. 380, 392 (W.D.N.Y. Mar. 24, 2014) (quoting *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 875 (6th Cir. 2012)).  Thus, "[w]here an employer has no knowledge that an employee is engaging in overtime

work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of the FLSA." *Id.* (quoting *Staislaw v. Erie Indem. Co.*, 2012 U.S. Dist. LEXIS 19032, at **10-11 (W.D. Pa. Feb. 15, 2012)).  When, as here, it was the Plaintiffs themselves "who prevented defendants from learning about [] alleged extra overtime work…proof of wage and hour law violations comes up short." *Joza v. WW JLF, LLC*, 2010 U.S. Dist. LEXIS 94419, at **32-33 (E.D.N.Y. Sept. 9, 2010) (citing *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414-15 (9th Cir. 1981).

Plaintiffs have no evidence that they informed Humana that they worked more than 8 hours in a day even though the Caregiver Agreement clearly instructed them to do so, and the Welcome Packet provided patient-clients and their families the same instruction and expectation.

## B. Alternatively, Plaintiffs Have Conceded That 13 Is The Maximum Number of Hours Worked for Live-Ins

29 C.F.R. § 785.22 (which does not apply to employees who reside on premises) provides: "Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep." 29 C.F.R. § 785.22(a).  Plaintiffs have concede that 13 is the maximum number of hours at issue in this litigation.  Moreover, numerous HHAs testified that they understood they were supposed to be taking adequate time for sleep and meal breaks, and that they were not supposed to be working 24-hours per day.  *See generally*, Mathieu Dep., 140:3-7, 140:23-141:7, 143:8-14, 147:10-13. Indeed, one of the Named Plaintiffs, Kinkead, estimated that she was able to get 8 hours of sleep

during 70% of her Live-In shifts.  Kinkead Dep., 32:14-19.  Similarly, opt-in plaintiff Morant admitted that she received three hours per day for meals.  Morant Dep., 36:22-24.

Accordingly, there is no dispute given the record that Humana had an agreement with its HHAs to excluded bona fide sleep and meal breaks from compensable time.  That agreement is permissible under 29 C.F.R. § 785.22, and Humana is therefore entitled to judgment as a matter of law on Plaintiffs' claims to the extent that they seek to recover for anything beyond 13 hours in a day, including bona fide sleep and meal time.

### VII.  Humana is Entitled to Judgment As a Matter of Law on the Claims on Any Live-In HHA Who Worked No More Than Three Live-In Shifts Per Week

Similarly, Humana is entitled to judgment as a matter of law dismissing the unpaid overtime claims of any Live-In HHA who worked three or fewer Live-In shifts in a given workweek.  The law is clear that an individual must work over 40 hours to have a viable FLSA claim.  *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1042 (Mar. 22, 2016) ("Having worked less than 40 hours, that employee would not be entitled to overtime pay and would not have proved an FLSA violation.").  The New York Court of Appeals recently clarified that each such shift results in, at most, 13 compensable hours under state law (provided that adequate sleep and meal time are allotted).  *See Andryeyeva*, 2019 N.Y. LEXIS 617, at **33-34.  Plaintiffs do not urge differently.

Applying these rules, it becomes clear that some opt-ins, and one named Plaintiff, never worked more than 40 hours in a given Live-In workweek.  Indeed, Ms. Mathieu admitted during her deposition that she never worked more than three Live-In Shifts in any given workweek.  (*See* Mathieu Dep., 88:14-17.)  Because each Live-In shift consists of, at most, 13 hours under *Andryeyeva*, Ms. Mathieu worked a maximum of 39 compensable hours per workweek.  Ms. Mathieu, and others with similar schedules, therefore never worked overtime and have no claims.

As a result, Humana is entitled to judgment as matter of law on Mathieu's unpaid overtime claim; as well as those asserted by any other Plaintiff who never worked overtime.

**VIII.** **Plaintiffs' Day Rate Compensation for Live-In Shifts Compensated Them For All Hours Worked, Eliminating Non-Overtime Claims and Limiting Overtime Claims to Half Time**

This Court previously recognized that "[i]n addition to their claims for *overtime* hours, plaintiffs also seek relief for *unpaid* hours, alleging that Humana systematically undercounted the number of hours that it paid HHAs who worked for 24-hour live-in shifts." Dkt. 293, at 3 (citing Dkt. 181 at 17-18, ¶¶ 64-73; Dkt. 204-1 at 7-9). Plaintiffs' claims fail.

