## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVERLYNN KINKEAD, | : | |
| SHIRLEY CAILLO, and CLAUDE | : | |
| MATHIEU, individually and on behalf | : | |
| of all others similarly situated, | : | CIVIL CASE NO.: 3:15-CV-01637 (JAM) |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| HUMANA, INC., HUMANA AT HOME, | : | |
| INC., AND SENIORBRIDGE FAMILY | : | |
| COMPANIES (CT), INC., | : | |
| Defendants. | : | |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

David R. Golder (ct 27941)
Noel P. Tripp (pro hac vice)
Jackson Lewis P.C.
90 State House Square, 8th Floor
Hartford, CT 06103
P: (860) 522-0404
F: (860) 247-1330

DEFENDANTS,
HUMANA, INC., HUMANA AT HOME,
INC., AND SENIORBRIDGE FAMILY
COMPANIES (CT), INC.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ii

I.  PRELIMINARY STATEMENT ................................................................................ 1

II.  RELEVANT FACTUAL BACKGROUND ............................................................... 3

III.  PLAINTIFFS CANNOT PURSUE, LET ALONE BE AWARDED SUMMARY
JUDGMENT, ON CLAIMS AND THEORIES THEY DID NOT RAISE PREVIOUSLY
AND IN FACT DISAVOWED IN THE COMPLAINT AND CERTIFICATION
BRIEFING ................................................................................................................. 3

   A.  Plaintiffs Cannot Ambush Humana with a "Regularly Scheduled" Sleep Claim
Because Plaintiffs Never Made Such a Claim ................................................................ 4

   B.  Additionally, Plaintiffs' New "Regularly Scheduled" Claim Fails Because it is
Inconsistent with Plaintiffs' Prior Claims on Which This Court Based Its Class
Certification Order ......................................................................................................... 5

   C.  Plaintiffs' Alternative 13-Hour Claim Fails Because Plaintiffs Improperly Seek the
Proposed Alternative Relief ........................................................................................ 11

   D.  Plaintiffs' Claims Under New York Labor Law Article 6 Fail for Similar Reasons. ............. 12

IV.  PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THEIR
FLSA OVERTIME CLAIM .................................................................................... 13

   A.  Humana's Good Faith Provides a Complete Defense or, at Minimum, Precludes
Plaintiffs Motion for Summary Judgment ................................................................. 13

   B.  The FLSA Only Requires Payment for Hours Worked.  Plaintiffs Have Conceded
That Hours Worked Are Based on Humana's Records and Cannot Now Seek
Additional Alleged Off-the-Clock Hours .................................................................. 14

   C.  There is No Requirement That Non-Compensable Time Be "Regularly Scheduled" ........... 16

   D.  Even Assuming There Is Any Alleged Unpaid Time, Such Time Is Not Compensable
Because Humana Did Not Have Any Knowledge Of Such Working Time .......................... 20

   E.  Plaintiffs' Gap Time is Not Recoverable Under the FLSA .................................................... 22

   F.  Plaintiffs' Proposed Method for Calculating the Regular Rate is Improper ......................... 22

V.  THE CONNECTICUT EFFECTIVE DATE CLASS IN NOT ENTITLED TO
SUMMARY JUDGMENT ....................................................................................... 23

VI.  THE CONNECTICUT UNPAID HOURS CLASS IS NOT ENTITLED TO
SUMMARY JUDGMENT ....................................................................................... 24

VII.  THE NEW YORK EFFECTIVE DATE CLASS IS NOT ENTITLED TO SUMMARY
JUDGMENT ............................................................................................................ 25

VIII.  THE NEW YORK UNPAID HOURS CLASS IS NOT ENTITLED TO SUMMARY
JUDGMENT ............................................................................................................ 29

IX.  CONCLUSION ....................................................................................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Recovery Trust*,
　634 F.3d 678 (2d Cir. 2011)........................................................................9

*Andryeyeva v. New York Health Care, Inc.*
　2019 N.Y. LEXIS 617 (2019)................................................................ *passim*

*Ariens v. Olin Mathieson Corp.*,
　383 D.2d 192 (6th Cir. 1967)...................................................................19

*Baden v. Koch*,
　799 F.2d 825 (2d Cir. 1986)......................................................................8

*Berns v. EMI Music Publ'g, Inc.*,
　1999 U.S. Dist. LEXIS 17541 (S.D.N.Y. Nov. 12, 1999).........................11

*Branch v. Ogilvy & Mather, Inc.*,
　765 F. Supp. 819.........................................................................................9

*Brandon v. Mare-Bear, Inc.*,
　2000 U.S. App. LEXIS 12585 *11 (9th Cir. June 5, 2000)........................4

*Braziel v. Tobosa Developmental Servs.*,
　166 F.3d 1061 (10th Cir. 1999)................................................................19

*Brown v. ScriptPro, LLC*,
　700 F.3d 1222 (10th Cir. 2012)...............................................................20

*Church v. St. Mary's Healthcare*,
　2012 U.S. Dist. LEXIS 138338 (N.D.N.Y. Sept. 25, 2012)......................31

*Comcast Corp. v. Behrend*,
　133 S. Ct. 1426 (2013)..............................................................................32

*Competitive Techs, Inc. v. Marcovitch*,
　2008 U.S. Dist. LEXIS 2202 (D. Conn. Jan. 11, 2008)............................12

*De Carrasco v. Life Care Servs., Inc.*,
　No. 17-cv-5617 (KBF), 2017 U.S. Dist. LEXIS 206682 (S.D.N.Y. Dec. 15,
　2017) ...............................................................................................6, 8, 15, 27

*DeJesus v. HF Mgmt. Servs., LLC.*,
   726 F.3d 85 (2d Cir. 2013)..........................................................................................4

*DeRosa v. National Envelope Corp.*,
   595 F.3d 99 (2d Cir. 2010)..........................................................................................6

*Disability Advocates, Inc. v. Patterson*,
   No. 03-CV-3209 (NGG) (MDG), 2009 U.S. Dist LEXIS 39201 (E.D.N.Y.
   May 8, 2009).............................................................................................................8

*Draskovic v. Oneota Assocs., LLC*,
   2019 U.S. Dist. LEXIS 28017 (E.D.N.Y. Feb. 21, 2019).......................................14

*Edwards v. Jet Blue Airways, Corp.*,
   21 Misc. 3d 1107(A) (Sup. Ct. Kings Cnty. Oct. 6, 2008) ....................................32

*Encino Motorcars, LLC v. Navarro*,
   138 S. Ct. 1134 (2018)............................................................................................13

*Felker v. Southwestern Emergency Med. Serv.*,
   581 F. Supp. 2d 1006 (D. Ind. Sept. 8, 2008) .......................................................18

*General Electric Co. v. Porter*,
   208 F.2d 805 (9th Cir. 1953) .................................................................................19

*Greenridge v. Allstate Ins. Co.*,
   446 F.3d 356 (2d Cir. 2006)................................................................................4, 12

*Grettler v. DirectTV, LLC*,
   2016 U.S. Dist. LEXIS 44474 (D. Conn. Mar. 31, 2016).......................................23

*Heredia v. Americare, Inc.*,
   2018 U.S. Dist. LEXIS 86918 (S.D.N.Y. May 23, 2018).........................................8

*Holzapfel v. Town of Newburgh*,
   145 F.3d 516 (2d Cir. 1998).......................................................................14, 20, 21

*Holzapfel v. Town of Newburgh*,
   935 F. Supp. 418 (S.D.N.Y. Aug. 1, 1996)............................................................14

*Home Care Ass'n of Am. v. Weil*,
   799 F.3d 1084 (2015).............................................................................................25

*Intellivision v. Microsoft Corp.*,
   484 F. App'x 616 (2d Cir. 2012) .............................................................................6

*Keepers, Inc. v. City of Milford*,
   807 F.3d 24 (2d Cir. 2015)..................................................................................5, 28

*Kone v. Joy Constr. Corp.*,
    2016 U.S. Dist. LEXIS 26981 (S.D.N.Y. Mar. 3, 2016) .................................................30, 31

*Kuebel v. Black & Decker, Inc.*,
    643 F.3d 352 (2d Cir. 2011) .......................................................................................18, 20, 26

*Li v. Chinatown Take-Out Inc.*,
    2018 U.S. Dist. LEXIS 219941 (S.D.N.Y. Dec. 4, 2018) ......................................................31

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) ...................................................................................................30

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ................................................................................................................10

*Oram v. SoulCycle LLC*,
    979 F. Supp. 2d 498 (S.D.N.Y. 2013) ...............................................................................29, 30

*Pastor v. Alice Cleaners, Inc.*,
    2017 U.S. Dist. LEXIS 192806 (S.D.N.Y. Nov. 21, 2017) ...................................................30

*Perez v. City of New York*,
    2017 U.S. Dist. LEXIS 159473 (S.D.N.Y. Sept. 27, 2017) ...................................................21

*Ramos v. City of New York Fire Dep't*,
    2014 U.S. Dist. LEXIS 66449 (S.D.N.Y. May 9, 2014) ........................................................22

*Rodriguez v. Avondale Care Grp.*,
    2018 U.S. Dist. LEXIS 51578 (S.D.N.Y. Mar. 27, 2018) .................................................14, 27

*Rodriguez v. Doral Mortg. Corp.*,
    57 F.3d 1168 (1st Cir. 1995) .....................................................................................................4

