# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DAVERLYNN KINKEAD, SHIRLEY CAILLO, and
CLAUDE MATHIEU, individually and on behalf of all
others similarly situated,

Plaintiffs,

v.

HUMANA, INC., HUMANA AT HOME, INC., AND
SENIORBRIDGE FAMILY COMPANIES (CT),
INC.,

Defendants.

CIVIL CASE NO.:3:15-CV-01637 (JAM)

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

David R. Golder (ct 27941)
Noel Tripp (pro hac vice)
Jackson Lewis P.C.
90 State House Square, 8th Floor
Hartford, CT 06103
P: (860) 522-0404
F: (860) 247-1330

DEFENDANTS,
HUMANA, INC., HUMANA AT HOME, INC.,
AND SENIORBRIDGE FAMILY COMPANIES
(CT), INC.

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ........................................................................ 1

II.     HUMANA IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ITS
        GOOD FAITH AFFIRMATIVE DEFENSES.................................................... 1

        A.      Humana is Entitled to a Complete Defense Under 29 U.S.C. § 259 ..................... 2

        B.      Humana Has Established a Defense to Liquidated Damages Under 29
                U.S.C. § 260 and Applicable State Law .................................................. 4

        C.      Other Alleged FLSA Violations Have No Bearing on the Good Faith
                Analysis............................................................................................... 5

        D.      Humana's Good Faith Precludes a Finding of Willfulness ................................... 6

III.    PLAINTIFFS' NYLL CLAIMS DO NOT RELATE BACK TO THE FILING OF
        THE ORIGINAL COMPLAINT ......................................................................... 6

IV.     DEFERENCE TO NYSDOL'S INTERPRETATION OF ITS OWN
        REGULATIONS REMAINS APPROPRIATE................................................... 9

V.      THE CAREGIVER AGREEMENT IS A REASONABLE AGREEMENT REGARDING
        NON-COMPENSABLE TIME AND SHOULD BE ENFORCED ................................. 9

VI.     HUMANA IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE NYLL
        CLAIMS OF ANY LIVE-IN HHW WHO WORKED NO MORE THAN
        THREE LIVE-IN SHIFTS PER WEEK.............................................................. 11

VII.    CAILLO AND MATHIEU LACK STANDING TO ASSERT THE CLAIMS
        OF THE NEW YORK UNPAID HOURS CLASS PRIOR TO JANUARY 1, 2015 ...... 11

VIII.   PLAINTIFFS HAVE ALREADY BEEN PAID FOR ALL HOURS WORKED............ 12

IX.     CONCLUSION.................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acosta v. Min & Kim, Inc.*,
  919 F.3d 361 (6th Cir. 2019) ....................................................................5

*Cent. Va. Cmty. Coll. v. Katz*,
  546 U.S. 356 (2006)...................................................................................7

*Charlot v. Ecolab, Inc.*,
  97 F. Supp. 3d 40, 73 (E.D.N.Y. Dec. 12, 2014)......................................7

*East Tex. Motor Freight Sys. v. Rodriguez*,
  431 U.S. 395 (1977)................................................................................13

*Fernandez v. Wells Fargo Bank, N.A.*,
  2013 U.S. Dist. LEXIS 97963 (S.D.N.Y. July 9, 2013) ...........................2

*Garofalo v. Donald B. Heslep Assocs., Inc.*,
  405 F.3d 194 (4th Cir. 2005) ..................................................................10

*Green v. Humana at Home, Inc.*,
  2017 U.S. Dist. LEXIS 162961 (S.D.N.Y. Sept. 29, 2017).......................2

*Haskett v. Uber Techs., Inc.*,
  No. 19-1116, 2019 U.S. App. LEXIS 21003 (4th Cir. July 16, 2019) ......7

*Hoffmann-La Roche Inc. v. Sperling*,
  493 U.S. 165 (1989)...................................................................................7

*Holick v. Cellular Sales of N.Y.*,
  No. 1:12-CV-584, 2019 U.S. Dist. LEXIS 120309 (N.D.N.Y. July 19, 2019) .......................13

*Lundy v. Catholic Health Systems of Long Island, Inc.*,
  711 F.3d 106 (2d Cir. 2013)....................................................................14

