# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVERLYNN KINKEAD, SHIRLEY, SHIRLEY CAILLO, and CLAUDE MATHIEU, individually and on behalf of all others similarly situated,    : : : : : | CIVIL CASE NO.: 3:15-CV-01637 (JAM) |
|                 Plaintiffs,   : | |
|       v.              : : | |
| HUMANA, INC., HUMANA AT HOME, INC., AND SENIORBRIDGE FAMILY COMPANIES (CT), INC.,                    Defendants.   : : : : | |

**DEFENDANTS' MEMORANDUM OF LAW FOR DECERTIFICATION OF PLAINTIFFS' RULE 23 CLASSES AND THE FLSA COLLECTIVE TO THE EXTENT THOSE GROUPS SEEK TO PURSUE REPRESENTATIVE CLAIMS BEYOND 13 HOURS A DAY AND DAMAGES BASED ON AN HOURLY RATE OF PAY FOR LIVE-IN WORK**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   THE RELEVANT PROCEDURAL POSTURE AND THE LAW.................................. 3

III.  ARGUMENT ....................................................................................................... 8

    A.   The Decertification Standard Under Rule 23 And FLSA........................................ 8

    B.   Because Plaintiffs Seek More than Thirteen Hours per Shift for All
        Classes and the FLSA Collective, the Classes and Collective Should Be
        Decertified.............................................................................................. 10

        1.   The Law and Live-In Home Health Workers............................................ 10

        2.   Plaintiffs' Arguments at Summary Judgment and the Court's
            Findings in its MSJ Order......................................................... 12

        3.   The Individualized Nature of the Sleep and Meal Break Issues
            in this Case............................................................................ 12

        4.   Plaintiffs' Classes and FLSA Collective Should Be Decertified
            as to the "Agreement" Regarding Pay Rates for Each HHW ................. 16

        5.   Additionally, Individualized Damages Theories Require Decertification
            .................................................................................................... 19

    C.   This Court Should Also Decertify The FLSA Collective ..................................... 21

    D.   In the Alternative (and Additionally), the Court Can Decertify the
        Classes and Collective By Applying Judicial Estoppel ........................................ 23

IV.   CONCLUSION................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Recovery Trust*,
    634 F.3d 678 (2d Cir. 2011)......................................................................23

*Andryeyeva v. N.Y. Health Care, Inc.*,
    33 N.Y.3d 152 (2019) ........................................................................*passim*

*Babineau v. Fed. Express Corp.*,
    576 F.3d 1183 (11th Cir. 2009) ..............................................................14

*Baden v. Koch*,
    799 F.2d 825 (2d Cir. 1986)......................................................................23

*Bonn-Wittingham v. Project O.H.R. (Office for Homecare Referral), Inc.*,
    792 Fed. Appx. 71 (2d Cir. Nov. 25, 2019) (Summary Order) ............................6, 7

*Carrera v. Bayer Corp.*,
    727 F.3d 300 (3d Cir. 2013)......................................................................19

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)................................................................................8, 9

*Cowell v. Utopia Home Care, Inc.*,
    No. 14-CV-736 (LDW)(SIL), 2016 U.S. Dist. LEXIS 104495 (E.D.N.Y. Aug.
    8, 2016) ............................................................................................21

*Cruz v. Dollar Tree Stores, Inc.*,
    Case Nos. 07-2050 SC .............................................................................9

*DeSilva v. N. Shore-Long Island Jewish Health Sytem*,
    27 F. Supp. 3d 313 (E.D.N.Y. 2014) .....................................................22, 24

*Diaz v. Elects. Boutique of Am., Inc.*,
    No. 04-CV-0840E(Sr), 2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 17,
    2005) ................................................................................................21

*Downie v. Carelink, Inc.*,
    16-CV-5868(JPO), 2018 U.S. Dist. LEXIS 125184 (S.D.N.Y. July 26, 2018)............3, 10, 12

*Dudley v. Texas Waste Systems, Inc.*,
    No. SA-05-CA-0078-XR, 2005 U.S. Dist. LEXIS 9168 (W.D. Tex. May 16,
    2008) .............................................................................................21, 22

*Eng-Hatcher v. Sprint Nextel Corp.*,
    No. 07-Civ.-7350(BSJ), 2009 U.S. Dist. LEXIS 127262 (S.D.N.Y. Nov. 13,
    2009) ..................................................................................................................21

*Espenscheid v. DirectSat USA LLC*,
    705 F.3d 770 (7th Cir. 2013) .................................................................................9

*Glatt v. Fox Searchlight Pictures, Inc.*,
    811 F.3d 528 (2d Cir. 2016)...........................................................................10, 20

*Heredia v. Americare, Inc.*,
    17cv6219, 2018 U.S. Dist. LEXIS 86918 (S.D.N.Y. May 23, 2018)...................11, 16, 18, 20

*Indergit v. Rite Aid Corp.*,
    293 F.R.D. 632 (S.D.N.Y. 2013) .........................................................................19

*Jacob v. Duane Reade, Inc.*,
    293 F.R.D. 578 (S.D.N.Y. 2013) .........................................................................19

*Marlo v. UPS*,
    251 F.R.D. 476 (C.D. Cal. 2008), *aff'd* 639 F.3d 942 (9th Cir. 2011) ......................9

*Mazzei v. The Money Store*,
    829 F.3d 260 (2d Cir. 2016), *cert. denied sub nom.* 137 S. Ct. 1332 (2017) ........8, 9

*McLaughlin v. Am. Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2008)...................................................................................9

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010)..................................................................................10

*Powell v. Carey Int'l, Inc.*,
    514 F. Supp. 2d 1302 (S.D. Fla. 2007) ...............................................................16

*Richardson v. Byrd*,
    709 F.2d 1016 (5th Cir. 1983) ...............................................................................8

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015)..................................................................................19

*Rodriguez de Carrasco v. Life Care Servs.*,
    17-cv-5617(KBF), 2017 U.S. Dist. LEXIS 206682 (S.D.N.Y. Dec. 15, 2017).......3, 10, 11, 12

*Scott v. Chipotle Mexican Grill, Inc.*,
    Nos. 17-2208-cv, 18-359-cv, 2020 U.S. App. LEXIS 10185 (2d Cir. Apr. 1,
    2020) ....................................................................................................................10

*Sec'y United States DOL v. Bristol Excavating, Inc.*,
  935 F.3d 122 (3d Cir. 2019) ................................................................24

*Matter of Settlement Servs. et al.*,
  No. PR-32-83 [N.Y. Ind. Bd. App. May 28, 1997] ..............................13

*Severin v. Project OHR, Inc.*,
  10 Civ. 9696(DLC), 2012 U.S. Dist. LEXIS 85705 (S.D.N.Y. Jun. 20, 2012) ............3, 10, 13

*Shillingford v. Astra Home Care, Inc.*,
  293 F. Supp. 3d 401 (S.D.N.Y. 2018) .................................3, 10, 13, 20

