# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **DAVERLYNN KINKEAD, SHIRLEY CAILLO,** and **CLAUDE MATHIEU, Individually and** on behalf of others similarly situated,<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**HUMANA, INC., HUMANA AT HOME, INC.,** and **SENIORBRIDGE FAMILY COMPANIES (CT), INC.**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)   **Case No.: 3:15-cv-01637(JAM)**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASSES AND FINAL APPROVAL OF THE CLASS AND COLLECTIVE ACTION SETTLEMENT

Artemio Guerra, Esq. (Admitted PHV)
Michael J.D. Sweeney, Esq. (Admitted PHV)
GETMAN, SWEENEY & DUNN PLLC
260 Fair Street
Kingston, NY 12401
phone: (845)-255-9370
fax: (845)-255-8649
E-mail: aguerra@getmansweeney.com

Philip Bohrer, Esq. (Admitted PHV)
BOHRER BRADY LLC
8712 Jefferson Highway, Ste. B
Baton Rouge, LA 70809
phone: (225)-925-5297
fax: (225)-231-7000
E-mail: Phil@bohrerbrady.com

Attorneys for Plaintiffs and the Settlement Classes

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

CASE HISTORY AND EVENTS SINCE PRELIMINARY APPROVAL ................................... 2

I.    Preliminary Approval, Notice, and Claims Process ........................................ 2

II.   Results of Notice ............................................................................................ 4

I.    THE FINAL RULE 23 APPROVAL STANDARD ............................................. 5

II.   The Notice and Claims Process Satisfied Rule 23(c) and Due Process .......... 8

III.  The Class Is Properly Certified ...................................................................... 8

IV.   The Settlement Is Fair, Reasonable, and Just, and Deserves Final Approval. ... 9

V.    APPLICATION OF THE *GRINNELL* FACTORS ........................................... 9

      A.   *Grinnell* Factor 1: Complexity, Expense, and Likely Duration of
           Litigation ............................................................................................ 9

      B.   *Grinnell* Factor 2: Reaction of the Class .......................................... 11

      C.   *Grinnell* Factor 3: Stage of the Proceedings ................................... 12

      D.   *Grinnell* Factors 4 and 5: Risks of Establishing Liability and Damages ... 13

      E.   *Grinnell* Factor 6: Risks of Maintaining the Class Action Through the
           Trial .................................................................................................. 15

      F.   *Grinnell* Factor 7: Ability of Defendant to Withstand a Greater Judgment ... 15

      G.   *Grinnell* Factors 8 and 9: Range of Reasonableness of the Settlement
           Fund in Light of the Best Possible Recovery and In Light of All the
           Attendant Risks of Litigation ........................................................... 16

           1.   The Gross Settlement Amount Is Fair and Reasonable ............... 17

           2.   The Individual Settlement Awards Are Fair and Reasonable ...... 18

           3.   The Claims Process Was Fair and Reasonable .......................... 19

           4.    The Service Awards Are Fair and Reasonable ......................... 20

           5.   The Attorneys' Fees and Costs Are Fair and Reasonable .......... 20

           6.   The Claim Administrator's Fee Is Reasonable ......................... 21

           7.   The Release Is Fair and Reasonable ........................................ 21

VI.   FLSA SETTLEMENT STANDARD ................................................................ 23

VII.  CY PRES AND THE RESERVE FUND ......................................................... 24

CONCLUSION .................................................................................................................. 24

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acevedo v. Workfit Med. LLC*,
No. 6:14 Civ. 06221 (EAW), 2016 WL 2962930 (W.D.N.Y. May 20, 2016) .......................20

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997)...............................................................................................................8

*Aros v. United Rentals, Inc.*,
No. 3:10-CV-73 JCH, 2012 WL 3060470 (D. Conn. July 26, 2012) ....................................20

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche
Bank*, 236 F.3d 78 (2d Cir. 2001) ..................................................................................15, 16

*Bazile v. Asset Protection Group, LLC*,
18-CV-6820 (DLI) (SJB), 2019 WL 7985168 (E.D. N.Y. Nov. 27, 2019) ...........................22

*Bodon v. Domino's Pizza, LLC*,
09-CV-2941 (SLT), 2015 WL 588656 (E.D.N.Y. Jan. 16, 2015), *report and
recommendation adopted sub nom. Bodon v. Domino's Pizza, Inc.*, 09-CV-
2941, 2015 WL 588680 (E.D.N.Y. Feb. 11, 2015)..............................................................17

*Bondi v. DeFalco*,
17-CV-5681 (KMK), 2020 WL 2476006 (S.D.N.Y. May 13, 2020) ....................................23

*Charron v. Pinnacle Group N.Y. LLC*,
874 F. Supp. 2d 179 (S.D.N.Y. 2012), *aff'd sub. nom. Charron v. Wiener*, 731
F.3d 241 (2d Cir. 2013)........................................................................................................12

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)........................................................................................ *passim*

*City of Providence v. Aeropostale, Inc.*,
No. 11-CV-7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ............................................11

*Clark v. Ecolab, Inc.*,
04 CIV. 4488 (PAC), 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009)......................................6

*Corte v. Fig & Olive Founders LLC*,
No. 14-cv-7186(KPF), 2015 WL 12591677 (S.D.N.Y. June 24, 2015) ..................................7

*Edwards v. N. Am. Power & Gas*,
LLC, 3:14-CV-01714, 2018 WL 3715273 (D. Conn. Aug. 3, 2018) ............................7, 9, 12

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005)............................................................................17

*Green v Humana At Home, Inc.*,
No. 16-cv-7586 (S.D.N.Y.)........................................................................................1

*Hall v. Pro Source Tech., LLC*,
14-CV-2502 (SIL), *2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016)* ...........................13

*Henry v. Little Mint, Inc.*,
No. 12-cv-3996, 2014 WL 2199427 (S.D.N.Y. May 23, 2014) ................................24

*Hernandez v. Immortal Rise, Inc.*,
306 F.R.D. 91 (E.D.N.Y. 2015) ...............................................................................20

*In re Initial Pub. Offering Sec. Litig.*,
671 F.Supp.2d 467 (S.D.N.Y. 2009)........................................................................16

*Kemp-DeLisser v. St. Francis Hosp. and Med. Ctr.*,
15-CV-1113 (VAB), 2016 WL 6542707 (D. Conn. Nov. 3, 2016)...............11, 17, 21

*Kiefer v. Moran Foods, LLC*,
12-CV-756 WGY, 2014 WL 3882504 (D. Conn. Aug. 5, 2014) ...........6, 13, 15, 24

