## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **DAVERLYNN KINKEAD, SHIRLEY CAILLO,** | ) | |
| **and CLAUDE MATHIEU, Individually and** | ) | |
| **on behalf of others similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | |
| | ) | **Case No.: 3:15-cv-01637(JAM)** |
| **HUMANA, INC., HUMANA AT HOME, INC.,** | ) | |
| **and SENIORBRIDGE FAMILY** | ) | |
| **COMPANIES (CT), INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DECLARATION OF ARTEMIO GUERRA IN SUPPORT OF MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASSES AND FINAL APPROVAL OF THE CLASS AND COLLECTIVE ACTION SETTLEMENT

In accordance with the provisions of 28 U.S.C. § 1746, I, Artemio Guerra, hereby make this declaration in support of the Motion for Motion for Certification of the Settlement Classes and Final Approval of the Class and Collective Action Settlement ("Final Approval Motion").

1.     I am a partner in the firm of Getman, Sweeney & Dunn, PLLC in Kingston, New York.

2.     I am one of the lawyers primarily responsible for prosecuting Plaintiffs' claims on behalf of the Plaintiffs.

3.     I make these statements based on personal knowledge.

**Exhibits**

4.     Attached as Exhibit 1 is a summary of Class Counsel's fees.

5.     Attached as Exhibit 2 are contemporaneous time records that were kept by Getman, Sweeney & Dunn's attorneys and paralegals from the inception of this litigation to the time of filing of final approval.

6.     Attached as Exhibit 3 is a summary of Getman, Sweeney & Dunn's costs and expenses.

7.     Attached as Exhibit 4 is the full set of GSD's invoices and documentation for various costs.

8.     Attached as Exhibit 5 is a summary of the qualifications of GSD's attorneys and paralegals.

**Notice Process**

9.     Pursuant to the notice process authorized by the Court, the claims administrator ("SSI") mailed three versions of the Court approved Notice ("Notice").

10.     Version A of the Notice was mailed to FLSA Collective Members. There are two hundred and sixty-six (266) FLSA Collective Members in this case. FLSA Collective Members were not required to submit a claim to participate in the settlement.

11.     Version B of the notice was mailed to New York and Connecticut Class Members of the previously certified Rule 23 classes who were not FLSA Collective Members. There are seven hundred ninety-five (795) New York and Connecticut Class Members of the previously certified Rule 23 classes who were not FLSA Collective Members.

12.     Version C of the notice was mailed to new putative Class Members to inform them of the terms of the settlement, the process for submitting a claim, their right to object, and their right to opt-out of the settlement. Pursuant to the Court's preliminary approval order, the previously certified classes were expanded to include five hundred fifty-two (552) additional New York and Connecticut Class Members. The preliminary approval brief incorrectly noted there were 556 new Class Members. Class Counsel has investigated this issue and determined that this was a typographical error.

13.     The Notice notified Class Members that Class Counsel would seek up to $75,000 in litigation costs, $50,000 for the cost of administering the settlement, and up to 33 1/3% of the Settlement Fund as fees. The Notice also notified Class Members that the three Named Plaintiffs

and four Opt-In Plaintiffs would seek Service Payments totaling $100,000. In addition, the Named Plaintiffs' retainers and the consents to sue filed in this case all call for a contingency fee of one-third of any recovery.

14.    Class Counsel worked closely with SSI to locate and contact hundreds of Class Members who had not yet filed claim forms to remind them of the settlement and the July 28, 2021 deadline to submit a claim.

15.    Class Counsel also received numerous calls from Class Members who had questions about settlement calculations or needed assistance locating and submitting settlement forms.

16.    In addition, although not required by terms of the settlement, Class Counsel voluntarily undertook extraordinary efforts to ensure that all class members who could be contacted were made aware of the Settlement Agreement including working with SSI and counsel for Defendants to send a reminder postcard to Settlement Class Members, tracking claims submitted on a weekly basis, and following up with Class Members that needed assistance submitting their claim forms.