As an initial matter, neither named Plaintiff Caillo nor Plaintiff Mathieu have standing to assert an unpaid hours claim prior to January 1, 2015, because neither worked in a live-in capacity prior to January 1, 2015. Dkt. 294 ¶ 5 (Plaintiff Mathieu hired in 2015); Caillo Dep. 91:22-92-2; 119:11-14; 120:1-17 (Plaintiff Caillo worked single Live-In case in 2015) and Exhibit Q (Payroll records reflecting Live-In case from August to October 2015). Instead, both Plaintiffs have only a viable misclassification claim for the time period after January 1, 2015. As the Supreme Court has "repeatedly held, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *East Tex. Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quotations omitted). It is well established that "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 40 n. 20 (1976). "It is not enough that the conduct of which the plaintiff complains will injure *someone*. The complaining party must also show that he is within the class of persons who will be concretely affected." *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982). A plaintiff who has been injured by one

kind of conduct does not possess, by virtue of that particular injury, the necessary stake in litigating conduct of another kind, although similar, to which the plaintiff has not been injured. *See id*. For this reason, Plaintiffs' unpaid hours claim should be dismissed from the lawsuit.[12]

Moreover, even assuming Plaintiffs' claim survives, Plaintiffs' contention is an attempt to mischaracterize the arithmetical representation of a live-in shift for payroll system purposes as dispositive of (or even relevant to) the question of how many hours day rate compensation covered, which was all hours, as every witness testified. *See Siji Yu v. Knighted LLC*, No. 15-CV-9340 (KMK), 2019 U.S. Dist. LEXIS 80419, at *3,17 (S.D.N.Y. May 13, 2019) (observing that salaried exempt employee's semi-monthly pay stub always reflected 86.67 hours worked, but that he received a fixed salary regardless of hours worked); *see also Zoltek v. Safelite Glass Corp.*, 884 F. Supp. 283 (N.D. Ill. 1995) (evidence unrebutted that FLSA Plaintiff received fixed salary for varying hours and use of 86.67 hours on pay records were "accounting artifacts that were required for the payroll system" and not evidence rebutting salaried pay) (citing *Triple "AAA" Co. v. Wirtz*, 378 F.2d 884 (10th Cir. 1967) ("Because the amount of each employee's paycheck was unaffected by the actual number of hours worked [or denoted on pay stubs], the inescapable conclusion is that monthly salary determines only the 'regular rate' and includes no provision for overtime. Thus the specified monthly salary was meant to compensate each employee for all hours worked each week, regardless of their number.")).

Plaintiffs working Live-In shifts did not have any such unpaid hours, and recovery is not available under any of the statutes at issue. First, as set forth *supra*, Live-In HHAs were paid a

---

[12] Alternatively, this Court can decertify Plaintiffs' unpaid hours class. *See Mazzei v. The Money Store*, 829 F.3d 260, 266 (2d Cir. 2016) (instructing that a district court "has the affirmative duty of monitoring its class decisions in light of the evidentiary development of the case") (citations omitted); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) ("[T]he Due Process Clause of course requires that the named plaintiff *at all times* adequately represent the interests of the absent class members.") (emphasis added).

day rate pursuant to a reasonable agreement between the parties, and the testimony is uniform that such day rate was paid without reference to hours worked, which Humana was in no position to assess. As such, there are no "unpaid hours;" the day rate covered all compensable time. For this reason alone, Humana is entitled to judgment as a matter of law to the extent that any Live-In HHA seeks recovery for "unpaid hours." *See Oram v. SoulCycle LLC*¸ 979 F.Supp.2d 498, 506 (S.D.N.Y. Oct. 28, 2013). In addition to this agreement, Plaintiff Caillo admitted that she asked Humana about her pay as a Live-In, and was told that she would receive a day rate. (Caillo Dep. 39:22-40:15.) There is no genuine dispute that the Live-In HHAs were paid a day rate and understood they were paid a day rate.