*Roy v. County of Lexington, South Carolina*,
    141 F.3d 533 (4th Cir. 1998) ...................................................................................................17

*Severin v. Project OHR, Inc.*,
    2012 U.S. Dist. LEXIS 85705 (S.D.N.Y. June 20, 2012) ................................................ *passim*

*Seward v. IBM*,
    2012 U.S. Dist. LEXIS 49688 (S.D.N.Y. Jan. 20, 2012) .......................................................16

*Singh v. City of New York*,
    418 F. Supp. 2d 390 (S.D.N.Y. Nov. 28, 2005) .....................................................................20

*Smith v. Superior Casing Crews*,
    299 F. Supp. 725 (E.D. La. Apr. 25, 1969) ............................................................................18

iv

*Steinbeck v. Steinbeck Heritage Found.*,
  400 Fed. App'x 572 (2d Cir. Oct. 13, 2010).........................................................12

*Tenneco Chemicals, Inc. v. William T. Burnett & Co.*,
  691 F.2d 658 (4th Cir. 1982) ................................................................................5

*Threatt v. CRF First Choice, Inc.*,
  No. 1:05cv117, 2006 U.S. Dist. LEXIS 50934 (N.D. Ind. July 21, 2006) .............16

*Trocheck v. Pellin Emergency Medical Serv., Inc.*,
  61 F. Supp. 2d 685 (N.D. Ohio Jun. 30, 1999) ...............................................16, 18

*United States v. Klinghoffer Bros. Realty Corp.*,
  285 F.2d 487 (2d Cir. 1960)................................................................................22

*Villar v. Prana Hosp., Inc.*,
  2017 U.S. Dist. LEXIS 54962 (S.D.N.Y. Apr. 11, 2017)......................................31

*Wandering Dago, Inc. v. N.Y. State Office of Gen. Servs.*,
  992 F. Supp. 2d 102 (N.D.N.Y. Jan. 15, 2014).....................................................12

*Williams v. Gen. Nutrition Ctrs., Inc.*,
  326 Conn. 651 (2017) .................................................................................23, 24

**Statutes**

Conn. Gen. Stat. § 31-71a(3) ....................................................................................24

Conn. Gen. Stat. § 31-76b(2)(D) ...............................................................................24

Fair Labor Standards Act ................................................................................. *passim*

New York Labor Law ....................................................................................... *passim*

**Other Authorities**

12 N.Y.C.R.R. § 142-2.1(b)........................................................................................26

12 N.Y.C.R.R. § 142-2.2 ...........................................................................12, 25, 27, 32

12 N.Y.C.R.R. § 142-2.16 ...................................................................................29, 32

29 C.F.R. § 778.12 ....................................................................................................29

29 C.F.R. § 778.109 ..................................................................................................23

29 C.F.R. § 778.112 .............................................................................................23, 24

29 C.F.R. § 785.22 ........................................................................................... *passim*

29 C.F.R. § 785.22(a) .................................................................................................16, 18, 24

FED. R. CIV. P. 27(a)(2)(A) ........................................................................................11

FED. R. CIV. P. 30(b)(6) ...........................................................................................28

Defendants Humana, Inc., Humana At Home, Inc., and Seniorbridge Family Companies (CT), Inc. (collectively "Humana"), through their counsel, respectfully submit this memorandum of law in opposition to Plaintiffs' motion for partial summary judgment (Dkt. 312).

## I.     PRELIMINARY STATEMENT

As an initial matter, Plaintiffs' motion fails because Plaintiffs seek summary judgment on claims never before raised, and expressly inconsistent with claims made at the class certification stage, in an improper effort to seek a windfall.  Specifically, Plaintiffs allege that Live-In Home Health Workers ("HHWs") are entitled to compensation for all 24 hours of every live-in shift not because such is required as a matter of law, but because of individualized issues relating to sleep and meal breaks not being "regularly scheduled."

This tactic is extremely problematic for two reasons.  First, Plaintiffs, who have twice amended their complaint and submitted extensive briefing in support of various motions, have never before pled or argued that breaks must be "regularly scheduled" to be properly excluded from compensable time.  Second, to obtain class certification, Plaintiffs conceded that hours worked would be determined solely by reference to Humana's records and that the maximum number of hours sought by the class would be the minimum owed for a live-in shift as determined by the New York Court of Appeals decision in *Andryeyeva*.  Plaintiffs now attempt to walk back both concessions, arguing anew (this time based on evidence relating to individual claims) that hours worked should be determined by mere presence at a client's home and that the minimum number of hours "worked" is 24 instead of 13.  The law does not allow for a litigant to assert inconsistent litigation positions like this, and Plaintiffs' motion for partial summary judgment should be denied for this reason alone.  Plaintiffs' reframing of the New York Labor Law

("NYLL") claims as Article 6 claims is a similar effort that should be rejected since Plaintiffs have proceeded under only Article 19 and applicable Wage Orders.

Even considering the merits, however, Plaintiffs' motion still fails. Humana has a complete defense under the FLSA to all of Plaintiffs' claims covering the period from January 1, 2015 through November 12, 2015 because it acted in good faith reliance on existing law. During other periods of time, Humana is entitled to summary judgment on Plaintiffs' claims because the law only requires payment for hours actually worked, as well as (under NY law) maintenance of a given minimum wage floor that Humana exceeded. Humana paid Live-In HHWs a day rate for all hours actually worked. It owes them nothing more.

This is especially so given the express agreement to exclude sleep, meal, and personal time from Live-In HHWs compensable time. By necessity, Humana relied on Live-In HHWs to report their own hours—and particularly any time worked beyond that described in the Caregiver Agreement. Any failure to do so lies at the feet of Plaintiffs alone and cannot reasonably be attributed to Humana. For all of these reasons, Plaintiffs' motion for partial summary judgment on their FLSA claims should be denied.

The aspects of Plaintiffs' motion related to the various Rule 23 classes fail for similar reasons—and some additional state specific ones. As for the Connecticut classes, Plaintiffs' inventive reading on the Connecticut Minimum Wage Act ("CMWA") is completely unsupported by law or fact and ignores the settled rule that the CMWA's overtime provisions mirror federal law. As for the New York Classes, Plaintiffs' similarly creative reading of *Andryeyeva* ignores the policies underlying that decision's existence and seeks to impose the interpretation of New York Law that the decision expressly rejects. Their characterization of New York's pay

requirements as to exempt "companions" also is erroneous.  Plaintiffs' motion with respect to the Rule 23 classes should therefore also be denied.

For all of these reasons, as well as those set forth in Humana's separately filed motion for summary judgment (Dkt. 314), Humana—not Plaintiffs—is entitled to partial summary judgment. At a minimum, this Court should deny Plaintiffs' motion.

## II.   RELEVANT FACTUAL BACKGROUND

The factual background relevant to this motion can be found in Plaintiffs' Rule 56.1 Statement (Dkt. 312-2), Defendants' Response to Plaintiffs' Rule 56.1 statement submitted together herewith, and in Defendants' Rule 56.1 Statement accompanying their separately filed motion for summary judgment (Dkt. 314-2).

## III.   PLAINTIFFS CANNOT PURSUE, LET ALONE BE AWARDED SUMMARY JUDGMENT, ON CLAIMS AND THEORIES THEY DID NOT RAISE PREVIOUSLY AND IN FACT DISAVOWED IN THE COMPLAINT AND CERTIFICATION BRIEFING

Plaintiffs cannot inject a new "regularly scheduled" sleep-time claim into this case.  Putting aside that this new claim is based on, at best, a mischaracterization of a stray detail in the record, this new claim is made after Plaintiffs secured class certification on a completely different theory, disavowing reference to individualized facts.  Lack of substance aside, courts do not abide this gamesmanship.  Plaintiffs' outlandish tactic should not get out of the starting gate for two reasons. First, courts do not allow litigants to ambush adversaries on summary judgment with new claims and theories after discovery has been conducted.   Second, the doctrine of judicial estoppel precludes Plaintiffs from changing their prior litigation position they asserted to this Court to secure class certification.   Moreover, because Plaintiffs failed to move specifically on their alternative 13-hour claims and only raised it in passing in a footnote (just as they failed to properly

plead claims premised on New York Labor Law's Article 6), this Court should deny Plaintiffs' summary judgment motion in its entirety.

### A. Plaintiffs Cannot Ambush Humana with a "Regularly Scheduled" Sleep Claim Because Plaintiffs Never Made Such a Claim

The Court should not permit Plaintiffs to allege a new claim for the first time in summary judgment. *See Greenridge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006) (refusing to address merits of claims raised for the first time in summary judgment briefing); *see also Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1172 (1st Cir. 1995) ("The truth-seeking function of our adversarial system of justice is disserved when the boundaries of a suit remain ill-defined and litigants are exposed to the vicissitudes of trial by ambush."); *Brandon v. Mare-Bear, Inc.*, 2000 U.S. App. LEXIS 12585 *11 (9th Cir. June 5, 2000) (explaining one of the principal goals of the discovery rules is to prevent "trial by ambush and surprise") (citations omitted).