*Marshall v. Baptist Hosp., Inc.*,
  668 F.2d 234 (6th Cir. 1981) .................................................................3, 5

*Olson v. Superior Pontiac-GMC, Inc.*,
  765 F.2d 1570 (11th Cir. 1985) ................................................................4

*Sanchez v. Caregivers Staffing Servs., Inc.*,
  2017 U.S. Dist. LEXIS 11259 (E.D. Va. Jan. 26, 2017) ..........................2

*Scott v. Chipotle Mexican Grill, Inc.*,
  67 F. Supp. 3d 607, 612 (S.D.N.Y. Dec. 18, 2014) ...................................................4

*Strauch v. Computer Scis. Corp.*,
  2018 U.S. Dist. LEXIS 192713 (D. Conn. Nov. 9, 2018) .........................................6

*Willis Mgmt. (Vt.), Ltd. v. United States*,
  652 F.3d 236 (2d Cir. 2011)..................................................................................7, 8

**Statutes**

29 U.S.C. § 259 ....................................................................................................2, 14

29 U.S.C. § 260 .........................................................................................................5

Conn. General Statutes § 31-72 .................................................................................5

FLSA................................................................................................................ *passim*

**Other Authorities**

29 C.F.R. §785.17 ....................................................................................................11

29 C.F.R. § 785.22 ..............................................................................................11, 15

29 C.F.R. § 785.23 ..............................................................................................11, 15

29 C.F.R. § 790.15(a)................................................................................................4

29 C.F.R. § 790.18 ....................................................................................................3

Defendants Humana, Inc., Humana At Home, Inc., and Seniorbridge Family Companies (CT), Inc. (collectively "Humana") respectfully submit this reply memorandum of law in support of their motion for partial summary judgment (Dkt. 314, "Motion"). Humana also refers the Court to its Response to Plaintiffs' Additional Material Facts, filed together herewith.

## I.   PRELIMINARY STATEMENT

Plaintiffs' opposition fails to demonstrate the existence of any triable issues of material fact as to the issues addressed by the Motion. Instead, it relies on hindsight, speculation, and mischaracterizations of both previous rulings by this Court and record evidence to try to sidestep the deficiencies in Plaintiffs' claims. Neither tactic can remedy or mask Plaintiffs' efforts to overreach in characterizing their claims, which are based on the Court's original Order in this matter (Dkt. 57) and relate to the time period from January 1, 2015 to (at most) January 31, 2016.

Plaintiffs' opposition also provides yet another example of Plaintiffs' willingness to change litigation positions or move the goalposts whenever it suits their case. For example, Plaintiffs' opposition relies heavily on the argument that Humana could not properly deduct breaks from Plaintiffs' compensation, even if they did in fact occur, because they were not "regularly scheduled." Putting aside that Plaintiffs' claim fails on the merits, it has two major problems. First, it was not included in any version of the Complaint (which Plaintiffs were given several opportunities to amend). Second, it requires an individualized analysis of each Live-In HHW's claim that Plaintiffs assured this Court would not be necessary to obtain class certification, calling into question the continued viability of the nationwide collective and state law classes.

## II.   HUMANA IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ITS GOOD FAITH AFFIRMATIVE DEFENSES

As a preliminary matter, Judge Nathan's decision in the *Green* case does not collaterally estop Humana from seeking summary judgment on its good faith affirmative defenses here. *Green*

involves different parties on both sides of the caption and different classes asserting different violations of different state laws. Those differences preclude the application of collateral estoppel. *See Fernandez v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 97963, at *13, n. 1 (S.D.N.Y. July 9, 2013). In short, while *Green* "may have some precedential value, collateral estoppel plays no role in its application." *Id.* This court is not bound by the *Green* decision and is free to reach its own conclusion about Humana's good faith defense.[1]

A.    Humana is Entitled to a Complete Defense Under 29 U.S.C. § 259

No triable issue of fact on Humana's good faith has been raised. As for the first element of Humana's good faith defense, Plaintiffs concede that the continued application of existing law was an "inevitable result of the [*Weil I*] court's injunction." Dkt. 322, at 4. Despite this concession, Plaintiffs somehow suggest that Humana should have based its actions on statements made by a Department of Labor administrator in a declaration supporting that Agency's appeal of *Weil I* instead. *See id.* Such statements, of course, do not have the force of law. It would have been irrational, at best, for Humana to rely on those statements rather than continue to follow the actual law that remained valid on the books. Such statements are not part of the guidance identified as forming the basis for reliance under USDOL's own regulations regarding same.