*Tenneco Chemicals, Inc. v. William T. Burnett & Co.*,
  691 F.2d 658 (4th Cir. 1982) ...............................................................23

*Thind v. Healthfirst Mgmt. Servs.*,
  LLC, No. 14-cv-9539, 2016 WL 7187627 (S.D.N.Y. Dec. 9, 2016) .....................22

*Trocheck v. Pellin Emer. Medical Service. Inc.*,
  61 F. Supp. 2d 685 (N.D. Ohio 1999) ..................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ...........................................................8, 9, 15, 19

*Zivali v. AT & T Mobility, LLC*,
  784 F. Supp. 2d 456 (S.D.N.Y. 2011) ..................................................22

**Statutes and Regulations**

28 U.S.C. § 2072(b) ..........................................................................9, 15

FLSA ..........................................................................................*passim*

Rules Enabling Act .................................................................................9

29 C.F.R. § 785.22(a) ...............................................................................18

Fed R. Civ. P. 23 ..........................................................................*passim*

# I.  INTRODUCTION

This Court's March 31, 2020 Order on the parties' motions for summary judgment ("MSJ Order") necessitates decertification of Plaintiffs' class and collective claims, to the extent they seek claims beyond the statutory "minimum" of 13 hours a day for "live-in" work.  Any assessment of liability or damages by a jury beyond the minimum 13-hour rule requires the detailed individualized examination of the work environment, daily requirements of the job, hours worked, sleep and meal schedules and the mental assessments of each Home Health Worker ("HHW") working a live-in shift, as the MSJ Order describes, and the further question of whether any alleged work in excess of 13 hours was communicated to Defendants.  Every federal court that has examined whether the claims of live-in HHWs can be tried as a class when these kinds of factual issues must be decided has agreed that the highly individualized inquiries required to determine liability and damages preclude trial as a class.  Defendants are asking this Court to follow suit.

Plaintiffs' legal and factual theories have taken many twists and turns.  Regardless of their past theories, Defendants must respond to the present claims of this case as articulated by this Court in its MSJ Order.  The ruling by the Court that leads us to this Motion is the holding that Plaintiffs' claims for unpaid overtime, which rely on meal and sleep time pay in excess of the 13-hour minimum, are inherently individualized *unique issues of fact to be tried to a jury*.  In other words, whether an HHW is owed additional compensation for those hours turns on the individual circumstances surrounding the HHW's meal and sleep break time.  The experiences of two New York Named Plaintiffs who worked a limited number of weeks as live-in aides for Defendants taking care of only a handful of different patients are not "representative," for Rule 23 or 216(b) purposes, of hundreds of live-in aides servicing thousands of live-in clients across a five-year

1

period.  This applies equally to Connecticut, where Ms. Kinkead's experience as a live-in HHW with only a couple of clients during the class period is proposed to represent the experiences of dozens of other HHWs who worked live-in shifts.

The MSJ Order also addressed the critical issue relating to the parties' dispute regarding potential damages.  The Court found that each live-in HHW's understanding about whether they had an "agreement" with Defendants and if so, the terms of that agreement regarding what their daily compensation was intended to cover also involves highly unique and individualized questions of fact.  The Court highlighted that HHWs differ in their understanding about what their pay was intended to cover and the terms of their specific agreement, whether it was express or implied.  These are individualized disputes of fact.  The individualized analysis applies to Plaintiffs' claims for unpaid minimum wages (prior to 2015) and for overtime (from January 1, 2015 to January 31, 2016) based on the assertion that such hours were "unpaid."

It is in the *current* procedural posture that Defendants seek decertification.  If, as it appears, Plaintiffs intend to argue to a jury that Defendants must compensate HHW's for 24 hours for every shift (or *any* amount in excess of the thirteen-hour minimum) *and* that Defendants must calculate overtime based on an 8-hour pay rate instead of a day-rate due to an agreement between the parties, these claims, *as now asserted*, cannot be tried to a jury based on "records," and cannot be tried on a class basis without violating Defendants' due process rights and the well-established law of the Second Circuit and the United States Supreme Court.  The individualized issues that doom Plaintiffs' Rule 23 classes similarly doom Plaintiffs' FLSA collective.

Under settled Second Circuit law, this Court has the continuing obligation to examine its class certification decisions and the power to decertify or alter the classes as currently formed.

Defendants respectfully request that this Court decertify the classes and collective to the extent requested herein, consistent with the law and this Court's MSJ Order.

## II. <u>THE RELEVANT PROCEDURAL POSTURE AND THE LAW</u>

Until summary judgment briefing, Plaintiffs clearly and repeatedly asserted that they were only seeking the statutory "minimum" for all claims.  Plaintiffs presumably made that strategic decision because *every* New York federal court has denied Rule 23 certification for HHW claims seeking more than 13 hours for live-in shifts.[1]  *See* Class Cert. Oral Arg., Court Tr. at p. 9 (Nov. 15, 2018) (attached as Ex. A[2]) (Counsel stating in support of certification that the damages for the "the class members,' if any, can be determined by applying [the Court's] legal rulings to Humana's wage and hour records.").  The Court rightly sought clarification of this fundamental point:

> THE COURT: You don't want to look at one by one by one how much they slept or that kind of thing, right? You just want flat 13 hours that you would derive from just the work records that show they worked a shift that day or not.
>
> MR. SWEENEY: That's correct, Your Honor.

*Id.* at 11; *see also id.* at 12 (Mr. Sweeney: "damages are easily determined, completely and objectively determined by the records."); *see also id.* at 20 (Mr. Sweeney: "The information is in

---

[1] *See, e.g., Severin v. Project OHR, Inc.*, 10 Civ. 9696(DLC), 2012 U.S. Dist. LEXIS 85705, at *33-34 (S.D.N.Y. Jun. 20, 2012) (predominance not satisfied because of individualized nature of inquiry into meal and sleep habits); *Shillingford v. Astra Home Care, Inc.*, 293 F. Supp. 3d 401, 417-18 (S.D.N.Y. 2018) (same); *Rodriguez de Carrasco v. Life Care Servs.*, 17-cv-5617(KBF), 2017 U.S. Dist. LEXIS 206682, at *23 (S.D.N.Y. Dec. 15, 2017) (same); *Downie v. Carelink, Inc.*, 16-CV-5868(JPO), 2018 U.S. Dist. LEXIS 125184, at *24 (S.D.N.Y. July 26, 2018) ("Because an aide must be paid for the full 24 hours only if she does not receive appropriate meal and sleep breaks, 'individualized and not common questions predominate,' and 'class action is not the superior method of adjudication.'") (internal citations omitted).