*Lopez v. Nights of Cabiria, LLC*,
96 F.Supp.3d 170 (S.D.N.Y. 2015) .........................................................................22

*Macaluso v. JZJ Servs., LLC*,
20-CV-1407 (RA), 2020 WL 6647517 (S.D.N.Y. Nov. 12, 2020) ...........................23

*Macedonia Church v. Lancaster Hotel, LP*,
05-0153 TLM, 2011 WL 2360138 (D. Conn. June 9, 2011)........................7, 12, 15

*Maley v. Del Global Tech Corp.*,
186 F.Supp.2d 358 (S.D.N.Y. 2002)........................................................................19

*Maywalt v. Parker & Parsley Petroleum Co.*,
67 F.3d 1072 (2d Cir. 1998).......................................................................................6

*McArthur v. Edge Fitness*,
LLC, 3:17 CV 1554, 2019 WL 718540 (D. Conn. Feb. 20, 2019) ...................6, 7, 13

*In re Med. X-Ray Film Antitrust Litig.*,
CV-93-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) .......................................13

*O'Connor v. AR Resources, Inc.*,
3:08CV1703 VLB, 2012 WL 12743 (D. Conn. Jan. 4, 2012) ..................................7

*In re PaineWebber Ltd P'ships. Litig.*,
 171 F.R.D. 104 (S.D.N.Y. 1997) .......................................................................19

*In re Patriot Natl., Inc. Securities Litig.*,
 828 Fed. Appx. 760 (2d Cir. 2020).....................................................................9

*Pucciarelli v. Lakeview Cars, Inc.*,
 16-CV-4751 (RRM) (RER), 2017 WL 2778029 (E.D.N.Y. June 26, 2017) .........................23

*Ray v. 1650 Broadway Assocs. Inc.*,
 16-CV-9858 (VSB), 2020 WL 5796203 (S.D.N.Y. Sept. 29, 2020)......................................23

*Sanchez v. Kambousi Rest. Partners, LLC*,
 15CIV05880CMHBP, 2016 WL 11717105 (S.D.N.Y. Aug. 5, 2016) ..................................20

*Sherman v. Azar*,
 No. 3:15-cv-01468 (JAM) (D. Conn. Feb. 26, 2018) ...............................................7

*Siler v. Landry's Seafood House --North Carolina, Inc.*,
 13-CV-587 (RLE), *2014 WL 2945796 (S.D.N.Y. June 30, 2014)*...........................................13

*Strougo ex re. Brazilian Equity Fund, Inc. v. Bassini*,
 258 F.Supp.2d 254 (S.D.N.Y. 2003).....................................................................11

*Torres v. Gristede's Operating Corp.*,
 04-CV-3316 PAC, 2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) aff'd, 519
 Fed. Appx. 1 (2d Cir. 2013) ..............................................................................7

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005)...............................................................6, 13, 15, 17

*Wright v. Stern*,
 553 F. Supp. 2d 337 (S.D.N.Y. 2008).................................................................12

**Rules**

29 C.F.R. § 552.109 ...............................................................................................10

29 C.F.R. § 785.22 .................................................................................................14

Fed. R. Civ. P. 23 ..................................................................................... *passim*

**Statutes**

Class Action Fairness Act, 28 U.S.C. § 1715 .............................................................3

**Other Authorities**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §§ 13.1 (4th ed.
    2002) ...........................................................................................................................6

## INTRODUCTION

The Court granted preliminary approval of the Parties' Settlement Agreement on April 9, 2021. Doc. 426. Pursuant to F.R.C.P. 23(e) Plaintiffs now move for final approval of the Settlement. As set forth below and in the accompanying declarations, Notice to the Settlement Class was effectuated in accordance with the Court's preliminary approval order. Extensive efforts have been made to locate Settlement Class Members to inform them of the Settlement and the process for participating. As a result of those efforts, approximately 87%[1] of the funds available for initial distribution have been claimed by 1,077 Settlement Class Members – approximately 66.7% of the total class of 1,613 individuals.[2] This is an extraordinary claim rate for any common-fund case. The results are even more impressive as the claim period extends back almost twelve years for a class of low wage workers who tend to be transient and difficult to locate. See, Doc. 76 at 6, fn 3. No Settlement Class Members chose to opt-out and there were no objections to the Settlement.[3] The high claim rate and the absence of objections and opt-outs demonstrate the essential fairness of the Settlement. Accordingly, Plaintiffs move the Court to grant final approval of the Settlement.

Plaintiffs will file a separate motion for the Court's approval of attorneys' fees and costs.

---

[1] As of the date of this filing there are $1,451,202.66 unclaimed funds. Decl. of R. Hyte at ¶ 15. Unclaimed funds will be redistributed to the Participating Class Members on a prorated basis. 424-7 at ¶ 9. Because the Parties have agreed that claim forms can be processed up to ten days from the final approval hearing, the total amount of unclaimed funds will change as more claim forms are processed by SSI. The final distribution of awards will have to be calculated once all claim forms are received and processed.

[2] This includes those Class Members who had previously opted into the lawsuit who were not required to submit claim forms. These numbers may increase slightly if the Parties identify anyone erroneously omitted from the class list. In addition, the Settlement Agreement provides that late claims can be accepted through August 16, 2021. Doc 424-7 at ¶ 7.

[3] Molly Green, Plaintiff in *Green v Humana At Home, Inc.,* No. 16-cv-7586, (S.D. N.Y.) was the only class member to opt out. She did so on December 20, 2019. (Doc. 379) No Class Members opted out as a result of the settlement notice.

**CASE HISTORY AND EVENTS SINCE PRELIMINARY APPROVAL**

The long history of this litigation, beginning with its commencement in 2015, is set forth in detail in the Parties' Motion for Preliminary Approval of the Settlement Agreement. Doc. 424-1 at 9-14.

## I.    Preliminary Approval, Notice, and Claims Process

The Parties' Settlement Agreement was presented to the Court for Preliminary Approval on March 26, 2021. Doc. 424 (Notice of Motion), Doc. 424-4 (Settlement Agreement). On April 9, 2021, the Court conditionally certified the following Settlement Classes pursuant to Fed. R. Civ. P. 23(b)(3):

> **"NEW YORK STATE LAW SETTLEMENT CLASS"** comprised of all persons employed in New York in a HOME HEALTHCARE WORKER POSITION for Humana, Inc., Humana at Home Inc. and Seniorbridge Family Companies Inc. during the period from November 10, 2009 to November 30, 2020 who worked at least one 24-hour live-in shift and who did not exclude themselves pursuant to the initial class notice.
>
> **"CONNECTICUT STATE LAW SETTLEMENT CLASS"** comprised of all persons employed in Connecticut as a HOME HEALTHCARE WORKER POSITION for Humana, Inc., Humana at Home Inc. and Seniorbridge Family Companies (CT), Inc. who (1) during the period from January 1, 2015 to November 30, 2020 worked at least one 24-hour live-in shift, or (2) who worked more than 40 hours in a workweek without proper overtime compensation between January 1, 2015 and October 13, 2015.