17.    Class Counsel were told by many Class Members that they were pleased with the results of the settlement.

18.    The claims process has resulted in an impressive rate of participation for a class of low wage workers that extends back almost twelve years. According to the latest report from SSI, there are currently one thousand seventy-seven (1,077) Participating Class Members from a class of one thousand six hundred thirteen (1,613) Settlement Class Members. The current rate of participation is approximately 66.76% and the rate will likely increase as additional claim forms are processed.

**Case History**

19.    Class Counsel spent over five years and more than 6,000 hours litigating the novel and complex issues presented by this case.

20.     Named Plaintiff Daverlynn Kinkead filed this action on November 10, 2015, on behalf of herself and similarly situated home healthcare workers, as a collective action under the Fair Labor Standards Act (FLSA) and as a Rule 23 Class Action under the Connecticut wage and hour laws.

21.     Plaintiffs are home healthcare workers who work in the homes of elderly and disabled people providing care and companionship services.

22.     Plaintiffs were employed by Humana at Home to work in the homes of patients for either 24-hour live-in shifts or hourly shifts that usually lasted 8 or 12 hours.

23.     For decades the FLSA was interpreted to exclude caregivers employed by third-party agencies, like the Plaintiffs in this case, from the overtime protections of the federal law. In January 2015, decades of exclusion of this class of workers from overtime protections came to an end.

24.     In 2013, the U.S. Department of Labor (DOL) promulgated a new regulation, 29 C.F.R. § 552.109, which extended overtime protections to caregivers employed by third-party employers, such as Humana at Home. *See Kinkead v. Humana, Inc.,* 206 F.Supp.3d 751, 753 (D. Conn. 2016). The new regulation was scheduled to become effective January 1, 2015. *Id.*

25.     The validity of the new regulation was put into doubt for some time due to an injunction entered by a district court in the District of Columbia until the D.C. Circuit reversed the injunction in August 2015. *Home Care Ass'n of Am. v. Weil,* 799 F.3d 1084 (D.C. Cir. 2015). While the regulation remained in limbo, Humana at Home continued to operate under the prior exemption from overtime in certain states.

26.     On December 17, 2015, Defendants moved to dismiss this case with prejudice. Defendants argued that due to the intervening legal challenge to the new regulation in the D.C. courts, the companionship exemption was in effect during the entirety of Ms. Kinkead's employment.  Doc. 14-1 at 2-3. On July 19, 2016, the Court denied Defendants' motion to dismiss and held that,

notwithstanding the intervening legal challenge to the rule's validity, the regulation went into effect on its intended effective date of January 1, 2015. *See Kinkead,* 206 F.Supp.3d at 753-755.

27.    On July 29, 2016, Defendants moved to certify the Court's denial of their motion to dismiss for interlocutory appeal. Doc. 58. On October 13, 2016, Your Honor certified the ruling for appeal noting that the issues presented by this case involved "liability imposed by a nationwide rule" which had "implications well beyond solely the parties in the case." *Kinkead v. Humana, Inc.,* 3:15-CV-01637(JAM), 2016 WL 9453808, at *3 (D. Conn. Oct. 13, 2016). Plaintiffs opposed Defendants' appeal petition.

28.    On January 11, 2017, the Second Circuit denied Defendants' appeal petition. Doc. 78. In May 2017, the Court granted conditional certification to Plaintiff's FLSA claim on behalf of a nationwide collective. Doc. 114.

29.    Since the initial conditional certification order, Plaintiffs discovered deficiencies in the initial FLSA notice list and moved the Court twice to issue supplemental notice. Docs. 218, 338.

30.    As a result of the FLSA notice process, two hundred and sixty-six (266) caregivers joined this case.

31.    In November 2017, Plaintiffs were granted leave to file an amended complaint, Doc. 181, which added Claude Mathieu as a Named Plaintiff as well as claims under the New York Labor Law (NYLL).