Second, it is fundamental that the FLSA does not authorize recovery of "gap time."[13] Under the FLSA, so long as an employee's total wages exceed the minimum wage for all hours worked, there is no violation of the minimum wage provision FLSA. *See Klinghoffer*, 285 F.2d at 493-94; *see also Nakahata v. New York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 201 (2d Cir. N.Y. 2013) (finding that there is no gap time claim under the FLSA); *Ramos v. City of New York Fire Dep't*, 2014 U.S. Dist. LEXIS 66449, *20-21 (S.D.N.Y. May 9, 2014) (holding that "gap-time claim is only cognizable under the FLSA if the average hourly wage falls below the federal minimum wage") (internal citation omitted). This is true even if an employee alleges there were some hours for which he was not paid. So long as the total compensation for the week divided by the total hours worked (even those additional hours an employee alleges were not paid) exceed the minimum wage, no violation exists because the statute only prohibits compensation below the minimum wage. This is referred to as the "Klinghoffer Rule." *See Lundy v. Catholic Health System*

---

[13] "Gap time" refers to permitting a claim to proceed where an employee alleges he was not paid for all hours worked, even though the total wage paid divided by the total hours worked exceeds the minimum wage.

*of Long Island Inc.*, 711 F.3d 106, 115 (2d Cir. N.Y. 2013) *discussing United States v. Klinghoffer*

*Bros. Realty Corp.*, 285 F.2d 487, 494 (2d Cir. 1960).  To use an example, if an employee receiving

$380 for 38 hours of work proves he worked a 39th hour, this additional hour results in a revised

rate of pay of $380/39 = $9.75, still above the current federal minimum wage of $7.25/hour, and

thus not a violation of the FLSA.

This principle that applies to the FLSA applies with equal force to Plaintiffs' Connecticut

State Law claims under the CMWA.  *See Williams v. Gen. Nutrition Ctrs., Inc.*, 326 Conn. 651,

630 (2017) ("§ 31–76c, which sets forth the overtime requirement, is nearly identical to the federal

overtime statute, 29 U.S.C. § 207(a)(1)" and there is therefore "no reason to interpret § 31–76c

differently from its federal counter-part."); *Grettler, et al., v. Directv, LLC, et al.*, Case Nos. 3:14-

cv-1052 (RNC), 3:14-cv-1804 (RNC), 2016 WL 1305105, *4 (D. Conn. Mar. 31, 2016) ("Because

plaintiff's minimum wage claims fail under the FLSA, they also fail under Connecticut law.").

Thus, Plaintiffs' gap-time claims under Connecticut law fail.

In *Lundy*¸ while the Second Circuit reiterated that the FLSA does not recognize such a

claim, the Court added that "New York law *may* recognize Plaintiffs' NYLL gap-time claims."

*Lundy*, 711 F.3d at 117-18 (emphasis added) (citing Section 663(1) of the Minimum Wage Act

(N.Y. Lab. Law § 663(1)).   The *Lundy* Court, however, did not resolve that question.  *Lundy*, 711

F.3d at 118 (quoting NYLL § 663(1)).  Subsequently, some courts have held that gap time may be

recoverably under the NYLL, but only for "as a remedy to a substantive violation of Article 6 of

the NYLL."  *See Li v. Chinatown Take-Out, Inc.*, 2018 U.S. Dist. LEXIS 219941, at *12 (S.D.N.Y.

Dec. 4, 2018) (citing N.Y.L.L. §§ 191, 198(3)).[14]  It does not apply to the day rate compensation

system used here, either before or after the Final Rule.

---

[14] Here, the Second Amended Complaint fails to even allege any violation of Article 6 of the NYLL.  *See* Dkt. 294,
¶¶ 73-75 (Third Cause of Action).  Nor could it plausibly do so given the absence of any genuine dispute regarding

Prior to January 1, 2015, the implications of this rule are quite simple: no NYLL violation occurred, because Humana paid well above the requirement of $7.25/ hour for 13 hours for a live in shift, and more than $10.88/hour for the hours above 40, as follows:[15]

The data for New York Opt-in Plaintiff Nirla Saint-Louis illustrates this principle.  Dkt. 143.  She was hired at a Live-In day rate of $175 per shift.  *See* Ex. L, Golder Dec.  Thus, she was paid substantially above the minimum wage, regardless of how many live-in shifts she worked, as follows:

| Shifts | Rate | Minimum Wage Hours | Total Pay | Minimum Wage Obligation (through 12/30/13) | Minimum Wage Obligation (12/31/13 through 12/30/14) |
|---|---|---|---|---|---|
| 1 | $175 | 13 | $175 | $94.25 | $104.00 |
| 2 | $175 | 26 | $350 | $188.50 | $208.00 |
| 3 | $175 | 39 | $525 | $282.75 | $312.00 |
| 4 | $175 | 52 | $700 | $420.56 | $464.00 |
| 5 | $175 | 65 | $875 | $562.00 | $620.00 |
| 6 | $175 | 78 | $1,050 | $703.44 | $776.00 |
| 7 | $175 | 91 | $1,225 | $844.88 | $932.00 |