Here, the extensive record makes clear that Plaintiffs failed to disclose the substance of their "regularly scheduled" sleep claim until asserting it for the first time in their motion for summary judgment. The "regularly scheduled" sleep claim was not alleged in the operative complaint. *See generally,* Exhibit A,[1] Dkt. 294 (Sec. Amend. Compl.).[2] The "regularly scheduled" sleep claim was not argued in support of Plaintiffs' second motion to amend the complaint. *See* Dkt. 256. The "regularly scheduled" sleep claim was not alleged in support of Plaintiffs' motion

---

[1] Citations to Exhibits, hereafter "Ex. __," refer to the Exhibits to the Declaration of David R. Golder ("Golder Dec.") in support of the instant opposition. Deposition testimony is expressed as Name:Page-Line. All relevant portions of deposition transcripts cited herein are attached to the Golder Dec. filed together herewith.

[2] Indeed, the sole factual paragraph in the operative Complaint alleges that New York Plaintiffs were not paid "in accordance with the NYLL because they were not paid for all hours in a 24-hour shift." *Id.* ¶ 28. This is consistent with Plaintiffs' position, asserted until now and in their motion to amend, that their theory was a pure legal one: i.e., that the NYLL required such payment as a matter of law. Indeed, the pleading is patently insufficient as to any other claim. *See DeJesus v. HF Mgmt. Servs., LLC.*, 726 F.3d 85, 89 (2d Cir. 2013) (affirming dismissal of overtime claims where, among other things, Plaintiff "did not estimate her hours in any or all weeks or provide any other factual context or content").

for class certification.  *See* Dkt. 204.  Humana thus was not on notice of this claim.  It did not have

an opportunity to move against it in pleading or certification briefing because it flatly contradicts

the New York State Department of Labor ("NYSDOL") guidance upheld in *Andryeyeva*, and it

did not have the ability to conduct any discovery on this specific claim.[3]  At this point, all three

named plaintiffs have been deposed.  The parties also spent extensive time deposing additional

collective action members, as well as Humana's multiple 30(b)(6) deponents.  This Court should

not allow Plaintiffs to ambush Humana with a new claim in their summary judgment brief for

which Humana was not on notice, because doing so would impugn Humana's due process rights

and disserve the truth-seeking function of our adversarial system of justice.  For this reason alone,

Plaintiffs' new "regularly scheduled" claim fails.  But, as noted in the next section, the problem

with Plaintiffs' new "regularly scheduled" claim goes far beyond the improper ambush Plaintiffs

unleashed on Humana.

**B.  Additionally, Plaintiffs' New "Regularly Scheduled" Claim Fails Because it is Inconsistent with Plaintiffs' Prior Claims on Which This Court Based Its Class Certification Order**

Plaintiffs' "regularly scheduled" claim is not only new, but it is also inconsistent with

Plaintiffs' claims asserted previously in the litigation.  They are estopped from changing their

position, which the Court adopted, rendering it the law of the case.  "The doctrine of judicial

estoppel . . . prevents a party from asserting a position inconsistent with one previously asserted in

the litigation where the change would prejudice the other party."  *Tenneco Chemicals, Inc. v.*

*William T. Burnett & Co.*, 691 F.2d 658, 664 (4th Cir. 1982).  Typically, the doctrine will apply

---

[3] For this reason, and to address Plaintiffs' distortion of the record Humana submits the short clarifying Declaration of Michael Allen regarding Plaintiffs' "regularly scheduled" theory as applied to the fully certified class of home health aides.  Ex. G (Allen Dec.).  Such a procedure to clarify 30(b)(6) testimony is of course authorized.  *See Keepers, Inc. v. City of Milford*, 807 F.3d 24 (2d Cir. 2015).

if: "1) a party's later position is clearly inconsistent with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *DeRosa v. National Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) (internal quotations and citation omitted).[4]

Estoppel is an equitable doctrine invoked by the Court at its discretion, and this situation clearly meets all three of the Second Circuit's requirements. As to prong one, Plaintiffs' new position on sleep time is inconsistent with the claim Plaintiffs made at Rule 23 class certification to persuade this Court to certify the Rule 23 classes. Because every other federal court to have addressed home health aide compensation denied class certification where the factual circumstances of an individual "live-in" case were at issue, this Court explored in detail the 13 vs. 24-hour issue. *See De Carrasco v. Life Care Servs., Inc.*, No. 17-cv-5617 (KBF), 2017 U.S. Dist. LEXIS 206682 (S.D.N.Y. Dec. 15, 2017); *Severin v. Project OHR, Inc.*, 2012 U.S. Dist. LEXIS 85705 (S.D.N.Y. June 20, 2012). To side-step this quintessential individual issue (whether break and sleep time complied with the 13-hour rule), and slide past that fundamental problem in certifying a class, Plaintiffs made clear to the Court in their briefs and during oral argument that they were going to seek 24 or 13 hours dependent on the New York Court of Appeals decision and would not inject any individualized sleep time issue into the analysis. *See* Dkt. 293 at 5. Specifically, this Court accurately recounted that "[i]n light of this legal uncertainty [with the pending Court of Appeals argument], plaintiffs based their unpaid hours claim in the alternative on a 13-hour minimum." Dkt. 293 at 5. "[T]he New York plaintiffs seek payment only for

---

[4] This analysis can and should be applied when the adoption in the "earlier proceeding" occurred in the same case; it is not limited to a separate proceeding before a different court. *See Intellivision v. Microsoft Corp.*, 484 F. App'x 616 (2d Cir. 2012).

whatever is determined to be the statutory minimum number of hours (*i.e.*, either 24 hours or 13 hours). . . . and they do not seek an individual-by-individual determination of the number of hours actually worked. . . ."  Dkt. 293 at 5; 20; 25-27.[5]  In short, the Court would have had to grapple with the sleep time issues under Plaintiffs' new class and collective theories.  Dkt. 293 at 9-10.[6] Based on Plaintiffs' arguments, the Court found that if the New York Court of Appeals held the rule to be 13 hours, Plaintiff Mathieu would have no overtime claim.  *See* Dkt. 293 at 16.  Despite this position, Plaintiffs now claim that the fact that Plaintiff Mathieu worked only three live-in shifts does not matter since she was not "regularly scheduled" for her sleep breaks.  *See* Dkt. 312-1 at 13.  Putting aside that Plaintiffs support their new claim with Ms. Mathieu's *individualized* sleeping experiences (*see id.*), this new claim is clearly inconsistent with what Plaintiffs had argued to this Court.

As to the second prong, this Court "adopted in some way" Plaintiffs' position.  As noted above, this Court based its class certification decision on Plaintiffs' position.  *See* Dkt. 293 at 16.

As to prong three, Plaintiffs would derive an unfair advantage against Humana if this new claim is countenanced.  To secure Rule 23 class certification, Plaintiffs convinced this Court that it would not inject the individual vagaries of sleep and meal time on live-in cases into this case and would agree that they sought 13 hours if the New York Court of Appeals so ruled.  But now that the Court has certified the classes and the New York Court of Appeals held that 13 hours is the rule, Plaintiffs take an inconsistent position and argue that they should be entitled to 24 hours.

---

[5] As discussed below, and at the risk of stating the obvious, the Court of Appeals held that this figure is 13 hours, not 24.  The parties continue to dispute the number of hours Humana's day rate compensated Plaintiffs for.  *See* Dkt. 314-1 at 37-44.  What is not in dispute is that, per their certification motion and the Court's order, New York Plaintiffs have not sought more than the "statutory minimum."

[6] As set forth below, Plaintiffs are also wrong that the record supports (even as to the themselves, to say nothing of absent class members) any conclusion that their sleep time was not "regularly scheduled" or that Humana should have been aware they were not receiving their allotted breaks.

Extensive discovery has been conducted.  This Court granted class certification on Plaintiffs' theory that took the individualized break issue out of the analysis, since every other New York federal court had previously denied class certification on a 24-hour claim.  *See e.g., De Carrasco*, 2017 U.S. Dist. LEXIS 206682, at *23; *Severin*, 2012 U.S. Dist. LEXIS 85705, at *35-37 (specifically rejecting Plaintiffs' attempt to certify class based on absence of records as to breaks on live-in cases); *Heredia v. Americare, Inc.*, 2018 U.S. Dist. LEXIS 86918, at **10-11 (S.D.N.Y. May 23, 2018).  At this point in the litigation, what Plaintiffs seek is beyond an "unfair advantage," as required for estoppel; it is a violation of Humana's due process rights.  Not only did this Court grant Rule 23 class certification on a different class theory, but Humana has filed a Rule 23(f) petition to the Second Circuit based on Plaintiffs' theory and this Court's order regarding Plaintiffs' theory.  If the Court grants Plaintiffs' motion on this new, inconsistent theory, it reopens the possibility for additional class discovery, re-deposing plaintiffs, deposing new opt-in plaintiffs, a motion for decertification, and further remedies related to Humana's Second Circuit petition that may not be cured.

The Court's holding regarding the nature of the relief sought by the New York class – the very lynchpin of certification – is also law of the case.  Under the law of the case doctrine, courts ensure consistency once issues are decided within a matter by refraining from reconsidering prior decisions.  *See*, *e.g.*, *Baden v. Koch*, 799 F.2d 825, 828 (2d Cir. 1986).  Determinations made on summary judgment may exclude evidence or testimony regarding the same issues, including conclusions made in a court's decision denying summary judgment.  *See*, *e.g.*, *Disability Advocates, Inc. v. Patterson*, No. 03-CV-3209 (NGG) (MDG), 2009 U.S. Dist LEXIS 39201, at *5-10 (E.D.N.Y. May 8, 2009) (barring issues at trial determined by the parties' motions for summary judgment under law of the case doctrine); *see also Branch v. Ogilvy & Mather, Inc.*, 765

F. Supp. 819, 823 ("Judge Stanton's denial of defendants' summary judgment motion on this point constitutes the 'law of the case,' and as such, is binding on this court").  As noted in *Hannah v. Wal-Mart Stores, Inc.*, courts within this Circuit do not permit the parties "to re-try issues before a jury that have already been dismissed on summary judgment.  Under the long-standing 'law of the case doctrine' principle, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.  According to this doctrine, a court's own prior decision should be adhered to . . . unless cogent and compelling reasons militate otherwise."  *Hannah*, No. 3:12-cv-01361 (VAB), 2017 U.S. Dist. LEXIS 23681, at \*5 (D. Conn. Feb. 21, 2017) (quotations and citations omitted).