Relying once more on statements made in declarations submitted by the USDOL in *Weil I*, Plaintiffs go on to suggest, this time with respect to the second element of Humana's defense, that Humana should have known better than to rely on USDOL's temporary non-enforcement policy for the regulatory changes. Plaintiffs do not, and cannot, dispute that USDOL officially

---

[1] Decisions of one District Court do not bind another. *See United States v. Morales*¸ 881 F. Supp. 769, 771 (D. Conn. Mar. 21, 1995). Indeed, various district courts disagree about the effective date of the revisions to the companionship exemption. *Compare Sanchez v. Caregivers Staffing Servs., Inc.,* 2017 U.S. Dist. LEXIS 11259 (E.D. Va. Jan. 26, 2017) (holding that *Weil* "created a legal nullity, which prevented the DOL rule from becoming effective until…October 13, 2015") *with Green v. Humana at Home, Inc.*, 2017 U.S. Dist. LEXIS 162961 (S.D.N.Y. Sept. 29, 2017) (holding that the regulations applied retroactively, beginning January 1, 2015).

announced and then extended a non-enforcement policy for the relevant regulatory changes, which in totality spanned from the date of the D.C. Circuit's mandate in *Weil II* through November 12, 2015.  Instead, Plaintiffs essentially argue that this guidance was meaningless, and that Humana should have ignored it because of the position USDOL took on appeal.  This position cannot be squared with common sense.  Nor is it consistent with the law.  Indeed, 29 C.F.R. § 790.18, which discusses the good faith defense, explains that good faith can be based on an "[a]dministrative practice or enforcement policy."  29 C.F.R. § 790.18.  It provides the following example:

> [S]uppose the Administrator of the Wage and Hour Division issues a general statement indicating that in his opinion a certain class of employees come within a specified exemption from provisions of the Fair Labor Standards Act in any workweek when they do not engage in a substantial amount of nonexempt work. Such a statement is an 'interpretation' within the meaning of sections 9 and 10 of the Portal Act. Assume that at the same time, the Administrator states that for purposes of enforcement, until further notice such an employee will be considered as engaged in a substantial amount of nonexempt work in any workweek when he spends in excess of a specified percentage of his time in such nonexempt work. *This latter type of statement announces an 'administrative practice or enforcement policy' within the meaning of sections 9 and 10 of the Portal Act.*

*Id.*, § 790.18(b) (emphasis added). This guidance applies precisely to the non-enforcement position at issue here. Humana was plainly justified in relying on that policy and, as such, has established a good faith defense.  *See Marshall v. Baptist Hosp., Inc.*, 668 F.2d 234 (6th Cir. 1981) ("The language and legislative history of [the Portal-to-Portal Act] indicate that courts should be hesitant to impose retroactive minimum wage liability on employers in the face of an administrative interpretation which the employer could plausibly interpret as insulating him from liability").

Finally, with respect to the third element, Humana refers the Court to its original moving papers. Dkt. 314-1, at 5-8. Humana adds two points in response to arguments raised by Plaintiffs in their opposition. First, Plaintiffs' statement that a company has a "duty to seek expert advice" (Dkt. 322, at 7), of an attorney, to establish a good faith defense is simply wrong.  As even the

cases cited by Plaintiffs acknowledge, the requirement can be satisfied by reliance on "a variety of sources." *Scott v. Chipotle Mexican Grill, Inc.*, 67 F. Supp. 3d 607, 612 (S.D.N.Y. Dec. 18, 2014). All that is required is a showing that the employer "acted as a reasonably prudent man would have acted under the same or similar circumstances."  29 C.F.R. § 790.15(a).  There is no requirement that an employer demonstrate it sought legal advice as a prerequisite to establishing good faith.[2]

Second, Plaintiffs mischaracterize the testimony of Kathleen Driscoll by suggesting that it "makes clear that [Humana] did not consult with an attorney or otherwise make inquiries of knowledgeable persons with respect to its obligations."  Dkt. 322, at 7.  The Driscoll Declaration describes, in some detail, Humana's efforts to determine and comply with its obligations.   In addition, Mr. Allen testified that Humana *did* involve legal counsel in the decision to reclassify Live-In HHWs (Allen Dep., 64:11-65:25)[3] and that Humana's legal team would have been involved in any decision regarding whether paying for 13 (instead of 24) hours complied with the FLSA.  *Id.*, at 280:22-281:5.  Plaintiffs' efforts to side step those actions by pretending they did not occur and impugning Ms. Driscoll's knowledge are unpersuasive.