[2] Citations to "Ex. __" refer to the Exhibits to the Declaration of David R. Golder in support of this motion submitted contemporaneously herewith.

the payroll records.  And as Your Honor noted, we're not claiming anything outside those records.").[3]

Plaintiffs intentionally side-stepped all directly-applicable federal court authority by seeking class certification based only on the "records" and their repeated mantra to Defendants and the Court that they would *only* seek the minimum 13-hours under the FLSA and Connecticut law.  *See* Rule 23 Class Cert. Order (Dkt. 293 at 4) ("According to plaintiffs, Connecticut law entitled Connecticut workers to be paid for 13 hours per live-in shift.  *Even assuming some plaintiffs actually worked more than 13 hours during a 24-hour live-in shift,* ***plaintiffs seek payment only for 13 hours as required by the statutory minimum.***") (emphasis added).  Plaintiffs also repeatedly asserted to both the Court and Defendants that they would accept the decision of the New York Court of Appeals regarding the excludability of time from hours worked (*i.e.*, 13 hours or 24 hours).  *See generally,* Dkt. 293.  Plaintiffs took the same position under the FLSA.  *See, e.g.*, Plaintiffs' Mot. for Supp. FLSA Notice (Dkt. 218 at 12) ("The FLSA requires that class members be credited with at least 13 hours of work for a 24-hour shift and ***Plaintiffs are willing to accept that minimum for purposes of the FLSA claims in this action***.") (emphasis added); Plaintiffs' Reply in Support of Supp. FLSA Notice (Dkt. 227 at 5) ("If Plaintiffs are right that HHWs are entitled to be credited with 13 hours work per 24-hour shift, as a matter of law, that determination and the damages that flow from it are easily made on [an FLSA] collective-wide basis.").

---

[3] Plaintiffs took similar positions in discovery to preclude Defendants from conducting certain discovery as to the HHW's.  *See, e.g.*, Telephonic Discovery Conf., Court Tr. at p. 2 (July 24, 2018) (attached as Ex. B):

> THE COURT: I want to make sure I understand your position, Mr. Bohrer. Basically your position is you're seeking overtime compensation solely for the hours that were actually paid for by defendant, and in the cases of 24-hour live-in shifts, you're seeking the minimum that the law would require payment for, whether that minimum is 13 hours or more; is that correct?
>
> MR. BOHRER: That is correct, Your Honor.

The Court understandably relied on Plaintiffs' position and adopted it in multiple rulings, culminating in the Court's order on Rule 23 class certification. *See generally,* Dkt. 293 (relying on Plaintiffs' contentions that the Connecticut class was for 13 hours and New York class would be 13 or 24 hours depending on Court of Appeals' decision).[4]  As this Court pointed out at oral argument on summary judgment:

> Because [Plaintiffs] said -- you said it's about the minimum number of hours because for Rule 23 purposes and for commonality and typicality and predominance you were faced with an argument, well, we're going to have to start getting into individual specific inquiries about what's occurred here.  You said, well, presto-chango, we have the solution to that.  I bit.  I guess maybe I shouldn't have now, in light of what you're saying, but I went for it and said, yeah, you're right, given this concession that not simply that we're just asking for the number of hours as legally required, but you were asking me for a rule or you were suggesting advancing a rule that would be not be individually fact specific.

*See* MSJ Oral Arg., Court Tr. at p. 6 (Nov. 20, 2019) (attached as Ex. C); *see also* Dkt. 293 at 23 (noting that, unlike the Plaintiffs in the other HHW cases that denied Rule 23 class certification, Plaintiffs here "disclaim reliance on evidence of actual hours worked beyond those reflected in the employer's own payroll records and as leveled-down to the statutory minimum hours-to-be credited requirement").

Eight days after this Court granted Rule 23 class certification, the Court of Appeals decided *Andryeyeva v. N.Y. Health Care, Inc.*, 33 N.Y.3d 152 (2019), upholding the "[New York] DOL's interpretation of the Wage Order" at issue and instructing the HHW's can be paid 13 hours if they are given appropriate meal and sleep breaks.  *Id*. at 182 ("In other words, when the employee is able to take the prescribed eight hours of sleep and three hours of meal breaks,

---

[4] *See also, e.g.*, Dkt. 238 (court order granting supplemental FLSA class notice and ordering Defendants to compile a supplemental FLSA Notice List of HHWs "who worked more than 40 hours per week in any workweek from January 1 to October 13, 2015, *when they are given credit for 13 hours of work per 24-hour shift*. . . .") (emphasis added).

the home health care aide is paid for working the remaining time of the 24-hour shift—13 hours.") (citing NYDOL).

Plaintiffs subsequently and abruptly changed course, waved their magic wand "presto-chango" yet again and, in their summary judgment briefing, urged this Court to ignore what they had previously asserted on the record and in oral argument multiple times.  Plaintiffs engaged in what can only be described as "legal gymnastics," and argued that when they indicated they were seeking the "minimum" hours, they did not mean the 13-hour minimum required at law during different time periods, but rather the minimum amount Plaintiffs believed they were owed based on purported "facts" specific to Defendants.  *See generally* Dkt. 312-1 at 12-20 (arguing that Plaintiffs are entitled to pay for all 24 hours of each day).

Plaintiffs subsequently came up with a new theory that "regularly scheduled" breaks means that, as a matter of law, a company must schedule HHWs for a specific sleep time every night to deduct eight hours.  The Second Circuit has rejected this new theory.  *See Bonn-Wittingham v. Project O.H.R. (Office for Homecare Referral), Inc.*, 792 Fed. Appx. 71 (2d Cir. Nov. 25, 2019) (Summary Order).  The Second Circuit, similar to the New York Court of Appeals, made clear that the 13-hour rule was an affirmation of the New York Department of Labor's "interpretation of the Minimum Wage Act, which provided that home health care aides assigned to a twenty-four-hour shift must be paid not less than for thirteen hours per twenty-four hour period provided that they are afforded at least eight hours for sleep and actually receive five hours of uninterrupted sleep." *Id.* at 74 (citing *Andryeyeva*, 124 N.E.3d 162, 167) (internal quotations omitted).  Similar to the Second Circuit and the New York Court of Appeals, this Court rejected that such a determination could be made as a matter of law based on the facts present in an HHW class case like this one. *See, e.g.,* Dkt. 392 at 10-11, 22.  Regardless of how

Plaintiffs try to extricate themselves from their prior representations on the record, their clear and present position is that they want to ask the jury for compensation for hours above the 13-hour minimum and those claims cannot be litigated together under Rule 23 or 216(b) without violating Defendants' due process rights.  To determine whether a HHW should be compensated for 24 hours for a live-in shift requires an examination of the situation for each HHW, on each day, and whether they were afforded bona fide meal and sleeping breaks.

The MSJ Order is entirely consistent with the Court's ruling on the Motion to Dismiss and the *Andryeyeva* and *Bonn-Wittingham* decisions.  *See* Dkt. 392.  The Court ordered summary judgment in favor of Plaintiffs for the relevant time period to the extent "they rest on members of the FLSA collective being credited with 13 hours per live-in shift."  *Id.* at 11.  The Court issued similar rulings for the Connecticut and New York classes.  *See id.* at 16, 20.