Doc. 426 at 1, 2. The Court then granted preliminary approval of the Settlement Agreement, finding it to be "fair, reasonable, and adequate." *Id.* at 2. The Court approved Settlement Services, Inc. ("SSI") as the settlement administrator, approved the form and content of the class notices and attached forms, and directed that notice be issued. *Id.* at 3. A final fairness hearing was set for August 24, 2021. *Id.* at 3, 4. On July 23, 2021, Defendants filed with the Court

confirmation of service of the notice required by the Class Action Fairness Act, 28 U.S.C.

§ 1715, on the U.S. Department of Justice and the attorneys general of all states Class Members

reside. *See* Doc. 428 (Decl. of David R. Golder).

On April 29, 2021, SSI mailed by first-class mail the Court-approved notice of the

settlement (hereinafter "Notice") to a total of 1,613 Class Members. *See* Decl. of R. Hyte at ¶ 7.

SSI mailed three versions of the Court approved Notice: **<u>Version A</u>** of the Notice was mailed to

two hundred sixty-six (266) Opt-In Plaintiffs who joined this case and, because FLSA Collective

Members were not required to submit a claim to participate in the settlement, this version of the

Notice mailing did not include a claim form. Decl. of A. Guerra at ¶ 10; Doc. 424-4 at ¶ 7; Decl.

of R. Hyte at ¶ 7. **<u>Version B</u>** of the notice was mailed to seven hundred ninety-five (795) New

York and Connecticut Class Members of the previously certified Rule 23 classes who were not

FLSA Collective Members. Decl. of A. Guerra at ¶ 11; Decl. of R. Hyte at ¶ 7. Pursuant to the

Court's preliminary approval order, the previously certified classes were expanded to include

additional New York and Connecticut class members. Decl. of A. Guerra at ¶ 12. **<u>Version C</u>** of

the notice was mailed to five hundred fifty-two (552)[4] new putative Class Members to inform

them of the terms of the settlement, the process for submitting a claim, their right to object, and

their right to opt-out of the settlement. Decl. of A. Guerra at ¶ 12; Decl. of R. Hyte at ¶ 7.

SSI also sent the Notice via email to nine hundred nineteen (919) Class Members for

whom email addresses were provided (Decl. of R. Hyte at ¶ 8), and via text message to one

thousand six hundred six (1,606) Class Members for whom phone numbers were provided. *Id.* ¶

9. During the notice period, a total of 225 Notice packets were returned to SSI by the USPS as

undeliverable without forwarding address information.  *Id.* ¶ 10. SSI conducted a locator trace for

---

[4] The preliminary approval brief incorrectly noted there were 556 new class members. Class Counsel has
investigated this issue and determined that this was a typographical error. Decl. of A. Guerra. at ¶ 12.

everyone with a returned notice that had not already submitted a Claim Form, and possible new addresses were obtained for approximately 212 of them. *Id.* SSI re-mailed Notice Packets to these possible new addresses. *Id.*

SSI established a toll-free phone number that Class Members could call to provide updated addresses, ask questions about the settlement, and request re-mailings of the Notice. *Id.* ¶ 4. SSI received hundreds of calls to this number. *Id.* ¶ 4. SSI also established an interactive and dedicated settlement website where Class Members could view the Settlement Agreement, Settlement Notice and Settlement Documents. The website also allowed Class Members to submit their claim and other settlement forms, as well as ask questions and request additional information. *Id* at ¶ 5. Class Counsel worked closely with SSI to locate and contact hundreds of Class Members who had not yet filed claim forms to remind them of the settlement and the July 28, 2021 deadline to submit a claim. Decl. of A. Guerra ¶ 14. In June, SSI mailed a postcard reminder to those class members that had yet to submit a claim form. Class Counsel also received numerous calls from Class Members who had questions about settlement calculations or needed assistance locating and submitting settlement forms. Decl. of A. Guerra ¶ 15

## II.   Results of Notice

As a result of the Notice process, one thousand and sixty-two (1,077) Class Members (hereinafter "Participating Class Members") have submitted claims. Decl. of R. Hyte at ¶ 14.[5] This represents approximately 66.7% of the total class of 1,613 individuals. Decl. of A. Guerra. at ¶ 18. The number of Participating Class Members will increase since the Settlement Agreement provides that claim forms may be accepted until ten days before the final approval hearing. Doc. 424-4 at ¶ 7. The highest minimum allocation claimed by a Participating Settlement Class Member

---

[5] SSI also received claims from individuals who did not belong to any of the classes and provided these claim forms to Humana for analysis and confirmation. Decl. of R. Hyte at ¶ 14. That analysis to date has indicated that these individuals are not part of the settlement. *Id.*

is $121,274.56 and the lowest allocation is $500. Decl. of R. Hyte at ¶ 15. The total claimed from

the Net Settlement Fund thus far is $9,608,043.62 and the total unclaimed settlement amount is

$1,451,202.66.[6] *Id.*

## SUMMARY OF SETTLEMENT TERMS

The Settlement Agreement is in the record at Doc. 424-4. The summary of settlement

terms and the process for final approval are set forth in detail in Exhibit 4 of the Parties' Motion

for Preliminary Approval of the Settlement Agreement. Doc. 424-7.

## ARGUMENT

## I.     THE FINAL RULE 23 APPROVAL STANDARD

Because this is a class action, the Court must approve the Settlement. The procedure for

approval Fed.R.Civ.P 23 includes three distinct steps, of which the first two have already been

completed here:

1. Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval, including preliminary approval of any agreed settlement classes;

2. Dissemination of mailed and/or published notice of settlement to all affected Class Members advising them of the settlement and their right to object or exclude themselves; and

3. A final settlement approval hearing at which Class Members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*

("*Newberg*"), §§ 13.1, *et seq.* (4th ed. 2002). This process safeguards Class Members' procedural

due process rights and enables the Court to fulfill its role as the guardian of class interests.