32.    On May 4, 2018, Plaintiffs moved to certify four Rule 23(b)(3) classes under the wage and hour laws of Connecticut and the NYLL. Doc. 204. In their opposition to class certification, Defendants challenged the standing of Ms. Mathieu as a New York Class Representative. Doc. 234 at 12. In response to Defendants' argument against the adequacy of Ms. Mathieu, Plaintiffs

moved to amend their complaint to add Shirley Caillo as an additional class representative for the New York classes. Doc. 256. The Court ultimately certified the classes. Doc. 293.

33.    In its class certification decision, the Court noted the complexity of the questions presented by this case, specifically the complexity of determining the proper method of compensation for 24-hour live-in shifts under  New York law. *Kinkead v. Humana at Home, Inc.,* 330 F.R.D. 338, 344 (D. Conn. 2019)("A complication for plaintiffs' claim is that courts are broadly split on the question of whether New York law requires that a HHW who works a 24-hour live-in shift be paid for a full 24 hours or for only 13 hours… The issue is presently before the New York Court of Appeals for definitive resolution."). As the Court further noted, the legal uncertainty in this case was whether New York required a full 24 hours of pay for a 24-hour shift, or whether, as the New York Department of Labor had argued, the New York law permits payment for only 13 hours. *Id.*

34.    The New York Court of Appeals ultimately upheld the New York Department of Labor's interpretation of the New York regulations. *See Andryeyeva v. New York Health Care,* Inc., 33 N.Y.3d 152, 176-83 (2019) (upholding the NYSDOL's interpretation of 12 N.Y.C.R.R. § 142-2.1(b) as applied to employees assigned to 24-hour shifts).

35.    After the Court certified the New York and Connecticut classes, Defendants petitioned the Second Circuit to appeal the Court's certification decision. Doc. 301. Counsel for plaintiff in *Green v. Humana at Home d/b/a SeniorBridge Family Co., Inc.,* 1:16-cv-07586 AJN-BCM (S.D.N.Y), sought to intervene in this case to appeal the Court's certification decision. Doc. 302-3. Plaintiffs opposed the appeal petitions. On August 19, 2019, the Second Circuit denied the appeal petitions. Docs. 335, 336.

36.     Discovery in this case was complex. Plaintiffs took depositions of Defendants' 30(b)(6) witnesses. Defendants served discovery requests on the Named Plaintiffs and Opt-In Plaintiffs and took depositions of the three Named Plaintiffs and four Opt-In Plaintiffs.

37.     Defendants' document and data production was voluminous.

38.     Nearly all documents produced by Defendants were marked as confidential, which forced Plaintiffs to file motions to seal every time a document had to be filed in the public docket.

39.     After discovery was complete, the Parties filed cross motions for summary judgment. Docs. 312, 314. The Court granted in part and denied in part the motions. Doc. 392. After the motions for summary judgment were decided, Defendants moved to decertify the Plaintiffs' FLSA collective action as well as all four Rule 23(b)(3) classes to the extent they sought pay for more than 13 hours per 24-hour live-in shift or a regular rate based on 8 hours of pay per live-in shift. Doc. 394. Plaintiffs opposed the decertification motion. Doc. 395.

40.     Class Counsel also spent significant time and resources in furtherance of settlement discussions. To resolve the matter through negotiation, at different times during the litigation, Defendants produced multiple datasets that included partial wage-and-hour information. Plaintiffs used that data to model damages for mediation.

41.     The history of settlement negotiations and these mediations are included in the Declaration of Michael J.D. Sweeney in Support of Preliminary Approval, Doc. 424-3, at ¶ 6.

**<u>Class Counsel Time and Labor Litigating This Case</u>**

42.     Class Counsel have expended significant time litigating this case over the course of five and one-half years.

43.     Counsel has expended an enormous amount of work in this case as is evident from their time records that show as of August 10, 2021 a total of 6,433 hours of attorneys, data analysts, and paralegals.