In short, the "Total Pay" column is always higher than the New York minimum wage obligation. The same is true for New York Opt-in Plaintiff Gifty Amuquandoh, initially employed at $150

---

the frequency of payments (NYLL Section 191), deductions from wages (NYLL Section 193), or notice and record-keeping requirements (NYLL Section 195).  Those statutes are "an inappropriate vehicle for . . . recovery' where, as here, 'the gravamen of plaintiffs' complaint is that the sums paid were not equal to what plaintiffs claim they were entitled to receive.'"  *Kone v. Joy Constr. Corp.,* 2016 U.S. Dist. LEXIS 26981, at *13 (S.D.N.Y. Mar. 3, 2016) (quoting *Jara v. Strong Steel Door, Inc.*, 872 N.Y.S.2d 691 (Sup. Ct. Kings Cnty. Aug. 15, 2008)); *see also Myers v. Hertz Corp.*, 624 F.3d 537, 545 (2d Cir. 2010) ("Labor Law § 191 by its terms only involves the timeliness of wage payments, and does not appear to afford plaintiffs any substantive entitlement to a *particular* wage.") (emphasis in original); *Moras v. Marco Polo Network, Inc.*, 2012 U.S. Dist. LEXIS 181110, at *31 (S.D.N.Y. Dec. 20, 2012) ("Section 193 has nothing to do with failure to pay wages…, governing instead the specific subject of making deductions from wages.") (quoting *Monagle v. Scholastic, Inc.*, 2007 U.S. Dist. LEXIS 14342, at *2 (S.D.N.Y. Mar. 9, 2007)).  Humana did not breach the parties' compensation agreement (the Caregiver Agreement) – it complied with it.

[15] The New York minimum wage during the applicable time period was $7.25/hour until 2014, when it was $8.00/hour, and $8.75/hour in 2015.

per shift.  *See* Ex. M, Golder Dec.  While a lower rate than Ms. Saint-Louis, this day rate still

resulted in wages well above the minimum wage floor, regardless of the number of shifts:

| Shifts | Rate | Minimum Wage Hours | Total Pay | Minimum Wage Obligation (through 12/30/13) | Minimum Wage Obligation (12/31/13 through 12/30/14) |
|---|---|---|---|---|---|
| 1 | $150 | 13 | $150 | $94.25 | $104.00 |
| 2 | $150 | 26 | $300 | $188.50 | $208.00 |
| 3 | $150 | 39 | $450 | $282.75 | $312.00 |
| 4 | $150 | 52 | $600 | $420.56 | $464.00 |
| 5 | $150 | 65 | $750 | $562.00 | $620.00 |
| 6 | $150 | 78 | $900 | $703.44 | $776.00 |
| 7 | $150 | 91 | $1,050 | $844.88 | $932.00 |

Put another way, for the period where HHAs were exempt companions, it was not unlawful

to pay a day rate provided those minimums were met.  To hold otherwise is to impermissibly parse

the 13-hour rule, a <u>minimum</u> wage rule, by separating the 13 hours from the exempt-but-minimum-

wage-covered paradigm repeatedly set out in the NYSDOL guidance cited herein.  No more was

required.

This is precisely the analysis authorized by the NYSDOL Letters and undertaken and

applied by Judge Cote in *Severin v. Project OHR, Inc*., 10 Civ. 9696 (DLC), 2012 U.S. Dist. LEXIS

85705, *35 (S.D.N.Y. Jun. 20, 2012).  There, exempt companion home health aides who received

a day rate claimed compensation for their meal periods.  *See id*. at 34.  Judge Cote found that even

if this allegation increased their hours worked from 13 to 16, no minimum wage violation could

attach, the $136.95 day rate paid for each live-in shift resulted in an hourly rate of $8.55 per hour

for 16 hours (i.e., total compensation divided by total hours) which was greater than the applicable

minimum wage rate.  *Id*. at *35-36.