Whether Plaintiffs' litigation tactic of raising a new claim on summary judgment is the result of a deliberate subterfuge or a genuine failure of Plaintiffs to conceive of this claim in a timely manner does not matter for this Court's analysis.  Either way, Plaintiffs' inconsistent claim cannot be countenanced.  "The purpose of judicial estoppel is not to look for, or punish, outright lies, but to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."  *In re Adelphia Recovery Trust*, 634 F.3d 678, 696 (2d Cir. 2011) (internal quotations omitted).  "[T]he proper focus is on the objective conduct of a party or its counsel." *Id.* "[A]lthough a court is unlikely to be asked to apply judicial estoppel when no party has been prejudiced, it is unfair advantage to the potentially prejudiced party's adversary that is the touchstone of the doctrine." *Id.*, at 698-99 (emphasis in original).

In the face of their improper litigation tactic, Plaintiffs will likely claim in reply that their "regularly scheduled" claim flows anew from the New York Court's reasoning in *Andryeyeva*.  This disingenuous excuse misses the mark for two reasons.  First, Plaintiffs make the same

9

"regularly scheduled" claim under the FLSA and Connecticut law, and neither law changed during the pendency of this lawsuit.  For example, Plaintiffs base their FLSA claims on 29 C.F.R. § 785.22.  *See* Dkt. 312-1 at 8-12.  That specific DOL regulation has not changed during the pendency of this lawsuit.  Moreover, the cases that Plaintiffs cite interpreting 29 C.F.R. § 785.22 predate this lawsuit.  *See id.*  Similarly, Plaintiffs base their "regularly scheduled" Connecticut claim under Connecticut law that has not changed during the pendency of this lawsuit.  *See id.* at 18-19 (citing CONN. GEN. STAT. § 31-76b(2)(D)).  As this Court found on class certification: "According to plaintiffs, Connecticut law entitled Connecticut workers to be paid for 13 hours per live-in shift.  Even assuming some plaintiffs actually worked more than 13 hours during a 24-hour live-in shift, plaintiffs seek only for 13 hours as required by the statutory minimum."  Dkt. 293 at 4.  In other words, this new "regularly scheduled" claim does not respond to *Andryeyeva* but is a claim that Plaintiffs could have asserted in any of their Complaints (but didn't) or at any prior point in this litigation (but didn't).

Second, if Plaintiffs base the argument solely on the *Andryeyeva* decision, it is also simply wrong as an interpretation of that decision.  The rule laid out in *Andryeyeva* is not a new rule fashioned by the Court of Appeals: it is an affirmance of a decades-old regulatory interpretation, as discussed in many opinion letters and in the Emergency Rule Making Regulation promulgated by the New York Department of Labor ("NYSDOL") regarding "Home Care Aide Hours Worked" on October 25, 2017.  *See Andryeyeva*, 2019 N.Y. LEXIS 617, at *19; Dkt. 314-3, Ex P.

Plaintiffs need to pay a price for this improper litigation tactic.  If not, then Plaintiffs will be encouraged to continue to hide arguments to win issues on one theory, then change to a contrary position when it suits their purposes.  *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that

position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.").  The Court should deny Plaintiffs' motion for summary judgment for this reason alone.

In addition, this Court should deny Plaintiffs' alternative 13-hour claim, which, as discussed in the next section, Plaintiffs fail to move for under the law.  Such an order would appropriately sanction Plaintiffs for their inappropriate litigation tactic.

### C.  Plaintiffs' Alternative 13-Hour Claim Fails Because Plaintiffs Improperly Seek the Proposed Alternative Relief

Because Plaintiffs know that their 24-hour claim is a new claim that fails, Plaintiffs purport to seek alternative relief in the form of an award for 13 hours per day worked (as opposed to 24). Plaintiffs, however, fail to raise this argument properly and, as a result, it too fails as a matter of law.  Plaintiffs raise this alternative argument only by footnote.[7]  Plaintiffs also fail to identify this alternative claim in their notice of motion.  Each of these failures precludes summary judgment.

First, both the Federal Rules and courts applying them are clear:  failure to specify a requested relief in a notice of motion precludes award of that relief.  *See* FED. R. CIV. P. 27(a)(2)(A) ("A motion must state with particularity the grounds for the motion, the relief sought, and the legal argument necessary to support it."); *see also Berns v. EMI Music Publ'g, Inc.*, 1999 U.S. Dist. LEXIS 17541, at *10 (S.D.N.Y. Nov. 12, 1999) ("[I]f the relief is not requested by the notice of motion, then the movant does not get that relief.").

Second, courts will not consider claims and arguments raised only in a footnote.  *See Steinbeck v. Steinbeck Heritage Found.*, 400 Fed. App'x 572, 574 n. 1 (2d Cir. Oct. 13, 2010)

---

[7] Plaintiffs purport to seek alternative relief by way of footnotes 10, 14, and 18 in the Memorandum of Law submitted in support of this motion.  Dkt. 312-1, at 14, n. 10; *id.* at 19, n. 14; *id.* at 25, n. 18.

("Generally, we deem an argument raised only in a footnote as waived"); *Wandering Dago, Inc. v. N.Y. State Office of Gen. Servs.*, 992 F. Supp. 2d 102, 134 (N.D.N.Y. Jan. 15, 2014) ("Federal courts routinely decline to consider issues raised only in a footnote and in a perfunctory manner.") (quotation omitted); *Competitive Techs, Inc. v. Marcovitch*, 2008 U.S. Dist. LEXIS 2202, at *7 (D. Conn. Jan. 11, 2008) (rejecting a "cursory statement in a footnote" as insufficient to justify the relief sought.).

As a result, for either of these reasons, the Court should deny Plaintiffs' attempt to seek alternative relief.

### D. Plaintiffs' Claims Under New York Labor Law Article 6 Fail for Similar Reasons.

Plaintiffs' claims purportedly brought under provisions of Article 6 of the New York Labor Law fail for similar reasons.  Plaintiffs did not assert these claims in any version of the complaint, twice amended.  As demonstrated above, Plaintiffs cannot raise new claims for the first time in summary judgment.  *See Greenridge*, 446 F.3d 356, 361.  Here, the Second Amended Complaint contains a single stray reference to Article 6, and fails to plead any violation of Article 6 of the NYLL.  *See* Dkt. 294, ¶¶ 3, 73-75 (Third Cause of Action brought pursuant to NYLL Article 19). Article 6 contains a host of substantive provisions.  N.Y. Labor Law § 190, *et seq*.  A single stray reference to that Article in a pleading's introductory section does not require Defendants to guess as to which of its provisions might apply.  The only fair interpretation of the third cause of action is that it seeks what it states: relief under Article 19 and 12 NYCRR § 142-2.2.  Plaintiffs' argument that they are entitled to summary judgment on claims raised under Article 6 should be rejected for this reason alone.  As noted below, however, Plaintiffs' Article 6 claims also fail on the merits.

IV.    <u>**PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THEIR FLSA OVERTIME CLAIM**</u>

As a preliminary matter, the Supreme Court recently instructed in 2018 that the FLSA should be given a "fair reading." *See Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018) ("Even if Congress did not foresee all of the applications of the [FLSA], that is no reason not to give the statutory text a fair reading."). This Court should view all the FLSA wage claims and defenses at issue through the "fair reading" prism announced by the Supreme Court.

**A. Humana's Good Faith Provides a Complete Defense or, at Minimum, Precludes Plaintiffs Motion for Summary Judgment**

Humana argues at length in its own motion for summary judgment that it is entitled to judgment as a matter of law on its good faith defense. *See* Dkt. 314-1, at 17-23.[8] Accordingly, Humana incorporates those arguments herein and will not rehash its position in full here. However, a few points warrant emphasis.

First, it is undisputed (and indisputable) that Humana had every intention of complying with applicable law. (Allen, at 268:10-22; Driscoll Dec., ¶ 16.) Indeed, Humana made a concerted effort to stay abreast of changes to the applicable law, which were occurring rapidly at both the federal and state level, and to comply with then-current law at all junctures. (Allen 61:9-62:12 (discussing Final Rule); Driscoll Dec., ¶¶ 7-16.) It is also undisputed (and again indisputable) that Humana reclassified Live-In HHWs and began paying them overtime as soon as it believed it had to, in November 2015. (Allen at 63:23-64:5; Driscoll Dec., ¶ 19.) In fact, Humana was prepared to do so even before that date; holding off only because a district court vacated changes to the

---

[8] As noted in that motion, Judge Nathan rejected this position. Dkt. 314-1 at 17-18. Defendants continue to urge that Judge Nathan overlooked controlling law and held Humana to an impossible and legally-unfounded standard with respect to its burden regarding good faith, and Humana's motion for permission to seek interlocutory review of that Court's March 30, 2019 order is now fully briefed. *Green* Dkt. 123-5, 129, 132.

applicable regulations, leaving the prior version of the regulations in effect.  (Allen at 62:3-64:7; Driscoll Dec., ¶ 16.)