B.    Alternatively, Humana Established a Defense to Liquidated Damages Under 29 U.S.C. § 260 and Applicable State Law

Plaintiffs' contention that Humana has not moved for this relief under applicable state laws (Dkt. 322, at 7, n. 4) is just wrong.  Humana not only expressly requested this relief in the original moving papers (Dkt. 314, ¶ 2), but also dedicated an entire subsection of the accompanying memorandum of law (titled "Defense to Liquidated Damages, 29 U.S.C. § 260, N.Y. Labor Law § 663 and Conn. General Statutes § 31-72) to this point.  Dkt. 314-1, at 14.

---

[2] The single, out-of-circuit decision cited by Plaintiffs does not hold otherwise.  *See Olson v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570, 1580 (11th Cir. 1985).  In *Olson*, the court held that a reasonably prudent person in the employer's shoes would have sought outside professional advice to resolve an internal dispute between members of the employer's management team about the applicable law.  *See id.*  Here, there is no indication of such disagreement.

[3] Excerpts from Deposition Transcript of Michael Allen are attached as Exhibit A to Declaration of David R. Golder.

Because of this mistaken assumption, Plaintiffs' opposition expressly "does not address the question of Plaintiffs' claim for liquidated damages under state law." Dkt. 322, at 8, n. 4. This failure to oppose amounts to a concession. Thus, Humana should be awarded judgment as a matter of law on this defense, and for those reasons set forth in the original moving papers.

C.  Other Alleged FLSA Violations Have No Bearing on the Good Faith Analysis

Plaintiffs argue, without citation, that the fact that multiple FLSA violations are alleged somehow precludes a finding that Humana acted in good faith with respect to its classification of Live-In HHWs. There is no legal basis for this claim. Even if the other alleged FLSA violations occurred (*i.e.*, failure to keep accurate records, which is denied), those violations have no logical bearing on whether the classification decision was made in good faith. *See, e.g., Acosta v. Min & Kim, Inc.*, 919 F.3d 361 (6th Cir. 2019) ("spotty recordkeeping" and subsequent conduct in DOL investigation irrelevant to finding of good faith, which was based on substantive FLSA violation and "reasonable, good-faith belief in their compliance before [the Department's] inquiries").

Plaintiffs' argument that Humana's actions for the *entire* relevant time period should be deemed as willful merely because Humana may not have formally started paying overtime to some HHWs until January is equally unpersuasive. Humana's home care business is a large organization, and this was a seismic shift in the law that required major changes relating to its payroll processes in several states. Dkt. 325, at 13-14. Any delay, to the extent that it even occurred, is attributable only to the practical difficulties associated with implementing compliant practices—not any bad faith or willfulness. And certainly not with respect to prior classification decisions. It is not relevant to Humana's classification decisions or good faith.

D.       Humana's Good Faith Precludes a Finding of Willfulness

As described *supra*, Humana acted in good faith—making every effort to comply with rapidly evolving changes to complex laws in real time.  Even if 20/20 hindsight reveals Humana should have acted differently or sooner, Humana's good faith compliance efforts preclude a finding of willfulness.  *See generally Strauch v. Computer Scis. Corp.*, 2018 U.S. Dist. LEXIS 192713, at *16 (D. Conn. Nov. 9, 2018) ("a jury's willfulness finding affirmatively precludes a court's finding of good faith.").  Thus, a two-year statute of limitation applies to the FLSA claims.