Most importantly, the Court ruled that to the extent Plaintiffs' claims sought 24 hours per live-in shift, summary judgment was *denied* because *there were disputes of fact as to the individual HHWs*.  *See, e.g.*, Dkt. 392 at 10-11, 22 ("it is clear that a genuine issue of fact remains about the exclusion of hours under NYLL just as a genuine issue of fact remains for the exclusion of hours under the FLSA. . . .").  Similarly, the Court denied the parties' motions for summary judgment about how overtime was to be calculated and the regular rate because whether there was an understanding about the pay HHWs received and the terms of that understanding were disputes of fact.  *See* Dkt. 392 at 8 (analyzing the Caregiver Agreement, company handbook, verbal conversations, trainings, and other written documents and finding that "[e]xactly what documents and interactions even comprise the parties' agreement, whether it was express or implied, is a disputed question of fact.");  *see also id. at* 12-13, 17, 19-20, 25.  These individualized disputes of fact – the hours worked, ability to take meal and sleep breaks and the

understanding of what the day rate was intending to cover – are all individualized issues of fact that compel decertification.

## III. ARGUMENT

### A.    The Decertification Standard Under Rule 23 And FLSA

An order that "grants or denies class certification may be altered or amended before final judgment." Fed R. Civ. P. 23(c)(1)(C).  A district court that grants class certification "has the affirmative duty of monitoring its class decisions in light of the evidentiary development of the case." *Mazzei v. The Money Store*, 829 F.3d 260, 266 (2d Cir. 2016) (internal quotations omitted), *cert. denied sub nom.* 137 S. Ct. 1332 (2017); *see also* 3 Newberg on Class Actions 7:37 (citing *Boucher v. Syracuse University*, 164 F.3d 113, 118 (2d Cir. 1999) (courts are "required to reassess their class rulings as [a] case develops.")).  "The district judge must define, redefine, subclass and decertify as appropriate in response to the progression of the case." *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983).

Accordingly, in a decertification motion, a court is called upon to reevaluate – under the circumstances as they *now* exist – whether the case continues to qualify for Rule 23's special "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotations omitted).  At all times, from the moment of certification through trial, the case must satisfy Rule 23(a)'s "four requirements – numerosity, commonality, typicality and adequate representation" (*id.* at 349), as well as Rule 23(b)'s requirements, as applicable, of "predomination" and "superiority."

Particularly apt to this case, a decertification review is warranted when concerns are raised about Plaintiffs' practical ability to present a class case *at trial*.  Rule 23 is not satisfied by

a mere inchoate theory that class-wide liability and damages may be provable to a jury. Rule 23 requires Plaintiffs to show that liability and damages are "**capable of proof _at trial_** through evidence that [is] common to the class rather than to its members." *Comcast Corp. v. Behrend*, 569 U.S. 27, 30 (2013) (emphasis added internal quotations omitted) (decertifying class where plaintiffs' damages extrapolation model was infeasible as trial proof); *see also Espenscheid v. DirectSat USA LLC*, 705 F.3d 770, 773 (7th Cir. 2013) (affirming decertification "when it became apparent that the trial plan submitted by Plaintiffs was infeasible"). In a decertification motion, the court "may consider the nature and range of proof necessary to establish the class-wide allegations" before a jury. *Cruz v. Dollar Tree Stores, Inc.*, Case Nos. 07-2050 SC; 07-4102 SC, 2011 U.S. Dist. LEXIS 73938, at *10, 12 (N.D. Cal. July 8, 2011) (decertifying overtime misclassification case because: "it has become clear to the Court that the crux of Plaintiffs' proof at trial will be representative testimony from a handful of class members"); *Marlo v. UPS*, 251 F.R.D. 476, 480 (C.D. Cal. 2008) (decertifying class where "Plaintiff's counsel have not adequately explained how they intend to try this case….."), *aff'd* 639 F.3d 942 (9th Cir. 2011).

A plaintiff opposing decertification "retain[s] the burden to demonstrate" the appropriateness of class treatment. *Mazzei*, 829 F.3d at 270. "[C]ertification is proper only if the trial court is satisfied, *after a rigorous analysis*, that the prerequisites of Rule 23[] have been satisfied." *Comcast*, 569 U.S. at 33 (2013) (internal quotations marks omitted). The use of class adjudication "to mask the prevalence of individual issues . . . is an impermissible affront to defendants' due process rights." *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 232 (2d Cir. 2008). Moreover, "[b]ecause the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right,' 28 U.S.C. § 2072(b) . . . a class cannot be certified on

the premise that [defendant] will not be entitled to litigate its statutory defenses to individual claims." *Dukes*, 564 U.S. at 367 (internal citations omitted).

With respect to the FLSA collective, Defendants initially consented to a Court-authorized Notice.  At this stage of the 29 U.S.C. § 216(b) FLSA collective, however, Plaintiffs must satisfy a high evidentiary hurdle.  They cannot meet their burden considering their current claim for more than the statutory minimum of thirteen hours of compensation per shift and assertion that Plaintiffs did not have an agreement with Defendants about what their day rate was intended to cover.  Given the Plaintiffs' current positions, the Plaintiffs are no longer similarly situated to any other member of the collective and it must be decertified so that the Plaintiffs' cases can be tried individually.  It is the Court's obligation to determine whether the opt-in Plaintiffs "are in fact 'similarly situated' to the named plaintiffs."  *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010); *see also Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 539 (2d Cir. 2016) (vacating lower court's FLSA conditional certification order, noting interns' work experiences "differed substantially across the many departments and four Fox divisions"); *Scott v. Chipotle Mexican Grill, Inc.*, Nos. 17-2208-cv, 18-359-cv, 2020 U.S. App. LEXIS 10185 (2d Cir. Apr. 1, 2020).

**B.      Because Plaintiffs Seek More than Thirteen Hours per Shift for All Classes and the FLSA Collective, the Classes and Collective Should Be Decertified**

### 1.   *The Law and Live-In Home Health Workers*

Every federal court, without exception, has denied class certification in cases seeking overtime based on a 24-hour workday for live-in HHWs.  *See, e.g.*, *Severin*, 2012 U.S. Dist. LEXIS 85705, at *33-34 (predominance not satisfied because of individualized nature of inquiry into meal and sleep habits); *Shillingford*, 293 F. Supp. 3d at 417-18 (same); *Rodriguez de Carrasco*, 2017 U.S. Dist. LEXIS 206682, at *23 (same).  Class certification on 24-hour claims

are consistently denied, "[b]ecause an aide must be paid for the full 24 hours only if she does not receive appropriate meal and sleep breaks, 'individualized and not common questions predominate,' and 'class action is not the superior method of adjudication.'" *Downie*, 2018 U.S. Dist. LEXIS 125184, at *24 (internal citations omitted).