---

[6] Unclaimed funds will be redistributed to the participating Settlement Class Members on a prorated basis. Since the Settlement Agreement provides that claim forms can be processed up to ten days before the final approval hearing, the total amount of unclaimed funds is likely to change slightly as more claim forms are processed.

The approval of a proposed class action settlement is a matter of discretion for the trial court. *Maywalt v. Parker & Parsley Petroleum Co*., 67 F.3d 1072, 1079 (2d Cir. 1998). In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties." *Clark v. Ecolab, Inc.,* 04 CIV. 4488 (PAC), 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (citations omitted). "A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement." *McArthur v. Edge Fitness*, LLC, 3:17 CV 1554 (RMS), 2019 WL 718540, at *2 (D. Conn. Feb. 20, 2019) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)). Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores, Inc.,* 396 F.3d at 116. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Id.* (quotations omitted); *McArthur*, 2019 WL 718540, at *2; *see also Kiefer v. Moran Foods, LLC*, 12-CV-756 WGY, 2014 WL 3882504, at *4 (D. Conn. Aug. 5, 2014).

If the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Kiefer*, 2014 WL 3882504, at *4 (quoting *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007)). "A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement. A presumption of fairness, adequacy, and reasonableness may attach to a class settlement in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *McArthur*, 2019 WL 718540, at *2 (citing *Wal-Mart Stores, Inc.*, 396 F.3d at 116-17); *see also, Edwards v. N. Am. Power & Gas,* LLC, 3:14-CV-01714

(VAB), 2018 WL 3715273, *9 (D. Conn. Aug. 3, 2018) (same); *see also O'Connor v. AR Resources, Inc.*, 3:08CV1703 VLB, 2012 WL 12743, at *3 (D. Conn. Jan. 4, 2012) (same).

Ultimately, "[t]he Court gives weight to the parties' judgment that the settlement is fair and reasonable. . . ." *Macedonia Church v. Lancaster Hotel, LP*, 05-0153 TLM, 2011 WL 2360138, at *11 (D. Conn. June 9, 2011); *see also Torres v. Gristede's Operating Corp.,* 04-CV-3316 PAC, 2010 WL 5507892, at *3 (S.D.N.Y. Dec. 21, 2010) aff'd, 519 Fed. Appx. 1 (2d Cir. 2013). Moreover, "[a] settlement like this one, reached with the help of a third-party neutral, enjoys a 'presumption that the settlement achieved meets the requirements of due process.'" *Corte v. Fig & Olive Founders LLC*, No. 14-cv-7186(KPF), 2015 WL 12591677, at *2 (S.D.N.Y. June 24, 2015) (quoting *Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376, at *8 (S.D.N.Y. Sept. 16, 2011).

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). *See Sherman v. Azar*, No. 3:15-cv-01468 (JAM) (D. Conn. Feb. 26, 2018). The *Grinnell* factors include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

As set forth below, all of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and thus in favor of final approval.

## II.      The Notice and Claims Process Satisfied Rule 23(c) and Due Process

The Court previously approved the form and content of the Class Notices to be distributed to the Class and found that the notice plan set forth in the Settlement Agreement was "the best Notice practicable under the circumstances and satisfies the requirements of Rule 23 and due process." Doc. 426 at 3. The declaration from SSI attests to the fact that the Settlement Administrator carried out the Notice procedures specified in the Settlement Agreement in all respects. *See,* Decl. R. Hyte ¶¶ 3-9. In addition, although not required by terms of the settlement, Class Counsel voluntarily undertook extraordinary efforts to ensure that all class members who could be contacted were made aware of the Settlement Agreement. Decl. A. Guerra ¶ 16. This effort resulted in a much higher claim rate than would otherwise have been the case. No Class Member has questioned or objected to the adequacy of the Notice. *See,* Decl. R. Hyte ¶¶ 18-19. Accordingly, the Court should find that the form and method for notifying the Class Members satisfied the requirements of Rule 23(c)(2)(B) and due process, and constituted the best notice practicable under the circumstances.

## III. The Class Is Properly Certified

Before granting final approval of a class action settlement agreement, the Court must determine whether the proposed class can be certified. *Amchem Prods. v. Windsor,* 521 U.S. 591, 520 (1997). The Court previously certified the Settlement Classes for settlement purposes only. Doc. 426 at 2. Nothing has changed in the interim which would call into question the propriety of that ruling. All of the criteria under Rule 23(a) and (b)(3) continue to be met. The relative efficiency with which the parties have dealt with Notice and questions arising during the Notice period attests to the appropriateness of class treatment in the settlement of this case. Accordingly, the Settlement Classes certified in the Preliminary Approval Order should be granted final certification for purposes of effectuating the Settlement Agreement.

**IV. The Settlement Is Fair, Reasonable, and Just, and Deserves Final Approval.**

As stated in the Advisory Committee Notes to the 2018 amendments to Rule 23, Subdivision (e)(2)**,** the central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate. As amended, Fed.R.Civ.P. 23(e)(2) provides that if a settlement proposal would bind class members **"**the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate." In assessing the adequacy of a class action settlement under Rule 23(e)(2), district courts in this Circuit consider the Grinnell factors. *See, In re Patriot Natl., Inc. Securities Litig.,* 828 Fed. Appx. 760, 762–63 (2d Cir. 2020). For the reasons that follow, this settlement satisfies the Grinnell factors and its therefore adequate under Rule 23(e)(2).

**V.     APPLICATION OF THE *GRINNELL* FACTORS**

**A.     *Grinnell* Factor 1: Complexity, Expense, and Likely Duration of Litigation**

This is an extremely complex case involving four Rule 23(b)(3) classes and a nationwide FLSA collective action. *Edwards*, 2018 WL 3715273, at *10 ("'Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them' and courts therefore favor class action settlements.") (citing *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)). Plaintiffs' claims raise novel issues of federal law regarding the effect of an order enjoining the effective date of a federal regulation that was later reversed on appeal as well as questions of federal and state law regarding the circumstances under which sleep and meal times may be excluded from work time. It also raises complex factual questions regarding when pay rates stated as daily amounts should be treated as day rates paying for all hours of work or hourly rates for a specified number of hours of work per day.