44.     Class Counsel have expended over 3,500 attorney hours and over 2,500 paralegal/support staff hours with extensive work speaking with Plaintiffs, preparing Plaintiffs' declarations, answering Defendant's discovery demands, analyzing discovery, taking and defending depositions, working on class and collective action certification, opposing Defendant's motion to dismiss, amending the complaint, moving twice to cure problems with the FLSA notice list, drafting cross motions for summary judgment, opposing three petitions to the Second Circuit to overturn this Court's rulings, moving to seal confidential documents, opposing and responding to motions to submit supplemental authority, and opposing a motion to decertify the classes. Settlement negotiations also demanded time and labor including extensive and complex damage calculations and preparing for and participating in two mediations. And once a settlement was reached Class Counsel participated in drafting the Settlement Agreement and Notice, the preliminary approval motion, ensuring the Notice was timely disseminated by the Settlement Administrator, assisting the Settlement Administrator with locating Class Members, answering questions from Class Members about the settlement after notice was issued, and drafting this motion for final approval.

45.     Further adding to these complexities, this case entailed receiving large data files in multiple forms, which had to be culled, sorted, reorganized, cleaned, and analyzed for Class Counsel to determine the scope of the damages and to allocate the settlement fund.

46.     Further, Class Counsel anticipate they will expend a minimum of 50 additional paralegal/support staff and attorney hours on administering and enforcing the Settlement after final

approval. Class Counsel will also spend additional time in preparing for and attending the final fairness hearing, communicating with the Settlement Administrator, ensuring the settlement payments are issued by the Settlement Administrator properly and timely, continuing to respond to Class Members' and Opt-in Plaintiffs' inquiries about the settlement and then its tax consequences.

47.     Counsel has not received any fee for litigating the case nor received reimbursement for their expenditure of $67,244.45 in out-of-pocket costs to date. Additionally, under the terms of the Settlement Agreement, Class Counsel is responsible for payment of the Claims Administrator's fees and costs above $50,000.00. In ¶ 20 of his declaration, Robert Hyte states that SSI's estimated administrative costs through completion will total $85,000.00, requiring Class Counsel to pay the additional $35,000.00. Accordingly, Class Counsel's total costs will exceed the $75,000.00 cost reserve approved in the Court's Preliminary Approval Order.

48.     Counsel undertook financial risks in agreeing to handle this case. Loss of a case such as this one would be highly significant because the law firms representing the class are relatively small, Getman Sweeney & Dunn consisting of only eight attorneys and Bohrer Brady Law of only two attorneys.

49.     This case involved a significant commitment of Counsel's available work time.

50.     Class Counsel undertook to prosecute this action for an uncertain duration against an employer with unlimited resources, without any guarantee of success, and without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk.

51.     If the litigation had continued and Defendants had prevailed on their motion to decertify the classes, it would have been very expensive, if not nearly impossible to litigate this case on behalf of each of the two hundred and sixty-six members of the FLSA collective.

52.     The risk associated with taking contingency cases such as this one is generally borne the moment the case is taken, prior to discovery, prior to rulings by the Court, and counsel can litigate such cases for years but lose all compensation for their work in a great many ways. Class and collective wage and hour cases of this type are complicated, time-consuming, and highly uncertain when the decision is made to take the case.

53.     Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources—even on losing cases.

54.     Due to the contingent nature of the customary fee arrangement, lawyers make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind, nor reimbursement of costs expended in the course of litigation.

**Getman, Sweeney & Dunn's Qualifications**

55.     Getman Sweeney & Dunn worked with Edward Tuddenham and the law office of Phil Bohrer and were appointed Class Counsel. The qualifications of Edward Tuddenham and Phil Bohrer's law office, as well as their time records and litigation expenses, are documented in their declarations submitted in support of final approval.

56.     I, together with Michael J.D. Sweeney, have been one of the lead attorneys from Getman Sweeney & Dunn primarily responsible for the prosecution of Named Plaintiffs', opt-in Plaintiffs', and Class Members' claims against Defendants.