The additional language in the Agreement, like Humana's payroll conventions, is irrelevant to this analysis.  It does not in any way impact this principle or create a separate cause of action.[16]  Indeed, "the NYLL does not require that employees be paid by the hour, only that the total wages paid to the employee are equal or greater to the total sum of the applicable minimum wage rate times the number of hours worked by the employee."  *Oram v. SoulCycle LLC¸* 979 F.Supp.2d 498, 506 (S.D.N.Y. Oct. 28, 2013); This proposition is consistent with the NYSDOL's interpretation of the Article 19 and Wage Order requirements applicable to exempt companions as Judge Cote found.  Accordingly, Humana is entitled to judgment as a matter of law on the New York Unpaid Hours Class' claim to the extent that it seeks to recover for hours worked under 40 in any given workweek, because HHAs always earned more than what was required under New York law.

Effective January 1, 2015 (this Court's application of the Final Rule), Plaintiffs can recover the 50% overtime premium, but they cannot do so on anything other than a "half time" basis, for the reasons set forth above.  *See Oram*, 979 F.Supp.2d at 506-07; 12 NYCRR § 142-2.16 ("When an employee is paid on a piece-work basis, salary, or any basis other than hourly rate, the regular hourly wage rate shall be determined by dividing the total hours worked during the week into the employee's total earnings").  *See also Kornexl v. Bailey*, 2006 U.S. Dist. LEXIS 32754 (M.D. Fla. May 24, 2006) ("For employees paid by job rate, day rate, piece work or commissions, the total compensation earned during a work week should be divided by the total hours worked"); DOL Opinion Letter, FLSA-953 (June 22, 1967) (explaining how to calculate additional half time owed to day rate bus drivers who received certain additional compensation for extra trips).

---

[16] Plaintiffs' Complaint artfully seeks to sidestep this issue by simply not characterizing Plaintiffs' rates of pay at all. Dkt. 294 ¶¶ 4-6.

In summary, Humana submits that it is entitled to judgment as a matter of law on the "unpaid" hours claims of any Live-In HHA who never earned below the minimum wage, and to a ruling that any overtime owed based on FLSA principles applicable to FLSA, New York and Connecticut overtime law since January 1, 2015 is owed at the half-time rate.

### IX.   Humana is Entitled to Certain Offsets That Reduce Plaintiffs' Potential Recovery

Humana paid HHAs premium overtime for working on Holidays for all shifts, even though it was not required to do so by law.  Matusz 87:24-88:14.  Those premium payments should therefore be applied to offset any potential liability for unpaid overtime in this case.  29 U.S.C. § 207(e)(6), (h).

### X.   CONCLUSION

For all the reasons set forth above, and in the accompanying Declaration of David R. Golder and the exhibits annexed respectively thereto, the Court should grant Humana partial summary judgment dismissing all of Plaintiffs' FLSA claims because Humana has established a complete defense under 29 U.S.C. § 259.  Alternatively, (1) declaring that a two-year statute of limitations applies to all remaining FLSA claims because Humana did not act willfully, and dismissing those claims to the extent that they encompass any workweeks prior to November 10, 2013 and rejecting Plaintiffs' claims for liquidated or double damages; (2) declaring that Plaintiffs' NYLL claims do not relate back to the filing of the original complaint, and are therefore time-barred to the extent that they encompass any workweeks prior to November 9, 2011; (3) deferring to the NYSDOL's reasonable interpretation of its own regulations; (4) declaring that the Caregiver Agreement between Humana and Live-In HHAs was reasonable under 29 C.F.R. § 785.23 and, if not, reasonable under 29 C.F.R. § 785.22; (5) dismissing the Wage Law claims of any opt-ins who worked no more than three Live-In shifts in any given workweek; (6) declaring

that the day rate compensation paid for live-in shifts compensated Plaintiffs for all hours worked; and (7) declaring that Humana is entitled to certain offsets, as a matter of law, against any eventual recovery.

Dated:  May 17, 2019                    Respectfully submitted,

DEFENDANTS,
HUMANA, INC., HUMANA AT
HOME, INC., AND SENIORBRIDGE FAMILY
COMPANIES (CT), INC.

By:     /s/ *David R. Golder*            
David R. Golder (ct 27941)
golderd@jacksonlewis.com
Noel Tripp (pro hac vice)
trippn@jacksonlewis.com
Jackson Lewis P.C.
90 State House Square, 8th Floor
Hartford, CT 06103
P: (860) 522-0404
F: (860) 247-1330

## **CERTIFICATION OF SERVICE**

The undersigned hereby certifies that, on May 17, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties of record by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.


*/s/ David R. Golder*
David R. Golder


4815-6103-0295, v. 8