The application of 20/20 hindsight cannot alter this reality.  The good faith defense looks to the objective and subjective reasonableness of Humana at the time the events occurred.  Under these circumstances, Humana is entitled to judgment as a matter of law on its good faith defense. At a bare minimum, Humana's compliance efforts preclude summary judgment for Plaintiffs on this issue.  *See, e.g., Draskovic v. Oneota Assocs., LLC*, 2019 U.S. Dist. LEXIS 28017 (E.D.N.Y. Feb. 21, 2019) (denying plaintiff's motion for summary judgment on good faith because defendant "intended to pay [plaintiff] at least the minimum wage and attempted to keep abreast of any increase in that rate."); *Holzapfel v. Town of Newburgh*, 935 F. Supp. 418, 425 (S.D.N.Y. Aug. 1, 1996) ("Defendants have presented sufficient evidence to persuade us that a question of fact exists concerning whether they acted in good faith and with reasonable grounds to believe that they were not violating the FLSA.").

### B. The FLSA Only Requires Payment for Hours Worked.  Plaintiffs Have Conceded That Hours Worked Are Based on Humana's Records and Cannot Now Seek Additional Alleged Off-the-Clock Hours

It is fundamental that an employer need only pay its employees for hours worked.  In the Second Circuit, "[w]ork is defined as 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'"  *Holzapfel v. Town of Newburgh,* 145 F.3d 516, 522 (2d Cir. 1998) (quoting *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944)). Time that an HHW does not spend working (*i.e.* sleep time, meal time, and personal time) is not compensable.  *See, e.g., Rodriguez v. Avondale Care Grp.*, 2018 U.S. Dist. LEXIS 51578, at *13 (S.D.N.Y. Mar. 27, 2018) (noting the "longstanding and consistent interpretation that compensable

14

hours worked under the State Minimum Wage Law do not include meal periods and sleep time of [HHWs] who work shifts of 24 hours or more.") (citing 12 N.Y.C.R.R. § 142-2.1(b)).

Here, it is undisputed that Plaintiffs did not spend all 24 hours of a Live-In shift working. The Caregiver Agreement expressly informs the HHWs that they should be working only 8 hours in a day.  The Caregiver Agreement also expressly anticipates sleep, meal, and personal time— and Plaintiffs' testimony confirms that each was received (even if Plaintiffs dispute the amount). For example, Named Plaintiff Daverlynn Kinkead estimated that she was able to get 8 hours of sleep during 70% of her shifts.  (Kinkead Dep., 32:9-19.)  Similarly, opt-in Jeanne Morant admitted that she received three hours per day for meals.  (Morant Dep., 36:22-24.).  Opt-in Maxwell Antwi could not estimate the amount of sleep she received.  (Antwi Dep., 32:20-33:8) (understood she was supposed to sleep but amount varied with patient).  Plaintiff Mathieu indicated the amount of sleep varied with the client's medication.  (Mathieu 57:4-8.)

Even assuming *arguendo* that interruptions or technicalities render some of Plaintiffs' sleep and meal time compensable, it remains indisputable that Plaintiffs enjoyed personal time that was non-compensable.  *See, e.g.* Kinkead, 82:8-18 (spent time doing word puzzles); Antwi 78:3-79:3 (spent time reading on his cell phone); Shaw 32:3-34:24 (took naps, watched TV, talked on cell phone, and did homework during shifts.)

To summarize, Plaintiffs' own testimony makes it clear that they did not work all 24 hours of every Live-In shift.  At a minimum, these admissions create a question of fact that justifies denial of all aspects of Plaintiffs' motion for summary judgment that seek recovery for all 24 hours of each shift.  In addition, to the extent that Plaintiffs' counsel makes individualized arguments as to sleep time, those new arguments severely undermine this Court's class certification order, and require decertification of both the class and collective action in this matter.  *See De Carrasco*,

*supra*; *Seward v. IBM*, 2012 U.S. Dist. LEXIS 49688 (S.D.N.Y. Jan. 20, 2012) (individualized issues regarding quantity of pre-shift work performed and under what conditions warranted decertification of previously-certified FLSA collective); *Threatt v. CRF First Choice, Inc.*, No. 1:05cv117, 2006 U.S. Dist. LEXIS 50934 (N.D. Ind. July 21, 2006) (individualized issues regarding provision of in-home care services required decertification.).

**C. There is No Requirement That Non-Compensable Time Be "Regularly Scheduled"**

As discussed *supra*, it is indisputable that Plaintiffs did not actually work 24-hours per day. To get around this fact, Plaintiffs argue that they are entitled to pay for all 24-hours regardless because any time off was not "regularly scheduled." The FLSA imposes no such requirement.

Undeterred, Plaintiffs cite 29 C.F.R. § 785.22. That section states that "[w]here an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked" if certain conditions are met. 29 C.F.R. § 785.22(a). The regulations only require that "adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep." *Id.* Case law has borne out that the regulation establishes five components for qualifying agreements: (1) no more than 8 hours for sleep may be deducted; (2) the employee must usually enjoy at least 5 hours of uninterrupted sleep; (3) payment must be made for any work performed during interrupted sleep time; (4) adequate sleep facilities must be provided; and (5) the arrangement must have been either expressly of impliedly agreed to. *See Trocheck v. Pellin Emergency Medical Serv., Inc.*, 61 F. Supp. 2d 685 (N.D. Ohio Jun. 30, 1999). Plaintiffs concede that "[i]f such an agreement exists the employer may treat up to 11 hours per day as non-compensable and pay for only 13 hours of the 24 hours shift." Dkt. 312-1, at 13 (citing 29 C.F.R. §785.22)).

16

A qualifying agreement exists here, in the form of the Caregiver Agreement signed by all Live-In HHWs.  Indeed, all five components are met under these facts.  First, it is undisputed that Humana never deducted more than 8 hours for sleep time.  The Caregiver Agreement itself is clear regarding this fact.  (Caregiver Agreement, ¶ 3.)

Second, Live-In HHWs usually enjoyed at least five hours of uninterrupted sleep. According to the United States Department of Labor, "usually enjoyed" in this context means at least 50% of the time.  *See* US DOL's Field Operations Handbook, § 31b12(c)(2).  Named Plaintiff Kinkead estimated that she was able to get eight hours of uninterrupted sleep during 70% of her shifts, easily satisfying this element.  Kinkead Dep., 32:9-19.  The fact that other Live-In HHWs may have had their sleep period interrupted at times does not compel a different conclusion.  *See Roy v. County of Lexington, South Carolina,* 141 F.3d 533, 546-47 (4th Cir. 1998) (holding that employees "usually enjoyed an uninterrupted night's sleep" despite the fact that 35% of sleep periods "were interrupted to such an extent that employees received less than five hours sleep."). If anything, the different experiences of HHWs merely underscores the existence of factual issues that preclude summary judgment and compel class decertification.

Third, Humana paid Live-In HHWs a day rate for all hours worked—including work performed during any interrupted sleep period (if any).  (Caregiver Agreement, ¶ 3.)  If any such work took a Live-in HHW beyond the anticipated 8 hours of intermittent work per day or prevented an HHW from receiving adequate sleep, Humana relied on the HHW to report it.  (*See id.*; Allen, at 185:5-10.)  If such a report was received, Humana would evaluate whether the patient involved should be switched to Non-Live-In care, or if other adjustments needed to be made.  *See* Allen, at 186:17-187:4.  Absent any such report, Humana had no way of knowing such work occurred.  *Id.* at 185:5-187:4. Humana cannot be held liable for any alleged failure to pay Plaintiffs for time

worked of which it was not aware. *Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 365 (2d Cir. 2011) (instructing that a company must have "actual or constructive knowledge that [employee] was performing uncompensated work" to be liable for off-the-clock claims).

Fourth, Humana ensured that adequate sleeping facilities existed at each Live-In patient's home. Indeed, Humana independently verified this fact before assigning a Live-In HHW to a patient's home. Allen Dep. At 284:8-285:11. Moreover, courts have recognized that "the most telling indicator of whether the sleeping facilities were adequate is whether [plaintiff] ever indicated in any way that they were not." *Trocheck*, 61 F. Supp. 2d at 695. Where there is no evidence Plaintiffs ever complained about the facilities prior to commencing a lawsuit, this element has been deemed satisfied as a matter of law. *See id.* Further, the facilities were adequate. Caillo Dep. At 65:10-13 (slept in own separate room); Mathieu Dep. At 27:5-18 (patient lived alone in two bedroom apartment).