III.     **PLAINTIFFS' NYLL CLAIMS DO NOT RELATE BACK TO THE FILING OF THE ORIGINAL COMPLAINT**

Plaintiffs' NYLL claims cannot relate back to the filing of the original complaint, because doing so would be patently unfair as it would allow Plaintiffs to "stop the clock on all state law wage-and-hour claims possibly brought against an employer in multiple states by filing a single FLSA collective action." *Charlot v. Ecolab, Inc.,* 97 F. Supp. 3d 40, 73 (E.D.N.Y. Dec. 12, 2014) (rejecting the same argument).  Plaintiffs' arguments here are not the law, nor should it be.  Indeed, the Supreme Court is clear that collective actions and notice regard an employee's federal claims. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *Haskett v. Uber Techs., Inc.*, No. 19-1116, 2019 U.S. App. LEXIS 21003 (4th Cir. July 16, 2019) (distinguishing between FLSA collective actions and traditional class actions).  Contrary to Plaintiffs' arguments, an employer is not put on notice of every single state-law claim a potential-but-presently-unknown-opt-in plaintiff in a putative collective action may (or may not) bring after notice may (or may not) issue to FLSA collective members in one or more states.

The case law cited by Plaintiffs in opposition, including this Court's certification order, does not compel a different conclusion.  First, the language on relation back in the Court's certification order is non-binding dicta.  *See Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363

(2006) ("[W]e are not bound to follow our dicta in a prior case in which the point now at issue was not fully debated."); *see also Willis Mgmt. (Vt.), Ltd. v. United States,* 652 F.3d 236, 243 (2d Cir. 2011) (ruling that a statement that is "not essential to the . . . holding" is non-binding dicta). Moreover, to the extent that the certification order even addresses relation back, it does so only for the New York Effective Date Class.  *See* Dkt. 293, at 30.[4]  This has no bearing on the applicability of this doctrine to the New York Unpaid Hours class, the bulk of Plaintiffs' NYLL claims.

Plaintiffs' reliance on *Zorilla v. Carlson Restaurants, Inc.* misses the mark.  Dkt. 322, at 14-15.  In *Zorilla,* the court applied relation back to some claims but rejected it for others.  *See* 255 F. Supp. 3d 465 (S.D.N.Y. May 25, 2017).  Indeed, the court held that plaintiffs' proposed waiting-time claim did *not* relate back, because it "relies on facts not set forth in the original pleading." *Id.*, at 477.  "The First Complaint [therefore] did not provide Defendants with adequate notice" of that claim.  *Id.*

The same is true here for Plaintiffs NYLL claims, which do not relate back for this reason alone.  As explained in Defendants' moving papers, this lawsuit did not include a single New York resident at the outset, and the original complaint only asserted claims under the FLSA and CMWA. *See* Dkt. 314-1, at 18-20.  The original Complaint, filed on November 10, 2015, made no reference to unpaid hours, or the method of compensation of New York employees.  *See generally* Dkt. 1. The NYLL claims were not asserted until two years later, after Plaintiffs convinced a New York opt-in Plaintiff to file the First Amended Complaint on November 9, 2017.  *See* Dkt. 181.  Further still, the NYLL claims attempt to reach back further than the FLSA claims that Plaintiffs incorrectly described as "identical."  Dkt. 322, at 15.  Indeed, the NYLL claims look to go back six years, while the FLSA claims go back to January 1, 2015 (because Live-In HHWs were

---

[4] Of course, the relation back issue is irrelevant to the Effective Date class.

indisputably covered by the companionship exemption prior to that time or at most to November 10, 2012).  To permit an amendment to relate back *three years further* than the statute of limitations applicable to the original Complaint to which relation back is sought is patently unfair; a Defendant could not possibly be on proper notice of claims relating to such time period, as that time period was not at issue in the originally filed case.

Moreover, Plaintiffs' NYLL claims rely on facts not asserted in the original pleadings. Indeed, as set forth at length in Defendants' opposition to Plaintiffs' motion for partial summary judgment, Plaintiffs never made their "regularly scheduled" argument before moving for summary judgment.  Dkt. 325, at 3-10.  Nor did Plaintiffs articulate that they sought to recover for all 24 hours of every shift—in fact taking the opposite position (*i.e.*, that *Andryeyeva* would determine whether 13- or 24-hours was the maximum) to obtain certification of the New York Classes. Plaintiffs should not be allowed to reverse course at this late juncture.