For example, in one HHW case, Judge Pauley denied class certification on the 24-hour claims for lack of predominance. *See Heredia v. Americare, Inc.*, 17cv6219, 2018 U.S. Dist. LEXIS 86918, at *10 (S.D.N.Y. May 23, 2018). Specifically, the *Heredia* court found that "[w]hether a 24-hour shift consists of 13 hours or 24 hours is integral to whether [Defendant] properly paid the overtime rate or minimum wage. And that analysis turns on whether an employee received eight hours of sleep per night (as long as five of those hours were uninterrupted) and three hours of meal breaks." *Id.* Such an analysis "requires a tailored review of each Plaintiff's meal breaks and hours slept, varying down to the particular shift." *Id.* (holding that the 24-hour claims failed to satisfy predominance); *see also Rodriguez de Carrasco*, 2017 U.S. Dist. LEXIS 206682, at *23 ("[A]n employee should only be paid twenty-four hours if she, in fact, is not receiving the appropriate meal and sleep breaks. *As a result, individualized and not common questions predominate*—and thus, class action is not the superior method of adjudication for the 24-Hour Claims.") (emphasis added).

For Plaintiffs to prevail, they will need to prove, in each individualized home in which care was provided, that the HHW did not receive a bona fide meal break or the ability to sleep for eight hours. Each HHW must testify to their individualized and unique situation that they confront each week (and each day) they worked as a live-in HHW for Defendants. It would be impossible for Plaintiffs to present such required evidence on behalf of all members of the classes and collective in a single trial.

2. *Plaintiffs' Arguments at Summary Judgment and the Court's Findings in its MSJ Order*

Plaintiffs asked this Court to grant summary judgment that all live-in HHWs were, as a matter of law, entitled to twenty-four (24) hours of compensation for each day worked. This Court rejected that application and rightly acknowledged the highly individualized issues of fact surrounding whether the HHW was given sleep and meal breaks. Specifically, this Court—relying on *individualized* deposition testimony from class members—found disputes of fact as to whether particular HHWs received bona-fide sleep and meal breaks. *See* Dkt. 392 at 8. The Court reviewed just two examples: Plaintiff Kinkead and Plaintiff Morant. *See id.* at 10. The obvious disputes of fact as to just <u>two people</u> are indicative of the individualized testimony the Court will receive at trial from every single Plaintiff and class member who ever worked a live-in shift. Even Plaintiffs highlighted the individualized evidence in their briefing. *See* Dkt. 392 at 10 (citing Plaintiffs' identification of "testimony from other opt-in plaintiffs" in an attempt to demonstrate that the meal breaks were not bona fide).

In light of these highly individualized disputes of fact, this Court denied summary judgment on the 24-hour claims. In short, "there are unresolved issues regarding whether the sleep and meal periods at issue here are bona fide and regularly scheduled" and "[d]isputed factual issues thus preclude [the Court] from granting summary judgment to plaintiffs on their claim that members of the FLSA collective are entitled to be credited with 24 hours per live-in shift." *See* Dkt. 392 at 10.

3. *The Individualized Nature of the Sleep and Meal Break Issues in this Case*

Individualized issues that involve disputes of fact doom Plaintiffs' class claims if Plaintiffs are going to ask a jury for compensation beyond the thirteen-hour statutory minimum. *See, e.g.*, *Downie*, 2018 U.S. Dist. LEXIS 125184, at *24. Determining whether "the needs of

some [live-in] patients allow[ed] for regularly scheduled work-free uninterrupted periods to sleep and eat" (*Andryeyeva*, 33 N.Y.3d at 179) is entirely case-by-case. Even the Plaintiffs concede that the HHW experiences with live-in cases "wildly" varied. *See* Dkt. 322 at 29 (noting the "wildly different experiences" of two different HHWs). For every HHW in the certified classes, to determine whether they have a viable overtime claim, a jury must hear testimony from that specific HHW regarding their meal and sleep habits. "Whether or not a home attendant actually received eight hours of sleep time and five hours of continuous sleep is an inherently fact-specific inquiry that is likely to hinge heavily on the characteristics of particular clients to whom sleep-in home attendants were assigned." *Severin*, 2012 U.S. Dist. LEXIS 85705, at *33.

For example, if an HHW worked two live-in shifts in a week, that HHW would not have an overtime claim if they received sleep and meal breaks on even one of the two days that week. Conversely, if in the second week of work, the HHW did *not* get meal or sleeping breaks, that individual HHW could argue that they "worked" for 24 hours each day and make an individual claim for 8 hours of overtime. *See, e.g.*, *Shillingford*, 293 F. Supp. 3d at 418 ("A liability determination also depends, to an extent, on the number of breaks an aide received and for how long. These questions cannot be answered by the documents before the Court."). As discussed in *Andryeyeva*, the NYDOL's view that an employee could deduct for bona fide meal and sleep breaks was set forth in a series of opinion letters spanning decades and reflected the Department's effort to balance worker rights and "the difficulty of defining hours worked for employees who are on call around-the-clock and the hardship imposed at setting a work day at 24 hours." *Andryeyeva*, 33 N.Y.3d at 177-78. Indeed, in 1995, the NYSDOL, in articulating the 13-hour rule, explained that it "does not consider it feasible to record actual hours of work under these circumstances." Golder Dec, Ex. D (N.Y.S.D.O.L. Op. Ltr. [July 14, 2005]). Two years

later, the Industrial Board of Appeals (the NYSDOL's adjudicative arm), held hearings and identified "the almost limitless array of circumstances" presented in the testimony of sleep-in home attendants. *See* Golder Dec. Ex. E (*Matter of Settlement Servs. et al.*, No. PR-32-83 [N.Y. Ind. Bd. App. May 28, 1997].

As this Court found, Plaintiffs disputed whether Plaintiff Kinkead received any bona fide breaks. *See* Dkt. 392 at 10. Accordingly, even for the same HHW, the facts vary and are in dispute as to whether the HHW received a bona fide sleep break. This Court also found that a similar dispute of fact infected whether HHW's took a meal break. *See* Dkt. 392 at 10 (noting that Defendants presented evidence that Morant received three hours of meal breaks, and Plaintiffs presented testimony from "other opt-in plaintiffs").

The disputes of fact identified by this Court in its MSJ Order are compounded on a class and collective basis. There are approximately 250 FLSA collective members, dozens of Connecticut class members and hundreds of New York class members, all of whom worked live-in shifts under unique circumstances. A comparison of the two original Named Plaintiffs for each class provides a good example of the individualized inquiry required to determine whether each HHW received a bona fide sleep break. Plaintiff Kinkead admitted that she was able to get eight hours of sleep during 70% of her shifts. *See* Kinkead Dep. at 32:14-19, attached as Ex. F. In stark contrast to Kinkead, Mathieu claims she was awoken by her client constantly ("every night") and was never able to get eight or even five hours of sleep each night because the client was constantly "up and down." *See* Mathieu Dep. at 34:3-25, 51:3-23, 90:19-91:6, attached as Ex. G.[5] However, as Plaintiff Mathieu readily admits "every case is different . . . very much so."

---

[5] Notably, Named Plaintiff Mathieu testified that she purposely withheld this information from Humana to avoid a modification of her live-in case. *See* Mathieu Dep., at 91:9-19. This issue, too, is individualized. *See Babineau v. Fed. Express Corp.*, 576 F.3d 1183 (11th Cir. 2009) (affirming denial of class certification of claim for unpaid meal breaks and remarking one Plaintiff's testimony that he at times reported work during and was paid for meal break time).