9

The Court's summary judgment order simplified the issues but left the most contentious issues for trial. Accordingly, if this matter were to proceed to trial, it would likely involve a lengthy trial and extremely complex arguments over the proper way to charge the jury regarding regular rate calculations and sleep and meal period deductions. Not only would such a trial impose significant delay in resolving this case, but regardless of how the jury were to rule, one side or the other, or more likely both sides, would pursue appeals involving multiple issues. Just to name a few, Defendants have already made clear that they intend to appeal the Court's ruling regarding the effective date of 29 C.F.R. § 552.109. They have also made clear that they intend to appeal the Court's decision to allow Plaintiffs to pursue their claim that they are entitled to pay for all 24 hours of a 24-hour shift, rather than merely 13 hours, and they will likely appeal the certification of some, if not all, of the classes if the Court did not grant their pending motion to decertify the classes. Plaintiffs for their part will appeal the denial of their New York and Connecticut straight-time claims based on their failure to specifically plead the statute under which they were claiming, and the denial of relation-back for New York claims which resulted in the dismissal of claims arising between November 11, 2009 and November 9, 2011. Moreover, given the Parties' diametrically opposed view of the law, it is a foregone conclusion that the losing side will appeal the jury instructions setting forth the law the jury is to apply in determining the hours worked during 24-hour shifts and the regular rate paid for such shifts.

All of these complex trial and appellate issues mean that, absent a settlement, this case is likely to go on for years before it is resolved through litigation with all of the ever-increasing costs and attorneys' fees such lengthy proceedings will inevitably entail. The advantages to both Parties to avoid that cost and delay, not to mention the risk inherent in forcing complex legal and factual issues to be resolved, up or down, through litigation are all significant considerations

favoring settlement. It is surely rational from the perspective of absent class members to obtain

compensation now rather than endure years of further litigation over these issues. *City of*

*Providence v. Aeropostale, Inc.,* No. 11-CV-7132, 2014 WL 1883494 at *5 (S.D.N.Y. May 9,

2014); *Strougo ex re. Brazilian Equity Fund, Inc. v. Bassini,* 258 F.Supp.2d 254, 261 (S.D.N.Y.

2003) (Even if a shareholder or class member was willing to assume all the risks of pursuing the

actions through further litigation . . . the passage of time would introduce yet more risks . . . and

would in light of the time value of money, make future recoveries less valuable than this current

recovery."). Accordingly, *Grinnell* factor one weighs heavily in favor of granting final approval

to the Settlement Agreement.

### B.     *Grinnell* Factor 2: Reaction of the Class

The response to the settlement has been overwhelmingly positive. No Class Members

opted out of the settlement. Decl. of R. Hyte at ¶ 18. Class Counsel received telephone calls from

numerous Class Members and answered their questions about their claims. Decl. of A. Guerra at

¶ 15. Class Counsel were told by many of these Class Members that they were pleased with the

settlement. *Id.* ¶ 17. No Class Members have presented objections to the settlement. Decl. of R.

Hyte at ¶ 19. The fact that Class Members neither objected to nor opted out of the settlement is

an extremely strong indication that the proposed Settlement is fair. *See, Kemp-DeLisser v. St.*

*Francis Hosp. and Med. Ctr.,* 15-CV-1113 (VAB), 2016 WL 6542707, at *8 (D. Conn. Nov. 3,

2016) ("A lack of objection from any class members after members received notice of the

settlement is an extremely strong indication that the proposed Settlement is fair.") (citations

omitted); *see also, Wright v. Stern*, 553 F. Supp. 2d 337, 344–45 (S.D.N.Y. 2008) ("The fact that

the vast majority of class members neither objected nor opted out is a strong indication" of

fairness) (approving settlement where 13 out of 3,500 class members objected and 3 opted out).

Thus, this factor weighs strongly in favor of final approval.

C.     *Grinnell* **Factor 3: Stage of the Proceedings**

For the third factor, courts evaluate whether the parties "entered into settlement only after a thorough understanding of their case." *Edwards*, 2018 WL 3715273, at *11, citing *Visa U.S.A., Inc.*, 396 F.3d at 118. "The factor requires the Court to consider whether the parties have adequate information about their claims." *Charron v. Pinnacle Group N.Y. LLC*, 874 F. Supp. 2d 179, 198 (S.D.N.Y. 2012), *aff'd sub. nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013).

There is no question that the Parties had a thorough understanding of the case and adequate information to evaluate the claims prior to entering into the Settlement Agreement. This case has been pending over five years. All discovery had been completed, and cross motions for summary judgment setting forth in detail each Party's view of the case and the support for their respective positions were filed and decided. The Parties' respective understandings of the claims and the risks of proceeding to trial were as complete as they could be short of actually trying the case. Thus, this factor clearly weighs in favor of granting approval to the Settlement. *Macedonia Church*, 2011 WL 2360138, at *12, (citing *Visa,* 396 F.3d at 118) ("The fact that the Parties have litigated summary judgment and have participated in mediation means that the stage of the proceedings is sufficiently ripe for final settlement approval.")

In addition to the fact that the Settlement occurred after the Parties had thoroughly explored the Plaintiffs' claims and were preparing for trial, the Settlement is also supported by the fact that the Parties engaged in multiple, time consuming arm's length negotiations utilizing respected independent mediators. The first mediation was an in-person mediation session in November 2018 under the direction of Charles Stohler, Esq., an experienced class and collective

action mediator. Although that mediation was not successful, the Parties continued to exchange information for settlement purposes over the next 20 months. On July 23, 2020, the Parties engaged in an all-day mediation session under the direction of mediator Marc Isserles, Esq., an experienced class and collective action mediator. The Parties were unable to settle the claims in that session, but continued negotiations through the mediator after the July 23, 2020 mediation and finally reached agreement in October 2020. *Visa USA, Inc.,* 396 F.3d at 116. ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery."); *McArthur*, 2019 WL 718540, at *2; *see also Kiefer v. Moran Foods, LLC*, 12-CV-756 WGY, 2014 WL 3882504, at *4 (D. Conn. Aug. 5, 2014). Accordingly, *Grinnell* factor three weighs heavily in favor of granting final approval to the Settlement Agreement

### D.   *Grinnell* Factors 4 and 5: Risks of Establishing Liability and Damages

The fourth and fifth *Grinnell* factors require that the Court "balance the benefits of a certain and immediate recovery against the inherent risks of litigation." *In re Med. X-Ray Film Antitrust Litig.,* CV-93-5904, 1998 WL 661515 at *4 (E.D.N.Y. Aug. 7, 1998); *see also Hall v. Pro Source Tech., LLC,* 14-CV-2502 (SIL), 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016); *Siler v. Landry's Seafood House --North Carolina, Inc.,* 13-CV-587 (RLE), 2014 WL 2945796 at *6 (S.D.N.Y. June 30, 2014) ("[T]he primary purpose of settlement is to avoid the uncertainty of a trial on the merits.").