57.     I graduated from Fordham Law School and received my Juris Doctor in May, 2010. I received a M.S. in Urban Studies from Hunter College in 2005 and a B.A. in Philosophy and Religion from Toccoa Falls College in 1996.

58.     Before I became a lawyer I spent more than 15 years working as an organizer helping working people join forces to make employers pay fair wages and make workplaces safe.

59.     Before joining Getman, Sweeney & Dunn I was the coordinating attorney of the Immigrant Worker Rights Project at Catholic Migration Services in Queens, New York, where I represented low-wage workers in wage and hour litigation and managed a collaborative effort with the Occupational Safety and Health Administration and the U.S. Department of Labor to educate workers about their rights.

60.     I joined Getman, Sweeney & Dunn in 2012 as an associate and I became a partner in September, 2020. I am admitted to practice in New York state courts the U.S. District Courts for the Southern and Eastern Districts of New York.

61.     Getman Sweeney &Dunn concentrates its practice on FLSA and other wage and hour litigation, though we have also handled a variety of other employment matters for employees. All litigation of the firm is handled on a contingent basis, in which the firm advances costs. The firm is thus almost entirely dependent on attorneys' fees awarded in cases brought under the fee shifting statutes (FLSA, state wage and hour, etc.).

62.     In addition to this case, the firm is currently handling litigation around the U.S., including three collective and class actions in the Southern District of New York, a collective and class action in the Central District of California, two class action in the District of New Jersey. For a summary list of major litigation currently under litigation by the firm, see the firm's website at http://getmansweeney.com/current-cases.

63.    Getman Sweeney & Dunn has handled class and collective action litigation since approximately 1998 including the following collective and class actions: *Herrington v. Waterstone Mtg. Corp.,* 3:11 Civ. 00779 (W.D. Wis.); *In re: DirecTech Southwest, Inc.*, Fair Labor Standards Act (FLSA) Litigation, 581 F.Supp.2d 1370, U.S. Jud. Pan. Mult. Lit. (E.D. La. 2008); *Martinez-Hernandez v. Butterball,* 5-07-civ-00174-H (E.D.N.C.); *Van Dusen v. Swift Transportation, Inc.,* 2:10-cv-00899-JWS  (D. Az., 9th Cir., and S. Ct.) (collective and putative class action for over 19,000 truckers); *Cilluffo v. Central Refrigerated, Inc.,* 5:12-cv-00886-VAP-OP (C.D. Cal.) (class settlement involving thousands of truckers); *Thomas v. Kellogg Company et al,* No. 3:2013-cv-05136 -0 (W.D. Wash.); *Enea v. Bloomberg,* 12 CV 4656 (S.D.N.Y.); *Siegel v. Bloomberg L.P.,* 13 CV 1351 (S.D.N.Y.); *Jackson v. Bloomberg L.P.,* 13 CV 2001 (S.D.N.Y.); *Martinez v. Bloomberg,* Case No. 17-CV-0455, (S.D.N.Y.); *Roseman v. Bloomberg L.P.*, Case No. 14-CV-02657, (S.D.N.Y.), among others.

64.    Most of the FLSA litigation by Getman Sweeney & Dunn is handled through collective actions and hybrid Rule 23 class and FLSA collective actions combined.

65.    Getman Sweeney & Dunn is regularly cited for its experience and qualifications. See e.g. *Roseman v. Bloomberg L.P.,* 1:14-cv-02657-DLC-KNF, Dkt. 307 (S.D.N.Y. Sept. 21, 2017) (GSD "attorneys are qualified, experienced, and able to conduct complex litigation."). Additional statements, include: "The Court remains impressed by the result achieved in this case and the time and resources invested by Plaintiff's counsel." Chief U.S. District Judge Virginia A. Phillips of the Central District of CA in *Cilluffo v. Central Refrigerated Servs.,* Inc., 12 Civ. 00886-VAP-OPx, ECF 298, at 18-19 (C.D. Cal. April 3, 2018); "After many years of arbitration, plaintiffs' counsel obtained excellent results for the class." Former Second Circuit Court of Appeals Judge George C. Pratt, acting as Arbitrator in *Herrington v. Waterstone Mortg. Corp.,* 3:11 Civ. 00779,