Last, but certainly not least, this arrangement was expressly agreed to. The Caregiver Agreement leaves no room for doubt regarding the fact that Live-In HHWs would be paid a day rate or that sleep, meal, and personal time were contemplated and would be non-compensable. (*See* Caregiver Agreement, ¶ 3.) This fact alone distinguishes this case from *Felker* and *Smith*, which are relied upon heavily by Plaintiffs.[9]   In both cases, there was no express agreement between the parties to deduct sleep time. *See Felker v. Southwestern Emergency Med. Serv.*, 581 F. Supp. 2d 1006, 1010 (D. Ind. Sept. 8, 2008) ("There is no express agreement before the court…"); *Smith v. Superior Casing Crews*¸ 299 F. Supp. 725, 730 (E.D. La. Apr. 25, 1969) ("The testimony convinces me that there was no express agreement between [Defendant] and its

---

[9] Another case cited by Plaintiffs, *Brunison v. Memorial Hosp., Inc.*, is actually helpful to Humana. In that case, the court denied a plaintiff's motion for summary judgment on sleep time and in fact held, as a matter of law, that "five hours of sleep constitute an 'uninterrupted night's sleep' for purposes of 29 C.F.R. § 785.22(a)." 1992 U.S. Dist. LEXIS 16987, at **20-21 (D. Kan. Oct. 7, 1992).

employees…").  Here, by contrast, it is undisputed that Live-In HHWs signed the Caregiver Agreement.

Even without express agreement as exists here, courts have enforced implied agreements where, as here, Plaintiffs knew of the arrangement and continued to work under it and accept paychecks without protest.  *See Ariens v. Olin Mathieson Corp.*, 383 D.2d 192 (6th Cir. 1967); *General Electric Co. v. Porter*, 208 F.2d 805 (9th Cir. 1953).  Plaintiffs' apparent dissatisfaction with this agreement does not change the fact that it exists.  *See Braziel v. Tobosa Developmental Servs.*, 166 F.3d 1061, 1063 (10th Cir. 1999) ("Although it is clear from the record and [plaintiffs'] pleadings that they became unhappy with the policy sometime after beginning their employment with [defendant], it is equally clear that [plaintiffs] understood and acquiesced to the policy when they were hired.").  Here, it is not even clear that Plaintiffs became unhappy with this agreement. Plaintiffs never raised any issues with the agreement or complained that they were unhappy with their working conditions.  This is more a creature of Plaintiffs' counsel's arguments.

Finally, it warrants emphasis that Plaintiffs are not entitled to the full relief they seek (i.e. pay for all 24 hours) even if the court accepts their position regarding the applicability of 29 C.F.R. § 785.22.  On its face, that regulation does not require that meal or other breaks be regularly scheduled (as discussed *infra* with respect to New York law).  At most, it renders 8-hour sleep hour periods that do not satisfy the elements described above to be compensable.  Even then, however, factual disputes regarding whether a particular sleep period was interrupted, for how long, and more preclude an award of summary judgment to Plaintiffs in this case and undermine this Court's order on class certification.

For the reasons set forth above, as well as those articulated in Humana's own motion for summary judgment, Humana is entitled to judgment as a matter of law *excluding* sleep time from Plaintiffs' compensable hours.

Alternatively, a genuine issue of material fact exists that precludes an award of summary judgment to Plaintiffs on this issue.  Specifically, a factfinder must evaluate the five factors described above and determine whether they were met for each Live-In HHW.  Such an individualized exercise precludes class and collective certification.  To the extent Plaintiffs seek to force this Court to delve into individualized sleep time and break time issues, such argument contradicts Plaintiffs' prior class claims, undermines this Court's class certification order, and compels decertification.

### D. Even Assuming There Is Any Alleged Unpaid Time, Such Time Is Not Compensable Because Humana Did Not Have Any Knowledge Of Such Working Time

It is settled law that where an employee "fails to notify the employer through the established overtime record-keeping system, the failure to pay overtime is not a FLSA violation." *Brown v. ScriptPro, LLC,* 700 F.3d 1222, 1230-31 (10th Cir. 2012); *accord Kuebel,* 643 F.3d at 365 ("To prevail on his off-the-clock claims, [Plaintiff] also must prove that [Defendant] had actual or constructive knowledge that he was performing uncompensated work"); *Singh v. City of New York*, 418 F. Supp. 2d 390, 397 (S.D.N.Y. Nov. 28, 2005) ("[A]n employee in the Second Circuit is only entitled to compensation for those hours of work performed of which the employer had actual or constructive knowledge.")  Given this established rule, Humana was not required to compensate HHWs for any work performed without its knowledge.  *See Holzapfel*, 145 F.3d at 524 ("For compensation to be awarded, plaintiff's activities must not only satisfy the above definition of work but must also be performed with the employer's knowledge.").

Here, it is undisputed that the Caregiver Agreement signed by each Live-In HHW emphasized Humana's expectation that a Live-In HHW would perform 8 hours of work, intermittently, during each 24-hour period.  (Caregiver Agreement, ¶ 3.)  It went on to explain that "it is your responsibility to inform the Company if you are providing more than 8 hours of intermittent work per day during a live-in assignment."  (*Id.*).  This is especially important in this context because Live-In HHWs worked independently, without direct supervision, rendering it practically impossible for Humana to know if they were performing more work than expected unless Live-In HHWs reported it themselves.  (*See* Allen, at 185:5-10.)  Accordingly, Humana relied on Live-In HHWs to accurately report their hours and raise any issues that arose with a manager.  (*See id.*)  Humana did not have knowledge that Plaintiffs were performing any work beyond 8 hours in a day and, as a result, cannot be required to pay for anything beyond the statutorily required minimum.

Even assuming they worked excess hours, Plaintiffs failed to comply with Humana policy that required Live-In HHAs to inform Humana if they were performing more than the expressly anticipated amount of work.  (Caregiver Agreement, ¶ 3.)  At minimum, Plaintiffs' failure creates questions of material fact that mandate denial of Plaintiffs' motion and undermines this Court's class certification order.  On a macro scale, the factfinder will have to evaluate whether Humana had actual or constructive knowledge of Plaintiffs' alleged work over and above 8 hours per 24-hour period, for each HHW.  Answering this individualized question requires more micro-level inquiries such as analysis of whether HHWs reported the excess work to their supervisors.  Plaintiffs' motion should be denied for this added reason.  *See Perez v. City of New York*, 2017 U.S. Dist. LEXIS 159473, at **60-63 (S.D.N.Y. Sept. 27, 2017) (finding a genuine dispute of

material fact with respect to whether an employer had actual or constructive knowledge of time worked).

### E.  Plaintiffs' Gap Time is Not Recoverable Under the FLSA

Plaintiffs' motion should also be denied to the extent that it seeks to recover "gap time," which is not recoverable under the FLSA.  *See United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 493-94 (2d Cir. 1960); *Ramos v. City of New York Fire Dep't,* 2014 U.S. Dist. LEXIS 66449, at **20-21 (S.D.N.Y. May 9, 2014) (holding that a "gap-time claim is only cognizable under the FLSA if the average hourly wage falls below the federal minimum wage.") By seeking compensation for all 24 hours of every day worked as a Live-In HHW, without reference to whether such time constituted overtime or resulted in an FLSA minimum wage violation, Plaintiffs necessarily seek this unavailable relief.

Moreover, Live-In HHWs were paid a day rate that was intended to compensate them for all hours worked.  Humana argued this point at length in its motion for summary judgment and incorporates those arguments by reference here.  *See* Dkt. 314-1, at 38-39.  Plaintiffs clearly understood they were being paid a day rate.  *See id.* at 39 (citing Caillo, at 39:22-40:15.) Consequently, there can be no gap-time claim here.

### F.  Plaintiffs' Proposed Method for Calculating the Regular Rate is Improper

Plaintiffs contend that the regular rate for all opt-ins was "an hourly rate equal to their daily rate divided by the 8 hours of work for which the daily rate was intended to compensate."  Dkt. 312-1, at 7.  This proposed method of calculating the regular rate is improper.  It seeks to calculate the regular rate based on a workday, as opposed to a workweek, in a transparent effort to maximize Plaintiffs' potential recovery.

It is fundamental that "[t]he regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any *workweek* by the total number of hours actually worked by him in that *workweek* for which such compensation was paid."  29 C.F.R. § 778.109 (emphasis added).  The applicable regulations even provide an express methodology for calculating the regular rate when employees are paid a day rate, stating: "If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked."  29 C.F.R. § 778.112.

Plaintiffs ignore these rules and instead ask the Court to calculate the regular rate using an improper method designed to maximize their recovery.  This attempt should be soundly rejected.

## V.  THE CONNECTICUT EFFECTIVE DATE CLASS IN NOT ENTITLED TO SUMMARY JUDGMENT

The Connecticut Effective Date Class is not entitled to summary judgment for the same reasons as the FLSA collective.  *Supra*, Point IV.  *See Williams v. Gen. Nutrition Ctrs., Inc.*, 326 Conn. 651, 630 (2017) (noting that applicable provisions of Connecticut Law are "nearly identical to the federal" statutes and should be interpreted in the same manner); *Grettler v. DirectTV, LLC*, 2016 U.S. Dist. LEXIS 44474, at **15-16 (D. Conn. Mar. 31, 2016) ("Because plaintiffs' minimum wage claims fail under the FLSA, they also fail under Connecticut law.").

However, Plaintiffs raise one additional Connecticut argument that must be addressed.  Specifically, Plaintiffs argue that Connecticut Law imposes more stringent requirements for agreements that exclude sleep time.  *See* Dkt. 312-1, at 24.  As a threshold matter, Plaintiffs fail to

support this argument with even a single case citation.  They fail to meet their burden of establishing that they are entitled to judgment as a matter of law for this reason alone.