As for the undue prejudice requirement, the *Zorilla* court expressly noted that "[t]o the extent that a new state law claim creates a form of liability sufficiently distinct from the original nationwide FLSA [claim]—thus requiring a defendant to begin 'assembling evidence and constructing a defense when the case is already stale'—then undue prejudice lies."  *Id.*, at 479 (quoting *Young v. Lepone*, 305 F.3d 1, 17 (1st Cir. 1987)).  Humana would be unduly prejudiced by relation back for precisely this reason.  Humana was never aware of, and thus had no chance to conduct discovery on, or prepare a defense against, these eleventh-hour claims.  Plaintiffs' newly contrived theory that even break time is compensable unless it was regularly scheduled provides the most striking example of this fact.[5]  Until a motion was made to amend New York claims,

---

[5] Plaintiffs' "regularly scheduled" claim may be the most striking example of this fact, but it is not the only one. Plaintiffs' opposition (and, to an even greater extent, their own moving papers) make this clear.  Indeed, while Plaintiffs "concede that they were exempt from FLSA and Connecticut overtime provisions prior to January 1, 2015,"

Humana had no notice of any New York claims, nor any claims going as far back as Plaintiffs now seek, because the temporal scope of the original lawsuit extended, at most, to November 2012 (three years from the filing of the original complaint).  Allowing relation back to the extent that Plaintiffs seek would therefore also expand the temporal scope of this lawsuit at this relatively late juncture—causing yet another form of undue prejudice to Humana.

## IV.   DEFERENCE TO NYSDOL'S INTERPRETATION OF ITS OWN REGULATIONS REMAINS APPROPRIATE

Humana reasserts that the Court should defer to NYSDOL's reasonable interpretation of its own regulations for all the reasons set forth in its original moving papers; and as the New York Court of Appeals recently did in *Andryeyeva*.  *See* 2019 N.Y. LEXIS 617, at *24 (2019) ("Upon our review of the Wage Order and DOL's policy statements, we conclude that DOL's interpretation is not inconsistent with the plain language as promulgated, nor is it an irrational or unreasonable construction of the Wage Order as applied to 24-hour shift workers.").  Humana does not argue that NYSDOL's interpretation of Federal Law would be entitled to deference—as Plaintiffs misleadingly suggest.  Instead, Humana argues for deference to NYSDOL's interpretation and application of the State's own unique statutory scheme, which differs from Federal law in material ways, (*see* Dkt. 314-1, at 21-22) and which differences Plaintiffs acknowledge (*see* fn. 4, *supra*).

## V.   THE CAREGIVER AGREEMENT IS A REASONABLE AGREEMENT REGARDING COMPENSABLE TIME AND SHOULD BE ENFORCED

The Caregiver Agreement expressly communicated the level of compensation and set a very specific expectation regarding the corresponding amount of work, including a reasonable estimate about how Live-In HHWs would divide their time.  Dkt. 314-2, ¶ 11 (citing Caregiver

---

they argue that "they were not exempt from New York minimum wage and overtime provisions prior to that date." Dkt. 322, p. 11.  This issue, too, was not, and could not have been, raised in the original Complaint.

Agreement, ¶ 3).  Plaintiffs have conceded that they were aware of their obligation to report variations from Humana's communicated expectation and how to do so.  Dkt. 314-2, ¶ 14 (citing Mathieu Dep., 167:16-168:7; Caillo Dep., 40:14-15, 48:10-50:3).  Similar agreements have been enforced under similar circumstances.  *See Garofalo v. Donald B. Heslep Assocs., Inc.*, 405 F.3d 194, 198 (4th Cir. 2005).  The Caregiver Agreement is reasonable.

Plaintiffs' response is striking.  It is perhaps the ultimate example of their strategy to take a decisive position at one stage of this case, only to reverse course and take an inconsistent position when it suits them.  As this Court is aware, Humana argued extensively, and repeatedly, that the experiences of each Live-In HHW are far too individualized to justify class or collective treatment. *See, e.g.,* Dkt. 100, at 10-11; Dkt. 234, at 12-24.  Plaintiffs once disputed this assertion.  *See, e.g.,* Dkt. 241, at 8-9.  Here, however, Plaintiffs change their tune once again, asserting:

> Given the ***radically different*** client needs and habits that live-in caregivers dealt with, any reasonable approximation of hours that caregivers actively worked would have to be negotiated on an individual basis in light of the specific needs and habits of each client. The ***wildly different experiences*** of Mathieu and Morant makes this clear.