*Id.* at 115:23-116:4.  Thus, the amount of sleep varies for every case based on each client's needs. *See id.* at 183:16-19.

A similar individualized inquiry is necessary to determine whether HHWs receive meal breaks.  Plaintiff Kinkead claims she was "sometimes" able to take three hours for breaks each day.  *See* Kinkead Dep. at 76:1-3.  Plaintiff Mathieu claims she very rarely had any free time because the client she serviced could not be left alone. Mathieu Dep. at 62:17-63:14, 66:11-14.  Morant, by contrast, testified that she received three hours per day for meals.  *See* Morant Dep. at 36:22-24, attached as Ex. H.

Plaintiffs, like all live-in HHWs, not just those who were employed by Defendants, work in highly unique job settings that result in individualized issues of work schedules, needs and hours.  This reality, given their role of caring for human beings in their homes, no two of which are the same, is obvious.  Each client has a unique plan of care based on his or her individual needs, each home is different and the needs of each client is unlike any others, which establishes that what the HHW does for the client is diverse and client-driven and client-specific.  *See, e.g.*, Morant Dep. at 56:2-16; Keller Dep. at 82:1-12, attached as Ex. I; Shaw Dep. at 48:10-12, attached as Ex. J.  Accordingly, the job duties and schedule of each HHW depend upon the individual client's needs, and therefore varies.  *See* Allen Dep. at 136:14-21 (Ex. K); Keller Dep. at 27:8-16; Shaw Dep. at 20:9-19, 82:9-11.  (*See also* Defendants' Opp. to Rule 23 Class Cert. (Dkt. 234, at 17-30)).

Defendants have individualized defenses to each HHW who claim that he or she is entitled to compensation beyond 13 hours in a day.  *See Dukes*, 564 U.S. at 367 ("Because the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge, or modify any substantive right,' 28 U.S.C. § 2702(b); *see Ortiz*, 527 U.S., at 845, 119 S. Ct. 2295, a class cannot be

certified on the premise that Wal-Mart will not be entitled to litigate its statutory defenses to individual claims."). Consequently, the 24-hour classes fail under Rule 23 as to typicality, commonality, and predominance. Similarly, the FLSA collective fails to the extent Plaintiffs seek 24 hours of uncompensated time.

### 4. Plaintiffs' Classes and FLSA Collective Should Be Decertified as to the "Agreement" Regarding Pay Rates for Each HHW

Plaintiffs argue for an inequitable windfall by claiming that they should be compensated for twenty-four hours per day while they assert the Caregiver Agreement intended that the compensation they received was only intended to be for 8 hours. *See* Dkt. 392 at 12 (citing *Powell v. Carey Int'l, Inc.*, 514 F. Supp. 2d 1302, 1318 (S.D. Fla. 2007)).[6] As this Court noted, Plaintiffs fail to explain or justify their inconsistent position where Plaintiffs can calculate hours worked at the maximum level of 24 hours but then calculate hours paid at only 8 hours for purposes of the regular rate. *See id.*; *see also Powell,* 514 F. Supp. 2d at 1318 ("This result would not only be inequitable, but also inconsistent with the terms of § 778.109, which refers the reader to § 778.112 for an example of the 'proper method of determining the regular rate of pay in particular instances.'"). An HHW "may have been paid the proper minimum wage for 24-hour shifts if each shift counted as 13 hours, but her pay would fall below minimum wage if that shift were counted as 24 hours." *Heredia*, 2018 U.S. Dist. LEXIS 86918, at *7-8 (citations omitted).

In any event, the Court found that the conflicting evidence of Defendants' agreement with each HHW established a "genuine issue of fact about whether live-in workers were paid an hourly rate or paid a day rate." *See* Dkt. 392 at 8, 13. This Court reached that conclusion by

---

[6] Defendants continue to submit that the written Caregiver Agreement establishes that live-in HHWs were paid a day rate that was intended to compensate them for all hours worked. Alternatively, the implied agreement between Defendants and the HHWs is that the HHWs were paid a day rate.

analyzing the Caregiver Agreement, company handbook, verbal conversations HHWs had with Defendants, trainings, and other written documents and finding that "[e]xactly what documents and interactions even comprise the parties' agreement, whether it was express or implied, is a disputed question of fact." *See* Dkt. 392 at 8; *see also id. at* 12-13, 17, 19-20, 25.

The disputes of fact found by the Court in its MSJ Order are systematic throughout the classes and collective. The record demonstrates that these various aspects of each HHW's agreement about what their pay was intended to compensate, whether express or implied, varies from person to person. To resolve the disputed question of fact regarding each HHW's agreement, "whether it was express or implied," the fact finder would have to hear and analyze the verbal conversations HHWs had with Defendants, trainings, interactions, and other written documents. *See* Dkt. 392 at 8. For every single HHW, this analysis would include, but not be limited to, which versions of the Caregiver Agreement were in place during each HHW's employment, trainings that HHWs attended, conversations HHWs had with supervisors, conversations HHWs had with other individuals employed by Defendants, other written documents that might have clarified or modified the agreement. *See e.g.*, Mathieu Dep. at 167:16-168:12 (acknowledging that she asked Humana about her live-in compensation and was told during orientation that she would be paid a certain amount for live-in shifts); Caillo Dep. at 39:19-40:18, attached as Ex. L (acknowledging that she was told by a supervisor that Humana pays a day rate for live-in shifts), 48:10-50:3 (same). Plaintiff Kinkead contends she was paid for ten hours of work during each live-in shift, and that ten hours was the "typical" number of hours she worked. *See* Kinkead Dep. at 21:24-22:11, 85:25-86:2. Plaintiff Morant believed she was told she was supposed to work and get paid for thirteen hours per day. *See* Morant Dep. at 29:11-14, 33:22-24.

These disputes of fact, applicable to each individual in the class and collective, lead to the inevitable conclusion that Plaintiffs' claims cannot be adjudicated without an individualized analysis of each HHW's "agreement" with Defendants. *See* Dkt. 392 at 8 (citing *Salazar v. Life Ambulance Serv., Inc.*, Civil Action No. EP-99-CA-361-EP, 2001 WL 685755, at \*3-5 (W.D. Tex. 2001); *Shannon v. Pleasant Valley Cmty. Living Arrangements, Inc.*, 82 F. Supp. 2d 426, 432-33 (W.D. Pa. 2000); *Trocheck v. Pellin Emer. Medical Service. Inc.*, 61 F. Supp. 2d 685, 694 (N.D. Ohio 1999)).  These are not merely remedies issues; these issues can impact the merits as well for certain HHWs depending on what their "agreement" was and how many hours they worked.