Although Plaintiffs believe their case is strong, it is certainly subject to considerable risk. The Court determined in its summary judgment ruling that a reasonable jury could find that the Caregiver Agreement, on its face, constitutes an agreement providing for regularly scheduled meal and sleep breaks sufficient to satisfy the requirements of 29 C.F.R. § 785.22 and related

13

provisions of New York and Connecticut law. Plaintiffs disagree with that ruling, but it will affect how the jury would be charged. If the jury were to find that the Caregiver Agreement is sufficient to satisfy § 785.22, then Plaintiffs would only be entitled to credit for 13 hours of work for each 24-hour shift under federal and state law. In addition, the Court has ruled that there is a fact issue whether the wage term set forth on the Caregiver Agreement, which specifies a dollar amount per 24-hour shift, should be treated as pay for 8 hours, 13 hours, or all hours worked during the shift regardless how many. Again, Plaintiffs strenuously disagree with that holding for the reasons set forth in their motion for summary judgment, but it is the Court's summary judgment decision that will inform the jury charge. In short, the Court has found that legally, the two most important and contentious issues in this case—the hours worked during a live-in shift and the regular rate to be applied to overtime involving live-in shifts—could reasonably be decided either way and it is simply a matter for the jury to determine from the facts how those issues should be resolved. The risks that those jury issues present to both Parties are enormous. If Plaintiffs were to convince a jury that they were entitled to pay for 24-hours per live-in shift and convince the jury that the pay rate quoted on the Caregiver Agreement was intended to pay for 8 hours of work, Plaintiffs estimate the overtime damages would be in excess of $70 million. On the other hand, if the jury were to find the Caregiver Agreement authorizes deduction for sleep and meal-time and that the rate for live-in shifts was intended to pay for all hours of work, the damages would be considerably less than the amounts that will be awarded under this Settlement. This enormous swing in the potential damages depending entirely on how a jury views the evidence places both Parties in a difficult position and strongly favors approving the mutually-agreed-upon Settlement that ensures Settlement Class members receive a certain and significant recovery while avoiding the risks of trial.

14

In weighing the risks of establishing liability and damages, courts "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian and German Bank Holocaust Litigation,* 80 F.Supp.2d 164, 177 (S.D.N.Y. 2000); *see also Macedonia Church*, 2011 WL 2360138, at *11 (granting final approval and noting that "Serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation.") (internal citations omitted). Here the relief offered by way of the Settlement is certain, significant, and timely.

Given the obvious risks of proceeding to trial, these factors weigh in favor of approval of the Settlement. "Indeed, '[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome.'" *See Kiefer*, 2014 WL 3882504, at *2 (citing *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y.1969)).

### E.   *Grinnell* Factor 6: Risks of Maintaining the Class Action Through the Trial

In entering into the Settlement, Plaintiffs recognized that there was a risk that the classes could be decertified before trial. Defendants' motion to decertify the classes was still pending at the time of settlement.  There is no need to rehash the arguments for and against that motion as it has been thoroughly briefed by both sides. Doc 394, 399, 401. The risk of decertification at trial or on appeal is always a concern and particularly so here. *Wal-Mart Stores*, 396 F.3d at 119 n. 24 ("[D]ecertification is always possible as a case progresses and additional facts are developed."). Accordingly, this concern also weighs in favor of finding a reasonable compromise to the claims advanced by Plaintiffs.

### F.   *Grinnell* Factor 7: Ability of Defendant to Withstand a Greater Judgment

As far as Plaintiffs know, Defendants have the ability to withstand a significant judgment, even one as large as the one that would result from Plaintiffs prevailing on all issues at

trial. That fact alone does not weigh against settlement. *In re Austrian and German Bank Holocaust Litigation,* 80 F.Supp.2d at 179 (noting that "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair"); *In re Initial Pub. Offering Sec. Litig.,* 671 F.Supp.2d 467, 487 (S.D.N.Y. 2009) ("Just because a defendant is capable of making a larger payment does not mean that the settlement is inadequate."). However, Plaintiffs recognize that there is a risk that a jury may reject awarding such a large judgment. The key issue in this case is not whether HHWs were able to obtain sleep during the course of a 24-hour shift, but whether Defendants fulfilled their duty to ensure that that sleep was afforded to HHWs on a regularly scheduled basis. There are significant reasons, set forth in Plaintiffs' motion for summary judgment, why strict adherence to the requirement of regularly scheduled sleep is critical for the health and well-being of HHWs, but Defendants will, no doubt, argue to the jury that it complied with the regularly scheduled requirement on anything other than a hyper-technical reading, that compliance with which need not be measured strictly, and that awarding $70 million to the class members would be a windfall. Here again, while Plaintiffs believe they have the better argument, they recognize the risk that their arguments may not prevail. Nevertheless, the risks of asking a jury to award $70 million dollars or more for the violations at issue are quite real and weigh in favor of settlement.

### G.    *Grinnell* Factors 8 and 9: Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and In Light of All the Attendant Risks of Litigation

These factors consider whether the amount of the settlement and the method of distributing the settlement funds are fair and adequate for the class in light of the expense, delays, and risks of further litigation. "[T]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and

the concomitant risks and costs necessarily inherent in taking any litigation to completion. . . ." *Wal-Mart Stores, Inc.,* 396 F.3d at 119; *see also Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (holding that the determination of reasonableness "does not involve the use of a mathematical equation yielding a particularized sum") (internal quotation omitted). Therefore, "the question . . . is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces." *Bodon v. Domino's Pizza, LLC,* 09-CV-2941 (SLT), 2015 WL 588656 at *6 (E.D.N.Y. Jan. 16, 2015), *report and recommendation adopted sub nom. Bodon v. Domino's Pizza, Inc.*, 09-CV-2941, 2015 WL 588680 (E.D.N.Y. Feb. 11, 2015).

In weighing this factor, the Court must consider whether the overall amount of the settlement is fair and reasonable, whether the individual allocations are fair and reasonable, whether the fees, expenses, and service awards to be deducted from the gross amount are fair and reasonable, and whether the release that the Class Member must give in exchange for the Settlement is reasonable. The fact that none of the 1,613 Class Members objected to the settlement is a strong indicator of the settlement is fair and reasonable. *Kemp-DeLisser v. St. Francis Hosp. and Med. Ctr.,* 15-CV-1113 (VAB), 2016 WL 6542707, at *8 (D. Conn. Nov. 3, 2016).