ECF 157, at 5 (W.D. Wisc. Feb. 12, 2018); Getman Sweeney Dunn "performed ably, efficiently, and ethically, displaying admirable expertise, professionalism, and diligence in representing their many clients."); U.S. Magistrate Judge Lisa Margaret Smith in *Murphy, et al, v. Northern Dutchess Paramedics,* 7:11-cv-05661-LMS, ECF ¶ 15 (S.D.N.Y. Aug. 15, 2014) (Smith, M.J.); "Defendants do not challenge the adequacy of the class counsel. They would be hard-pressed to; as another court recently noted, counsel's qualifications are 'stellar'"; US District Judge Brian M. Cogan in *Morangelli v. Chemed Corp.,* 275 F.R.D. 99, 119 (E.D.N.Y. 2011); Getman Sweeney Dunn "has brought to bear its considerable experience in handling class actions, and other complex litigation, particularly claims of the type asserted in the present action," Senior District Judge Jack B. Weinstein, in *Lewis v. Alert Ambulette Serv. Corp.,* No. 11-CV-442, 2012 WL 170049, at *15 (E.D.N.Y. Jan. 19, 2012); "Both this Court and other district courts around the country have recognized Plaintiffs' counsel's experience and skill in prosecuting wage-and-hour class litigation." US District Judge Jose Linares in *Brumley v. Camin Cargo Control, Inc.,* No. CIV.A. 08-1798 JLL, 2012 WL 1019337 (D.N.J. Mar. 26, 2012).

66.     The firm consists of eight (8) full-time attorneys: myself, Michael Sweeney, Matt Dunn, Lesley Tse, Meagan Rafferty, Emily Sullivan, Rocio Topete, and Rebecca King. Additionally, we regularly work with attorneys "of counsel" such as Edward Tuddenham, who has assisted the firm in handling its FLSA litigation throughout the United States.

67.     Our firm currently employs seven (7) paralegals and three (3) data analysts.

68.     A summary of the qualifications of Getman Sweeney & Dunn's attorneys and paralegals is attached as Exhibit 5.

**<u>Class Counsel's Fees and Costs</u>**

69.     A summary of Class Counsel's fees are attached hereto as Exhibit 1.

70.     Getman, Sweeney & Dunn's (GSD) contemporaneous time records kept by attorneys and paralegals from the inception of this litigation are attached as Exhibit 2.

71.     GSD updates its hourly rates on a yearly basis, and current hourly billing rates for the firm are $1,015 for Dan Getman, $925 for partner Mike Sweeney, $815 for partner Matt Dunn, $705 for partner Artemio Guerra, $660 for associate Lesley Tse, $495 for associate Kimberly Webster, $480 for associate Alexander Dumas, $465 for associate Meagan Raferty, $355 for Data Specialist Mike Russo, $300 for Data Specialist Jason Kandel, $300 for Data Specialist Scott Workman, $250 for paralegals, and $140 for clerical work.

72.     Class Counsel bore the overhead by paying in advance for the salaries of lawyers, paralegals, and data scientists who devoted significant time to this case.

73.     Class Counsel has not received any fee for litigating the case for over five years, nor received reimbursement for their out of pocket expenses.

74.     Small contingency fee firms take on extreme levels of debt to finance their cases which drag on for years. And counsel, when taking a case, have little ability to foresee or control the length of time the case will take, or the amount of work that will be required to bring it to conclusion.

75.     Based on Class Counsel's hourly billing rates, Class Counsel's fees result in a lodestar of $4,018,081.95. This does not include any additional fees to cover anticipated settlement administration or preparation for and participation in the Final Fairness Hearing. If the Court grants this motion requesting an award of $5,666,666.67, Class Counsel will recover approximately 1.41 times their lodestar fees. This multiplier will decrease with the additional fees to cover anticipated settlement administration.