This argument does not withstand scrutiny for two additional reasons.  First, Connecticut courts have consistently held that Connecticut Law wage-and-hour law mirrors federal law in all material respects.  *See Williams*, 326 Conn. at 651.  Second, the language of the Connecticut statute at issue mirrors 29 C.F.R. §785.22 almost precisely.  *Compare* CONN. GEN. STAT. ANN. § 31-76b(2)(D) (an individual and his or her employer "may agree in writing to exclude a regularly scheduled sleeping period of not more than eight hours from hours worked, provided (i) adequate on-site sleeping facilities are furnished to such individual, and (ii) such individual receives at least five hours of sleep time") *with* 29 C.F.R. § 785.22(a) (and individual and his or her employer "may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep.").

For all these reasons, the Connecticut Effective Date Class is not entitled to summary judgment.

## VI.   THE CONNECTICUT UNPAID HOURS CLASS IS NOT ENTITLED TO SUMMARY JUDGMENT

Much like the Connecticut Effective Date Class, the Connecticut Unpaid Hours Class is not entitled to summary judgment for the same reasons that preclude such an award to the FLSA collective.  *See supra,* Point IV.  Plaintiffs again mischaracterize the evidence by claiming that Plaintiffs were paid for 8 hours per shift when, in fact, they were paid a day rate intended to compensate them for all work performed during a 24-hour shift.  Payment by day rate is permissible under both the FLSA and Connecticut Law.  *See* 29 C.F.R. § 778.112; CONN. GEN. STAT. § 31-71a(3); *Williams*, 326 Conn. at 651.  In addition to the foregoing, Defendants expressly

incorporate their arguments regarding the fact that Live-In HHWs were paid a day rate contained in their separately filed motion for summary judgment.  *See* Dkt. 314-1, at 37-44.

Plaintiffs continue to ignore indisputable evidence, including their own testimony, establishing that they did not work during all 24 hours of a Live-In shift.  *See e.g.* Kinkead, 82:8-18 (spent time doing word puzzles); Antwi 78:3-79:3 (spent time reading on his cell phone); Shaw 32:3-34:24 (took naps, watched TV, talked on cell phone, and did homework during shifts). Plaintiffs are not entitled to compensation for time that was not spent working under either the FLSA or Connecticut Law.

For all these reasons, the Connecticut Unpaid Hours Class is not entitled to summary judgment.

## VII.   THE NEW YORK EFFECTIVE DATE CLASS IS NOT ENTITLED TO SUMMARY JUDGMENT

The New York Effective Date Class also is not entitled to summary judgment for the same reasons as the FLSA collective.  *See supra*, Point IV.  Here, however, Plaintiffs make several arguments regarding New York Law that must be addressed.

First, as set forth in Defendants' motion for summary judgment, this Court should adopt the same effective date for the Final Rule under the New York Labor Law as used by the NYSDOL. Dkt. 314-1, at 29-31.  As discussed there and here, New York law's historical adoption of the companionship exemption through 12 N.Y.C.R.R. § 142-2.2 provided a pre-existing wage floor to exempt companions.  Thus, the U.S. Department of Labor's urgency to enact and render effective the Final Rule to "bring [home care workers] within the Act's minimum-wage and overtime protections"[10] was less urgent – they had minimum wage protection above the federal level

---

[10] *Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084, 1087 (2015).

already.  The NYSDOL was free to balance the phase-in of the overtime requirement with the impact on already skyrocketing costs of care and provide employers with the October 2015 effective date.

Second, Plaintiffs misconstrue the recent holding of the New York Court of Appeals in *Andryeyeva v. New York Health Care, Inc.*, 33 N.Y.3d 152 (2019).  That case *upheld* the NYSDOL's longstanding interpretation of its own rules, most notably the "13 Hour Rule" pursuant to which employers like Humana need only compensate Live-In employees for 13 hours of a 24-hour shift if adequate sleep and meal breaks are provided.  *Id.*  As Plaintiffs tell it, *Andryeyeva* reached the opposite conclusion and entitles Plaintiffs to 24 hours of compensation for every live-in shift worked, as a matter of law.

But that is not so.  *Andryeyeva* affirms the longstanding NYSDOL rule that a Live-In HHW is only entitled to 24-hours of compensation if they can show that they were not in fact afforded eight hours for sleep (five of which were uninterrupted) and three hours for meals.  *See* 12 NYCRR § 142-2.1(b); *Andryeyeva*, N.Y. LEXIS 617 at 4-6 (citing NYSDOL Opinion Letter).  Here, at least some Plaintiffs have admitted that they received adequate sleep and meal breaks.  (*See e.g.,* Kinkead at  32:9-19 (received eight hours of sleep time during 70% of her shifts); Morant, at 36:22-24 (received three hours per shift for meal breaks); Caillo Dep. at 72:10-73:11 (patient slept from between 6:00 and 9:00 PM to 6:00 AM).  Thus, once more, Plaintiffs argument is defeated by their own testimony.  At a minimum, questions of fact exist regarding whether each individual HHW received adequate sleep and meal breaks.  The existence of those questions precludes an award of summary judgment to Plaintiffs and, to the extent Plaintiffs press this issue, contradicts their prior class claims and further undermines class certification.

Moreover, *Andryeyeva* in no way alters the general rules discussed above.  Specifically, Plaintiffs are not excused from complying with Humana's policies requiring them to report excess work simply because they happen to be HHWs.  Nor is Humana required to pay for excess work that was not reported, and of which it was not aware, simply because the employees at issue are HHWs.  *See Kuebel*, 643 F.3d at 365.

Finally, interpreting *Andryeyeva* and 12 NYCRR § 142-2.2 in the manner urged by Plaintiffs would fly in the face of the New York State policy under which they arise.  Indeed, the NYSDOL in response to the lower court decisions culminating in *Andryeyeva* issued The Emergency Rule Making *clarifying*[11] the Commissioner of Labor's Wage Order by adding another rule of construction at the end.  *Andryeyeva*, 2019 N.Y. LEXIS 617 at *17-19 (discussing Rule Making issued to "keep[] New York State in conformity with existing Federal standards involving working time"); *see also* Dkt. 314-3, ¶ 17, Ex. P.  The "purpose and intent" of this clarifying regulation was to reaffirm New York's "longstanding and consistent interpretation that compensable hours worked under the State Minimum Wage Law do not include meal periods and sleep time of [HHWs] who work shifts of 24 hours or more."  *Rodriguez v. Avondale Care Grp.*, 2018 U.S. Dist. LEXIS 51578, at *13 (S.D.N.Y. Mar. 27, 2018) (citing 12 N.Y.C.R.R. § 142-2.1(b)).  These clarifications were needed to "prevent the collapse of the home care industry and avoid institutionalizing patients who could be cared for at home," both of which would likely ensue if [the First Department's decision in] *Tokhtaman* and other decisions treating meal periods and sleep time by HHWs as compensable time remained the law in New York.  *See De Carrasco*, 2017

---

[11] While the Rule Makings and the underlying home care industry issues were deemed not to meet the standard of an "emergency" and invalided for purposes of their prospective effect (*see Matter of Chinese Staff and Workers Assn. v. Reardon*, 2018 N.Y. Misc. LEXIS 4231 (Sup Ct. New York Cnty. Sept. 25, 2018)), they remain instructive as to the NYSDOL's longstanding position, as discussed in the NYSDOL opinion letters, the *Severin* decision, and affirmed in *Andryeyeva*.

U.S. Dist. LEXIS 206682, at **15-16 (quoting N.Y. St. Reg. LAB-43-17-0002-E)).  *Andryeyeva* overturned *Tokhtaman*.

In addition, Plaintiffs' reading of *Andryeyeva* is flawed.  It is tantamount to the mere presence at a client's home, without more, rendering an employee available for work and therefore makes an HHW's time compensable.  But that is not what *Andryeyeva* holds.  In fact, in upholding DOL's interpretation of its own Wage Order, the Court of Appeals noted that its plain language "requires both presence *and* an availability during a time scheduled for actual work."  *Andryeyeva*, 2019 N.Y. Misc. LEXIS at *25 (emphasis added).   In doing so, it expressly rejected the interpretation proposed by Plaintiffs here as to actual sleep and break time, noting that it "ignores the entirety of the phrase and renders superfluous the separate requirement that the employee be both 'available for work' and be so available 'at a place prescribed by the employer'" in violation of the fundamental rules of statutory construction.  *Id.* (quoting 12 N.Y.C.R.R. § 142-2.1(b)).  "[I]f plaintiffs are correct that the only meaning that may be ascribed to this language is physical presence in the patient's home," the Court noted, "then the Wage Order is internally redundant as it already conveys the works 'or required at a place prescribed by the employer.'"  *Id.* at **25-26 (quoting 12 N.Y.C.R.R. § 142-2.1(b)).  Instead, the Court upheld DOL's interpretation that HHWs are not available for work during sleep and meal break time even if they remain on the client's premises, and that such time may therefore properly be excluded.  *See id.*  Nowhere in NYSDOL guidance (nor in the federal guidance the Rule Making clarifies it is based on) does the "regularly scheduled" standard appear.  Plaintiffs have made it up out of whole cloth.

For avoidance of doubt, and to clarify the irreconcilable tension between Plaintiffs' inconsistent litigation positions, Defendants submit herewith the Declaration of Michael Allen, the witness on whose testimony Plaintiffs rely to try to synthesize their two positions: that they are not

relying on individual facts and that live-ins can recover for 24 hours.  As Mr. Allen makes clear, he did not testify that no live-in aide within the certified class period received scheduled breaks. Declaration of Michael Allen ("Allen Dec."), ¶ 3.[12]  If Plaintiffs' position is that is the standard – which, as set forth above, it is not – then the New York class must be decertified based on the individualized issue of the "degree of scheduling" of each aide's live-in work.