Dkt. 322, at 21 (emphasis added).  If the Court accepts Plaintiffs' new arguments that contradict their prior arguments, it will undermine the collective and class certification here.

Incredibly, this is not the only example of Plaintiffs taking irreconcilable positions in their opposition.  Plaintiffs also argue that 29 C.F.R. § 785.23 does not apply because Live-In HHWs did not reside on their "employer's premises."  Dkt, 322, at 19.  Just a few pages later, however, Plaintiffs argue that 29 C.F.R. §785.17 applies.  *Id.*, at 24.  That regulation, like § 785.23, also governs employees who remain on the "employer's premises."  29 C.F.R. § 785.17.  Either both applies or neither does; Plaintiffs cannot have it both ways.

Plaintiffs' arguments about 29 C.F.R. § 785.22 are symptomatic of this same problem. Now that class certification has been obtained, based largely on the perceived absence of any

individualized issues, Plaintiffs turn around and seek to rely on the individualized and "wildly different" issue of whether breaks were "regularly scheduled" to defeat Humana's motion for summary judgment. This tactic should not be countenanced for the reasons explained in Humana's opposition to Plaintiffs' motion for partial summary judgment. Dkt. 325, at 3-10.

## VI.   HUMANA IS ENTITLED TO JUDGMENT ON THE CLAIMS OF ANY LIVE-IN HHW WHO WORKED NO MORE THAN THREE LIVE-IN SHIFTS PER WEEK

Live-In HHWs who never worked more than three Live-In shifts in a given week— including Named Plaintiff Mathieu—should be dismissed. Consideration of this issue at the class certification was clouded because *Andryeyeva* had not yet been decided. Humana contended that the maximum number of hours worked under New York law was 13. Indeed, the certification order recognized that "Humana might eventually be proved correct on this legal issue." *See* Dkt. 293, at 8. *Andryeyeva* has now been decided, with the New York Court of Appeals adopting Humana's position on the correct interpretation of New York Law. 2019 N.Y. LEXIS 617, at *24; Dkt. 314-4, at 229-332 (opinion letter discussing New York requirements); Dkt. 314-1, at 42. The summary judgment stage is the appropriate time to address this merits-related deficiency. Humana is therefore entitled to summary judgment not just on Mathieu's claim, but on the claims of any Live-In HHW who never worked more than three shifts in a given workweek.

## VII.   CAILLO AND MATHIEU LACK STANDING TO ASSERT THE CLAIMS OF THE NEW YORK UNPAID HOURS CLASS PRIOR TO JANUARY 1, 2015

Humana also reasserts that the Named Plaintiffs (specifically Mathieu and Caillo) lack standing to assert the claims asserted by the New York Unpaid Hours class for the period before January 1, 2015. Plaintiffs do not dispute, and thus concede, that neither Mathieu nor Caillo worked in a live-in capacity before January 1, 2015. Dkt. 314-2, ¶ 44; Dkt. 322-1, ¶ 44. As a result, they cannot have suffered *any* injury before that time—much less the same injury as the

members of the class they purport to represent.  Plaintiffs wrongly argue that this fact is immaterial; suggesting that even a different injury confers standing as long as it was caused by the same allegedly unlawful policy.  But that is not the law.  The Supreme Court has "repeatedly held, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *East Tex. Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quotations omitted).  Further, they suffered no injury prior to January 1, 2015.

Plaintiffs also argue that this Court has already held that Mathieu and Caillo have standing to challenge the policy at issue.  Dkt. 322, at 27.  Again, that is not so.  This Court held that "Mathieu is entitled for purposes of a standing inquiry to the benefit of her interpretation of the law under which she has alleged an injury"—at least until *Andryeyeva* was decided.  Dkt. 293, at 8.  Indeed, this Court qualified its ruling by noting that "[t]he right interpretation of New York law is a question for the merits of Mathieu's claim, but no matter how that question is resolved, she has standing *for now* to pursue it."  *Id.* (emphasis added).  In addition, the Court's decision said nothing at all about Caillo's standing to pursue that claim (which is also lacking).