As the Court correctly found in its MSJ Order, the regular rate calculation issue is further complicated by the same individualized questions regarding whether an HHW's meal and sleep breaks were bona fide.  *See* Dkt. 392 at 8 (finding that "a further factual consideration is whether the meal and sleep periods were 'bona fide' and whether the sleep periods were 'regularly scheduled' as required under section 785.22"); *see also, e.g.*, *Heredia*, 2018 U.S. Dist. LEXIS 86918, at \*7-8 (citations omitted).

The relevant federal regulations at issue specifically articulate that the agreement regarding sleep and meal breaks can be "express or implied."  29 C.F.R. § 785.22(a).  "An implied agreement to deduct sleep time from an employee's compensation clearly exists if the affected employee does not assert any verbal or written protest to the application of the exemption within a reasonable period of time."  *Trocheck*, 61 F. Supp. 2d at 693 (citations omitted).  In the instant case, "the existence an implied agreement" regarding sleep and meal breaks in the instant case would be "proved not only by what [the HHWs] did not do -- complain about [Defendants'] policies -- but by what [the HHWs] did do -- cash [their] paychecks and

continue to work for [Defendants]." *Id.* at 693-94 (citing *Johnson v. City of Columbia, S.C.*, 949 F.2d 127, 131 (4th Cir. 1991) ("If the employee contemporaneously protested, the courts have found that there was no implied agreement between the parties. However, if the employee did not protest and continued to work and receive paychecks, the courts have found that an implied agreement did arise between the parties") (other citations omitted).  In other words, considering the Court's MSJ Order, the analysis to determine the contours of the agreement for each HHW will be individualized.

Consequently, the classes fail under Rule 23 as to typicality, commonality, and predominance, because Plaintiffs' current class theory requires examination of the individualized dispute of fact as to the "agreement" between Defendants and each HHW.  *See, e.g., Dukes*, 564 U.S. at 367.  Similarly, the FLSA collective fails to the extent Plaintiffs seek 24 hours of uncompensated time.

### 5.   *Additionally, Individualized Damages Theories Require Decertification*

The pervasive individualized issues not only infect the merits, but also preclude a finding of damages common to the class, which further warrants class and collective decertification. "[W]henever damages calculations require significant degrees of individualized proof, defendants are entitled to respond to and address such variances—in fact, due process *requires* it." *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 592 (S.D.N.Y. 2013) (emphasis added) (citing *Dukes* and *Comcast*), *aff'd*, 602 F. App'x 3 (2d Cir. 2015); *see also Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) ("A defendant in a class action has a due process right to raise individual challenges and defenses to claims, and a class action cannot be certified in a way that eviscerates this right or masks individual issues.") (citing *McLaughlin*, 522 F.3d at 231).

Even where a court determines that the underlying liability question is susceptible to proof through common evidence, and that, as such, common issues predominate, damages claims should be decertified if they are not similarly subject to proof through common evidence. *See Jacob*, 293 F.R.D. at 592, 595 (partially decertifying class and requiring plaintiffs, if successful on their class merits claims, to proceed individually as to damages); *Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, 659 (S.D.N.Y. 2013) (certifying as to liability only); *cf. Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (recognizing that "'*damages may have to be ascertained on an individual basis*'" even if a class is certified as to liability) (emphasis added) (*quoting Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010)); *see also* Fed. R. Civ. P. 23(c)(4) ("When appropriate, an action may be brought or maintained as a class action with respect to particular issues."); Fed. R. Civ. P. 23 advisory committee's note (1966 Amendment, subdivisions (b)(3) and (c)(4)) (contemplating need in a class action for a "separate determination of the damages suffered by individuals within the class" and noting that "the members of the class may . . . be required to come in individually and prove the amounts of their respective claims").

As a result of the Court's findings of issues of fact, Plaintiffs' damages claims cannot be appropriately decided without significant individualized proof.  Specifically, with the class claims as currently framed, whether a live-in HHW can prove compensable time beyond the 13-hour minimum and the appropriate regular rate of pay, will depend on "unresolved factual issues" regarding the sleep and meal periods that differ as to each HHW for each week.  *See* Dkt. 392 at 9, 10.  Similarly, determining whether there was an agreement between each HHW about what the pay rate was intended to cover significantly impacts the damages of an HHW's claim where the HHW worked overtime but it is unclear the amount of hours to be calculated and the method

for doing so (*e.g.*, an HHW who worked five live-in shifts in a week).  *See Heredia*, 2018 U.S. Dist. LEXIS 86918, at *10; *Shillingford*, 293 F. Supp. 3d at 418.  Thus, decertification also is required due to the individualized damages issues.

### C.     This Court Should Also Decertify The FLSA Collective

Although the Rule 23 and 216(b) standards differ, this Court should decertify the FLSA collective for substantially the same reasons that compel Rule 23 decertification.  *See Glatt*, 811 F.3d at 540 ("for substantially the same reasons as with respect to [Plaintiff's] Rule 23 motion, we vacate the district court's order conditionally certifying [Plaintiff's] proposed nationwide collective action"); *see also Cowell v. Utopia Home Care, Inc.*, No. 14-CV-736 (LDW)(SIL), 2016 U.S. Dist. LEXIS 104495, at *17-18 (E.D.N.Y. Aug. 8, 2016) (citing *Severin* and denying FLSA conditional certification under pre-Final Rule version of companionship exemption "because  . . . the determination of whether Plaintiff was exempt requires consideration of a fact-intensive analysis of factors such as what tasks she performed, for how long, and how it related, or did not relate, to the individual and unique medical needs of her patient").

Plaintiffs' 24-hour and individualized rate agreement claims involve disputes of fact that are akin to an "off-the-clock" case for which courts in the Second Circuit deny _conditional_ FLSA certification under the lenient first-stage standard.  *See, e.g.*,  *Eng-Hatcher v. Sprint Nextel Corp.*, No. 07-Civ.-7350(BSJ), 2009 U.S. Dist. LEXIS 127262, at *17 (S.D.N.Y. Nov. 13, 2009) (noting that plaintiff's identification of others who she claimed were subjected to the same violation "may be a sufficient showing when the potential class is made up of individuals who worked in the same location, during the same general period, under essentially the same management . . . but fails to meet the modest factual showing required by the courts when plaintiff attempts to impute her own limited experience to a nationwide class"); *Diaz v. Elects.*

*Boutique of Am., Inc.*, No. 04-CV-0840E(Sr), 2005 U.S. Dist. LEXIS 30382, at *16-18 (W.D.N.Y. Oct. 17, 2005) (finding that the plaintiff's allegations "that he worked 'off-the-clock' without compensation and that his timesheets were altered to delete overtime hours worked – are too individualized to warrant collective action treatment").

Courts deny FLSA *conditional* certification in cases with employees who work without supervision and claim compensation for breaks, such as meal breaks. *See, e.g.*, *Dudley v. Texas Waste Systems, Inc.*, No. SA-05-CA-0078-XR, 2005 U.S. Dist. LEXIS 9168, at *3-8 (W.D. Tex. May 16, 2008) (denying conditional certification of plaintiff's off-the-clock lunch break case, noting:  "Any analysis of lunch breaks will result in this court and any jury hearing individual testimony regarding whether drivers regularly took lunch breaks, or only occasionally.").  The putative collective in *Dudley* was comprised of drivers who were on the road, away from their employer's place of business, and who were responsible for ensuring that they took their breaks. *See id.* at *2-3.  The same is true in this case.  HHWs work without direct supervision and are responsible for ensuring that they take their meal and sleep breaks.