### 1.     The Gross Settlement Amount Is Fair and Reasonable

As noted above, in light of the Court's summary judgment order finding that a jury could reasonably view the evidence as supporting all of Plaintiffs' core claims—i.e. those during the period November 11, 2011 through January 16, 2016—or, just as reasonably, reach a verdict for Defendants on all claims, the range of possible recoveries in this case covers a huge span: $6 million to $70 million. Prior to entering into the Settlement, and, indeed, prior to entering into

negotiations, Class Counsel conducted a complex analysis of the fair settlement value of each of the claims in this case. This process entailed examining each cause of action, its likely value upon success, and then discounting that value for the likelihood of success on each of the elements of the claim. These separate values were then added together after eliminating any potential double recovery and then that sum was further discounted for factors affecting all claims such as the likelihood of decertification of the classes, risks of change in law, the time value of money, delays for appeals etc. Using this method, Class Counsel determined an overall fair settlement value for the case as a whole prior to entering into settlement negotiations. The $17 million settlement was within the range of what Class Counsel determined to be a fair settlement and Class Counsel would not have recommended the settlement if it were not. Moreover, the overall value of the Settlement is enhanced by the fact that no money will revert to the Defendants and that any unclaimed money will be redistributed among the Participating Settlement Class Members, which potentially increases the settlement value for those class members. For all of these reasons the Gross Settlement Amount is fair and reasonable.

## 2.    The Individual Settlement Awards Are Fair and Reasonable

Assuming the amounts for attorneys' fees, expenses, service awards, and claims administration discussed below are approved, a Net Settlement Amount of $11,058,333.33 will be available for allocation to the Participating Class Members.[7] Based on the allocation formula discussed in detail in the preliminary approval motion (Doc. 424-1 at 26-29) the average award claimed by Participating Settlement Class Members was approximately $8,921. Decl. of R. Hyte at ¶ 15.[8] The highest award claimed by a Participating Class Member was $121,274.56. *Id.* These

---

[7]   This assumes deductions from the Gross Settlement Amount of (i) $50,000 in Settlement Expenses for claims administration, (ii) $100,000 in Service Awards, (iii) $50,000 Reserve Fund, (iv) $75,000 in Class Counsel Expenses, and (v), $5,666,666.67 in fees for Class Counsel.
[8] $9,608,043.62 (funds claimed)/1077(Participating Class Members)= $8,921.11

figures will increase after the $1,451,202.66 in unclaimed funds are redistributed to Participating Class Members on a pro-rated basis. *Id.*; Decl. of A. Guerra at ¶ 18.

Viewed as an overall settlement amount or viewed from the perspective of individual Settlement Class Members, the settlement is fair, reasonable, and equitable in light of the risks and delays of further litigation. "To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized—namely, it must be fair and adequate." *Maley v. Del Global Tech Corp.,* 186 F.Supp.2d 358, 367 (S.D.N.Y. 2002) (internal citation and quotations omitted). "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id.* In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel. *See In re PaineWebber Ltd P'ships. Litig.,* 171 F.R.D. 104, 130 (S.D.N.Y. 1997). That is, "[a]s a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information." *Id.*

### 3. The Claims Process Was Fair and Reasonable

The claims process has resulted in an impressive rate of participation. The rate of participation is approximately 66.7% and the rate will increase as additional claim forms are processed. Decl. of A. Guerra at ¶ 18. As courts in this district have noted, the typical rate of participation in claims made settlements is in the ten to fifteen percent range. *See, Hernandez v. Immortal Rise, Inc.,* 306 F.R.D. 91, 100 (E.D.N.Y. 2015) (noting that the typical rate of participation is between 10 and 15 percent and approving a settlement with a 20% participation rate); *see also, Acevedo v. Workfit Med. LLC,* No. 6:14 Civ. 06221 (EAW), 2016 WL 2962930, at *5 (W.D.N.Y. May 20, 2016) (same and approving settlement with 21% participation rate);

*also see, Sanchez v. Kambousi Rest. Partners, LLC,* 15CIV05880CMHBP, 2016 WL 11717105, at *8 (S.D.N.Y. Aug. 5, 2016) (same and approving a settlement with a 35% participation rate). The impressive response from the class is evidence that the claims process was fair and reasonable.

### 4.     The Service Awards Are Fair and Reasonable

The service awards provided in the Settlement Agreement—$20,000 for each of the three named plaintiffs and $10,000 for each of the opt-ins who assisted with depositions and discovery—are reasonable. As this Court has noted,

> Named plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See, e.g, Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, at *1 (BSJ)(JCF), 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."); *Velez v. Majik Cleaning Serv.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 22, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers .") (internal quotation marks and citation omitted) . . .

*Aros v. United Rentals, Inc.,* No. 3:10-CV-73 JCH, 2012 WL 3060470, at *3–4 (D. Conn. July 26, 2012) (approving $7500 service award from $875,000 settlement fund). None of the 1,613 Class Members objected to the proposed service awards, which is further proof that the proposed service awards are fair and reasonable. *Kemp-DeLisser v. St. Francis Hosp. and Med. Ctr.,* 15-CV-1113 (VAB), 2016 WL 6542707, at *8 (D. Conn. Nov. 3, 2016). Plaintiffs will file a separate motion for approval of Service Awards along with their motion for final approval of the Settlement.

### 5.     The Attorneys' Fees and Costs Are Fair and Reasonable

Class members were advised in the Notice that Class Counsel would seek litigation costs of $75,000.00 and up to 33 1/3% of the Settlement Fund as fees. Decl. A. Guerra at ¶13. No Class Member objected Class Counsel's requested fees, and this further supports finding that the fees and costs sought are fair and reasonable. Class Counsel has filed a motion for approval of attorneys' fees and reimbursement of expenses, along with this motion for final approval of the Settlement.

### 6.     The Claim Administrator's Fee Is Reasonable

The Settlement Agreement calls for a fee of $50,000 to be deducted from the Gross Settlement Amount to pay the Claims Administrator. As of August 10, 2021, settlement administration costs were $57,700. Decl. R. Hyte ¶20. The Claims Administrator has estimated that the costs through completion will be $85,000. *Id.* Class Counsel will cover those overruns. SSI has experience in administering class action settlements, is well qualified to carry out the administration of this settlement, and its fee is reasonable. *See* Sweeney Decl., Doc. 424-3, at ¶¶ 19-20.