76.     Getman Sweeney & Dunn's rates have been repeatedly approved by the courts in the Second Circuit, and around the country, on a lodestar crosscheck analysis. *See, e.g., Martinez v.*

*Bloomberg,* Case No. 17-CV-0455, Doc. 96, (S.D.N.Y. Feb, 2, 2020); *Roseman v. Bloomberg L.P.*, Case No. 14-CV-02657, Doc. 540 (S.D.N.Y. Oct. 16, 2018); *Murphy v. Northern Dutchess Paramedics,* 11 Civ. 5661 (S.D.N.Y. Aug. 15, 2014); *Clark v. Ecolab, Inc.*, 1:07 Civ. 08623-PAC, Doc. 105 (S.D.N.Y May, 11, 2010); *Young v. Cooper Cameron*, 04 Civ. 5968 (S.D.N.Y. Mar. 30, 2009); *Ayers, et al. v. SGS, et al.*, 03 Civ 9078 (S.D.N.Y. Sept. 9, 2008); and *Moreno v. U.S.*, 05 Civ. 142C, (Federal Court of Claims Oct. 7, 2010). Rates were also approved as lodestar crosschecks in *Martinez-Hernandez v. Butterball*, 5-07 Civ. 00174-H (E.D.N.C. 2012); *Salazar-Martinez v. Fowler Bros. Farm*, 6:10 Civ. 06257 (W.D.N.Y. 2012), and they have been approved in many other cases. *See e.g. Driscoll v. The George Washington University*, 1:12 Civ. 00690-ESH, Dkt. 98, p. 23 (D.D.C. July 17, 2014) (approving GSD rates based on the Laffey Matrix); *Morangelli v. Roto-Rooter Services Com.*, 1:10 Civ. 00876-BMC, Doc. 292, p. 9 (E.D.N.Y. Jan. 7, 2014) (awarding counsel fee request based on the percentage of the fund method); *Smith v. Nagai*, 1:10 Civ. 08237 (PAE) (JCF), Doc. 35 (S.D.N.Y. May 5, 2012); *Morocho v. Eddie*, 12 Civ. 0308 (VB) (LMS), Doc. 100 (S.D.N.Y. Dec. 10, 2012); *Llandez v. Service One Janitorial*, 04 Civ. 2210 (SCR), Doc. 22 (S.D.N.Y. Jan. 25, 2007); *Williamson v. BellSouth*, 04 Civ. 9774 (RJH)(KNF), Doc. 27 (S.D.N.Y. July 21, 2006); *Bragg v. Terrier Claims Services*, 05 Civ. 7280 (CM)(LMS), Doc. 28 (S.D.N.Y. July 21, 2006); *Crosby v. Independent Living, Inc.*, 02 Civ. 8314 (SCR)(LMS), Doc. 33 (S.D.N.Y. Aug. 16, 2006); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 03 Civ. 1166 (LMS), Doc. 74 (S.D.N.Y. March 22, 2006); *Brumley v. Camin Cargo Controls, Inc.*, 2:08 Civ. 01798-JLL-MAH, Doc. 234 (D.N.J. Mar. 26, 2012); *Bredbenner*, 2011 WL 1344745 at *22.

77.     Class Counsel requests approval of $75,000.00 in costs ($67,244.45 in out-of-pocket costs and an additional $7,755.55 to cover the costs to be paid by Class Counsel for settlement administration over the $50,000 reserve) to be paid from the Settlement Fund).

78.     Class Counsel's expenses were incidental and necessary to the representation of the Class.

August 10, 2021

Respectfully Submitted

*/s/Artemio Guerra*
Artemio Guerra, Esq. (Pro Hac Vice)
Getman, Sweeney & Dunn, PLLC
250 Fair Street
Kingston, New York 12401
Telephone: (845) 255-9370
Fax: (845) 255-8649
Email: aguerra@getmansweeney.com