For all these reasons, the New York Effective Date Class in not entitled to summary judgment.

## VIII.   **THE NEW YORK UNPAID HOURS CLASS IS NOT ENTITLED TO SUMMARY JUDGMENT**

The New York Unpaid Hours Class is not entitled to summary judgment.  As above, several of the different legal theories espoused on summary judgment as to compensation for "unpaid hours" were not properly pled and are legally deficient.  There is no unpaid hours entitlement based on a theory of 24-hours of payment.  Nor is there an unpaid hours entitlement based on 13-hours. Dkt. 314-1, at 37-44 (citing *Severin* and explaining appropriate calculation as to exempt companions).  The absence of unpaid hours is fatal to Plaintiffs' minimum wage claims, as the record is clear that Humana compensated Plaintiffs at above a minimum wage level, even "counting" the shift as 13 hours for minimum wage purposes.

Here, the only rate agreed upon by the parties with respect to Live-In work was the day rate which, as discussed in Point IV and Humana's separately filed motion for summary judgment (Dkt. 314), was intended to compensate Plaintiffs for all hours worked during a Live-In shift. Payment by day rate is fully compliant with New York Law.  *See* 29 C.F.R. § 778.12; 12 NYCRR § 142-2.16 ("When an employee is paid on a piece-work basis, salary, ***or any basis other than***

---

[12] The Second Circuit makes clear that Rule 30(b)(6) testimony can be explained and supplemented.  *See Keepers*, 807 F.3d at 34 ("Rule 30(b)(6) testimony is not 'binding' in the sense that it precludes the deponent from correcting, explaining, or supplementing its statements.").

*hourly rate*, the regular hourly wage rate shall be determined by dividing the total hours worked during the week into the employee's total earnings") (emphasis added); *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498 (S.D.N.Y. 2013) (citing *Severin* and applying calculation set forth in 12 NYCRR § 142-2.16 to "class rate" compensation). As discussed in *Oram*, "[t]he NYLL does not require that employees be paid by the hour, only that the total wages paid to the employee are equal or greater to the total sum of the applicable minimum wage rate times the number of hours worked by the employee." *Oram*, 979 F. Supp. 2d 498, 506; *see also Pastor v. Alice Cleaners, Inc.*, No. 16-CV-7264 (JLC), 2017 U.S. Dist. LEXIS 192806 (S.D.N.Y. Nov. 21, 2017) (where Plaintiff accepted employment with schedule contemplating more than 40 hours per week, weekly salary clearly contemplated as compensation for all such hours). Thus, there are no "unpaid hours." There is no "gap time."

As stated above, Plaintiffs have failed to properly allege an Article 6 violation, a theory the Court should not even consider. Even if the Court were to consider the merits of Plaintiffs' improperly raised Article 6 claims, however, they still fail. In their brief in support of this motion Plaintiffs raise NYLL §§ 191, 193, and 198 (for the first time) and allege that those statutes authorize recovery for "unpaid straight time hours" at Plaintiffs' regular rate. Dkt. 312-1, at 33. But courts have been clear that the statutes composing Article 6 are "an inappropriate vehicle for . . . recovery' where, as here, 'the gravamen of plaintiffs' complaint is that the sums paid were not equal to what plaintiffs claim they were entitled to receive.'" *Kone v. Joy Constr. Corp.,* 2016 U.S. Dist. LEXIS 26981, at *13 (S.D.N.Y. Mar. 3, 2016) (quoting *Jara v. Strong Steel Door, Inc.*, 872 N.Y.S.2d 691 (Sup. Ct. Kings Cnty. Aug. 15, 2008)).

The Second Circuit has plainly held that "Labor Law § 191 by its terms only involves the timeliness of wage payments and does not appear to afford plaintiffs any substantive entitlement

to a *particular* wage." *See Myers v. Hertz Corp.*, 624 F.3d 537, 545 (2d Cir. 2010) (emphasis in original). Similarly, courts with this Circuit have recognized that "Section 193 has nothing to do with failure to pay wages…governing instead the specific subject of making deductions from wages." *Kone*, 2016 U.S. Dist. LEXIS 26981, at *14 (quoting *Monagle v. Scholastic, Inc.*, 2007 U.S. Dist. LEXIS 19788, at *2 (S.D.N.Y. Mar. 2, 2009)). Claims seeking to use Section 193 as a vehicle to recover allegedly unpaid wages have therefore been dismissed. *See, e.g., Church v. St. Mary's Healthcare*, 2012 U.S. Dist. LEXIS 138338, at *11 (N.D.N.Y. Sept. 25, 2012) ("Section 193 [] prohibits employers from making unlawful deductions from employees' wages and does not govern deductions from the number of hours of worked. Accordingly, defendant's motion to dismiss the [NYLL] § 193 claim is granted.") (citing *Strohl v. Brite Adventure Ctr., Inc.*, 2009 U.S. Dist. LEXIS 78145, at *9 (E.D.N.Y. Aug. 28, 2009)).

With respect to Section 198, the cases cited by Plaintiffs are distinguishable. Indeed, they establish only that unpaid straight time is recoverable at a rate higher than the minimum wage *if the parties previously agreed to the rate*…" *Villar v. Prana Hosp., Inc.*, 2017 U.S. Dist. LEXIS 54962, at *8 (S.D.N.Y. Apr. 11, 2017). The Caregiver Agreement makes clear that, while it provides an hours expectation, it pays a fixed amount without reference to specific hours. This is entirely consistent with the unique nature of live-in care and the impossibility of granular timekeeping.

Defendants provided no agreed upon hourly rate for live-in work, as juxtaposed with non-live-in cases, where there *was* an agreed upon hourly rate. Thus, to the extent that Plaintiffs now urge that these statutes support an independent "agreement of wages" claim, they are mistaken. As noted, those provisions regulate other facets of the wage relationship. *See Kone,* 2016 U.S. Dist. LEXIS 26981, at *13. Courts that have permitted such a theory authorize a claim where an

31

employer has agreed to pay a given hourly rate for all hours of work, then only pays for some such hours.  *See generally Li v. Chinatown Take-Out Inc.*, 2018 U.S. Dist. LEXIS 219941, at **11-12 (S.D.N.Y. Dec. 4, 2018) (noting that courts occasionally "use Section 198(3) to award prevailing plaintiffs damages for unpaid regular wages at their agreed-upon hourly rate.")

*Edwards v. Jet Blue Airways, Corp.*, 21 Misc. 3d 1107(A) (Sup. Ct. Kings Cnty. Oct. 6, 2008), is not to the contrary and actually reinforces the calculation authorized by 12 NYCRR § 142-2.16 and applied in *Severin*.  *Edwards* concerned *hourly* workers for Jet Blue, who were FLSA-exempt pursuant to federal law's exemption for Railway Labor Act-covered workers.  Jet Blue obtained an opinion letter confirming NYSDOL's position that where "an FLSA exempt employee is paid wages equal to or greater than one and one-half times the applicable minimum wage for all hours worked over forty in a week, then the requirements of 12 NYCRR § 142-2.2 have been satisfied."  *Id*.  That occurred here.  Dkt. 314-1 at 41-3.  *Edwards*' further proposition relating to hourly workers – that even an exempt employee would need to receive the same continued agreed hourly rate for all hours – is irrelevant to Humana's live-in HHAs; it is a holding which might apply to those HHAs working on hourly cases.  The Plaintiffs who were working live-in cases were not told they would receive any hourly wages, or additional hourly wages above a certain level, for live-in work.  That was not the agreement.    Humana entered into a very different (day rate) agreement with Plaintiffs and complied with that agreement, consistent with the NYSDOL opinion letters requirements specific to home health aides.  Thus, even if the Court were to conclude that the NYLL authorizes recovery for unpaid straight time hours (and further, that there were such hours, which there were not), those hours need only be compensated at the then-applicable minimum wage when they were worked.  To the extent members of the class or collective had differing understandings of this compensation issue, potentially impacting their

damages,[13] such determination is not appropriate for adjudication (summary or otherwise) on a class basis. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013).

Accordingly, there are no unpaid hours; any such claim fails on its merits and certainly does not warrant summary judgment.

## IX.    CONCLUSION

For all the reasons set forth above, and in Humana's separately filed motion for summary judgment (Dkt. 314), the Court should deny Plaintiffs' motion for partial summary judgment in full.

Dated:  June 28, 2019                        Respectfully submitted,

                                             DEFENDANTS,
                                             HUMANA, INC., HUMANA AT
                                             HOME, INC., AND SENIORBRIDGE FAMILY
                                             COMPANIES (CT), INC.

                         By:     /s/ *David R. Golder*
                                 David R. Golder (ct 27941)
                                 golderd@jacksonlewis.com
                                 Noel Tripp (pro hac vice)
                                 trippn@jacksonlewis.com
                                 Jackson Lewis P.C.
                                 90 State House Square, 8th Floor
                                 Hartford, CT 06103
                                 P: (860) 522-0404
                                 F: (860) 247-1330

---

[13] *See* Dkt. 234-6 at 6-7 (Plaintiff Morant expressing belief that she was paid for 13 hours on live-in shift) and 234-7 at 4 (Molly Green, a member of the class, paid for 13 hours for live-in work).

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on June 28, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

*/s/David R. Golder*
David R. Golder