## VIII.    PLAINTIFFS HAVE ALREADY BEEN PAID FOR ALL HOURS WORKED

Live-In HHWs were paid a day rate intended to compensate them for all hours worked and therefore there are no "unpaid hours."  Plaintiffs' claim that Humana has not offered "any evidence" to support this claim is easily rebutted.  Humana offered substantial evidence of this fact; most notably the Caregiver Agreement and the testimony of several Plaintiffs conceding that they knew Humana paid a day rate for Live-In work.  *See* Caregiver Agreement, ¶ 3; Caillo Dep. 39:22-40:15; Mathieu Dep., 167:16-168:7.  Plaintiffs' argument that their clients did not mean to concede this fact is unpersuasive.  The phrase "day rate" is self-explanatory, and indeed it is clear

from Plaintiffs' deposition testimony that they fully understood what it meant.[6]  *See id.*; *Holick v. Cellular Sales of N.Y.*, No. 1:12-CV-584 (NAM/DJS), 2019 U.S. Dist. LEXIS 120309 (N.D.N.Y. July 19, 2019) (Plaintiffs understood that commissions were sole form of compensation there was no "contractual promise" to the contrary, thus claims under NYLL § 191 for compensation for purported additional tasks failed).

Plaintiffs' argument about recovery of gap time under the FLSA and CMWA fails for this same reason (i.e., they have already been paid for all hours worked).  Plaintiffs' argument under the CMWA where it criticizes the *Second Circuit's* decision in *Lundy* as "unpersuasive" is so ridiculous that it almost warrants no response.  Dkt. 322 at 30 (discussing *Lundy v. Catholic Health Systems of Long Island, Inc.*, 711 F.3d 106 (2d Cir. 2013)).  As noted, the Connecticut Supreme Court consistently looks to the FLSA for interpretation of Connecticut law.  Dkt. 314-1, at 31.  Moreover, the allegedly "unpersuasive" reasoning in *Lundy* has been cited more than a dozen times by the Second Circuit and many other courts.

Finally, Plaintiffs failed to rebut Humana's argument that Plaintiffs were paid all they are owed under the NYLL before January 1, 2015, when they were exempt companions subject to the minimum wage and minimum wage overtime obligations Plaintiffs themselves describe.  Humana established as much using basic arithmetic in its moving papers, the same arithmetic Judge Cote used in *Severin*.  *See* Dkt. 314-1, at 32-33.

---

[6] Plaintiffs suggestion that Mathieu's current "contract" states she was paid a fixed amount for 13 hours of work is misleading and irrelevant, particularly in light of the change in New York law from 'exempt subject to minimum wage' to 'non-exempt.' At all times relevant, Mathieu's relationship with Humana was governed by the Caregiver Agreement she signed. Dkt. 314-2, ¶ 13.  That Agreement explains that Live-In HHWs are paid a day rate intended to compensate them for all hours worked, as Humana has previously explained at length. Dkt. 28-35.

IX.   **CONCLUSION**

Plaintiffs' FLSA claims fail because Humana established a § 259 defense.  Alternatively, the Court should order that (1) FLSA two-year statute of limitations applies and reject any claims for liquidated damages; (2) Plaintiffs' NYLL claims do not relate back to the original complaint and claims prior to November 9, 2011 are time-barred; (3) NYSDOL's interpretation of its regulations is valid; (4) the Caregiver Agreement was reasonable; (5) no claims for opt-ins who worked three or less Live-In shifts in a workweek; (6) Live-Ins were paid a day rate intended to compensate all hours worked; and (7) Humana is entitled to additional offsets.

Dated:  July 22, 2019

Respectfully submitted,

DEFENDANTS,
HUMANA, INC., HUMANA AT
HOME, INC., AND SENIORBRIDGE FAMILY
COMPANIES (CT), INC.

By:      /s/ *David R. Golder*
David R. Golder (ct 27941)
goldered@jacksonlewis.com
Noel Tripp (pro hac vice)
trippn@jacksonlewis.com
Jackson Lewis P.C.
90 State House Square, 8th Floor
Hartford, CT 06103
P: (860) 522-0404
F: (860) 247-1330

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on July 22, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

_/s/ David R. Golder_____
David R. Golder