In cases in the Second Circuit where Plaintiffs obtain FLSA conditional certification under the lenient standard, those same courts often grant motions for decertification under the higher second-stage standard.  *See, e.g., DeSilva v. N. Shore-Long Island Jewish Health Sytem*, 27 F. Supp. 3d 313 (E.D.N.Y. 2014) (granting decertification of collective and denying certification of Rule 23 class where employer's "potential defenses" to off-the-clock claims of opt-in Plaintiffs would be "highly fact specific" and to permit collective trial would require court to "hold, in effect, 1,196 mini-trials, or deprivi[e] Defendants of their due process right to present its full defense"); *Thind v. Healthfirst Mgmt. Servs.*, LLC, No. 14-cv-9539, 2016 WL 7187627, at *3 (S.D.N.Y. Dec. 9, 2016) (decertifying FLSA collective of plaintiffs where some were

expressly authorized to work off the clock while others were never directed to do so); *Zivali v. AT & T Mobility, LLC*, 784 F. Supp. 2d 456, 467-8 (S.D.N.Y. 2011) (decertifying in part because the "knowledge of each individual manager varies widely," thus making the defenses highly individualized).

Thus, to the extent Plaintiffs seek any claims beyond 13 hours in a shift for a live-in shift under the FLSA, or damages based on an individual HHW's position with respect to the "agreement" Defendants had with such HHW, such claims warrant FLSA decertification.

### D.    In the Alternative (and Additionally), the Court Can Decertify the Classes and Collective By Applying Judicial Estoppel

"The doctrine of judicial estoppel . . . prevents a party from asserting a position inconsistent with one previously asserted in the litigation where the change would prejudice the other party." *Tenneco Chemicals, Inc. v. William T. Burnett & Co.*, 691 F.2d 658, 664 (4th Cir. 1982). Estoppel is an equitable doctrine invoked by the Court at its discretion, and this situation clearly meets the Second Circuit's requirements. "The purpose of judicial estoppel is not to look for, or punish, outright lies, but to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *In re Adelphia Recovery Trust*, 634 F.3d 678, 696 (2d Cir. 2011) (internal quotations omitted). In addition, this Court's holding regarding the "minimum" damages sought that eliminates potential individualized issues is the law of the case. *See*, *e.g.*, *Baden v. Koch*, 799 F.2d 825, 828 (2d Cir. 1986) ("We have repeatedly stated that we will not depart from the sound policy of the law of the case doctrine absent 'cogent' or 'compelling' reasons.").

Plaintiffs' class claims for 24-hours, as argued on summary judgment, are inconsistent with Plaintiffs' class claims as previously asserted in the litigation; they are irreconcilable. Because every other federal court to have addressed HHW compensation denied class

23

certification where the factual circumstances of an individual "live-in" case were at issue, Plaintiffs did a "presto-chango" sidestep of this individualized issue to convince this Court that they would not inject that individualized issue into their class theory.  *See* MSJ Oral Arg., Court Tr. at p. 6 (Nov. 20, 2019) (attached as Ex. C); *see also* Dkt. 293 at 5.  This Court adopted Plaintiffs' position.  *See id.*  Specifically, this Court accurately recounted that "[i]n light of this legal uncertainty [with the pending Court of Appeals argument], plaintiffs based their unpaid hours claim in the alternative on a 13-hour minimum."  Dkt. 293 at 5, 20, 25-27.  But Plaintiffs retracted what they said to this Court on the record multiple times and to Defendants during this litigation.  Plaintiffs perpetrated a deliberate bait and switch.

The *DeSilva* case cited infra is especially relevant to the instant matter.  In that case, the plaintiff health care workers argued at initial certification that they were challenging the Defendant health care system's meal break "auto deduct" policy as unlawful.  *See DeSilva*, 27 F. Supp. 3d 313, 319.  When the law shifted during the case to clarify that such a policy, on its face, is not unlawful, Plaintiffs urged that it was "not merely the 'auto-deduct' policy itself that violates the FLSA, but *Defendants' implementation of the automatic deduction policy*."  *Id.* at 321 (emphasis added).  The court noted that "Plaintiffs . . . pivoted from an 'auto-deduct' policy to an 'overtime approval' policy as the basis for their FLSA claim."  *Id.* at 322.  Based on that pivot, the court found that "it would be unfair and inefficient to allow Plaintiffs to change their legal theory *after* obtaining conditional certification, sending notice to potential class members, and conducting discovery based on that theory."  *Id.* at 322.

Finally, Plaintiffs' ever evolving and inconsistent representations contradict the equitable nature of wage law.  Although wage laws are remedial, "a fair reading . . . is what is called for. . . . [E]mployees' rights are not the only ones at issue and, in fact, are not always separate from and

at odds with their employers' interests." *See Sec'y United States DOL v. Bristol Excavating, Inc.*, 935 F.3d 122, 135 (3d Cir. 2019) (quoting *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018)).   The New York Department of Labor recognized the important principle of fairness when it issued Emergency Regulations to make clear that sleep and mealtimes could be deducted from a home health aide's live-in shift, echoing its longstanding position expressed in opinion letters and its own adjudicative conclusion that each case is different and the 13-hour rule properly reflected that variation.   *See Andryeyeva*, 124 N.Y.3d at 172.   Specifically, the NYSDOL announced that the emergency regulation was necessary "to preserve the status quo, prevent the collapse of the home care industry, and avoid institutionalizing patients who could be cared for at home." *Id.* at 172-173 (quotations omitted) (quoting N.Y. Reg, Oct. 25, 2017). Plaintiffs' alleged remedy here should be proportional to the alleged wrong and should not seek a disproportionate result that could lead to disruption in important live-in services provided by the home care industry.   Plaintiffs continue to make improper litigation pivots in an attempt to seek an unfair class windfall.   For these equitable reasons, this Court should decertify the class claims here.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' state-law classes should be decertified under Fed. R.

Civ. P. 23 and FLSA collective should be decertified under Rule 216(b).

Respectfully submitted,

DEFENDANTS,
HUMANA, INC., HUMANA AT
HOME, INC., AND SENIORBRIDGE FAMILY
COMPANIES (CT), INC.

By:     /s/ *David R. Golder*_____
David R. Golder (ct 27941)
goldered@jacksonlewis.com
Noel Tripp (pro hac vice)
trippn@jacksonlewis.com
Jackson Lewis P.C.
90 State House Square, 8th Floor
Hartford, CT 06103
P: (860) 522-0404
F: (860) 247-1330

## <u>CERTIFICATION OF SERVICE</u>

The undersigned hereby certifies that, on April 10, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties of record by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

*/s/ David R. Golder*
David R. Golder