### 7.     The Release Is Fair and Reasonable

Courts in the Second Circuit have made clear that general releases are not acceptable in settlements involving FLSA claims. *See e.g. Lopez v. Nights of Cabiria, LLC,* 96 F.Supp.3d 170, 181 (S.D.N.Y. 2015); *Bazile v. Asset Protection Group, LLC,* 18-CV-6820 (DLI) (SJB), 2019 WL 7985168 at *3 (E.D. N.Y. Nov. 27, 2019) ("a plaintiff who executes an FLSA settlement containing a limited release, while simultaneously executing a NYLL settlement containing a more general release, has not in fact received a limited release."). Accordingly, the Settlement Agreement requires the class members to release "all wage and hour claims and related claims which were or could have been asserted in the litigation under the NYLL and Connecticut Law,

including, without limitations, all state claims for unpaid overtime, regular, straight or minimum wages, and related claims for penalties, statutory notice or statement violations, interest, liquidated damages, attorneys' fees, costs, and expenses to the maximum possible extent permitted by law accruing up to November 30, 2020."[9] This release is limited in scope as it is limited to wage and hour claims and related claims that were or could have been asserted in the litigation and is temporally limited to claims through January 1, 2021 for previously noticed class members and through November 30, 2020 for the 552 new class members. As such it falls within the range of releases that Second Circuit courts have found to be acceptable. *See, e.g., Macaluso v. JZJ Servs., LLC,* 20-CV-1407 (RA), 2020 WL 6647517 at *2 (S.D.N.Y. Nov. 12, 2020) (approving release of claims for unpaid wages or that "otherwise arise out of or relate to the facts, acts, transactions, occurrence, events or omissions alleged in the Action or which could have been alleged in the Action."); *Bondi v. DeFalco,* 17-CV-5681 (KMK), 2020 WL 2476006 at *5-6 (S.D.N.Y. May 13, 2020) (approving release of defendants and affiliated persons and entities from "all wage and hour claims that could have been asserted under federal and state laws by and on behalf of the Class Members in the Lawsuit as of the date the Court issues the Preliminary Approval Order" including "all claims under federal or New York State laws for minimum or overtime wages, unreimbursed expenses, spread of hours, [and] any related wage

---

[9] In addition, the Agreement provides that the settlement checks for members of the FLSA class will include the following (or similar) endorsement:

> *By signing this check, I consent to join the FLSA collective action against Defendants styled Daverlynn Kinkead v. Humana, Inc., et. al, 15-cv-01637 and release Defendants from all wage and hour claims under any state or federal law including but not limited to the Fair Labor Standards Act which were or could have been brought in this action, including but not limited to claims for unpaid overtime wages and statutory penalties.*

This endorsement is coterminous with the release that other class members are giving and does not expand on that release.

and hour claims."); *Pucciarelli v. Lakeview Cars, Inc.,* 16-CV-4751 (RRM) (RER), 2017 WL 2778029 at *3 (E.D.N.Y. June 26, 2017) (approving release of all claims "based upon federal, state or local laws governing minimum wage, overtime pay, wage payments, spread-of-hours payments, failure to pay for all hours worked, failure to provide wage statements and/or wage notices failure to keep appropriate timekeeping and payroll records, or otherwise arise out of or relate to the facts, acts, transactions, occurrence, events or omissions alleged in the Lawsuit or which could have been alleged in the Action.").

The Agreement provides that the three Named Plaintiffs and four opt-in Plaintiffs receiving service payments will execute a general release. Second Circuit courts recognize that general releases are acceptable when they are given in exchange for service payments. *Ray v. 1650 Broadway Assocs. Inc.,* 16-CV-9858 (VSB), 2020 WL 5796203 at *3 (S.D.N.Y. Sept. 29, 2020); *Bondi v. DeFalco,* 2020 WL 2476006 at *6 (S.D.N.Y. May 13, 2020).

Accordingly, the overall amount of the settlement, individual allocations, attorneys' fees and costs, and service awards to be deducted from the gross settlement amount, and the release that Class Members must give in exchange for the Settlement are fair and reasonable.

## VI.    FLSA SETTLEMENT STANDARD

Because FLSA Plaintiffs are not bound by a settlement unless they opt into the action, settlement of FLSA collective actions do not require the same high standard for approval as Rule 23 class settlements. *Kiefer v. Moran Foods, LLC*, No. 12-CV-756 WGY, 2014 WL 3882504, at *7 (D. Conn. Aug. 5, 2014). Courts approve FLSA settlements that "are reached as a result of contested litigation to resolve *bona fide* disputes." *Id.*, citing *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 n.8 (11th Cir.1982); *see also Henry v. Little Mint, Inc.*, No. 12-cv-3996, 2014 WL 2199427, at *6 (S.D.N.Y. May 23, 2014) (citing *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (recognizing that courts rely on the adversary nature of a litigated

23

FLSA case resulting in settlement as indicia of fairness). Courts should approve FLSA settlements that represent a reasonable compromise over contested issues that result from *bona fide* litigation. *Id*.  As described above, this settlement reflects just such a compromise. Accordingly, the FLSA settlement should be approved.

**VII.     CY PRES AND THE RESERVE FUND.**

The Settlement Agreement stipulates that any monies remaining in the Reserve Fund after the resolution of all alleged errors and omissions and after one hundred twenty (120) calendar days have elapsed after the mailing of settlement payments to Class Members shall be paid to a *cy pres* recipient. Settlement Agreement II B. 4. In the event there are residual amounts remaining in the Reserve Fund, the Parties will file a motion suggesting *cy pres* recipients for the Court's consideration no later than one hundred fifty (150) days after the mailing of settlement payments.

**CONCLUSION**

For all of the foregoing reasons, the Settlement Classes certified in the Preliminary Approval Order should be granted final certification for purposes of effectuating the Settlement Agreement and the Court should grant final approval and find that the Settlement Agreement is fair, reasonable, and adequate.

August 10, 2021

Respectfully Submitted

*/s/Artemio Guerra*
Artemio Guerra, Esq. (Pro Hac Vice)
Getman, Sweeney & Dunn, PLLC
250 Fair Street
Kingston, New York 12401
Telephone: (845) 255-9370
Fax: (845) 255-8649
Email: aguerra@getmansweeney.com

Philip Bohrer, Esq. (pro hac vice)
Bohrer Brady LLC.
8712 Jefferson Highway, Ste. B
Baton Rouge, LA 70809
Tel: 225-925-5297
Fax: 225-231-7000
E-mail: Phil@bohrerbrady.com
E-mail: Scott@bohrerbrady.com

**Attorneys for Plaintiffs and the Settlement Classes**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that my office caused the foregoing to be electronically filed with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to all counsel registered in this case.  Any counsel not registered for electronic notice of filing with the Clerk of Court will be mailed a copy of the above and foregoing, First Class U.S. Mail, postage prepaid and properly addressed.

August 10, 2021.

*/s/ Artemio Guerra*